# EXHIBIT A



**null / ALL**
**Transmittal Number: 20837071**
**Date Processed: 12/16/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Sheryl Arneson<br>3M Company<br>3M Center<br>Bldg 220-9E-02 220-10W/F06<br>Saint Paul, MN 55144-1000 |
| **Electronic copy provided to:** | Gwen Bernardy-Bauer<br>Canhnha Luu |

| | |
|---|---|
| **Entity:** | 3M Company<br>Entity ID Number  3571748 |
| **Entity Served:** | 3M Company |
| **Title of Action:** | Jarrod Johnson vs. 3M Company |
| **Matter Name/ID:** | Jarrod Johnson vs. 3M Company (9853442) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Floyd County Superior Court, GA |
| **Case/Reference No:** | 19CV02448JFL003 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 12/13/2019 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Ryals D. Stone<br>404-239-0305 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

IN THE SUPERIOR COURT OF FLOYD COUNTY
STATE OF GEORGIA

JARROD JOHNSON individually, and on )
Behalf of a Class of persons similarly )
Situated, )                                    Civil Action Number:
)
     Plaintiff, )                          **19CV02448JFL003**
)
v. )                                            **TRIAL BY JURY REQUESTED**
)
3M COMPANY, et al. )
)
     Defendants. )

## SUMMONS

TO THE ABOVE-NAMED DEFENDANT:

**3M COMPANY**
**c/o Corporation Service Company**
**40 Technology Pkwy South #300**
**Norcross, Gwinnett County, GA 30092**

You are hereby summoned and required to file with the Clerk of said Court and serve upon Plaintiff's counsel, whose name and address is:

Ryals D. Stone
STONE LAW GROUP
5229 Roswell Road NE
Atlanta, Georgia 30342
TEL    404-239-0305
FAX    404-445-8003
R. Stone email:  ryals@stonelaw.com

an answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 26TH day of November, 2019.

CLERK OF SUPERIOR COURT

By: /s/ Heather Churchill
    Deputy Clerk

IN THE SUPERIOR COURT OF FLOYD COUNTY
STATE OF GEORGIA

JARROD JOHNSON individually, and on        )
Behalf of a Class of persons similarly      )
Situated,                                   )
                                            )
      Plaintiff,                            )
                                            )
v.                                          )
                                            )
3M COMPANY; ALADDIN                         )
MANUFACTURING CORPORATION;                  )
APRICOT INTERNATIONAL, INC.;                )  Civil Action No. 19CV02448JFL003
ARROWSTAR, LLC; DALTONIAN                   )
FLOORING, INC.; DEPENDABLE                  )
RUG MILLS, INC.; DORSETT                    )  **TRIAL BY JURY REQUESTED**
INDUSTRIES, INC.; DYSTAR, L.P.;             )
ECMH, LLC d/b/a CLAYTON                     )
MILLER HOSPITALITY CARPETS;                 )
E.I. DU PONT DE NEMOURS AND                 )
COMPANY; EMERALD CARPETS, INC.; )
ENGINEERED FLOORS, LLC;                     )
FORTUNE CONTRACT, INC.;                     )
HARCROS CHEMICALS, INC.; INDIAN  )
SUMMER CARPET MILLS, INC.;                  )
INDUSTRIAL CHEMICALS, INC.;                 )
LEXMARK CARPET MILLS, INC.;        )
LYLE INDUSTRIES, INC.; MFG                  )
CHEMICAL, INC.; MILLIKEN &                  )
COMPANY; MOHAWK CARPET, LLC;   )
MOHAWK INDUSTRIES, INC.;                    )
NPC SOUTH, INC.; ORIENTAL                   )
WEAVERS USA, INC.;                          )
S & S MILLS, INC.;                          )
SHAW INDUSTRIES, INC.; SHAW                 )
INDUSTRIES GROUP, INC.; TANDUS              )
CENTIVA, INC.; TANDUS CENTIVA               )
US, LLC; TARKETT, INC.;                     )
TARKETT USA, INC.; THE CHEMOURS )
COMPANY; THE DIXIE GROUP, INC.;   )
THE SAVANNAH MILLS GROUP, LLC;  )
VICTOR CARPET MILLS, INC.;                  )
Q.E.P. CO., INC.; and                       )
FICTITIOUS DEFENDANTS A-J,                  )
those persons, corporations,                )

1

partnerships or entities who acted          )
either as principal or agent,               )
for or in concert with the other named      )
Defendants and/or whose acts caused         )
or contributed to the damages sustained     )
by the Plaintiff, whose identities are      )
unknown to the Plaintiff, but which         )
will be substituted by amendment            )
when ascertained,                           )
                                            )
          Defendants.                       )

## COMPLAINT

Plaintiff, Jarrod Johnson, brings this Complaint on behalf of himself and on behalf of a

Class of other people similarly situated. Plaintiff and the Plaintiff Class (collectively "Plaintiffs")

sue Defendants 3M Company; Aladdin Manufacturing Corporation; Apricot International, Inc.;

ArrowStar, LLC; Daltonian Flooring, Inc.; Dependable Rug Mills, Inc.; Dorsett Industries, Inc.;

Dystar, L.P., ECMH, LLC d/b/a Clayton Miller Hospitality Carpets; E.I. DuPont De Nemours and

Company; Emerald Carpets, Inc.; Engineered Floors, LLC; Fortune Contract, Inc.; Harcros

Chemical, Inc.; Indian Summer Carpet Mills, Inc.; Industrial Chemicals, Inc.; Lexmark Carpet

Mills Inc.; Lyle Industries, Inc.; MFG Chemical, Inc.; Milliken & Company; Mohawk Carpet

LLC; Mohawk Industries, Inc.; NPC South, Inc.; Oriental Weavers USA, Inc.; S & S Mills, Inc.;

Shaw Industries, Inc.; Shaw Industries Group, Inc.; Tandus Centiva Inc.; Tandus Centiva US LLC;

Tarkett, Inc.; Tarkett USA, Inc.; The Chemours Company; The Dixie Group, Inc.; The Savannah

Mills Group, LLC; Victor Carpet Mills, Inc.; Q.E.P. Co., Inc.; and Fictitious Defendants A-J

("Defendants"), and allege as follows:

## STATEMENT OF THE CASE

1.     This is a class action on behalf of individual Plaintiff and Class Representative

Jarrod Johnson and a class of people similarly situated who have been damaged and continue to

2

**E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA**

be damaged due to the intentional, willful, wanton, reckless, and negligent release of toxic chemicals, including but not limited to perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), related chemicals that degrade to PFOA and/or PFOS (including, but not limited to, C3-C15 perfluorinated compounds such as PFBA, PFBS, PFNA, PFHxS, PFHpA), precursors to PFOA and PFOS, and related chemicals (collectively "PFCs") from Defendants' manufacturing processes and facilities. By such wrongful acts and omissions Defendants have created and maintained a continuing public nuisance causing harm and injury to the Plaintiff and the Proposed Class Members.

