**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| JARROD JOHNSON, individually, and on Behalf of a Class of persons similarly Situated, | |
| Plaintiff, | |
| v. | Civil Action No.: 4:20-cv-00008-AT |
| 3M COMPANY, ET AL., | |
| Defendants. | |

## <u>DEFENDANTS SHAW INDUSTRIES, INC. AND SHAW INDUSTRIES GROUP, INC.'S INITIAL DISCLOSURES</u>

COME NOW Shaw Industries, Inc., and Shaw Industries Group, Inc., (the "Shaw Defendants" or "Shaw"), and hereby provide these initial disclosures required by Fed. R. Civ. P. 26(a)(1). The following initial disclosures are based on information reasonably available to the Shaw Defendants at the present time. The Shaw Defendants reserve the right to supplement these disclosures as more information about this matter becomes available.

**(1)     If the Defendant is improperly identified, state Defendant's correct identification and state whether Defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.**

Shaw Industries, Inc. is improperly identified as it does not manufacture anything and does not use PFCs. As such, Shaw Industries, Inc. should be dismissed. Shaw Industries Group, Inc., however, is properly identified.

**(2)   Provide the names of any parties whom Defendant contends are necessary parties to this action, but who have not been named by Plaintiff. If Defendant contends that there is a question of misjoinder of parties, provide the reasons for Defendant's contention.**

The Shaw Defendants are not aware of any additional necessary parties to this action who have not yet been named by Plaintiff, and are not aware of misjoinder of parties. The Shaw Defendants will supplement this response if needed.

**(3)   Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by Defendant in the responsive pleading.**

Shaw is a careful steward of the components used in all of its flooring products, focusing on the sustainability and safety of products it produces and sells to the public. In the past, Shaw Industries Group, Inc. used some forms of perfluorinated compounds (PFCs) in the manufacture of some of its carpets to give those products soil and stain resistance qualities. This was not unusual, since many different industries, including the carpet industry, used these chemicals for decades in a variety of consumer products. Shaw always followed industry custom, responsible practices, and standards in doing so. When concerns were raised about various products containing PFCs in the early 2000s, such as the product called "Scotchguard," Shaw discontinued the further use of those products. Shaw also

evaluated and adopted alternatives to the products then on the market and Shaw's manufacturing processes were engineered to minimize any waste. Ultimately, Shaw ceased using any product containing PFCs in the manufacture of carpeting in the United States by January 31, 2019.

Shaw Industries Group, Inc. lawfully discharges, and has discharged in the past, wastewater from its manufacturing facilities located in or around Dalton, Georgia to Dalton Utilities pursuant to a Dalton Utilities' state issued permit with the EPD. Both Dalton Utilities and the State of Georgia were fully aware that there were very small amounts of PFCs contained in Shaw's wastewater. The State of Georgia thereby explicitly authorized the actions of Dalton Utilities and manufacturers, like Shaw, which sent their wastewater to Dalton Utilities. Dalton Utilities had the responsibility of treating the wastewater it received pursuant to its permit, and Dalton Utilities pumped the wastewater into a 9,800-acre Land Application System ("LAS"), where the treated wastewater was sprayed onto that property. Shaw was merely a customer of Dalton Utilities which delivered its wastewater to a treatment facility for disposal. Shaw does not, and cannot, direct or control any of Dalton Utilities' waste disposal operations. At all relevant times, Shaw acted in compliance with Georgia law and the permits granted to it for discharge of its industrial wastewater.

Shaw has no duty to the Plaintiff in this action. Shaw has not created or maintained any nuisance or other dangerous condition and it has breached no duty owed to Plaintiff.  Further, there is no evidence that Shaw's actions have caused any harm to Plaintiff. To the extent that Plaintiff has been harmed in any way, that harm has been caused by others and not Shaw.

