# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

**Jarrod Johnson individually, and on behalf of a class of persons similarly situated,**

**Plaintiff**

**v.**

**3M Company,** *et. al*

**Defendants.**

Case No. 4:20-cv-00008-AT

Hon. Amy Totenberg

## STIPULATED JOINT PROTOCOL GOVERNING DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Plaintiff Jarrod Johnson ("Plaintiff") and Defendant 3M Company ("3M"), Defendant Aladdin Manufacturing Corporation, Defendant Arrowstar, LLC, Defendant Ei du Pont de Nemours and Company, Defendant Engineered Floors, LLC, Defendant Milliken & Company, Defendant Mohawk Carpet, LLC, Defendant Mohawk Industries, Inc, Defendant Oriental Weavers USA, Inc., Defendant Shaw Industries, Inc., Defendant Shaw Industries Group, Inc., Defendant Tarkett USA, Inc., Defendant The Chemours Company, Defendant Victor Carpet Mills, Inc., and

Defendant The Dixie Group, Inc. (collectively, "Defendants") (altogether, "Parties") by and through their attorneys, have stipulated and agreed to the entry of a Joint Protocol Governing Discovery of Documents and ESI (the "Protocol") governing the discovery, collection, and production of documents, including electronically stored information ("ESI"), in response to discovery requests ("Discoverable Information") in the above-captioned litigation (the "Action").

The Parties will engage in discovery proceedings in the Action, and their counsel have engaged in substantive discussions regarding the discovery of documents and ESI.  The Parties mutually seek to reduce the time, expense, and other burdens of discovery of hard copy documents and ESI, and to better define the scope of their obligation with respect to producing such information and materials. This Protocol does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of this Action.  This Protocol is not intended to expand any document storage, preservation, or production requirement beyond the common law or the Federal Rules of Civil Procedure or to limit any protections otherwise available to a Party under the common law, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence.

This Protocol is intended to supplement the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Georgia.  This Protocol is intended

to promote a "just, speedy, and inexpensive determination" of this action.  Fed. R. Civ. P. 1.

The Court, having reviewed the agreement and stipulations of the Parties, finds that good cause supports the entry of this Protocol, and that justice so requires.

Accordingly, pursuant to Rule 26 of the Federal Rules of Civil Procedure, it is hereby ORDERED that all the discovery, collection, and production of documents or ESI in this Action shall be subject to the terms and provisions set forth below.

## I.   **GENERAL PROVISIONS**

1.     **Discoverability and Admissibility.**  Nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information.  All objections to the discoverability or admissibility are preserved and may be asserted at any time.

2.     **Cooperation and Proportionality.**  The Parties agree to follow the Federal Rules of Civil Procedure and applicable federal law in conducting discovery in this Action.  This Protocol is not intended to expand the Parties' obligations under Rules 1, 26, and 34.

3.     **Meet and Confer.**  The Parties agree to meet and confer regarding any disagreements that arise as a result of the implementation of this Protocol or other discovery-related matters.  To the extent a Party that is producing Discoverable Information (a "Producing Party") reasonably expects production of specific paper

documents or ESI will be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production pursuant to Rule 34(b)(2)(E).

4.     **Modification.**   This Protocol may be modified or amended either by written agreement of the Parties submitted to the Court for approval or by order of the Court.   Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the proportional, timely, and economical exchange of Discoverable Information.

5.     **Superseding Effect.**   This Protocol supersedes any prior discussions or agreements of the Parties on the topics contained herein, and to the extent it is contrary to any such agreements or discussions, the terms of the Protocol control.

