IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON, individually, and on Behalf of a Class of persons similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>3M COMPANY, ET AL.,<br><br>    Defendants. | Civil Action No.:<br>4:20-cv-00008-AT |

**MEMORANDUM SUPPORTING
DEFENDANTS' PARTIAL MOTION TO DISMISS**

**Introduction**

    Georgia courts have adopted the free public services doctrine in order to preserve for the state's legislative branch the ability to determine, or to delegate the determination of, fiscal policy for the state and its political subdivisions. For this reason, Georgia courts refuse to allow public entities to foist onto courts the task of deciding who pays for public services, and how much. In the face of this precedent,

Plaintiff Jarrod Johnson has asserted the novel legal theory that some members of the public may, unlike governmental entities, recover the cost of public expenditures.

Nothing in the public services doctrine's history or rationale supports the distinction that Johnson's claims propose. Georgia courts have reserved the determination of fiscal policy to "the special purview of the legislature, not this Court." Allowing claims by *some* members of the public would violate that principle as much as, and perhaps more than, allowing claims by cities or counties. Because Johnson seeks to involve this Court in precisely the area committed to the legislature's "special purview," the Court should dismiss Counts III, IV and VI of this action.

**Plaintiff's Allegations**

Johnson alleges claims against these and other defendants on behalf of a purported class of "similarly situated … water subscribers and ratepayers" with Rome Water & Sewer Department and the Floyd County Water Department. Second Amended Complaint (Dkt. 282) ("SAC"), ¶¶132-33.[1] In Counts III, IV and

---

[1] Johnson also alleges two claims on his own behalf against two public entities: Dalton Utilities, an instrumentality of the City of Dalton; and the Dalton/Whitfield Regional Solid Waste Authority. SAC, ¶¶103-116, 117-130.

2

VI, the Complaint seeks reimbursement for "increased rates and surcharges incurred" by ratepayers "for the costs of partially filtering… their drinking water." *Id.*, ¶¶153, 159, 177.

### Argument and Authorities

A. <u>The Standard for Deciding this Motion</u>

Defendants move here for dismissal assuming *arguendo* that all of the facts alleged are true: that the defendants have added a combination of chemicals known collectively as PFASs to the water supply; that those chemicals represent some level of threat to the general public's health; and that a group of similarly situated taxpayers have incurred a common injury by having to pay – now or at some time in the future – higher water rates or surcharges as a consequence of these actions. Fed. R. Civ. Proc. 12(b)(6); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016) ("accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff") (citation omitted); SAC, ¶¶1-6.

B. <u>The Public Services Doctrine Bars Johnson's Claims.</u>

"[A]bsent specific statutory authorization or damages to government-owned property," local governments "cannot recover the costs of carrying out *public services* from a tortfeasor whose conduct caused the need for the services." *Walker*

3

*Cty v. Tri-State Crematory*, 284 Ga. App. 34, 36–37, 643 S.E.2d 324, 327 (2007) (emphasis supplied). Because the costs of providing the public service "should be spread among all taxpayers *or reallocated in some other manner* necessarily implicates fiscal policy," the public services doctrine reserves such determinations "within the special purview of the legislature, not this Court." *Id.*, 284 Ga. App. at 39, 643 S.E.2d at 328 (emphasis supplied). On this basis the doctrine prohibits this Court from altering the legislatively established mechanisms for providing public services by, for example, shifting the costs of those services onto supposed tortfeasors. *Id.*, 284 Ga. App. at 37, 643 S.E.2d at 327 (*citing City of Flagstaff v. Atchison, Topeka & Santa Fe R. Co.*, 719 F.2d 322, 323-24 (9th Cir. 1983)); *see also* Ga. Const. Art. 9, § 2, ¶III. Because Johnson seeks to do exactly that, the public services doctrine bars Counts III, IV and VI.

1. *Johnson Seeks to Recover the Cost of Providing a **Public** Service.*

Johnson seeks on behalf of a purported class to recover "the surcharges incurred as ratepayers for the costs of filtering PFAS from their drinking water." SAC, ¶¶153, 159, 175, 177. The Georgia Constitution enumerates the "purification, and distribution of water" as a public service granted to a county or municipality, like public housing, public transportation, and police and fire protection. Ga. Const., Art. 9, § 2, ¶ III; *see also Trinity Outdoor, L.L.C. v. Oconee County, Ga.*, 2003 WL

25301942, *9 (M.D. Ga. 2003) ("The Georgia Constitution confers on a county a multitude of powers, including police and fire protection, public health services, air quality control, street and road construction, and treatment and distribution of water").

