IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON individually, and on Behalf of a Class of persons similarly Situated,<br><br>        *Plaintiff*,<br><br>v.<br><br>3M COMPANY, et al.,<br><br>        *Defendants*. | Civil Action No. 4:20-cv-00008-AT |

**PLAINTIFF'S RESPONSE TO DEFENDANT IMACC CORPORATION'S JOINDER IN THE CARPET MANUFACTURING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff submits this Response to Defendant IMACC Corporation ("IMACC")'s Joinder in the Carpet Manufacturing Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 352). For the reasons set out in Plaintiff's response to the Carpet Manufacturing Defendants' motion to dismiss, summarized below, IMACC's motion should be denied.

**BRIEF FACTUAL BACKGROUND**

Defendant IMACC is the owner and operator of an industrial plastic recycling and reconditioning facility in Dalton, Georgia. (Doc. 282, ¶¶ 4, 35). From its facility, IMACC has discharged industrial wastewater containing per- and

1

polyfluoroalkyl substances ("PFAS") into the publicly owned treatment works ("POTW") operated by Defendant Dalton Utilities,[1] including several water pollution control plants ("WCPCs") and the Riverbend Land Application System ("LAS"). (Doc. 282, ¶¶ 4, 35, 82-83). Following treatment at its WCPCs, Dalton Utilities applies the treated wastewater onto the LAS, which borders and is hydrologically connected to the Conasauga River. (*Id.* at ¶¶ 4, 82-84).

IMACC's industrial wastewater contains PFAS, which are not authorized by any industrial discharge permit. (*Id.* at ¶ 4, 35, 87). IMACC is aware that PFAS are toxic to human health and are persistent chemicals that resist degradation at Dalton Utilities WCPCs and the LAS. (*Id.* at ¶ 52, 66, 78, 86). Dangerously high levels of PFAS thus inevitably flow through the LAS into the Conasauga River, travel downstream, and contaminate the Oostanaula River—the source of the City of Rome's domestic water supply. (*Id.* at ¶ 86-102).

The City of Rome implemented an emergency filtration process and other measures to respond to the PFAS pollution, but these measures cannot adequately remove all of IMACC's and other Defendants' PFAS from the water supply. (*Id.* at ¶¶ 97-100). To fund these measures and implement a permanent solution, the

---

[1] Identified in the Second Amended Complaint as the City of Dalton, Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners d/b/a Dalton Utilities. (Doc. 282, ¶ 26).

Rome Water and Sewer Division ("RWSD") and Floyd County Water Department ("FCWD") have imposed surcharges upon all water subscribers. (*Id.* at ¶ 99). Thus, while the City's efforts have lowered PFAS levels below the EPA's advisory limits, those levels result from filtration of their PFAS at Plaintiff's and other water subscribers' expense. (*Id.*). Furthermore, EPA's health advisory level is now considered too high by the federal Agency for Toxic Substances and Disease Registry ("ATSDR"), by many states, and many experts, and the City's efforts to date will not be sufficient to protect Plaintiff and the putative class of Rome water users. (*Id.* at ¶¶ 62-64).

IMACC's discharges of PFAS have thus exposed Plaintiff and downstream water users to foreseeable harm and violate the federal Clean Water Act ("CWA"), Dalton Utilities Sewer Use Rules and Regulations, and the Georgia Water Quality Control Act ("GWQCA"). (*Id.* at ¶¶ 155-159). The PFAS contamination also constitutes a public nuisance that affects Plaintiff and the putative class of Rome water subscribers in ways different in kind to its effects on the general public. (*Id.* at ¶¶ 170-178).

Based on the foregoing, Plaintiff and the putative class seek to obtain injunctive relief and abate the PFAS contamination; recover compensatory and special damages for charges incurred to pay to filter IMACC's and other

Defendants' PFAS from the domestic water supply and the water they purchase; recover punitive damages based on Defendants' willful, wanton, and reckless conduct; and recover all relief otherwise available.

## ARGUMENT

**I. Plaintiff has stated actionable claims for relief in his Second Amended Complaint.**

IMACC joins the motion to dismiss filed by the Carpet Manufacturing Defendants. (Doc. 352). Plaintiff incorporates by reference his prior briefing addressing each of these arguments, (Docs. 391, 392), and as briefly summarized below, Defendants' and IMACC's arguments are without merit.

