IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON individually, and on Behalf of a Class of persons similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>3M COMPANY, et al.,<br><br>    *Defendants*. | Civil Action No. 4:20-cv-00008-AT |

## CONSENT DECREE

### I. RECITALS

WHEREAS, Plaintiff Jarrod Johnson ("Plaintiff") is a resident of Floyd County, Georgia and resides at 13 South Ivy Ridge Road in Rome, Georgia; and

WHEREAS, Plaintiff is a customer of the Rome Water and Sewer District ("RWSD"), which uses water from the Oostanaula River as the source of Plaintiff's domestic water supply; and

WHEREAS, Defendant Secoa Technology, LLC ("SECOA" or "Defendant") is a Georgia limited liability company engaged in the business of metal finishing, coating, and plating; and

WHEREAS, SECOA operates a metal finishing facility located at 466 Bear Creek Road in Dalton, Georgia ("Facility"), consisting of separate anodizing and coating divisions; and

WHEREAS, SECOA discharges industrial wastewater to the City of Dalton's Publicly Owned Treatment Works ("POTW") from the Facility's anodizing division; and

WHEREAS, on June 26, 2020 and August 18, 2020, Plaintiff provided Notices of Intent to file suit pursuant to the federal Clean Water Act ("CWA") to SECOA, the United States Environmental Protection Agency ("EPA"), the Georgia Department of Natural Resources, Environmental Protection Division ("GAEPD"), and other requisite persons and entities ("CWA Notices"). Based on analytical results of sampling of SECOA's industrial discharge to the Dalton POTW, Plaintiff alleged that SECOA had discharged industrial wastewater containing PFAS from its Facility into the Dalton POTW causing Pass Through in violation of national pretreatment standards, applicable local limits, and Section 307 of the CWA, 33 U.S.C. § 1317; and

WHEREAS, on or about August 27, 2020, Plaintiff filed an Amended Complaint in this matter, which, *inter alia,* added CWA citizen suit claims against two Defendants and added SECOA as a party Defendant based on its alleged industrial discharges of PFAS wastewater into the Dalton POTW (the "Litigation").

2

Plaintiff expressly reserved the right to add CWA claims against SECOA and other named Defendants who have allegedly discharged industrial wastewater containing PFAS into the Dalton POTW; and

WHEREAS, SECOA denies all such allegations and alleged violations and admits no liability arising out of Plaintiff's allegations in the CWA Notices or the Litigation; and

WHEREAS, Plaintiff and SECOA have engaged in Settlement Negotiations in an attempt to resolve Plaintiff's claims against SECOA; and

WHEREAS, Plaintiff and SECOA, in consultation with counsel, hereby agree to resolve the Litigation and any issues that arose or could have arisen in connection with the Litigation in accordance with this Consent Decree, believing that settling the issues without further litigation through a Consent Decree is the most appropriate means of resolving the issues; and

WHEREAS, a copy of the proposed Consent Decree was received by the Attorney General of the United States and the EPA Administrator more than forty-five (45) days before entry of this Consent Decree as required by 33 U.S.C. § 1365(c)(3); and

WHEREAS, Plaintiff and SECOA recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in

good faith and will avoid further litigation between the parties and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW THEREFORE, WITHOUT THE TRIAL OR ADJUDICATION OF ANY ISSUE OF FACT OR LAW AND WITHOUT ADMISSION BY DEFENDANT SECOA OF ANY VIOLATIONS OR WRONGDOING, AND UPON CONSENT AND AGREEMENT OF THE PARTIES, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

### II. JURISIDICTION

1. This Court has subject matter jurisdiction over the Litigation pursuant to 28 U.S.C. § 1332(d)(2)(A) and section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

2. For purposes of entry of this Consent Decree and any action to enforce this Consent Decree, SECOA consents to this Court's jurisdiction under 33 U.S.C. § 1365(a).

### III. DEFINITIONS

3. The term "CWA" means the federal Clean Water Act, 33 U.S.C. §§ 1251, *et seq*.

4. The term "Compliance Period" means four (4) years from the date of entry of this Consent Decree.

5. The term "Dalton POTW" means the City of Dalton, Georgia's Publicly Owned Treatment Works, operated by Dalton Utilities and consisting of various wastewater collection and treatment facilities, including piping, manholes, pump

stations, three (3) mechanical preapplication Water Pollution Control Plants ("WPCPs") and the Riverbend Land Application System.