2.      Plaintiff and the Proposed Class Members receive their drinking water from the City of Rome (sometimes referred to herein as "Rome" or the "City"), through the Rome Water and Sewer Division, which owns and operates the Bruce Hamler Water Treatment Facility located at 1 Blossom Hill Road in Rome, Georgia; and from the Floyd County Water Department, which purchases water from the City of Rome, Georgia. The City of Rome uses a water intake on the Oostanaula River as its primary water source and has a secondary water intake on the Etowah River as an emergency source. Water drawn from these rivers undergoes treatment at the Bruce Hamler Water Treatment Facility prior to distribution to the public.

3.      Plaintiff and Members of the proposed Class are owners and occupants of property served by water service provided by the Rome Water and Sewer Division and the Floyd County Water Department who have been, and continue to be, provided with and subjected to contaminated water as a result of the release of toxic chemicals by the Named and Fictitious Defendants.

4.      The Named and Fictitious Defendants own and/or operate manufacturing facilities related to the carpet industry and have in the past and/or currently use PFCs as part of

3

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

manufacturing processes or otherwise supply PFCs to Defendants' manufacturing facilities. These carpet manufacturing facilities are upstream of Rome's water intake, in or near the City of Dalton, Georgia as well as in Rome, Georgia. Named and Fictitious Defendants use PFCs and related chemical compounds at their manufacturing facilities to impart water, stain, and grease resistance to their carpet and other textile products. Industrial wastewater discharged from Named and Fictitious Defendants' manufacturing facilities contains high levels of Defendants' PFCs. These PFC chemicals resist degradation during processing at wastewater treatment facilities and ultimately contaminate the Conasauga River the Oostanaula River, the Coosa River and other tributaries and watersheds in Floyd County, Georgia.

5. Named and Fictitious Defendants' PFCs have contaminated waterways in Floyd County including but not limited to the water that supplies Rome's water intake site and the Bruce Hamler Water Treatment Facility. The Defendants' PFCs cannot be removed adequately from Rome's long-term water supply—the Oostanaula River—nor Floyd County waterways by the existing and/or emergency water treatment processes and technologies in use at the Bruce Hamler Water Treatment Facility and wastewater treatment facilities.

6. As a result of the Defendants' intentional, willful, wanton, reckless, and negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff and Proposed Class Members have suffered damages different in kind and degree from the damage suffered by the public in general as a result of Defendants' discharges of toxic chemicals, including compensatory and consequential damages. Plaintiff and Proposed Class Members are also seeking equitable and injunctive relief to compel the Defendants to remediate and cease the spread of toxic chemicals into and through their water supply. In addition, based on the Defendants' intentional,

4

**E-filed for Record**
**11/26/2019 3:19 PM**
**Floyd County, GA**

willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiffs are seeking recovery of punitive damages.

### JURISDICTION AND VENUE

7.     Jurisdiction is proper in this Court pursuant to Article 6, § 4, ¶ 1 of the Georgia Constitution.

8.     Plaintiff asserts no federal claim or cause of action in this Complaint.

9.     Venue is proper in Floyd County because the Plaintiff's and Proposed Class Members' claims and causes of action originated in Floyd County where members of the Plaintiff class were harmed and injured by the nuisance and tortious acts and omissions of the Defendants. Each of the Defendants is deemed to reside and be subject to venue in Floyd County, Georgia pursuant to O.C.G.A. § 14-2-510(b)(4).   Additionally venue of this action lies against all Defendants because they each are jointly and severally liable with at least one Defendant that maintains an office and does business in Floyd County, and therefore is deemed to reside and be subject to venue in Floyd County, Georgia pursuant to O.C.G.A. § 14-2-510(b)(3).

10.     Venue is proper in this Court as to any Named and Fictitious Defendants that do not have an office in Floyd County because the Named and Fictitious Defendants are joint tortfeasors with those Defendant(s) that have a registered office in Floyd County, Georgia.

### PARTIES

11.     Plaintiff Jarrod Johnson is a resident of Floyd County, Georgia and resides at 111 Snead Avenue; Rome, Georgia 30165. Plaintiff is a customer of the Rome Water and Sewer Division and uses water from the Oostanaula River which is treated by the Bruce Hamler Water Treatment Facility. Plaintiff's water supply has been and continues to be contaminated with PFCs released from Defendants' manufacturing processes and waste disposal operations.

5

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

12.     Defendant 3M Company ("3M") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant 3M Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

13.     Defendant Aladdin Manufacturing Corporation ("Aladdin") a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Aladdin is committing, and/or has committed, tortious acts or omissions within this state and county.

14.     Defendant Apricot International, Inc. ("Apricot") is a foreign corporation that was authorized to transact business in the State of Georgia at the time the claims giving rise to this cause of action arose and is causing, and/or has caused, a nuisance and injury in Floyd County, Georgia. Defendant Apricot is committing, and/or has committed, tortious acts or omissions within this state and county.

15.     Defendant ArrowStar, LLC ("ArrowStar") is a domestic limited liability company and is causing a nuisance and injury in Floyd County, Georgia. According to its website, ArrowStar uses "fluorochemicals for all carpets" and a "C-6 based fluorine product."   Defendant ArrowStar is committing, and/or has committed, tortious acts or omissions within this state and county.

16.     Defendant Daltonian Flooring, Inc. ("Daltonian") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia. Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

17.     Defendant Dependable Rug Mills, Inc. ("Dependable Rug") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia. Defendant Dependable Rug is committing, and/or has committed, tortious acts or omissions within this state and county.