The City of Rome has also filed a lawsuit against the Shaw Defendants, and others seeking damages related to the presence of PFCs in the Oostanaula River and reimbursement for the costs of filtering water removed from the Oostanaula River by the City of Rome. See City of Rome v. 3M Company, et al, Floyd County Superior Court, Civil Action Number: 19cv02405JFL003. The named Plaintiff in this action alleges that he has suffered similar damages, as a rate payer to the City of Rome, related to the filtering of PFCs from the exact same drinking water, and for an increased risk of harm. The named Plaintiff has alleged no damage to his property. The named Plaintiff has not alleged any physical injury and Shaw is unaware of any physical injury to Plaintiff. Inasmuch as the Plaintiff's lawsuit does not allege such damages, and creates the opportunity for a double recovery for the same damages by both Plaintiff and the class he seeks to represent, on the one hand, and the City of Rome, on the other, this claim is barred by the economic loss rule.

The Shaw Defendants incorporate by reference their Answer and the description of their defenses contained in their Motion to Dismiss and reserve the right to supplement this response as discovery progresses.

**(4)     Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which Defendant contends are applicable to this action.**

At the current stage in the litigation, the following statutes, codes, legal principles, and illustrative case law are applicable to this action. The Shaw Defendants reserve the right to supplement this list:

**A. Causation:** Any alleged injury to Plaintiff was caused by an intervening cause and an attenuated chain of actions –  in particular those taken by Dalton Utilities – effectively breaking any causal link between Shaw's conduct and Plaintiff's injuries and precluding any finding of proximate cause. See Alexander v. Hulsey Envtl. Servs., Inc., 306 Ga. App. 459, 462 (2010) (a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury.); Yearty v. Scott Holder Enterprises, Inc., 349 Ga. App. 718, 722 (2019), reconsideration denied (Mar. 26, 2019) ("the well-established doctrine of intervening causes states that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent act or omission of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was

sufficient of itself to cause the injury."); Avis Rent A Car Sys., LLC v. Johnson, 836 S.E.2d 114, 116 (Ga. Ct. App. 2019) ("when a defendant claims that its negligence is not the proximate cause of the plaintiff's injuries, but that an act of a third party intervened to cause those injuries, the rule is that an intervening and independent wrongful act of a third person producing the injury . . . should be treated as the proximate cause insulating and excluding the negligence of the defendant.").

**B. The Economic Loss Rule:** The economic loss rule bars Plaintiff's substantive claims for "tort" and for public nuisance because Plaintiff does not seek claims for personal injury, or damage to their own property. See Gen. Elec. Co. v. Lowe's Home Centers, Inc., 279 Ga. 77, 78, 608 S.E.2d 636, 637 (2005) ("a plaintiff can recover in tort only those economic losses resulting from injury to his person or damages to his property."); Remax The Mountain Co. v. Tabsum, Inc., 280 Ga. App. 425, 634 S.E. 2d 77, 78-79 (2006) (court held it was undisputed that the plaintiffs' properties and businesses were not physically damaged, and thus, pursuant to Lowe's, the economic loss doctrine barred plaintiffs' claims in tort); Murray v. ILG Techs., LLC, 378 F. Supp. 3d 1227, 1232–33 (S.D. Ga. 2019), aff'd, No. 19-11607, 2020 WL 91546 (11th Cir. Jan. 8, 2020) (where no damage to plaintiffs' person or property, the economic loss doctrine bars the plaintiffs' claims); City of Atlanta v. Benator, 310 Ga. App. 597, 605 (Ga. App.

2011) (The Georgia Court of Appeal affirmed the trial court's dismissal of tort claims under the economic loss doctrine, holding that "the only specific damages alleged by the plaintiff are overpayments to the city for which they seek a refund. They do not seek damages due to injury to their persons or to their real or personal property.").