6.     **Materials from Prior Litigation.**   To the extent that a Party propounds discovery requests (a "Requesting Party") upon a Producing Party seeking the reproduction of documents and/or responsive information which the Producing Party has previously produced in other litigation(s), a Producing Party is not obligated to re-run or re-validate those document production sets or responsive information.   Nor is a Producing Party obligated to recollect the documents that formed the basis for such prior document production(s) for the purpose of obtaining additional metadata

4

as set forth in Parts III and IV below.

a.      Should the Requesting Party come forward with a particularized need for additional metadata information as to a specific document, then the Parties will meet and confer to discuss reasonable efforts to locate and recollect such information.   A Requesting Party may make reasonable requests, with which a Producing Party shall reasonably comply, for the Producing Party to provide an explanation of the methodology and date ranges used to assemble the prior document production(s), if known.

b.      The utilization of prior productions by a Producing Party will not exempt that Party from having to undertake additional and/or supplemental efforts to produce further documents in order to account for additional electronic search terms, document custodians, expanded date ranges, etc., that were not taken into account in assembling and serving the prior productions and relevant information, about which the Parties shall meet and confer in good faith.

c.      For the avoidance of doubt, with respect to discovery in this Action of documents that any Party has previously produced in other litigations, it is the Parties' intent that such prior document productions will be reproduced in this Action in the format in which they have previously been

5

produced, which, for example, exempts a party from having to convert a prior production to the TIFF format if previously produced in PDF form.

d. The Parties agree to meet and confer concerning incorporation of confidentiality treatment and/or designations assigned to reproduced documents from prior litigation, and/or other appropriate measures where inconsistencies may exist between protective orders entered in prior litigation and the stipulated Protective Order that the Parties intend to file with the Court in this Action.

## II.   **SCOPE & PRESERVATION**

1.   **General.**  The procedures and protocols outlined herein govern the production of Discoverable Information by all Parties to this Action, whether they currently are involved or become so in the future.  The Parties will take reasonable steps to comply with this agreed-upon Protocol for the production of Discoverable Information.

2.   **ESI.**  Shall mean any electronically stored active-user files, including but not limited to:  email; word-processing documents; spreadsheets; electronic slide presentations; databases; and other reasonably accessible data reasonably anticipated to be subject to discovery pursuant to the Federal Rules of Civil Procedure.

3.    **Not Reasonably Accessible ESI.**  The circumstances of this Action do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible, unless the Producing Party believes in good faith that not reasonably accessible ESI is likely to contain significant relevant information not otherwise available in reasonably accessible sources.  For purposes of this Paragraph, the Parties agree that the following sources of ESI are not reasonably accessible:

a.    Data stored in a backup system for the purpose of system recovery or information recovery, including but not limited to:  disaster recovery backup tapes and media; continuity of operations systems; and data or system mirrors or shadows.

b.    Voicemail recordings.

c.    Mobile devices and ESI stored on mobile devices, including smart phones or tablets.

d.    Legacy Data, or any data remaining from systems no longer in use that is unintelligible to and inaccessible by the systems currently in use.

e.    Deleted, erased, or overwritten computer files, whether fragmented or whole, which were deleted in the regular course of business.

f.    Online access data such as temporary internet files, history,

cache, cookies, and the like.

      g.     Corrupted data or otherwise inaccessible files that cannot be recovered by the systems currently in use.

      h.     Data stored in Random Access Memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

      i.     Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

      j.     Data stored on printers, photocopiers, scanners, and fax machines.

      k.     Data stored as server, system, or network logs.

Nothing in this Protocol prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2). Likewise, nothing in this Protocol prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that one or more of the listed categories of ESI are reasonably accessible under the specific facts and circumstances related to such ESI or that good cause exists for discovery on such categories of ESI subject to the limitations of Federal Rule of Civil Procedure 26(b)(2). The Parties to any dispute or potential dispute

regarding discovery of not reasonably accessible ESI will meet and confer prior to submitting any such dispute to the Court or Special Master.

4.     **Identification of Collection Sources.**     The Parties shall confer regarding the identification and collection of sources of relevant ESI.  The Parties shall meet and confer regarding:  (a) the identity and/or role of custodians possessing relevant information from whom documents will be collected and produced; (b) search methodology and search terms, if any, to be applied, and use of technology assisted review ("TAR") or similar technologies; (c) relevant data sources, including custodial, non-custodial, and third-party documents; and (d) any applicable and appropriate timeframes for the collection, review, and production of documents.