Consistent with this delegated authority, the City of Rome's Charter grants the City Commission the "full power and control of the waterworks system and sewer system of the City of Rome .…" Exh. 1 (City of Rome Charter, Art. 8), §8-1.[2] The Charter also empowers the Commission to "regulate the distribution and use of water . . . and to fix the price and payment for the use thereof." *Id.*; *see also* Exhs. 2, 3 (Rome, GA Ordinances CD:8-36, 22-326).[3]

Georgia courts have also recognized a private *or* municipal corporation's provision of water as a public service. *See Freeman v. Macon Gaslight & Water Co.*, 126 Ga. 843, 56 S.E. 61, 62 (1906) (private corporation furnishing city with water liable "as a public service corporation for its wrongful act in cutting off the supply of water which it is under the duty of furnishing to one of its patrons as a

---

[2] Full copy available at https://library.municode.com/ga/rome/codes/code_of_ordinances?nodeId=PTICH.

[3] Full copy available at https://library.municode.com/ga/rome/codes/code_of_ordinances.

member of the public at large"); *Washington Water & Elec. Co. v. Pope Mfg. Co.*, 176 Ga. 155, 167 S.E. 286, 288 (1932) ("The defendant, as the holder of a franchise to conduct the business of furnishing water to the city and its inhabitants … was a public service corporation, and owed a public duty to the plaintiffs."); *City of Tallapoosa v. Goeidel*, 10 S.E.2d 201, 204 (1940) ("A city in maintaining a waterworks is carrying on a quasi-public business — a ministerial function").

From the state constitution down to local ordinances, Georgia law recognizes the provision of drinking water as a public service. The City of Rome and Floyd County have allocated the cost of providing that public service to the people and businesses who receive it. This decision "necessarily implicates fiscal policy, and, therefore, falls within the special purview of the legislature, not this Court." *Walker Cty*, 284 Ga. App. at 39, 643 S.E.2d at 328.

2.  *The Doctrine of Sovereign Immunity Makes No Difference Here.*

A municipality's sovereign immunity turns on a different criterion than the public services doctrine does: whether the municipality has exercised a legislative or judicial function, on the one hand; or a "ministerial" function, on the other. *McCrary Eng'g Corp. v. City of Bowdon*, 170 Ga. App. 462, 464-65, 317 S.E.2d 308, 310-11 (1984). Legislative or judicial functions confer sovereign immunity,

6

and ministerial functions do not – but even ministerial functions involve *public* services, such as paving roads and providing drinking water to the public. *Id*., 170 Ga. App. at 465, 317 S.E.2d at 311 (collecting cases); *City of Tallapoosa*, 10 S.E.2d. at 204 (describing water system as "quasi-public business"); Exh. 4 (City of Rome Comprehensive Annual Financial Rpt. Year Ended December 31, 2019)[4] at vi ("The City provides a full range of services … water and sewer, police, building inspection, fire protection, sanitation services, the construction and maintenance of streets, storm drainage, traffic control ….").

As described previously, the public services doctrine does not turn, as the doctrine of sovereign immunity does, on which *kind* of public service is provided. The public services doctrine turns on whether Rome or Floyd County provided a *public* service. They did, and the public services doctrine applies.

3. *How Rome or Floyd County Funds the Public Service Makes No Difference Either*.

Ripping a single phrase from *Walker County* out of context, Johnson has previously asserted that the public services doctrine applies only where local governments have chosen "to provide core services for the public and pay for these services **by spreading the costs to all citizens through taxation**." Plaintiff's

---

[4] Full copy available at https://www.romefloyd.com/departments/rome-finance.

Omnibus Response in Opposition to All Pending Motions to Dismiss (Dkt. 175) ("Opposition") at 41 (emphasis supplied).

How a local government funds a public service has never mattered under Georgia law. In the very first Georgia case applying the free public services doctrine, Putnam County sought "compensatory damages for all the money the defendants' actions allegedly caused it to spend in '[s]ending the Building Inspector'" to inspect a property for possible violations of zoning and safety codes. *Torres v. Putnam County*, 246 Ga. App. 544, 541 S.E.2d 133, 136 (2000). Counties and municipalities typically fund building inspection services by fees, not taxes. *See* Exh. 4 (City of Rome Financial Rpt.) at 7 ("The City uses enterprise funds to account for its water and sewer operation, fire services, solid waste commission (landfill), transit operations, building inspection services …."); Exh. 5 (Floyd County Comprehensive Annual Financial Rpt. Year Ended December 31, 2019)[5] at ii. The court in *Torres* nevertheless included this fee-funded public service within the free public services doctrine, and on that basis reversed the trial court's denial of the motion to dismiss the tort claims. 246 Ga. App. 544, 541 S.E.2d at 137. What mattered was whether the claim involved a *public* service, not how that

---

[5] Full copy available at https://www.romefloyd.com/departments/floyd-county-finance.

8

public service was ultimately funded. *Id*., 541 S.E.2d at 136 ("In this case, the county alleges that the appellants have injured the county's property *only by causing the county to spend money* enforcing its laws and protecting its citizens.") (emphasis supplied).