**A. Plaintiff's tort claims are not barred by the economic loss rule.**

As set out in response to the Carpet Manufacturing Defendants and 3M Company, (Docs. 392, at 6-17; 391, at 20-22), the economic loss rule is inapplicable to this case because (1) the independent duty exception applies, *see, e.g., In re Arby's Group Inc. Litig.,* 2018 WL 2128441 (N.D. Ga. March 5, 2018); (2) Plaintiff's economic losses arise from damage to property, *see General Elec. Co. v. Lowe's Home Centers, Inc.,* 608 S.E.2d 636 (Ga. 2005); *Reynolds v. State,* 115 S.E.2d 214, 217 (Ga. App. 1960); and (3) the rule cannot preclude Plaintiff's special damages recoverable for his nuisance claim. O.C.G.A. § 41-1-3.

### B. Plaintiff states actionable claims that IMACC breached its duty to ensure its PFAS discharges did not contaminate Plaintiff's water supply.

As set out in Plaintiff's Response in Opposition to the Carpet Manufacturing Defendants' and 3M Company's motions to dismiss, (Docs. 392, at 10-13, 17-23; 391, at 6-12), Plaintiff has alleged that Defendants, including IMACC, owed him a duty to ensure that its industrial wastewater discharges containing PFAS did not contaminate his water supply with these toxic chemicals, and that Defendants, including IMACC, breached these duties. (Docs. 391, at 9-12, 17; 392, at 10-13). *See* O.C.G.A. § 51-1-2; *Ellington v. Tolar Constr. Co.,* 227 S.E.2d 336, 339 (Ga. 1976); *Sims v. Am. Cas. Co.,* 206 S.E.2d 121, 127 (Ga. App. 1974), *aff'd* 209 S.E.2d 61 (Ga. 1974); *Hodges v. Putzel Elec. Contractors,* 580 S.E.2d 243, 247 (Ga. App. 2003).

### C. Plaintiff states a claim for negligence per se.

As set out in his response to the Carpet Manufacturing Defendants' motion (Doc. 392, at 23-30), Plaintiff states actionable claims for negligence per se based on mandatory and ascertainable duties under the federal CWA and the GWQCA, which are applicable to IMACC's discharges of industrial wastewater containing PFAS into the Dalton POTW. (*Id.* at 22-26). As a consumer of downstream water, Plaintiff undoubtedly falls within the class of persons these statutes were intended

to protect, and the pollution of surface waters and Plaintiff's water supply is plainly the type of harm these statutory schemes were intended to prevent. (*Id*. at 26-30). *See* O.C.G.A. § 51-1-6; *Pulte Home v. Simerly,* 746 S.E.2d 173, 179 (Ga. App. 2013).

### D. The allegations of the Second Amended Complaint preclude a finding of no proximate cause as a matter of law.

As set out in response to the Carpet Manufacturing Defendants, (Doc. 392, at 17-23), the Second Amended Complaint ("SAC")'s allegations demonstrate that contamination of Plaintiff's water supply, and the resulting injuries, "could have reasonably been anticipated, apprehended, or foreseen" by IMACC, which discharged PFAS while knowing they were persistent, could not be removed by Dalton Utilities, and were contaminating surface waters and the Upper Coosa River Basin. (Doc. 282, ¶¶ 52, 66, 78, 86-102); *Ontario Sewing Machine Co., Ltd. v. Smith,* 572 S.E.2d 533, 535-36 (Ga. 2002). No intervening acts can be the sole proximate cause because the SAC establishes that they were "foreseeable by [IMACC]" and were "triggered by [IMACC]'s act[s]. . . ." *Id.*; *see also Ex parte Aladdin Mfg. Corp.,* 2019 WL 6974629, at *15 (Ala. Dec. 20, 2019).

### E. Plaintiff states an actionable claim for public nuisance.

As set out in response to the Carpet Manufacturing Defendants, (Doc. 392, at 30-39), Plaintiff states actionable claims for public nuisance. IMACC had

6

requisite control over the PFAS it discharged with knowledge that they could not be removed by Dalton Utilities and were reaching the Rome domestic water supply. *See Fielder v. Rice Constr. Co., Inc.,* 522 S.E.2d 13, 16 (Ga. App. 1999); *Citizens & S. Trust Co. v. Phillips Petroleum Co., Inc.,* 385 S.E.2d 426, 428-29 (Ga. App. 1989). In this way, IMACC was a "cause or concurrent cause of the creation, continuance, or maintenance of the nuisance." *Fielder,* 522 S.E.2d at 16.