6. The term "PFAS" means per- and polyfluoroalkyl substances.

7. The term "PFAS wastewater" means industrial wastewater containing PFAS.

### IV. INJUNCTIVE RELIEF

8. **No Discharges of PFAS to Dalton POTW.** SECOA shall not discharge PFAS wastewater from the Facility into the Dalton POTW and that shall be confirmed through third-party testing; provided however that, in the event SECOA is, during the Compliance period provided for herein, legally authorized by regulation or permit to discharge PFAS from the Facility into the Dalton POTW as a constituent of its industrial wastewater, SECOA may discharge PFAS into the Dalton POTW in compliance with such regulation or permit.

9. **Verification of Compliance – Sampling.** To verify compliance with paragraph 8 that SECOA shall not discharge PFAS wastewater from the Facility into the Dalton POTW, SECOA shall allow a qualified third-party contractor chosen by Plaintiff to conduct sampling and analysis as provided for herein of the Facility's industrial discharge to the Dalton POTW ("Discharge Samples"). The list of PFAS to be analyzed for and their respective laboratory reporting limits is attached as Exhibit A. SECOA agrees to provide reasonable and necessary access so that the contractor can take representative Discharge Samples under normal process

operation of the Facility's anodizing division. SECOA also agrees to provide reasonable and necessary access so that the contractor can take a representative sample of the water used by SECOA at the Facility's anodizing division ("Incoming Sample") so that the contribution, if any, of PFAS in the incoming water can be determined. SECOA agrees to pay up to three thousand five hundred dollars ($3,500.00) per sampling event as follows:

    a.    **Initial Sampling:** An initial sampling event shall be conducted within sixty (60) days of entry of this Consent Decree at a mutually agreeable date and time (the "Initial Sample"). If the testing of a Discharge Sample results in (1) a mass balance demonstrates that the mass of the PFAS in the Discharge sample is greater than 125% of the mass of PFAS in the Incoming Sample and (2) any of the individual PFAS compounds is detected above the laboratory reporting limits in the Discharge Sample, then the results will be considered to show "Added PFAS." No further sampling shall be required after the Initial Sample if results do not show Added PFAS.

    b.    **Second Sampling:** If results show Added PFAS in the Initial Sample, SECOA shall, within one (1) year from the date of the Initial Sample, submit to the collection and analysis of an additional Discharge Sample ("Second Sample"). No further sampling shall be required after the Second Sample if the results do not show Added PFAS.

c.      **Resampling**: If Added PFAS is detected in the Second Sample, SECOA shall have the option of resampling with the same contractor within ninety (90) days (the "Resample") while continuing to discharge industrial wastewater to the Dalton POTW from the Facility. If the results show Added PFAS in the Resample, SECOA shall immediately cease discharging industrial wastewater from the Facility to the Dalton POTW until receiving analytical results of a Discharge Sample that does not contain Added PFAS. If the results do not show Added PFAS in the Resample, SECOA may continue to discharge industrial wastewater from the Facility to the Dalton POTW.

d.      **Quarterly Sampling:** If Added PFAS is detected in the Resample, SECOA shall begin collecting and testing of Discharge Samples and Incoming Samples, at its own expense, on a quarterly basis (the "Quarterly Sampling") beginning the first calendar quarter when the Resample results are received. If the results of a Quarterly Sampling do not show Added PFAS, SECOA may continue or resume discharge and must submit to one additional Quarterly Sampling not to exceed the term of the Compliance Period. If Added PFAS is detected in any Quarterly Sampling, SECOA shall immediately cease discharging industrial wastewater to the Dalton POTW until receiving analytical results of a Quarterly Sampling that does not show Added PFAS.

d.      **Collection of Discharge:** SECOA shall have the option, under any mandated cessation of discharge to the Dalton POTW as provided for herein, to collect and store the Facility's industrial discharge. If SECOA chooses to do so, any industrial wastewater collected during such mandated cessation shall either: (1) be tested prior to discharge to the Dalton POTW to ensure that no Added PFAS is discharged to the Dalton POTW; or (2) be disposed of pursuant to a contract with an independent, registered hazardous waste handler.