6

**E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA**

18.     Defendant Dorsett Industries, Inc. ("Dorsett") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia. Defendant Dorsett Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

19.     Defendant Dystar, L.P. ("Dystar") is a foreign limited partnership authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Dystar Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

20.     Defendant E.I. du Pont de Nemours and Company ("Dupont") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant DuPont Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

21.     Defendant ECMH, LLC d/b/a Clayton Miller Hospitality Carpets f/k/a ECMH, Inc. (ECMH") is a domestic limited liability company and is causing a nuisance and injury in Floyd County, Georgia. Defendant ECMH Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

22.     Defendant Emerald Carpets, Inc. "Emerald") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia. Defendant Emerald Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

23.     Defendant Engineered Floors, LLC ("Engineered Floors") is a domestic limited liability company and is causing a nuisance and injury in Floyd County, Georgia. According to its website, Engineered Floors, LLC uses stain protection, which contains PFCs upon information and belief, on its carpets. Defendant Engineered Floors Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

7

**E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA**

24.     Defendant Fortune Contract, Inc. ("Fortune") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia.  Defendant Fortune Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

25.     Defendant Harcros Chemicals, Inc. ("Harcros") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia.  Defendant Harcros Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

26.     Defendant Indian Summer Carpet Mills, Inc. ("Indian Summer") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia.  Defendant Indian Summer Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

27.     Defendant Industrial Chemicals, Inc. ("Industrial Chemicals") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia.  Defendant Industrial Chemicals Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

28.     Defendant Lexmark Carpet Mills, Inc. ("Lexmark") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia.  Defendant Lexmark Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

29.     Defendant Lyle Industries, Inc. ("Lyle Industries") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia.  Defendant Lyle Industries Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

8

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

30. Defendant MFG Chemical, LLC, f/k/a MFG Chemical, Inc., ("MFG Chemical") is a foreign limited liability company authorized to transact business in the State of Georgia, whose predecessor was a domestic corporation, and is causing a nuisance and injury in Floyd County, Georgia. Defendant MFG Chemical Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

31. Defendant Milliken & Company ("Milliken") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Milliken Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

32. Defendant Mohawk Carpet, LLC ("Mohawk Carpet") is a foreign limited liability company authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Mohawk Carpet Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

33. Defendant Mohawk Industries, Inc. is a foreign corporation authorized to transact business in the State of Georgia. Mohawk Industries, Inc. has an office in Floyd County, Georgia at 420 Lavender Drive, Rome, Georgia 30165; transacts business in Floyd County, Georgia; and discharges its contaminated wastewater in Floyd County, Georgia. According to its own website, Mohawk Industries, Inc. uses Scotchgard™ in its carpets, which upon information and belief contains PFCs. Mohawk Industries, Inc. has committed tortious acts and omissions in Floyd County, Georgia, and is causing a nuisance and tortious injury in Floyd County, Georgia. The claims and causes of action asserted in this Complaint originated in whole, or in part, in Floyd County, Georgia. Therefore, Mohawk Industries, Inc. is deemed to reside and be subject to venue in Floyd County, Georgia pursuant to O.C.G.A. § 14-2-510(b)(3).

9

**E-filed for Record**
**11/26/2019 3:19 PM**
**Floyd County, GA**

34.     Defendant NPC South, Inc. ("NPC South") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant NPC South Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

35.     Defendant Oriental Weavers U.S.A., Inc. ("Oriental") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia. Defendant Oriental Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

36.     Defendant S&S Mills, Inc. ("S&S Mills") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia. According to its website, S&S Mills, Inc. uses R2X® Stain & Soil Resistance System, which, upon information and belief, contains PFCs on its carpets. Defendant S&S Mills Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

37.     Defendant Shaw Industries, Inc. ("Shaw Industries") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia. Defendant Shaw Industries Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

38.     Defendant Shaw Industries Group, Inc. ("Shaw Group") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia. Defendant Shaw Group WHEREFORE, Plaintiff and Proposed Class Members demand trial by jury, and (1) a judgment and decree against all Named and Fictitious Defendants commanding them to abate the nuisance they have caused, created, and (2) judgment against all Named and Fictitious Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence

10

shows them to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages in an amount sufficient in an amount sufficient to punish and penalize them, and deter them from repeating their wrongful conduct, and all costs.

39.     Defendant Tandus Centiva, Inc. ("Tandus") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Tandus Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

40.     Defendant Tandus Centiva US, LLC ("Tandus US") is a foreign limited liability company authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Tandus US Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

41.     Defendant Tarkett, Inc. ("Tarkett") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Tarkett Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

42.     Defendant Tarkett USA, Inc. ("Tarkett USA") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Tarkett USA is committing, and/or has committed, tortious acts or omissions within this state and county

43.     Defendant The Chemours Company ("Chemours") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia.   Defendant Chemours Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

11

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

44.    .Defendant The Dixie Group, Inc. ("Dixie") is a foreign corporation authorized to transact business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Dixie Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

45.    Defendant The Savannah Mills Group, LLC ("Savannah") is a domestic limited liability company and is causing a nuisance and injury in Floyd County, Georgia. Defendant Savannah Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

46.    Defendant Victor Carpet Mills, Inc., ("Victor") is a domestic corporation and is causing a nuisance and injury in Floyd County, Georgia. Defendant Victor Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

47.    Defendant Q.E.P. Co., Inc. ("Q.E.P.") is a foreign corporation doing business in the State of Georgia and is causing a nuisance and injury in Floyd County, Georgia. Defendant Q.E.P. Defendant Daltonian is committing, and/or has committed, tortious acts or omissions within this state and county.

48.    Fictitious Defendants A, B, C, D, E, F, G, H, I, & J are those persons, corporations, partnerships, or entities who manufactured, utilized as part of their manufacturing processes and/or discharged PFCs and their precursor compounds, including, but not limited to PFOA, PFOS and related chemicals into the water supply upstream of Rome's water intake site, who acted either as principal or agent, for or in concert with the named Defendants, and/or whose tortious acts or omissions caused or contributed to the damages sustained by Plaintiff and the Plaintiff Class in this state and county, whose identities are unknown to Rome, but which will be substituted by amendment when ascertained.

12

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

## FACTUAL ALLEGATIONS

49.     Over 90% of the world's carpet comes from manufacturing plants in and around Dalton, Georgia—the "Carpet Capital of the World." These carpet manufacturing plants use and have used PFCs and other related chemicals in the carpeting manufacturing process.

50.     Defendants are not only the owners and operators of the carpet manufacturing plants, but also their chemical suppliers. Defendants discharge PFCs, including, but not limited to PFOA, PFOS, their precursors and related chemicals in their industrial wastewater. Dalton Utilities, Loopers Bend Wastewater Treatment Plant, and other treatment plants then treat the wastewater before it is pumped to a 9,800-acre Land Application System ("LAS"). PFCs have been detected in dangerously high levels in the soil, wastewater effluent, groundwater, sewage, was sludge, biosolids, and compost at the Loopers Bend Wastewater Treatment Plant, which borders and connects to the Conasauga River.

51.     Defendants' PFCs resist degradation during the treatment process and increase in concentration as waste accumulates in the LAS. Runoff contaminated with PFCs pollutes the Conasauga River as it flows past the LAS. Defendants have known for decades that their PFCs cannot be removed from the discharges sent to Dalton Utilities or other treatment facilities that discharge wastewater in Floyd County.

52.     The United States Environmental Protection Agency ("EPA"), the University of Georgia ("UGA"), and the Georgia Environmental Protection Division ("EPD") have identified industrial wastewater from Defendants' manufacturing facilities as the source of PFCs entering the Conasauga River, the Oostanaula River, the Coosa River and, ultimately, into the City of Rome, Georgia's water supply.