**C. Non-Specific health threats:** The Plaintiff's claims that they are subject to a "risk" of injury fail because non-specific health threats, without any accompanying physical harm, are insufficient damages to support a claim for relief. See O.C.G.A. § 51-12-8; Johnson v. Am. Nat'l Red Cross, 276 Ga. 270, 275, 578 S.E.2d 106, 110 (2003) (affirming grant of summary judgment on negligent claim and holding that fears of contracting disease were "unreasonable as a matter of law"); Jefferson v. Houston Hosps., Inc., 336 Ga. App. 478, 486–87 (2016) ("appellants have never been diagnosed with breast cancer, and any emotional distress attributable to mistrust of the mammogram procedure or fear of a misdiagnosis in the future is not cognizable in damages"); Russaw v. Martin, 221 Ga. App. 683, 686 (1996) ("To allow recovery for emotional injuries and mental anguish, without any proof whatsoever that Debra Russaw was actually exposed to HIV or hepatitis is per se unreasonable."); Boyd v. Orkin Exterminating Co., Inc., 191 Ga. App. 38, 40 (1989) (overruled on other grounds) (fear of contracting disease in future not compensable without showing a "reasonable medical

certainty" that such consequence will occur); <u>Paws Holdings, LLC v. Daikin Indus., Ltd.</u>, CV 116-058, 2017 WL 706624, at *13 (S.D. Ga. Feb. 22, 2017) ("to the extent that Plaintiff claims that it has suffered an increased risk of injury, such increased risks of injury are insufficient to state an 'injury' recoverable in tort under Georgia law.").

**D. Shaw owes no duty to Plaintiff** Shaw does not owe a duty to Plaintiff, nor has Shaw breached a viable legal duty to Plaintiff. <u>See</u> <u>John Crane, Inc. v. Jones</u>, 278 Ga. 747, 751 (2004) (To state a claim for negligence in Georgia, a party "must show a duty, breach of that duty, causation and damages."); <u>Brooks v. Branch Banking & Trust Co.</u>, 107 F.Supp.3d 1290, 1303 (N.D. Ga. 2015) (granting defendant's motion to dismiss plaintiff's negligence claim because "she [did] not allege any specific duty owed to her by Defendant."); <u>Sellers v. Bank of Am., Nat. Ass'n</u>, No. 1:11-CV-3955-RWS, 2012 WL 1853005, at *5 (N.D. Ga. May 21, 2012) (dismissing plaintiffs' negligence claim because "[p]laintiffs have failed to allege a duty, cognizable under Georgia law, that Defendants owed to Plaintiffs and that Defendants breached by engaging in alleged acts of 'predatory lending.'"); <u>Dep't of Labor v. McConnell</u>, 305 Ga. 812 (2019) (affirming dismissal of plaintiff's negligence claim since no legal duty owed to plaintiff); <u>City of Douglasville v. Queen</u>, 270 Ga. 770, 771 (1999) ("No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something

that it should not have done, or failed to do something that it should have done pursuant to the duty owed the plaintiff.").

**E. Shaw's actions were legal and permissible:** Shaw's actions cannot constitute a nuisance as they were legal and permissible. Shaw was authorized to send its wastewater to Dalton Utilities for treatment and disposal, pursuant to its lawful permit held with Dalton Utilities. See O.C.G.A. § 41-1-1; Effingham Cty. Bd. of Comm'rs v. Shuler Bros., Inc., 265 Ga. App. 754, 755, 595 S.E.2d 526, 528 (2004) (emphasis added) (since "chip mill was a legal enterprise operated as the law authorized, it cannot have been a nuisance."); Anderson v. Atlanta Comm. for Olympic Games, Inc., 261 Ga. App. 895, 900 (2003) ("Since the Park itself was lawful, it could have become a nuisance only if conducted in an illegal manner. There is, however, no evidence that ACOG operated the Park in an illegal manner."); City of Douglasville v. Queen, 270 Ga. 770, 771 (1999) (the City's lawful conduct could not form the basis of a nuisance cause of action); Georgia Department of Natural Resources, Letter Re: Dalton Utilities-Riverbrend Land Application System (LAS) Permit No. GA02-056 at 3, §§ 11-12 (March 26, 2007) available at https://archive.epa.gov/pesticides/region4/water/documents/web/pdf/dalton_utilities_las_permit.pdf).