5.     **Search Methodology.**  Subject to the requirements set forth in section 4 above titled "**Identification of Collection Sources,**" the Parties recognize that each Party may use one or more search methodologies to collect, review, and produce relevant and responsive, non-privileged documents and ESI and undertake reasonable efforts to locate Discoverable Information.  There are many valid ways to search for and retrieve ESI, and the Parties agree that absent a showing of specific need and good cause, the Producing Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing its own ESI.  Each Producing Party shall design and implement the methods it uses to

identify, cull, and review its potentially responsive ESI based on its knowledge and understanding of its own data, the facts and issues involved in this Action, and the discovery requests propounded by a Requesting Party.  A Producing Party may apply reasonable search methodologies to appropriate sources and may also conduct a targeted collection of sources likely to contain responsive materials (*e.g.*, file folders on a given hard drive).

### III.   **FILTERING ESI**

1.   **De-duplication.**  With respect to documents or ESI that a Party either collects or processes from a collection after the date this Order is entered, and specifically excluding documents or ESI that a Party has previously collected and processed prior to the date this Order is entered, a Producing Party will make reasonable efforts to de-duplicate identical ESI within its own productions, as follows.  Parties shall meet and confer regarding any de-duplication issues presented by a Party's ESI that may require deviation from these de-duplication procedures.

a.   <u>Electronic Documents that Are Not Email</u>.  Duplicate non-email electronic documents (such as Microsoft Word documents)  will be identified based upon a commercially accepted method (*e.g.*, MD5 or SHA-1 hash values) for binary file content.  All electronic documents bearing an identical value are a duplicate group.  The Producing Party may produce only one

document image or native file for duplicate ESI documents within the duplicate group, however, the Producing Party will identify the additional custodian(s) for duplicate documents not produced to the extent such information can be automatically populated by the processing of the documents.

      b.   <u>Email</u>.  Duplicate email or other messaging files  will be identified based upon a commercially accepted method (*e.g.*, MD5 hash values) generated for the entire email family including:  To; From; CC; BCC; Body; Message ID; and Attachment Properties.  Email families bearing an identical value are considered a duplicate group.  The Producing Party will produce only one document image or native file for duplicate ESI documents within the duplicate group; however, in the event that email is collected from a custodial source the Producing Party will identify each custodian(s) from whom the duplicate email was collected, provided that such information can be automatically populated with industry standard ESI processing tools.

    2.   **Email Threading.**  With respect to documents or ESI that a Party either collects or processes from a collection after the date this Order is entered, and specifically excluding documents or ESI that a Party has previously collected and processed prior to the date this Order is entered, the Parties  will use industry

standard analytic tools to employ "email thread suppression," As used in this Protocol, email thread suppression means producing the most inclusive email in a conversation thread, as well as all emails with attachments within the thread, and excluding emails constituting duplicates emails within the produced conversation thread. Only email messages that are included within more complete, produced thread part will be considered appropriate for exclusion from production. Agreed upon metadata will not be produced for email thread parts suppressed under this Paragraph. Suppressed thread parts need not be reflected on the Producing Party's privilege log. Parties shall meet and confer regarding any threading issues presented by a Party's ESI that may require deviation from these procedures.

3. **De-NISTing.**  ESI collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

4. **Zero-byte Files.**  The Parties shall filter out files identified as zero bytes in size and any logo files.

5. **Embedded Objects.**  Embedded objects or files such as Excel spreadsheets, Word documents, or audio and video files, shall be extracted and searched consistent with its category of ESI. Non-substantive embedded files, such as MS Office embedded images, Email in-line images (logos, etc.), need not be

12

extracted.  All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol.  For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

## IV.   **PRODUCTION FORMAT**

1.     **TIFF/Native File Format Production.**  The default production format for unstructured discoverable ESI will be black-and-white Group IV single-page TIFF (300 DPI) with document-level extracted text files or OCR text files (for redacted records) and a standard delimited .DAT file containing document-level text files and the agreed upon meta-data fields.

2.     ESI will be produced in "last saved" or "last modified" format.  If a color image is produced in black and white, the Receiving Party may request the Producing Party produce the original color image as a single page, 300 DPI JPEG. The Parties agree that they shall not unreasonably withhold production of any document in JPEG format where color is needed for interpretation of that document, to the extent the source document is reasonably accessible.  ESI that is difficult or impracticable to render in TIFF, such as video or audio files, may be produced in its native form with a placeholder TIFF image stating "Document Produced Natively."