The public services doctrine thus does not apply only where the legislature has decided to allocate the costs of a public service "through taxation." *See* Opposition at 41. It applies to protect *whatever* legal mechanism the municipality has chosen to allocate those costs. *Walker Cty*, 284 Ga. App. at 39, 643 S.E.2d at 328 ("Whether the costs of providing the public service should be spread among all taxpayers *or reallocated in some other manner* … falls within the special purview of the legislature, not this Court.") (emphasis supplied).

4. *The Doctrine's Public Policy Rationale Applies Equally to Claims by Taxpayers or Ratepayers*.

As noted above, the public services doctrine ensures that the method of funding costs for "core services for the public" are determined by "the legislature and its public deliberative processes, rather than the court." *Walker Cty*, 284 Ga. App. at 37, 643 S.E.2d at 327. The state Constitution, the General Assembly, and the local elected officials have delegated to the Rome City Commission and the Floyd County Commission the authority to determine their own fiscal policies, and to decide for themselves how to allocate the costs of the public services they provide.

9

*See* pp. 4-6. Under this delegation of authority, the City and County Commissions are to

- exercise "full power and control of the waterworks system;"
- finance capital improvements to the system through additional debt supported by "a tax upon all of the taxable property within the city;"
- "fix the price and payment" for the use of the waterworks system;
- fund "water supply and distribution" through bimonthly fees imposed on subscribers; and
- publish the rates by which those fees are calculated in a fee schedule book maintained by the secretary of the commission.

Exhs. 1, 6 (Rome City Charter), §§8-1, 8-2, 10-3; Exhs. 2, 3 (Rome, GA Municipal Code), CD:8-36, 22-326, 22-327, 22-335, 22-336, 22-339. *See also* Ga. Const., Art. 9, § 2, ¶ III; *Trinity Outdoor, L.L.C.*, 2003 WL 25301942, *9; Exh. 5 (Floyd County Report) at 13-14.

Johnson's claims impinge upon these determinations of fiscal policy just as much as claims by the City of Rome would. All of those claims would make the Court the arbiter of who funds a waterworks system, how much they pay, and in what fashion they pay it: precisely the threat anticipated by the public services doctrine. Johnson's claims would, in fact, graft a distinctly undemocratic feature

10

onto the public services doctrine by permitting *some* members of the public, but not public institutions themselves, to inject the courts into questions of fiscal policy. This Court should leave fiscal policy to "the special purview of the legislature" and the municipalities to which the legislature has chosen to delegate that authority. *See Walker Cty*, 284 Ga. App. at 39, 643 S.E. 2d at 328.

C. <u>No Exception to the Public Services Doctrine Applies Here</u>.

As noted previously, the public services doctrine bars Johnson's (and the Class's) recovery of "increased rates and surcharges incurred as ratepayers" without "specific statutory authorization or damages to government-owned property." *Walker Cty v. Tri-State Crematory*, 284 Ga. App. 34, 36–37, 643 S.E.2d 324, 327 (2007); SAC, ¶153. Johnson has asserted two types of statutory claims in this case, but neither specifically authorizes the recovery of past or future water rates or surcharges.[6]

Johnson asserts his first statutory claims against *other* defendants under the Clean Water Act. SAC, ¶¶103-116, 117-130. The Clean Water Act, however, provides only for a civil penalty, not for the costs of carrying out public services.

---

[6] Johnson has not asserted any damage to government-owned property, so that exception cannot apply here.

*See* 33 U.S.C. §§1365(a), 1319(d). The Clean Water Act therefore does not provide "specific statutory authorization" for Johnson's claims against these defendants.

Johnson also seeks the abatement of a public nuisance under OCGA §41-2-1 *et seq*.; SAC, ¶¶179-84. This claim does not qualify as an exception to the public services either, for two reasons.

First, nothing in the statutory scheme permits ratepayers to recover what they paid in rates or surcharges to abate the nuisance. A private citizen "specially injured" may sue to have a public nuisance abated, and courts may enjoin public nuisances. OCGA §§42-2-2, -4. A county or municipality may take property by eminent domain and "exercise its police power to repair, close, or demolish" buildings determined to constitute a public nuisance. OCGA §§41-2-14, -7. Counties and municipalities may also "make such appropriations from [their] revenues" to do any or all of this. OCGA §41-2-15. But nothing in this chapter specifically authorizes the recovery of rates or surcharges in order to reimburse taxpayers for the abatement of public nuisances.