IMACC's permits with Dalton Utilities are no defense to nuisance in fact, *see* O.C.G.A. § 41-1-1; *Galaxy Carpet Mills v. Massengill,* 338 S.E.2d 428, 429 (Ga. 1986), and any contention that IMACC complied with applicable laws is an unsupported and improper factual contention contrary to the allegations of the SAC. *See, e.g., Amin v. Mercedes-Benz USA, LLC,* 349 F. Supp. 3d 1338, 1346 (N.D. Ga. 2018); (Doc. 282, ¶¶ 155-159).

Plaintiff and the proposed class have further alleged sufficient "special harm" because their surcharges for filtration of Defendants' PFAS is different in kind from the general public that drinks or otherwise comes into contact with PFAS released and discharged into the Conasauga, Oostanaula, and Coosa Rivers. *See* O.C.G.A. § 41-1-2; *West Morgan-East Lawrence Water and Sewer Auth. v. 3M Company,* 208 F. Supp. 1227, 1234 (N.D. Ala. 2016); (Doc. 282, ¶¶ 171-175). In any event, Plaintiff's special harm arises from damage to his property and,

therefore, is "not lost in the general and public nuisance" and "is special damage within the meaning of the Code" under Georgia law. *Savannah, F. & W. Ry. Co. v. Parish,* 45 S.E. 280 (Ga. 1903).

### F. The allegations of the Second Amended Complaint and Georgia law support an award of punitive damages, attorneys' fees, and expenses.

As set out in response to the Carpet Manufacturing Defendants, (Doc. 392, at 39-40), the SAC also pleads facts that support an award of punitive damages, attorneys' fees, and expenses—that IMACC knowingly caused and maintained a public nuisance in contaminating the water supply, also in violation of common law duties and numerous, specific statutes and regulations. (*See* Doc. 282, ¶¶ 66, 78-80, 86-88, 161-168). If Plaintiff proves that IMACC willfully discharged PFAS despite knowing that it was contaminating the public waters and the drinking water for thousands, he will be entitled to attorneys' fees and punitive damages under Georgia law. *See* O.C.G.A. § 51-12-5.1(b); *In re Equifax, Inc. Customer Data Security Breach Litig.,* 362 F. Supp. 3d 1295, 1345 (N.D. Ga. 2019).

## CONCLUSION

For the same reasons fully set out in response to the Carpet Manufacturing Defendants' motion to dismiss in which IMACC joins, their motion should be denied.

/s/ Brett C. Thompson
Brett C. Thompson, Esq. (*phv*)
Hirlye R. "Ryan" Lutz, III, Esq. (*phv*)
F. Jerome Tapley, Esq. (*phv*)
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205
bthompson@corywatson.com
rlutz@corywatson.com
jtapley@corywatson.com
Telephone: (800) 852-6299
Fax: (205) 324-7896

James S. Whitlock (*phv*)
Gary A. Davis (*phv*)
Davis & Whitlock, P.C.
Attorneys at Law
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: (828) 622-0044
Fax: 828-398-0435
jwhitlock@enviroattorney.com
gadavis@enviroattorney.com

Ryals D. Stone (GA Bar No. 831761)
William S. Stone (GA Bar No. 684636)
THE STONE LAW GROUP –TRIAL LAWYERS, LLC
5229 Roswell Road NE
Atlanta, Georgia 30342
Telephone: (404) 239-0305
Fax: (404) 445-8003
ryals@stonelaw.com
billstone@stonelaw.com

***Attorneys for Plaintiff***

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Norther District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1.C.

This the 11th day of December, 2020.

<em>/s/ Brett C. Thompson</em>

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT IMACC CORPORATION'S JOINDER IN THE CARPET MANUFACTURING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** has been filed electronically with the Clerk of Court by using the CM/ECF system which will automatically email all counsel of record.

This the 11th day of December, 2020.

                                                */s/ Brett C. Thompson*