## V. SUPPLEMENTAL ENVIRONMENTAL PROJECT

10. **Supplemental Environmental Project.** In lieu of civil penalties, SECOA shall fund a Supplemental Environmental Project ("SEP") for water quality improvement in the Conasauga and/or Oostanaula Rivers by contributing $7,500.00 to the Coosa River Basin Initiative, Inc., a non-profit organization, to fund specifically-identified project(s). Defendant's payment shall be due fifteen (15) days after entry of this Consent Decree by the Court, and Plaintiff will provide SECOA timely notice of the project(s) that these funds will be used for.

## VI. ATTORNEY/EXPERT FEES AND COSTS

11. **Litigation Costs**. SECOA shall bear the cost of its own attorneys' and experts' fees and costs incurred in connection with the Litigation. Plaintiff's attorneys' fees, experts' fees and costs incurred in connection with the Litigation are $17,500, including $14,525.30 in attorneys' fees, $1,113.40 in experts' fees, and

$1,861.30 in costs. SECOA shall pay Plaintiff this amount in full and final reimbursement of Plaintiff's attorneys' and experts' fees and costs related to SECOA, other than to the extent of any attorneys' fees provided for in Paragraph 12 herein. Defendant's payment shall be due fifteen (15) days after entry of this Consent Decree by the Court.

12. **Enforcement of the Consent Decree**. In the event that a Discharge Sample results in the detection of Added PFAS, SECOA shall pay to Plaintiff's Counsel incurred attorney's fees not to exceed five thousand dollars ($5,000.00) per annum reasonably and necessary to enforce the terms of this Consent Order.

## V. RELEASE

13. **Release.** In consideration of the foregoing, Johnson and similarly situated parties release and forever discharge Secoa, its agents, employees, officers, directors, and assigns from any and all claims known or unknown, liquated or contingent, demands, damages, actions, or causes of action of any nature whatsoever, that could have been brought in this action arising under or relating to PFC or PFAS discharge into the Dalton POTW and any PFC or PFAS pollution in Rome's water supply.

## VI. OTHER TERMS

14. **Effective Date.** This Consent Decree shall become effective on the date it is entered by the Court ("Effective Date").

15. **Term.** The duration of the Injunctive Relief terms contained in Section IV, *supra*, shall be four (4) years from the Effective Date ("Compliance Period").

16. **Administrative Review.** The Parties acknowledge and agree that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered or effective prior to forty-five (45) days following the receipt of this Consent Decree by the Attorney General and the EPA Administrator. Therefore, upon execution of this Consent Decree by the Parties, Plaintiff shall serve copies of the Consent Decree upon the U.S. Attorney General, EPA Administrator, and EPA Regional Administrator in accordance with 40 C.F.R. § 135.5. The Parties shall also jointly lodge the Consent Decree with the Court upon execution. Upon expiration of the 45-day review period, so long as the reviewing authorities do not object to the entry of this Consent Decree, the Parties shall jointly move the Court for entry of the Consent Decree.

17. **Effect of Entry or Lack of Entry.** In the event of entry of this Consent Decree, SECOA will be dismissed with prejudice from the Litigation, and upon approval and entry this Consent Decree shall constitute a final judgment of the Court as to the Parties. If for any reason the reviewing authorities object to this Consent Decree and the Court refuses to approve and/or enter this Consent Decree in the form presented, the Parties shall negotiate in good faith in an attempt to resolve such objection and adverse ruling.

18. **Continuing Jurisdiction; Termination.** The United States District Court for the Northern District of Georgia shall have continuing jurisdiction to interpret and enforce the terms and conditions of this Consent Decree to resolve disputes arising hereunder, and for such other and further actions as they may be necessary or appropriate in the construction or execution of the Consent Decree. Notwithstanding the Court's continuing jurisdiction, this Consent Decree shall terminate as to Defendant at the conclusion of the Compliance Period.

19. **Entire Agreement.** This Consent Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties or their representatives.

20. **Modification.** This Consent Decree may be modified only by an Order issued from the Court, made upon the written consent of the Parties.