53.     The stable carbon-fluorine bonds that make PFCs such pervasive industrial and consumer products also result in their persistence in the environment. There is no known

13

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

environmental breakdown mechanism for these chemicals. They are readily absorbed into biota and tend to bioaccumulate with repeated exposure. PFOS crosses the placenta in humans, accumulates in amniotic fluid, and has been detected in the umbilical cord blood of babies.

54.     When humans ingest PFCs, they bind to plasma proteins in the blood and are readily absorbed by and distributed throughout the body. The liver and kidneys are important binding and processing sites for PFCs, resulting in physiologic changes to these and other organs. Because of strong carbon-fluorine bonds, PFCs are stable to metabolic degradation, resistant to biotransformation, and have long half-lives in the body. These toxic chemicals accumulate in the body and cause long-term physiologic alterations and damage to the blood, liver, kidneys, immune system, and other organs.

55.     The human diseases caused by exposure to PFCs include cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol. The association between exposure to these chemicals and certain cancers has been confirmed by the C8 Health Project, an independent Science Panel charged with reviewing the evidence linking certain PFCs to diseases based on its research on the Mid-Ohio Valley population exposed to certain PFCs as a result of releases from an E. I. du Pont de Nemours and Company chemical plant. The C8 Science Panel identified kidney cancer and testicular cancer as having a "probable link" to PFOA exposure in the Mid-Ohio Valley population. Epidemiological studies of workers exposed to PFOA on the job support the association between PFOA exposure and both kidney and testicular cancer, and they further suggest associations with prostate and ovarian cancer and non-Hodgkin's lymphoma. Rodent studies also support the link with cancer. Most of an EPA Science Advisory Board expert committee recommended in 2006 that PFOA be considered "likely to be carcinogenic to humans."

14

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

The C8 Science Panel has also found probable links between exposure to certain PFCs and pregnancy-induced hypertension, ulcerative colitis, and high cholesterol.

56.     PFCs' immunotoxicity has been demonstrated in a wide variety of species and models, including humans, in recent years. For instance, a study of ninety-nine Norwegian children at age three found that maternal serum PFOA concentrations were associated with decreased vaccine responses, especially toward rubella vaccine, and increased frequencies of common cold and gastroenteritis. The combined human and experimental evidence strongly shows the adverse effects on immune functions at relatively low exposure levels.

57.     Based on the science available in 2009, the EPA published provisional drinking water health advisories for short-term exposure (weeks to months) to PFOA and PFOS. The advisory for PFOA was 0.4 micrograms per liter ("µg/L") or 0.4 parts per billion ("ppb"), and for PFOS was 0.2 µg/L or 0.2 ppb.

58.     The State of New Jersey adopted a drinking water health advisory in 2006 for PFOA that is 0.04 ppb, which is 10 times lower than the 2009 EPA provisional drinking water health advisory for PFOA. Based on review of recent scientific studies, New Jersey proposed lowering this number even further to 0.02 ppb in 2014.  Currently, New York, California, New Jersey, Massachusetts, Vermont, New Hampshire and Minnesota have all recommended and/or enacted PFC health advisories lower than EPA advisories.

59.     On May 19, 2016, due to the evolution of the science surrounding the health effects associated with the consumption of PFOA and PFOS in drinking water, EPA published lifetime Drinking Water Health Advisories for PFOA and PFOS ("May 2016 EPA Health Advisories" or "Health Advisories"). The Health Advisory for PFOA is 0.07 micrograms per liter ("µg/L"), or 0.07 parts per billion ("ppb").  The Health Advisory for PFOS is also 0.07 µg/L, or 0.07 ppb. The

15

**E-filed for Record**
**11/26/2019 3:19 PM**
**Floyd County, GA**

May 2016 EPA Health Advisories are intended to replace and supersede EPA's 2009 provisional advisories.

60.     The May 2016 EPA Health Advisories are based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicate that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects.

61.     The May 2016 EPA Health Advisories state that PFOA and PFOS have "extremely high" persistence in the environment and the human body, and that the developing fetus and newborn are "particularly sensitive" to PFOA and PFOS induced toxicity. According to the Health Advisories, a single exposure to a developmental toxin at a critical time can produce a persistent adverse effect that increases with additional exposure.

62.     Defendants have long been aware of the persistence and toxicity of PFOA, PFOS, and related chemicals. Defendants nonetheless knowingly and intentionally discharged and continue to discharge these chemicals into the rivers and watersheds that supply drinking water to the City of Rome and its water subscribers.

63.     Defendants that manufacture PFCs have known for at least 40 years that PFOA, PFOS, and related chemicals persist in the environment and accumulate in the bodies of humans, fish, and test animals. For instance, blood tests of 3M workers conducted in 1978 found elevated organic fluorine levels "proportional to the length of time that had been spent by employees in the production areas." The same study found that "laboratory workers, with former exposure, but none for 15-20 years, had elevated [organic fluorine levels] above literature normals." A 1979 3M study

16

**E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA**

of fish caught by the Wheeler Dam (26 miles downstream from the 3M plant) showed that the chemicals bioaccumulate in fish.

64.     Defendant 3M has also known for at least 40 years that PFOA, PFOS, and related chemicals are toxic. For instance, a 1978 3M study of the effects of fluorochemical compounds on Rhesus monkeys was terminated after 20 days because all the monkeys died as a result of exposure to the fluorochemicals. Twenty-one years later, 3M told the public that a "new study" on these compounds' effect on Rhesus monkeys was one reason 3M pulled one of its consumer products, Scotchgard, off the market.

65.     In 1983, a team of 3M toxicologists recommended broad testing regarding the effects of 3M's fluorochemicals on the environment and human beings.

66.     Defendant 3M has known for at least 30 years that its disposal of PFOA and PFOS and related chemicals through discharge into waterways, such as the Conasauga River or Oostanaula River was unsafe. For instance, a Materials Safety Data Sheet ("MSDS") produced by Defendant 3M in 1986 warned that PFOA should be disposed of only through incineration or at specially designed, properly lined landfills for hazardous chemicals, not discharged into rivers and not dumped into the ground.

67.     Defendant 3M has known for at least 18 years that PFOA, PFOS and related chemicals are not effectively treated by conventional wastewater treatment plant processes and are discharged to surface waters in the effluent and accumulate in the sludge from wastewater treatment processes. For example, in 2001, 3M found high concentrations of these chemicals in samples from the Decatur Utilities WWTP in Decatur, Alabama effluent and sludge as a result of discharges from 3M. These high concentrations were not disclosed to Decatur Utilities or the public.