**F. Shaw has no control over the alleged nuisance:** Shaw cannot be liable for a nuisance over which it had no control and which was instead under the sole

control of another, i.e. Dalton Utilities and the other water treatment facilities referenced in Plaintiff's Complaint. See Grinold v. Farist, 284 Ga. App. 120, 122 (2007) (holding where "the record is devoid of any evidence that [defendant] created, continued, or maintained the alleged nuisance or otherwise controlled the release of household discharge on his aunt's property," plaintiff's claim of nuisance must fail); Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta, 986 F. Supp. 1406, 1420 (N.D. Ga. 1997) ("It must be shown that the injury is the natural and proximate consequence of the acts of the defendant and not the acts of others."); Rymer v. Polo Golf & Country Club Homeowners Ass'n, Inc., 335 Ga. App. 167, 177 (2015) (affirming summary judgment on nuisance claim where "evidence clearly shows that Polo does not own or control any drainage facilities within Polo Fields . . . ."); City of Atlanta v. Demita, 329 Ga. App. 33, 37 (2014) (no evidence that sewer or drainage system causing flooding of Demita's property was under City's control); Futch v. Lowndes Cty., 297 Ga. App. 308, 313 (2009) (Industrial Authority was entitled to summary judgment on nuisance claim where "county own[ed] and maintain[ed] both the ditch and the underlying sewer line . . . [and] [t]he Industrial Authority exercised no control over any nuisance-creating instrumentality"); compare Sumitomo Corp. of Am. v. Deal, 256 Ga. App. 703, 704, 569 S.E.2d 608, 611 (2002) (testimony "allowed the jury

to find that Sumitomo exercised enough control in the decision to maintain the detention pond . . . to hold it liable for the damage to Deals' land).

**G. Plaintiff's claim for abatement is moot:** Plaintiff's claim for abatement of nuisance is moot, as the Shaw Defendants have not utilized any of the chemicals at issue since the beginning of 2019. There is, therefore, no continuing action to enjoin or abate. See Sexual Offender Registration Review Bd. v. Berzett, 301 Ga. 391, 393 (2017) ("[T]here can be no actual or justiciable controversy if, among other things, the questions in the case have become moot . . . .") (quoting Fulton County v. City of Atlanta, 299 Ga. 676, 677 (2016)); Crawford v. Ocwen Loan Servicing, LLC, 343 Ga. App. 47, 48 (2017) ("If the event sought to be enjoined in fact will not take place, the grant or denial of an injunction may also become moot.").

**H. Abatement, punitive damages, and attorneys' fees claims fail:** Plaintiff's claim for abatement of nuisance is a claim for equitable relief, and is only available when the underlying claim itself is viable. See Washington Seminary v. Bass, 192 Ga. 808, 816 (1941) ("It is well established that the mere allegation of irreparable injury is not sufficient to authorize the granting of an injunction, but facts must be alleged upon which the charge of irreparable injury is predicated . . . ."); Lee v. Green Land Co., Inc., 272 Ga. 107, 110 (2000) ("Likewise, a proceeding does not constitute an equity case simply because the

plaintiff seeks injunctive relief, since an injunction is only a form of equitable relief and not an independent equitable claim."); <u>Andrade v. Grady Mem'l Hosp. Corp.</u>, 308 Ga. App. 171, 175 (2011) ("Because the underlying claims in the complaint were correctly dismissed, . . . the trial court also correctly dismissed . . . the associated claim for injunctive relief . . . ."). Because Plaintiff's claims substantive fail, as a matter of law, so too does its claim seeking an injunction to abate a nuisance. For the same reasons, Plaintiff's claims for attorneys' fees and punitive damages also fail. <u>See</u> O.C.G.A. §§ 13-6-11, 51-12-5.1; <u>Sparra v. Deutsche Bank Nat. Tr. Co.</u>, 336 Ga. App. 418, 422-423 (2016) ("[Plaintiff] is not entitled to either [punitive damages and attorneys' fees] because he has failed to state a claim upon which relief could be granted with respect to his substantive claims for relief."); <u>State, Dept. of Transp. v. Douglas Asphalt Co.</u>, 297 Ga. App. 470, 474 (2009) ("A prerequisite to any award of attorney fees under O.C.G.A. § 13–6–11 is the award of damages or other relief on the underlying claim.") (citation omitted).