ESI maintained in spreadsheets (*e.g.*, Lotus; Microsoft Excel) or presentation formats (*e.g.*, Microsoft PowerPoint) need only to be produced in native format. Native files should be produced within incrementally named "NATIVE" directories, separate from image directories. A Producing Party retains the option to produce ESI in alternative formats, which may include native format or a combination of native and alternate formats if it would be burdensome to produce a particular file in TIFF. Should the Producing Party elect to do so, it will meet and confer with the Receiving Party prior to such production.

3.   **<u>Document Text</u>.**  For documents that were originally created and stored as electronic files and which do not have redactions, where reasonably available, the Producing Party will produce the extracted full text (not OCR) from the body of each document in individual document-level TXT files.  OCR text will be provided for documents without available extracted text (*e.g.*, non-searchable PDFs).  Image cross-reference files will also be produced whether the text is extracted or OCR.  For documents that were originally stored as electronic files and which have redactions, the OCR text from the redacted image(s) associated with each document will be produced, in individual document-level TXT files.  "TEXT" folder directories will group 1,000 document text files each, separate from image directories.

4.   **<u>Database Production</u>.**  Discoverable Information that is stored in a

database (*e.g.*, structured data) will be produced in reasonably usable standard report formats available in the ordinary course of business.  Upon review of the report(s), the Requesting Party may, on a showing of particularized need, request from the Producing Party additional information to explain any codes, abbreviations, or other information necessary to ensure the report is reasonably usable.  In the event of such a request, the Producing Party will determine the most reasonable means to provide the relevant and proportional information requested.

5. **<u>Numbering/Endorsement</u>.**  All produced Discoverable Information will have a unique Control ID assigned, regardless of the format of the Discoverable Information, and the file produced will be named with the unique Control ID.  For Discoverable Information produced in TIFF image format, each TIFF image will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate or obscure any information from the source document.  A Producing Party should use a consistent format for the Bates Numbers it uses across its productions. Separate folders will not be created for each document.

a. In the case of materials deemed confidential in accordance with any applicable federal, state, or common law, and/or designated as such pursuant to the stipulated Protective Order that the Parties intend to file with

the Court in this Action, governing the production of confidential materials in this Action, documents and ESI should be marked in accordance with the stipulated Protective Order.

b.     The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

6.     **<u>Scanned Documents & Hard Copies</u>.**  The Parties agree that paper documents that contain Discoverable Information may be scanned and produced in an imaged format set forth in Paragraph IV.1.  Consistent with Federal Rules of Civil Procedure 26 and 34, a Producing Party may make hard copy records available to a Requesting Party for inspection and copying, provided however the Parties shall meet and confer prior to production being made in this manner, including regarding whether such hard copy documents may be scanned and produced in electronic form consistent with this Protocol.  In such instances, the Parties shall meet and confer regarding the time, location, and other considerations with respect to the inspection and copying.

a.     When scanning paper documents, the Parties shall undertake reasonable efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (*i.e.*, the Parties shall attempt to logically unitize scanned hard copy documents).

b.     All pages now stapled or fastened together shall be scanned with all attachments currently or previously appended to each document, regardless of whether such attachments themselves would be independently responsive.

c.     The Producing Party agrees to produce every copy of a document on which there appears to be a notation or marking of any sort not appearing on any other copy or any copy containing different attachments from any other copy, provided that such notation is in any way relevant to the subject matter of this lawsuit.

7.     **Native Files.**  The Parties agree that any Discoverable Information may be produced in the imaged format set forth in Paragraph IV.1.  Subsequent to the production of image formats, however, the Requesting Party may upon a showing of particularized need, request from the Producing Party that certain imaged files be produced in native format according to the following protocol:

a.     The Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format.  The Requesting Party also shall provide the reasons for the request.

b.     The Producing Party shall either produce the native files, or object to the demand for any particular file as unreasonable as follows:

i.     The Producing Party will respond in writing, setting forth

17

its objection(s) to the production of the requested native format files.

   ii.  The Parties will meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of the requested files in native format, the Parties shall submit the matter to the Court.