Second, and more generally, Georgia courts do not allow "an exception to the free public services doctrine when the costs are incurred as part of the abatement of a public nuisance." *Walker* County, 284 Ga. App. at 39, 643 S.E.2d at 328 (citing *Gen. Elec. Co. v. Lowe's Home Centers,* 279 Ga. 77, 80(2), 608 S.E.2d 636

12

(2005)). Allowing recovery for those costs, the court continued, would create an "exception that swallows the rule, since many expenditures for public services could be re-characterized by skillful litigants as expenses incurred in abating a public nuisance. We decline to adopt such a 'murky' exception that 'could give rise to substantial litigation.'" *Id*. Johnson's claim to abate a public nuisance thus do not fit within an exception to the public services doctrine.

## Conclusion

Because no "specific statutory authority" authorizes Johnson's recovery of his past and future rate payments, the Court should dismiss Counts III, IV and VI, which seek that relief.

Respectfully submitted this 9th day of October 2020.

        /s/ M. Russell Wofford, Jr.
        Jameson B. Carroll
        Ga. Bar No. 112640
        Michael Weiss
        Ga. Bar No. 746494
        M. Russell Wofford, Jr.
        Ga. Bar No. 773002
        Carroll & Weiss LLP
        1819 Peachtree Road, Suite 104
        Atlanta, Georgia 30309
        Telephone: (404) 228-5337
        Facsimile: (404) 228-5564
        jcarroll@carrollweiss.com
        mweiss@carrollweiss.com
        rwofford@carrollweiss.com

        *Attorneys for Defendant*
        *Milliken & Company*

Warren N. Coppedge, Jr.
Georgia Bar No. 187300
Stephen Michmerhuizen
Georgia Bar No. 107109
508 S. Thornton Avenue
Dalton, Georgia 30720
Telephone: (706) 226-0040
Facsimile: (706) 226-0050
trisha@coppedgefirm.com
steve@coppedgefirm.com

*Attorneys for Defendant*
*Arrowstar, LLC*

14

Scott Parrish
Georgia Bar No. 564980
Ellis Lord
Tennessee Bar No. 26642
Neil L. Wilcove
Georgia Bar No. 758401
Meredith C. Lee
Georgia Bar No. 294856
Jenna Fullerton
Tennessee Bar No. 36522
Miller & Martin PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402
Telephone: (423) 756-6600
Facsimile: (423) 785-8480
scott.parrish@millermartin.com
ellis.lord@millermartin.com
neil.wilcove@millermartin.com
meredith.lee@millermartin.com
jenna.fullerton@millermartin.com

*Attorneys for Defendant*
*The Dixie Group, Inc.*

Benjamin P. Harmon
Georgia Bar No. 979043
Jackson R. Sharman, III
Georgia Bar No. 637930
Harlan I. Prater, *Pro Hac Vice*
M. Christian King, *Pro Hac Vice*
W. Larkin Radney, *Pro Hac Vice*
Lightfoot, Franklin & White LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
Telephone: (205) 581-0700

15

Facsimile: (205) 581-0799
bharmon@lightfootlaw.com
jsharman@lightfootlaw.com
hprater@lightfootlaw.com
cking@lightfootlaw.com
lradney@lightfootlaw.com

Robert B. Remar
Georgia Bar No. 600575
S. Gardner Culpepper
Georgia Bar No. 201210
Monica P. Witte
Georgia Bar No. 405952
Katherine L. D'Ambrosio
Georgia Bar No. 780128
Rogers & Hardin LLP
229 Peachtree Street, N.E.
Atlanta, GA 30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224
rremar@rh-law.com
sculpepper@rh-law.com
kdambrosio@rh-law.com
mwitte@rh-law.com

*Counsel for Defendant 3M Company*

John M. Johnson
(Admitted pro hac vice)
Lana A. Olson
(Admitted pro hac vice)
Brian P. Kappel
(Georgia Bar No. 916728)
Lightfoot, Franklin & White, LLC
The Clark Building

400 20th Street North
Birmingham, AL 35203
(205) 581-0700
(205) 581-0799 (fax)
jjohnson@lightfootlaw.com
lolson@lightfootlaw.com
bkappel@lightfootlaw.com

J. Raymond Bates, Jr.
Georgia Bar No. 041925
Thomas C. Causby
Georgia Bar No. 968006
Little, Bates, Kelehear & Toland, P.C.
101 East Crawford Street
Landmark Building
Fifth Floor
P.O. Box 488
Dalton, GA  30720
Telephone: (706) 278.0525
jrbates@optilink.us
tom@lbktlawyers.com

*Counsel for Defendants*
*E.I. du Pont de Nemours and Company*
*and The Chemours Company*

## **CERTIFICATION UNDER L.R. 7.1.D.**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

*/s/ M. Russell Wofford, Jr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document, with exhibits, with the Clerk of Court by using the CM/ECF system, which automatically sends e-mail notification of such filing to any attorneys of record.

This 9th day of October 2020.

*/s/ M. Russell Wofford, Jr.*
M. Russell Wofford, Jr.
Georgia Bar No. 773002