21. **Authorization.** Each Party represents and warrants that the person signing this Consent Decree on behalf of such Party has been duly authorized to enter into this Consent Decree on the Party's behalf.

22. **Successors and Assigns.** This Consent Decree shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

23. **Notices.** The Parties shall provide one another with seven (7) days written notice and opportunity to cure any alleged breach of this Consent Decree before

commencing an enforcement action. Such notice shall be given to all counsel of record, as reflected on the Court's docket report, and may be given via email, facsimile, first class mail or nationally-recognized courier service.

24. **Counterparts.**  This Consent Decree may be signed in counterparts. Facsimile, electronic and scanned signatures or copies of this Consent Decree shall be effective as originals for all purposes.

ENTERED this __31st__ day of __March__, 2022.

*[signature]*

The Honorable Amy Totenberg
Judge, United States District Court
Northern District of Georgia

**APPROVED FOR ENTRY:**

/s/ *James S. Whitlock*
James S. Whitlock (*phv*)
Gary A. Davis (*phv*)
DAVIS & WHITLOCK, P.C.
21 Battery Park Avenue, Suite 206
Asheville, North Carolina 28801
Telephone: (828) 622-0044
Fax: (828) 398-0435
jwhitlock@enviroattorney.com
gadavis@enviroattorney.com

Hirlye R. "Ryan" Lutz, III (*phv*)
F. Jerome Tapley (*phv*)
Brett C. Thompson (*phv*)
Nina Towle Herring (*phv*)
R. Akira Watson (*phv*)
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205
Telephone: (800) 852-6299
Fax: (205) 324-7896
rlutz@corywatson.com
jtapley@corywatson.com
bthompson@corywatson.com
nherring@corywatson.com
awatson@corywatson.com

/s/ *Samantha A. Lunn*
Samantha A. Lunn (GA Bar No. 303099)
HUSCH BLACKWELL LLP
736 Georgia Ave, Suite 300
Chattanooga, Tennessee 37402
Telephone: (423) 266-5500
Fax: (426) 266-5499
samantha.lunn@huschblackwell.com

*Attorneys for Secoa Technologies, LLC*

Ryals D. Stone (GA Bar No. 831761)
William S. Stone (GA Bar No. 684636)
THE STONE LAW GROUP –TRIAL LAWYERS, LLC
5229 Roswell Road NE
Atlanta, Georgia 30342
Telephone: (404) 239-0305
Fax: (404) 445-8003
ryals@stonelaw.com
billstone@stonelaw.com

*Attorneys for Plaintiff*

## PFAS For Analysis – SECOA Facility Industrial Discharge (Dalton, Georgia)

**GEL Laboratories, LLC, PFAS Analyses**
**EPA 537.1 Mod, Compliant with QSM Table B-15**

| Parameter | CAS Number | Limit of Quantitation (Reporting Limit)* | Unit |
|---|---|---|---|
| Perfluorobutanesulfonate (PFBS) | 375-73-5 | 1.78 | ng/L |
| Perfluoropentanoic acid (PFPeA) | 2706-90-3 | 2.00 | ng/L |
| Perfluorohexanoic acid (PFHxA) | 307-24-4 | 2.00 | ng/L |
| Perfluorooctanesulfonate (PFOS) | 1763-23-1 | 2.00 | ng/L |
| Perfluorobutyric acid (PFBA) | 375-22-4 | 2.00 | ng/L |
| Perfluorooctanoic acid (PFOA) | 335-67-1 | 2.00 | ng/L |
| Perfluorobutylsulfonamide (FBSA) | 30334-69-1 | 4.00 | ng/L |
| Perfluoroheptanoic acid (PFHpA) | 375-85-9 | 2.00 | ng/L |
| Perfluorodecanoic acid (PFDA) | 335-76-2 | 2.00 | ng/L |
| Perfluorohexanesulfonate (PFHxS) | 355-46-4 | 1.82 | ng/L |
| Perfluorononanoic acid (PFNA) | 375-95-1 | 2.00 | ng/L |
| Perfluoropentanesulfonate (PFPeS) | 2706-91-4 | 1.88 | ng/L |

*The limits provided in this table may change on a sample-by-sample basis based on sample aliquot size, sample matrix, or other interferences caused by other interfering non-target compounds.



EXHIBIT A