17

**E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA**

68.     A 1997 MSDS for a product made by 3M listed its only ingredients as water, PFOA, and other per-fluoroalkyl substances and warned that the product includes "a chemical which can cause cancer." The MSDS cited "1983 and 1993 studies conducted jointly by 3M and DuPont" as support for this statement.

69.     In 1978, DuPont began to review and monitor the health conditions of its workers who were potentially being exposed to PFOA. DuPont subsequently found that PFOA is "toxic" and that "continued exposure is not tolerable," but did not disclose this to the public or to the EPA. Three years later, DuPont again failed to disclose data demonstrating the transplacental movement of PFOA to fetuses. It also failed to disclose widespread PFOA contamination in public drinking water sources resulting from discharges at its Washington Works facility in Washington, West Virginia, where PFOA concentrations exceeded DuPont's own Community Exposure Guideline.

70.     In 1991, DuPont researchers recommended following up a study from ten years earlier of employees who might have been exposed to PFOA. The prior study showed elevated liver enzymes in the blood of DuPont workers. On information and belief, for the purpose of avoiding or limiting liability, DuPont chose not to conduct the follow-up study, instead postponing it until after it was sued.

71.     In or around December 2005, DuPont agreed to pay a $10.25 million fine to the federal government arising from its failures to disclose information to EPA about PFOA's health risks. Upon information and belief, in statements to the public and government regulators, DuPont has repeatedly and falsely claimed that human exposure to PFOA has no adverse health consequences. In a May/June 2008 publication, for example, DuPont stated that "the weight of the evidence indicates that PFOA exposure does not pose a health risk to the general public," and "there are no human health effects known to be caused by PFOA, although study of the chemical

18

**E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA**

continues." DuPont made those statements against the advice of its own Epidemiology Review Board, which urged it not to make public statements asserting that PFOA does not pose any health risks.

72.     For decades, 3M manufactured PFOA and supplied it to DuPont for its manufacture of Teflon and other products. Despite DuPont's knowledge of the risks to human health posed by PFOA, in response to the withdrawal of 3M from the market in May of 2000, DuPont opened its own plant to manufacture PFOA to be incorporated into DuPont's products.

73.     In 2015, Dupont spun off its performance chemicals business (which included the design, manufacture, marketing, and sale of PFCs, as well as the environmental liabilities) to Chemours.

74.     Upon information and belief, all Defendants have long been aware of the persistence and toxicity of PFCs, at least as a result of communications with Defendant manufacturers and users of these chemicals, as well as the EPA, UGA and/or EPD.

75.     Upon information and belief, all Defendants knew or should have known that, in its intended and/or common use, PFCs would very likely cause harm and injury, and/or threaten public health and the environment.

76.     Upon information and belief, all Defendants knew or should have known that PFCs are mobile and persistent, bioaccumulative, biomagnifying and toxic. Defendants nonetheless concealed their knowledge from the public and government agencies.

77.     In 2002, EPA took regulatory action under the Toxic Substances Control Act to limit the future manufacture of PFOA, PFOS, and related chemicals. In response, Defendants undertook to develop and manufacture and supply to other Defendants "Short-Chain" PFCs; that is, PFCs with six or fewer carbons, such as GenX. Defendants are aware that these Short-Chain

**E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA**

PFCs are also not subject to biodegradation and that they accumulate in human blood, like PFOA and PFOS. Likewise, Defendants are aware that Short-Chain PFCS are also known to cause cancer in animal studies.

78.    By at least the 1990s, additional research and testing performed by Defendants manufacturing and/or using PFAS materials, including at least 3M and DuPont, indicated that at least one such PFAS material, PFOA, had caused several tumor types (Leydig/testicular, liver and pancreatic) in a chronic cancer study in rats. By the mid-2010s, Defendants 3M and Dupont/Chemours were aware that at least one Short-Chain PFC had been found to cause the same group of tumors in a chronic rat cancer study as had been found in a similar study with a non-Short-Chain PFC.

79.    Rome began regular testing for PFOA and PFOS in its water supply, leading up to the issuance of the May 2016 EPA Health Advisories, and has consistently found PFOA and PFOS levels that combine to meet or exceed the 0.07 ppb limit. In addition to PFOA and PFOS, Rome has also found Short-Chain PFCs in the water supply.

80.    In 2016, Rome's then-current water treatment filtration system was not capable of removing or reducing levels of PFCs including, but not limited to, PFOA and PFOS. Upon being informed that the May 2016 EPA Health Advisories would set lifetime safe PFOA and PFOS levels drastically lower than the 2009 provisional drinking water health advisories for short-term exposure, Rome took emergency precautions and implemented an emergency temporary filtration process by installing granular activated carbon in existing filter beds to remove non-Short-Chain PFCs. Rome also drew additional water from the Etowah River for purposes of blending that water with water drawn from the primary source, the Oostanaula River.

20

**E-filed for Record**
**11/26/2019 3:19 PM**
**Floyd County, GA**

81.     Due to the high levels of PFOA and PFOS found in its water supply, and due to the presence of Short-Chain PFCs, the City's water supply requires a new and permanent filtration system. Such a system is necessary to provide a safe, long-term supply of water which will meet the EPA health advisories and provide safe water for the public.

82.     These emergency efforts have cost, and will continue to cost, Rome millions of dollars to implement, and the City was forced to implement a surcharge upon all customer rate payers to recoup its costs. Additionally, implementation of the new, permanent filtration system will increase the future costs the City must incur to provide a safe, long-term supply of water which will meet the EPA health advisories and provide safe water for the public. Such increased costs will be passed on to all customer rate payers to recoup them through additional and increased surcharges. The City estimates that water subscribers/ratepayers will likely see a minimum 2.5% rate increase each year for the foreseeable future.

83.     As a direct and proximate result of Defendants' contamination of the Rome and Floyd County water supply, Plaintiff and the Proposed Class Members have been damaged, including, but not limited to, losses for the payment of surcharges to filter Long-Chain PFCs from the Rome and Floyd County water supply, and other compensatory damages to be proven at trial.

## CLASS ALLEGATIONS

84.     Plaintiffs incorporate by reference paragraphs 1 through 83 as if restated herein.

85.     This action on behalf of Plaintiff and all others similarly situated has been brought and may be properly maintained pursuant to the provisions of O.C.G.A. § 9-11-23.

86.     Plaintiff and the Proposed Class Members are water subscribers and ratepayers with the Rome Water and Sewer Division and/or the Floyd County Water Department who have been in the past, and will be in the future, harmed, injured, and damaged through contamination of their drinking water and the payment of surcharges to recoup the costs of removing the contamination.