In the interest of brevity, Shaw incorporates by reference the defenses set forth in its answer and in its motion to dismiss and reserves the right to supplement this response as discovery progresses.

**(5)     Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the**

subjects of the information. **(Attach witness list to Initial Disclosures as Attachment A.)**

See Attachment A.

**(6)     Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)**

See Attachment B.

**(7)     Provide a copy of, or description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

See Attachment C.

**(8)     In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

At this time, the Shaw Defendants do not claim any damages.

**(9)     If Defendant contends that some other person or legal entity is, in whole or in part, liable to the Plaintiff or Defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.**

Shaw believes, based upon public sources, that PFCs, including PFOA and/or PFOS, have been used in a wide variety of consumer products in the 20th and 21st Centuries, such as detergents, non-stick cookware, oil and grease resistant food packaging materials, fast food wrappers, microwave popcorn bags, pizza boxes, candy wrappers, water resistant coating, cleaning products, shampoos, dental floss, certain cosmetics, other personal care products, certain paints, varnishes, sealants, soil resistant treatments for upholstery fabrics, water resistant treatments for clothing fabrics, soil resistant carpets, certain foods, certain aqueous film-forming firefighting foam, medical garments, industrial floor wax, and stone (referred to herein as "Products"). The manufacturers, distributors, others in the chain of commerce, and end users  (including the Plaintiff and the proposed class) that interacted with or disposed of these Products likely caused  or contributed to causing PFCs, including PFOS and PFOA, to enter water sources for the City of Rome. The Davison Blue Book, available at http://www.textilebluebook.net/, is an annual directory of mills, dyers, finishers, converters and jobbers in the textile industry who may have used such Products. As stated on the Davison Blue Book website, "It also includes various suppliers to the textile industry including machinery, chemicals, supplies and services." See http://www.textilebluebook.net/, visited 6/10/2020. Any entity in the Davison Blue Book that used or supplied PFOS and/or PFOA in manufacturing, and that is located on or near the City of

Rome water sources may have caused or contributed to causing PFCs, including

PFOS and PFOA to enter those water sources. Thus, there are numerous people,

including the named Plaintiff in this action, and other entities who may have

contributed to the existence of PFOS and/or PFOA in the water sources for the

City of Rome. Shaw will supplement this response with the names and addresses

of specific people and entities who may be liable to the Plaintiff following further

discovery.

**(10)   Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

The Shaw Defendants will provide responsive insurance policy declaration

pages to Plaintiff.

This 15th Day of June, 2020.

*/s/ Jennifer B. Dempsey*
William V. Custer
Georgia Bar No. 202910
bill.custer@bclplaw.com
Jennifer B. Dempsey
Georgia Bar No. 217536
jennifer.dempsey@bclplaw.com
Christian J. Bromley
Georgia Bar No. 206633
christian.bromley@bclplaw.com

BRYAN CAVE LEIGHTON
PAISNER LLP
One Atlantic Center, Fourteenth Floor
1201 W. Peachtree St., N.W.
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Fax:            (404) 572-6999

*Counsel for Defendants Shaw
Industries, Inc. and Shaw Industries
Group, Inc.*

**Attachment A**

The Shaw Defendants identify the following individuals who may have discoverable information that the Shaw Defendants may use to support its defenses, unless solely used for impeachment.

Other than the named plaintiff, each individual below can be contacted through the undersigned counsel.

- The named plaintiff.

- Bill Whitmire, Director of Corporate Risk Management at Shaw. Mr. Whitmire's duties include overseeing risk management at Shaw, and he has knowledge regarding the same.

- Cynthia Walaitis, Director of Environmental, Health and Safety at Shaw. Ms. Walaitis's duties include oversight of the water permits at Shaw manufacturing facilities, and she has knowledge regarding the same.

- Michelle Hurley, Specialist - Dye/Chemicals at Shaw. Ms. Hurley's duties include the purchase of chemicals for Shaw's manufacturing plant, and she has knowledge regarding the same.