  8.  **Encrypted Files.** The Producing Party shall take reasonable efforts to ensure that all encrypted files are decrypted prior to processing and searching, and shall produce passwords for any password-protected natives files produced to the extent the passwords are reasonably available.

  9.  **Production Media.** The Producing Party may produce documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media including: CD-ROM; DVD; or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

  10. **Metadata.** The Parties agree to produce a load file containing, if available in the normal courseand reasonably practical to do so, the metadata fields below, and to the extent a document is not redacted (separately addressed):

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| ProdBeg | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| ProdEndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| All Custodians | Text | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with "," | | | Recipients of message |
| CC | Text – paragraph Separate entries with "," | | | Copied recipients |
| BCC | Text – paragraph | | | Blind copied recipients |

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
|  | Separate entries with "," |  |  |  |
| Subject | Text - paragraph |  |  | Subject of message |
| Date/Time_Sent | Date (mm/dd/yyyy hh:mm:ss) |  |  | Date and Time message sent |
| Date/Time_Rcvd | Date (mm/dd/yyyy hh:mm:ss) |  |  | Date and Time message received |
| FileName | Text - paragraph |  | Name of original file including extension | Name of original file including extension |
| FileExtension | Text |  | Extension of original file | Extension of original file |
| Date/Time_Created | Date/Time (mm/dd/yyyy hh:mm:ss) |  | Date and time file was created |  |
| Date/Time_Modified | Date/Time (mm/dd/yyyy hh:mm:ss) |  | Last modified date and time |  |
| Sort_Date/Time | Date/Time (mm/dd/yyyy hh:mm:ss) |  | Date and time taken from (Email) Date/Time_Sent, (Email) Date/Time_Rcvd, or (EDocs) Date/Time_Modified, repeated for parent document and all children items to allow for |  |

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| | | | date sorting. | |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Company | Text - paragraph | | Document company or organization from metadata | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |

      a.     No Party has an obligation to create or manually code metadata

fields that are not automatically generated by the processing of the ESI or that

21

do not exist as part of the original metadata of the electronic document except for:      BegBates; EndBates; BegAttach; EndAttach;    Confidentiality;    and Custodian.  Custodians should be identified using the convention "Last Name, First Name."

b.      The Parties may rely on the metadata automatically generated by the processing of the ESI, and no Party has an independent obligation to review the metadata of individual files to ensure the metadata's accuracy.

c.      For redacted documents the Producing Party will provide only: BegBates; EndBates; BegAttach; EndAttach; Confidentiality; and Custodian.

11.      **Load Files.** The following load files may be combined to address all content provided within a single production (*i.e.*, all documents produced on a single piece of media or through a single file transfer).

a.      <u>Image Cross-Reference Load File</u>.  Provide a comma-delimited image load file that contains document boundary reference data, page counts, and media volume information.

b.      <u>Text Cross-Reference Load File</u>.  For all TXT files created in accordance with Paragraph IV.2., provide a comma-delimited load file with each document's beginning Bates Number along with the full path to the associated extracted text/OCR text file.

c.      <u>Native Cross-Reference Load File</u>.  For all native files, provide a comma-delimited load file with each document's Bates Number along with the full path to the produced native file.

d.      <u>Structured ESI Cross-Reference Load File</u>.   For all reports produced under Paragraph IV.3., provide a comma-delimited load file with each document's Bates Number along with the full path to the produced report.

## V.   <u>OTHER ISSUES</u>

1.      **<u>Costs.</u>**  The cost of preserving, collecting and producing documents shall be borne by the Producing Party.  In the event, however, that a Requesting Party requests ESI, documents, or information that would result in the production of cumulative or repetitive discovery that otherwise imposes an undue burden or expense upon a Producing Party, the Producing Party may object.  The Parties shall work to resolve any such objection.  In the event the Parties are unable to resolve such an objection, and upon substantiation of that objection in writing by the Producing Party, the Producing Party may move the Court for an order shifting the cost of producing such cumulative or repetitive information or information that otherwise imposes an undue burden or expense to the Requesting Party.

2.      **<u>English Language.</u>**  To the extent any document exists in more than

one language, the document shall be produced in English, if available in the ordinary course of business or in the custodian's files.  If no English version of the document is available, the Producing Party does not have an obligation to produce an English translation.