21

**E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA**

87.     The Class proposed by Plaintiff and those he represents is as follows:

**All water subscribers (ratepayers) with the Rome Water and Sewer Division
and/or the Floyd County Water Department.**

88.     Excluded from the Proposed Class are:

   a.      Employees of Defendants and any entities in which Defendants have a
           controlling interest;

   b.      Any of the legal representatives, heirs, successors, or assigns of Defendants;

   c.      The Judge to whom this case is assigned and any Member of the Judge's
           immediate family and any other judicial officer assigned to this case;

   d.      All persons or entities that properly execute and timely file a request for
           exclusion from the Proposed Class; and

   e.      Any attorneys representing the Plaintiff or Proposed Class Members.

89.     Plaintiff reserves the right to modify or amend the definition of the Proposed Class

before the Court determines whether certification is appropriate.

90.     **Numerosity.** The Proposed Class Members are so numerous that separate joinder

of each Member is impractical, within the meaning of O.C.G.A. § 9-11-23(a)(1). Although the

exact number of Proposed Class Members will be established after Class notification, upon

information and belief, the number of Proposed Class Members probably exceeds 25,000 people.

Putative Class Members are readily identifiable through records of the Water Utilities and through

property records and may be given any required notices by regular mail, supplemented, if

necessary and required by the Court, by published notice.

91.     **Common Questions of Law and Fact.** There are numerous questions of law and

fact common to the Class, as required by O.C.G.A. § 9-11-23(a)(2), including:

   (a)     The factual history of the use, development, and distribution of PFCs and related
           chemicals manufactured and used by the Defendants at their Rome, Georgia and
           Floyd County facilities;

   (b)     When the Defendants knew of the harmful effects of PFCs and related chemicals;

22

(c)   Whether the Defendants failed to disclose the harmful effects of PFCs and related chemicals being released from their plants in Rome, Georgia and Floyd County;

(d)   The extent of the contamination at the Defendants' plant sites in Rome, Georgia and Floyd County, and the migration of that contamination into the Oostanaula River;

(e)   Whether the water supplied to Plaintiff and the Proposed Class Members has been and continues to be contaminated with PFCs and related chemicals;

(f)   Whether Plaintiff and the Proposed Class Members paid more for their contaminated water than they should have;

(g)   Whether the Defendants' conduct was intentional, willful, wanton, reckless, and negligent, and constitutes a nuisance;

(h)   Whether the Plaintiff and the Proposed Class Members should be awarded their reasonable attorney's fees and expenses of litigation;

(i)   Whether punitive damages should be imposed on the Defendants in an amount sufficient to punish, penalize, or deter their intentional, willful, wanton, and reckless, malicious, and oppressive acts and omissions that have created and maintained a continuing public nuisance.

(j)   The necessary remedial actions to abate the claimed nuisance and clean Defendants' chemicals from the Plaintiff's and the Proposed Class Members' water supplies and property;

(k)   Whether and to what extent injunctive relief is appropriate to require Defendants to abate the claimed nuisance and prevent Defendants' chemicals from invading the Plaintiff's and the Proposed Class Members' water supplies and properties.

92.   The questions of law and fact common to Proposed Class Members predominate over any questions affecting only individual Members, and thus a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

93.   **Typicality.** Plaintiff's claims are typical of the claims to be advanced by Proposed Class Members, and his claims encompass those of the other Proposed Class Members he seeks to represent, as required by O.C.G.A. § 23(a)(3). The claims are typical because the facts and circumstances giving rise to liability are the same, the claims are based on the same legal theories,

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

and the damages suffered by Plaintiff are the same kinds of damages suffered by the Proposed Class Members.

94.     **Adequacy.** Plaintiff can fairly and adequately protect and represent the interests of each Proposed Class Member as required by O.C.G.A. § 9-11-23(a)(4). Plaintiff will fairly and adequately protect and represent the interests of the Proposed Class Members based on the following facts and circumstances: their interests do not conflict; their interests are co-extensive with common rights of recovery based on the same essential facts and legal theories; they are Members of the same communities; they are similarly damaged and are seeking the same remedies; and they intend to prosecute this action vigorously. Plaintiff has retained counsel competent and experienced in complex class action and toxic tort litigation.

95.     The prosecution of separate actions by individual Proposed Class Members would create a risk of (a) inconsistent or varying adjudications with respect to individual Proposed Class Members, which would establish incompatible standards of conduct for the Defendants and/or (b) adjudications with respect to individual Proposed Class Members which would as a practical matter be dispositive of the Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

96.     The Defendants have acted on grounds generally applicable to all Members of the proposed Class, making final declaratory and injunctive relief concerning the Class as a whole appropriate within the meaning of O.C.G.A. § 9-11-23(b)(2).

97.     Common questions of fact and law among the Representative Plaintiffs and Proposed Class Members predominate over questions affecting only individual Class Members, within the meaning of O.C.G.A. ¶ 9-11-23(b)(3). Some of the common issues are set forth in Paragraph 91 above.

24

**E-filed for Record**
**11/26/2019 3:19 PM**
**Floyd County, GA**

98.    Additionally, Class action treatment is a superior method to other available methods for the fair and efficient adjudication of the controversy. Certification under O.C.G.A. § 9-11-23(b)(3) would be proper in that, among other things: there is no interest by Proposed Class Members in individually controlling the prosecution of separate actions; the expense of prosecuting individual claims for the matters for which Class certification is sought would be prohibitive in light of the typical claimant's injuries; neither Plaintiff nor Members of the proposed Class have filed or are parties to any litigation in which the legal and factual issues raised herein are to be adjudicated; and it is desirable to concentrate the litigation of claims in a single proceeding so as to avoid unnecessary and expensive duplication of actions and to provide for judicial economy. Whatever difficulties may exist in the management of a Class action will be greatly outweighed by its benefits.

99.    Class action treatment is preferable to other available methods in providing a fair and efficient method for the adjudication of the controversy described herein, which has affected a large number of persons. The Class action provides an effective method whereby the enforcement of the rights of the Plaintiffs can be fairly managed without unnecessary expense or duplication.

### COUNT ONE – TORT CLAIMS FOR DAMAGES
### (ALL CLASS MEMBERS)

100.    Plaintiff and Proposed Class Members incorporate by reference paragraphs 1 through 99 as if restated herein.

101.    Named and Fictitious Defendants owed a duty to Plaintiff and Proposed Class Members to exercise due and reasonable care in their chemical manufacturing and chemical supply operations as well as their carpet manufacturing operations to prevent the discharge of toxic PFC chemicals into the Rome and Floyd County water supply.

25

**E-filed for Record**
**11/26/2019 3:19 PM**
**Floyd County, GA**

102.    Named and Fictitious Defendants breached the duty owed to Plaintiff and Proposed Class Members, and under the circumstances, Defendants' breaches intentional, willful, wanton, reckless, and negligent misconduct.