- Carey Mitchell, former Director of Sustainability at Shaw. Mr. Mitchell's duties included research and testing related to Shaw's manufacturing process, and he has knowledge regarding the same.

- Chester Chaffin, Vice President of Enterprise Excellence at Shaw. Mr.

Chaffin's duties focus on process improvement, manufacturing, and quality control, and he has knowledge regarding the same.

- Bryan Morton, Technical Director at Shaw. Mr. Morton's duties include oversight of the technical aspects of manufacturing, and he has knowledge regarding the same.

- John Hall, Director of Latex Applications at Shaw. Mr. Hall's duties include oversight of latex in applications, and he has knowledge regarding the same.

- George Cavanaugh, Technical Manager at Shaw. Mr. Cavanaugh's duties include oversight of technical aspects of manufacturing, and he has knowledge regarding the same.

- Keith Guyton, Chemical Manager at Shaw. Mr. Guyton's duties include management of chemical production in the manufacturing process, and he has knowledge regarding the same.

- Nathan Donohue, Technical Manager Residential Carpet at Shaw. Mr. Donohue's duties include oversight of technical aspects of manufacturing, and he has knowledge regarding the same.

- Turner Plunkett, Vice President of Soft Surface Manufacturing at Shaw. Mr. Plunkett's duties include overseeing the business and operational practices of carpet manufacturing, and he has knowledge regarding the same.

## **Attachment B**

The Shaw Defendants have not yet identified any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. The Shaw Defendants will supplement this response in accordance with Fed. R. Civ. P. 26(e), and this Court's Orders.

**Attachment C**

Following is a description by category of all documents, data compilations or other electronically stored information, and tangible things in the Shaw Defendants' possession, custody, or control that it may use to support its defenses unless solely for impeachment. The documents listed below are in the Shaw Defendants' possession. The Shaw Defendants reserve the right to supplement this response in accordance with Fed. R. Civ. P. 26(e), and this Court's Orders.

- Documents related to carpet manufacturing.

- Documents related to the use of fluoropolymers in the manufacture of carpet in Shaw's manufacturing facilities.

- Documents related to the disposal of wastewater from Shaw manufacturing facilities.

- Documents related to permits held by Shaw and Dalton Utilities related to the disposal of wastewater.

- Communications with Dalton Utilities or the Georgia Environmental Protection Division.

- Communications with manufacturers of certain chemicals.

- Communications related to fluoropolymers.

- Documents related to the testing of wastewater.

## **Attachment E**

Insurance policy declaration pages will be provided to Plaintiff.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

JARROD JOHNSON, individually, and
on Behalf of a Class of persons
similarly Situated,

     Plaintiff,

   v.       Civil Action No,:
           4:20-cv-00008-AT

3M COMPANY, ET AL.,

     Defendants.

## CERTIFICATE OF SERVICE

   This is to certify that I have this date filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send email notification of such filing

to all counsel of record.

   This 15th Day of June, 2020.

           /s/ Jennifer B. Dempsey
           Jennifer B. Dempsey
           Georgia Bar No. 217536
           jennifer.dempsey@bryancave.com
           BRYAN CAVE LEIGHTON
           PAISNER LLP

One Atlantic Center – Fourteenth
Floor
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Facsimile:    (404) 572-6999

*Counsel for Defendants Shaw
Industries, Inc. and Shaw Industries
Group, Inc.*

## **LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

I certify that this pleading has been prepared with Times New Roman, 14

point, as approved by the Court in L.R. 5.1(C), N.D. Ga.

Respectfully submitted, this 15th Day of June, 2020.

*/s/ Jennifer B. Dempsey*
Jennifer B. Dempsey
Georgia Bar No. 217536
Jennifer.Dempsey@bclplaw.com
BRYAN CAVE LEIGHTON
PAISNER LLP
One Atlantic Center – 14th Floor
1201 W. Peachtree Street, N.W.
Atlanta, Georgia 30309-3471
Telephone:   (404) 572-6600
Facsimile:   (404) 572-6999

*Counsel for Defendants Shaw*
*Industries, Inc. and Shaw Industries*
*Group, Inc.*