3.     **Agreed Protective Order.**   The terms of the separate stipulated confidentiality order governing production and treatment of confidential information filed with the Court are incorporated herein by reference and also govern all production pursuant to this Protocol.

4.     **Further Conferral.**   If any Party determines that any of the requirements in this Protocol impose an undue burden or otherwise pose an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes.

5.     **No Required Disclosure of Privileged Materials.**   Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

6.     **Producing Party's Right to Review Own Documents.**   Nothing contained herein limits a Producing Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or

segregation of privileged and/or protected information before production.

                    *       *       *       *       *


**IT IS SO ORDERED.**


**Date: _____**          **_____**
                                            **AMY TOTENBERG**
                                            **UNITED STATES DISTRICT JUDGE**


SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated this 14th day of August, 2020.

/s/ Ryan Lutz
Hirlye R. "Ryan" Lutz, III, Esq.
*rlutz@corywatson.com*
F. Jerome Tapley, Esq. (pending *phv*)
*jtapley@corywatson.com*
Brett C. Thompson, Esq. (*phv*)
*bthompson@corywatson.com*
 CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205

**One of the Attorneys for Plaintiff**


/s/ Ryals D. Stone
Ryals D. Stone (GA Bar No. 831761)
*ryals@stonelaw.com*
William S. Stone (GA Bar No. 684636)
*billstone@stonelaw.com*
THE STONE LAW GROUP –TRIAL LAWYERS, LLC
5229 Roswell Road NE
Atlanta, Georgia 30342
(404) 239-0305
(404) 445-8003 (fax)

**One of the Attorneys for Plaintiff**

/s/ Benjamin P. Harmon
Jackson R. Sharman, III,
GA Bar No. 637930
Benjamin P. Harmon,
GA Bar No. 979043
Lightfoot, Franklin and White LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
Telephone: (205) 581-0700
Email: jsharman@lightfootlaw.com
Email: bharmon@lightfootlaw.com

/s/ Robert B. Remar
Robert B. Remar,
GA Bar No. 600575
S. Gardner Culpepper,
GA Bar No. 201210
Monica P. Witte,
GA Bar No. 405952
Katherine L. D'Ambrosio,
GA Bar No. 780128
Rogers & Hardin LLP
229 Peachtree Street, N.E.
Atlanta, GA 30303
Telephone (404) 522-4700
Email: rremar@rh-law.com
Email: sculpepper@rh-law.com
Email: kdambrosio@rh-law.com
Email: mwitte@rh-law.com

*Counsel for Defendant 3M Company*

/s/ *David Carpenter*
David Carpenter
Georgia Bar No. 292101
david.carpenter@alston.com
Doug Scribner
Georgia Bar No. 632755
doug.scribner@alston.com
Geoff Rathgeber
Georgia Bar No. 195334
geoff.rathgeber@alston.com
ALSTON & BIRD LLP
1201 W. Peachtree Street, Suite 4900
Atlanta, Georgia  30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Counsel for Defendants Aladdin Manufacturing Corporation, Mohawk Carpet, LLC, and Mohawk Industries, Inc.*

/s/ *M. Russell Wofford, Jr.*
Jameson B. Carroll,
GA Bar No. 112640
Michael Weiss,
GA Bar No. 746494
M. Russell Wofford, Jr.,
GA Bar No. 773002
CARROLL & WEISS LLP
1819 Peachtree Road, Suite 104
Atlanta, GA 30309
404-228-5337
jcarroll@carrollweiss.com
mweiss@carrollweiss.com
rwofford@carrollweiss.com

*Attorneys for Milliken & Company*

**GRANT KONVALINKA & HARRISON, P.C.**

/s/ *David C. Higney*
David C. Higney, GA Bar No. 352780
633 Chestnut Street
Suite 900, One Republic Centre
Chattanooga, TN 37450-0900
423-756-8400
423-756-6518 facsimile
dhigney@gkhpc.com
*Attorneys for Defendant Oriental Weavers USA, Inc.*