103.    As a direct, proximate, and foreseeable result of Defendants' intentional, willful, wanton, reckless, and negligent misconduct, practices, actions, and inactions, Plaintiff and Proposed Class Members who are owners and occupants of residential real property and water subscribers/ratepayers with the Rome Water and Sewer Division and/or the Floyd County Water Department have been caused to suffer, and will continue to suffer, losses for the surcharges incurred as ratepayers for the costs of partially filtering Long-Chain PFCs from their drinking water and other damages to be proved trial.

104.    Named and Fictitious Defendants have acted in bad faith, have been stubbornly litigious, and have caused the Plaintiff and Proposed Class Members unnecessary trouble and expense. Plaintiff and Proposed Class Members are entitled to recover reasonable and necessary attorneys' fees and expenses of litigation as a part of their damages. O.C.G.A. § 13-6-11.

105.    Named and Fictitious Defendants' actions showed willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Named and Fictitious Defendants acted, or failed to act, with the specific intent to cause harm, did cause harm and injury to the Plaintiff and Proposed Class Members, and continue to cause harm and injury to them. Punitive damages should be imposed on Named and Fictitious Defendants in an amount sufficient to punish and penalize them, and deter them from repeating such wrongful conduct.

WHEREFORE, Plaintiff and the Proposed Class Members demand trial by jury and judgment against all Named and Fictitious Defendants, jointly and severally, for past, present, and

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

future compensatory damages in such amounts as the evidence shows them to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages in an amount sufficient in an amount sufficient to punish and penalize them, and deter them from repeating their wrongful conduct, and all costs.

### COUNT TWO – PUBLIC NUISANCE
### CLAIMS FOR DAMAGES
### (ALL CLASS MEMBERS)

106.    Plaintiff and Proposed Class Members incorporate by reference paragraphs 1-105 as if restated herein.

107.    Plaintiff and Proposed Class Members own and occupy residential properties supplied with drinking water by the Rome Water and Sewer Division and/or the Floyd County Water Department and are forced to pay surcharges that allow the City to filter long chain PFCs from the water supply.

108.    Named and Fictitious Defendants have created a continuous, public nuisance by their discharge of PFCs including, but not limited to PFOA, PFOS, and related chemicals into the Oostanaula River and related tributaries and watersheds, which has caused, and continues to cause, contamination of Plaintiff's and Proposed Class Members' water supply, thereby proximately causing Plaintiff and Proposed Class Members past, present, and future harm, injury, inconvenience, and increased water rates and surcharges.

109.    The contamination caused by the Named and Fictitious Defendants has unreasonably interfered, and continues to interfere, with a right common to the general public— i.e., safe drinking water—and has unreasonably interfered, and continues to interfere, with public health.

110.    All who come into contact with the PFCs released and discharged by Defendants are hurt, inconvenienced, or damaged by, among other things, being exposed to the harmful effects

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

of PFCs. The harm caused by Defendants' conduct is not fanciful, or such as would affect only one of fastidious taste; rather, Defendants' conduct is such that it affects ordinary, reasonable persons. *See* O.C.G.A. § 41-1-1.

111.   The levels of toxic chemical contamination found in the Rome Water and Sewer Division and/or the Floyd County Water Department water supply, directly caused by the Defendants' pollution, has created a condition that has threatened, and continues to threaten, the health and well-being of the Plaintiff, and Proposed Class Members, and everyone who consumes drinking water supplied by the Rome Water and Sewer Division and/or the Floyd County Water Department. This ingestion of PFCs causes concern, inconvenience, and harm to the Plaintiff, Proposed Class Members, and everyone who consumes drinking water supplied by the Rome Water and Sewer Division and/or the Floyd County Water Department —as it would to any other person. It was reasonably foreseeable, and in fact known to the Defendants, that their actions would cause interference with the property rights of Plaintiff and Proposed Class Members and would place, have placed, and continue to place, them at increased risk of physical harm.

112.   Plaintiff and Proposed Class Members have suffered, and will continue to suffer, special damages from Defendants' discharge of PFCs into the Oostanaula River, because unlike all who consume contaminated water supplied by the Rome Water and Sewer Division and/or the Floyd County Water Department, Plaintiff and Proposed Class Members must also pay the added costs of attempting to remove the contamination by way of increased rates and surcharges they incur as ratepayers.

113.   The nuisance created by Defendants' wrongful conduct is continuing, because Defendants' discharges and releases of PFCs and related chemicals into the Oostanaula River are continuing. In addition, the past discharges of PFCs and related chemicals have caused

E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA

contamination of sediments in the river, which provide a continuing source of contamination of the water.

114.    As a result of the public nuisance caused by Defendants, Plaintiff and Proposed Class Members, who are owners and occupants of residential real property and ratepayers with the Rome Water and Sewer Division and/or the Floyd County Water Department, have been caused to suffer, and will continue to suffer, losses for the increased rates and surcharges incurred as ratepayers for the costs of partially filtering Long-Chain PFCs from their drinking water, and other damages to be proved at trial.

115.    As a result of the public nuisance caused by Defendants, Plaintiff and Proposed Class Members have been caused to suffer, and will continue to suffer, economic damage caused by Defendants' actions/inactions, including their role in the toxic PFC pollution of the public drinking water.

WHEREFORE, Plaintiff and the Proposed Class Members demand trial by jury and judgment against all Named and Fictitious Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows them to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages in an amount sufficient in an amount sufficient to punish and penalize them, and deter them from repeating their wrongful conduct, and all costs.

## COUNT THREE – CLAIMS FOR ABATEMENT
## AND INJUNCTION OF PUBLIC NUISANCE
## (ALL CLASS MEMBERS)

116.    Plaintiff and Proposed Class Members incorporate paragraphs 1 through 115 as if restated herein.

117.    Pursuant to O.C.G.A. §§ 41-2-1 and 41-2-2, Plaintiff and Proposed Class Members have the right to bring an action to abate the nuisance caused by Defendants' manufacture, supply,

29

and discharge of PFOA, PFOS, and related chemicals, which has caused and continues to cause contamination of their water supply.

118.   In addition to their claims for damages, Plaintiff and Proposed Class Members are entitled to an injunction to abate the nuisance created and maintained by Defendants.

119.   Plaintiff and Proposed Class Members request this Court to issue an order and decree requiring Named and Fictitious Defendants to remove their chemicals and toxins from the water supplies of Plaintiff and Proposed Class Members and/or fund the measures necessary to prevent these chemicals and toxins from continuing to contaminate Plaintiff's and Proposed Class Members' water supply, based on the continuing irreparable injury to them posed by the continuing nuisance, for which there is no adequate remedy at law.

120.   Plaintiff and Proposed Class Members further request that this Court enter an order and decree permanently enjoining Named and Fictitious Defendants from continuing the conduct described herein, and requiring Named and Fictitious Defendants to take all steps necessary to remove their chemicals from Plaintiff's and Proposed Class Members' water supplies and properties.