**COPPEDGE, MICHMERHUIZEN, RAYBURN | ATTORNEYS AT LAW**

/s/ *Warren N. Coppedge*
WARREN N. COPPEDGE, JR.
GEORGIA BAR NUMBER: 187300
STEPHEN MICHMERHUIZEN
GEORGIA BAR NUMBER: 107109
508 S. Thornton Avenue
Dalton, Georgia 30720
P: (706) 226-0040
F: (706) 226-0050
trisha@coppedgefirm.com
steve@coppedgefirm.com

*Attorneys For Defendant Arrowstar, LLC*

/s/ *Michael J. Sullivan*
Michael J. Sullivan
Georgia Bar 142203
Vonnetta L. Benjamin
Georgia State Bar No. 049890
Womble Bond Dickinson (US) LLP
271 17th Street N.W., Suite 2400
Atlanta, Georgia 30363-1017
Tel:   404-879-2479
Fax:   404-870-4879
michael.sullivan@wbd-us.com
vonnetta.benjamin@wbd-us.com

John W. Scott
(Admitted *Pro Hac Vice*)
Ethan A. Wilkinson
(Admitted *Pro Hac Vice*)
Scott Dukes & Geisler, P.C.
211 Twenty Second Street North
Birmingham, Alabama 35203
Tel:   205-251-2300
Fax:   205-251-6773
jscott@scottdukeslaw.com
ewilkinson@scottdukeslaw.com

*Counsel for Defendant Tarkett USA Inc.*

/s/ *William V. Custer*
William V. Custer
Georgia Bar No. 202910
E-Mail: bill.custer@bclplaw.com
Jennifer B. Dempsey
Georgia Bar No. 217536
E-Mail:
jennifer.dempsey@bclplaw.com
Julia Fenwick Ost
Georgia Bar No. 940532
E-Mail: julia.ost@bclplaw.com
Christian J. Bromley
Georgia Bar No. 206633
E-Mail:
christian.bromley@bclplaw.com
**BRYAN CAVE LEIGHTON
PAISNER LLP**
One Atlantic Center – 14th Floor
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Telephone:      (404) 572-6600
Facsimile:       (404) 572-6999

*Counsel for Defendants Shaw
Industries, Inc. and Shaw Industries
Group, Inc.*

**MILLER & MARTIN PLLC**

/s/ *Scott Parrish*
Scott Parrish, GA Bar # 564980
Ellis Lord, TN Bar # 26642
Neil L. Wilcove, GA Bar # 758401
Meredith C. Lee, GA Bar # 294856
Jenna Fullerton, TN Bar # 36522
832 Georgia Avenue, Suite 1200
Chattanooga, TN  37402
423-756-6600 Telephone
423-785-8480 Facsimile
scott.parrish@millermartin.com
ellis.lord@millermartin.com
neil.wilcove@millermartin.com
meredith.lee@millermartin.com
jenna.fullerton@millermartin.com

*Attorneys for Defendant The Dixie
Group, Inc.*

/s/ Elizabeth J. Marquardt
Elizabeth J. Marquardt
Georgia Bar No. 944547

**Miller & Martin PLLC**
1180 West Peachtree St., N.W.
Suite 2100
Atlanta, Georgia 30309-7649
Telephone: (404) 962-6100
Facsimile: (404) 962-6300
elizabeth.marquardt@millermartin.com

Michael J. Dumitru*
W. Randy Wilson*

**Miller & Martin PLLC**
Volunteer Building, Suite 1200
832 Georgia Avenue
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
Facsimile: (423) 785-8480

*Attorneys for Engineered Floors, LLC*

*Admitted Pro Hac Vice

/s/ Charles A. Hardin
Charles A. Hardin
Hillary V. Keller
HARDIN & HUGHES, LLP
2121 Fourteenth Street
Tuscaloosa, AL 35401
chardin@hardinhughes.com
hkeller@hardinhughes.com
*Attorneys for Victor Carpet Mills, Inc.*

/s/ Brian P. Kappel
Brian P. Kappel
(Georgia Bar No. 916728)
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
(205) 581-0700
(205) 581-0799 (fax)
Email: bkappel@lightfootlaw.com

*Counsel for Defendants E.I. DuPont De Nemours and Company and The Chemours Company*

30