121.   There is continuing irreparable injury to Plaintiff and Proposed Class Members— and, indeed, all consumers of drinking water supplied by the Rome Water and Sewer Division and/or the Floyd County Water Department—if an injunction does not issue, as Named and Fictitious Defendants' chemicals Rome's water supplies pose a continuing threat, and there is no adequate remedy at law.

WHEREFORE, Plaintiff and Proposed Class Members demand trial by jury, and

(a) a judgment and decree against all Named and Fictitious Defendants enjoining them from maintaining the nuisance they have cased, created, and maintained;

30

**E-filed for Record
11/26/2019 3:19 PM
Floyd County, GA**

(b) a judgment and decree against all Named and Fictitious Defendants, jointly and severally, requiring them to the nuisance they have cased, created, and maintained;

(c) a judgment and decree against all Named and Fictitious Defendants, jointly and severally, requiring them to remove their PFC chemicals and toxins described herein from the Rome Water and Sewer Division's and the Floyd County Water Department's water system;

(d) a judgment and decree against all Named and Fictitious Defendants, jointly and severally, requiring them to cease releasing any kind of PFC chemicals and toxins described herein into rivers, streams, and tributaries where they contaminate the Rome Water and Sewer Division's and the Floyd County Water Department's water system and Plaintiff and Proposed Class Members' water supply;

(e) a judgment and decree against all Named and Fictitious Defendants, jointly and severally, requiring them to prevent any kind of PFC chemicals and toxins described herein from being released into rivers, streams, and tributaries where they contaminate the Rome Water and Sewer Division's and the Floyd County Water Department's water system and Plaintiff and Proposed Class Members' water supply; and

(f) a judgment against all Named and Fictitious Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows them to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages in an amount sufficient in an amount sufficient to punish and penalize them, and deter them from repeating their wrongful conduct, and all costs.

*Attorneys for Plaintiffs:*

THE STONE LAW GROUP –
TRIAL LAWYERS, LLC
By: */s/ Ryals D. Stone*
Ryals D. Stone

31

Georgia State Bar No. 831761

By: /s/ *William S. Stone*

William S. Stone
Georgia State Bar No. 684636

5229 Roswell Road NE
Atlanta, GA  30342
Phone: 404-239-0305
Fax:    404-445-8003
R. Stone email:  ryals@stonelaw.com
B. Stone email:  billstone@stonelaw.com

**CORY WATSON, P.C.**
Hirlye R. "Ryan" Lutz, III*
F. Jerome Tapley*
Brett C. Thompson*

2131 Magnolia Avenue South
Birmingham, AL  35205
Phone: 205-328-2200
Fax:    205-324-7896
R. Lutz email: rlutz@corywatson.com
J. Tapley email: jtapley@corywatson.com
B. Thompson email: bthompson@corywatson.com

*Application for Admission
Pro Hac Vice Forthcoming*

SHERIFF ENTRY OF SERVICE _____ SC-85-2

Civil Action No. __19CV02448JFL003__

Date Filed: __11/26/2019__

| | |
|---|---|
| Superior Court | ✓ |
| State Court | ☐ |
| Juvenile Court | ☐ |

| | |
|---|---|
| Magistrate Court | ☐ |
| Probate Court | ☐ |

Georgia, __Floyd_____COUNTY

JARROD JOHNSON individually, and on Behalf

of persons similarly Situated

Plaintiff

Attorney's Address:

Ryals D. Stone _____

5229 Roswell Rd. NE

Atlanta, GA 30342

Email: ryals@stonelaw.com; acia@stonelaw.com

Name and Address of Party to be Served
3M COMPANY

c/o Corporation Service Company

40 Technology Pkwy South #300

Norcross, Gwinnett County, GA 30092

vs.

3M COMPANY, et al.

Defendant

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant _____personally with copy of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about_____ years; weight, about_____pounds; height, about_____feet and_____inches, domiciled at the residence of defendant.

**CORPORATION** ☐

Served the defendant __3M COMPANY_____ corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation this County.

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _____ day of _____ 20 _____

_____
DEPUTY

SHERIFF ENTRY OF SERVICE                    SC-85-2

Civil Action No. __19CV02448JFL003__

Date Filed: __11/26/2019__

| | | | |
|---|---|---|---|
| **Superior Court** | ✓ | **Magistrate Court** | ☐ |
| **State Court** | ☐ | **Probate** Court | ☐ |
| Juvenile Court | ☐ | | |

Georgia,__Floyd_____COUNTY

Attorney's Address:

__Ryals D. Stone__

__5229 Roswell Rd. NE__
__Atlanta, GA 30342__
__Email: ryals@stonelaw.com; acia@stonelaw.com__

Name and Address of Party to be Served
**3M COMPANY**

c/o Corporation Service Company

40 Technology Pkwy South #300

Norcross, Gwinnett County, GA 30092

JARROD JOHNSON individually, and on Behalf

of persons similarly Situated

Plaintiff

vs.

3M COMPANY, et al.

Defendant

Garnishee

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

I have this day served the defendant _____personally with copy of the within action and summons.

**NOTORIOUS**

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about_____ years; weight, about_____pounds; height, about_____feet and_____inches, domiciled at the residence of defendant.

**CORPORATION**

Served the defendant __3M COMPANY_____ corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation this County.

**TACK & MAIL**

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _____ day of _____ 20 _____

_____
DEPUTY

SHERIFF ENTRY OF SERVICE                               SC-85-2

Civil Action No. __19CV02448JFL003__

Date Filed: __11/26/2019__

| | | |
|---|---|---|
| Superior Court | ✓ | Magistrate Court ☐ |
| State Court | ☐ | Probate Court ☐ |
| Juvenile Court | ☐ | |

Georgia, __Floyd_____COUNTY

JARROD JOHNSON individually, and on Behalf

of persons similarly Situated
_____

Attorney's Address:                                                          Plaintiff

__Ryals D. Stone__

__5229 Roswell Rd. NE__                              VS.

__Atlanta, GA 30342__

__Email: ryals@stonelaw.com; acia@stonelaw.com__

Name and Address of Party to be Served

**3M COMPANY**                                    3M COMPANY, et al.
_____

c/o Corporation Service Company                                 Defendant

40 Technology Pkwy South #300

Norcross, Gwinnett County, GA 30092
                                                              Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant _____personally with copy of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant _____by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about_____ years; weight, about_____pounds; height, about_____feet and_____inches, domiciled at the residence of defendant.

**CORPORATION** ☐

Served the defendant __3M COMPANY_____ corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation this County.

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _____ day of _____ 20____

_____

                                                              DEPUTY