## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| **JARROD JOHNSON individually, and on Behalf of a Class of persons similarly situated,** )<br>)<br>)<br>) | |
| *Plaintiff*, ) | |
| ) | **Civil Action No. 4:20-cv-00008-AT** |
| **v.** ) | |
| ) | |
| **3M COMPANY, et al.,** ) | |
| ) | |
| *Defendants*. )<br>) | |

## AMENDED CONSENT DECREE

### I. RECITALS

WHEREAS, Plaintiff Jarrod Johnson ("Plaintiff") is a resident of Floyd County, Georgia and resides at 13 South Ivy Ridge Road in Rome, Georgia; and

WHEREAS, Plaintiff is a customer of the Rome Water and Sewer District ("RWSD"), which uses water from the Oostanaula River as the source of Plaintiff's domestic water supply; and

WHEREAS, Defendant Color Express, Inc. ("COLOR EXPRESS" or "Defendant") is a domestic corporation that is the owner and operator of a carpet and rug dyeing facility located at 711 North Glenwood Avenue, Dalton, Georgia, 30721 ("Facility); and

WHEREAS, COLOR EXPRESS discharges industrial wastewater to the City of Dalton's Publicly Owned Treatment Works ("POTW") pursuant to its industrial discharge permit; and

WHEREAS, on June 25, 2020 and August 18, 2020, Plaintiff provided Notices of Intent to file suit pursuant to the federal Clean Water Act ("CWA") to COLOR EXPRESS, the United States Environmental Protection Agency ("EPA"), the Georgia Department of Natural Resources, Environmental Protection Division ("GAEPD"), and other requisite persons and entities ("CWA Notices"). Based on analytical results of sampling of COLOR EXPRESS's industrial discharge to the Dalton POTW, Plaintiff alleged that COLOR EXPRESS had discharged industrial wastewater containing PFAS from its Facility into the Dalton POTW causing Pass Through in violation of national pretreatment standards, applicable local limits, and Section 307 of the CWA, 33 U.S.C. § 1317; and

WHEREAS, on or about August 27, 2020, Plaintiff filed an Amended Complaint in this matter, which, *inter alia,* added CWA citizen suit claims against two Defendants and added COLOR EXPRESS as a party Defendant based on its alleged industrial discharges of PFAS wastewater into the Dalton POTW (the "Litigation").  Plaintiff expressly reserved the right to add CWA claims against COLOR EXPRESS and other named Defendants who have allegedly discharged industrial wastewater containing PFAS into the Dalton POTW; and

WHEREAS, COLOR EXPRESS denies all such allegations and alleged violations and admits no liability arising out of Plaintiff's allegations in the CWA Notices or the Litigation; and

WHEREAS, Plaintiff and COLOR EXPRESS have engaged in Settlement Negotiations in an attempt to resolve Plaintiff's claims against COLOR EXPRESS; and

WHEREAS, Plaintiff and COLOR EXPRESS, in consultation with counsel, hereby agree to resolve the Litigation and any issues that arose or could have arisen in connection with the Litigation in accordance with this Consent Decree, believing that settling the issues without further litigation through a Consent Decree is the most appropriate means of resolving the issues; and

WHEREAS, a copy of the proposed Consent Decree was received by the Attorney General of the United States and the EPA Administrator more than forty-five (45) days before entry of this Consent Decree as required by 33 U.S.C. § 1365(c)(3); and

WHEREAS, Plaintiff and COLOR EXPRESS recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation between the parties and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW THEREFORE, WITHOUT THE TRIAL OR ADJUDICATION OF ANY ISSUE OF FACT OR LAW AND WITHOUT ADMISSION BY DEFENDANT COLOR EXPRESS OF ANY VIOLATIONS OR WRONGDOING, AND UPON CONSENT AND AGREEMENT OF THE PARTIES, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

## II. JURISIDICTION

1.  This Court has subject matter jurisdiction over the Litigation pursuant to 28 U.S.C. § 1332(d)(2)(A) and section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

2.  For purposes of entry of this Consent Decree and any action to enforce this Consent Decree, COLOR EXPRESS consents to this Court's jurisdiction under 33 U.S.C. § 1365(a).

## III. DEFINITIONS

3.  The term "CWA" means the federal Clean Water Act, 33 U.S.C. §§ 1251, *et seq*.

4.  The term "Compliance Period" means four (4) years from the date of entry of this Consent Decree.

5.  The term "Dalton POTW" means the City of Dalton, Georgia's Publicly Owned Treatment Works, operated by Dalton Utilities and consisting of various wastewater collection and treatment facilities, including piping, manholes, pump stations, three (3) mechanical preapplication Water Pollution Control Plants ("WPCPs") and the Riverbend Land Application System.

4

6. The term "PFAS" means per- and polyfluoroalkyl substances.

7. The term "PFAS wastewater" means industrial wastewater containing PFAS.

### IV. INJUNCTIVE RELIEF

8. **No Discharges of PFAS to Dalton POTW.** COLOR EXPRESS shall not discharge PFAS wastewater from the Facility into the Dalton POTW and that shall be confirmed through third-party testing; provided however that, in the event COLOR EXPRESS is, during the Compliance period provided for herein, legally authorized by regulation or permit to discharge PFAS from the Facility into the Dalton POTW as a constituent of its industrial wastewater, COLOR EXPRESS may discharge PFAS into the Dalton POTW in compliance with such regulation or permit.

9. **Verification of Compliance – Sampling.** To verify compliance with paragraph 8 that COLOR EXPRESS shall not discharge PFAS wastewater from the Facility into the Dalton POTW, COLOR EXPRESS shall allow a qualified third-party contractor chosen by Plaintiff to conduct sampling and analysis as provided for herein of the Facility's industrial discharge to the Dalton POTW ("Discharge Samples"). The list of PFAS to be analyzed for and their respective laboratory reporting limits is attached as Exhibit A. COLOR EXPRESS agrees to provide reasonable and necessary access so that the contractor can take representative Discharge Samples under normal process operation. COLOR EXPRESS also agrees

to provide reasonable and necessary access so that the contractor can take a representative sample of the water used by COLOR EXPRESS at the Facility ("Incoming Sample") so that the contribution, if any, of PFAS in the incoming water can be determined.  COLOR EXPRESS agrees to pay up to three thousand five hundred dollars ($3,500.00) per sampling event as follows:

a.   **Initial Sampling:** An initial sampling event shall be conducted within sixty (60) days of entry of this Consent Decree at a mutually agreeable date and time (the "Initial Sample"). If the testing of a Discharge Sample results in (1) a mass balance demonstrates that the mass of the PFAS in the Discharge sample is greater than 125% of the mass of PFAS in the Incoming Sample and (2) any of the individual PFAS compounds is detected above the laboratory reporting limits in the Discharge Sample, then the results will be considered to show "Added PFAS." No further sampling shall be required after the Initial Sample if results do not show Added PFAS.

b.   **Second Sampling:** If results show Added PFAS in the Initial Sample, COLOR EXPRESS shall, within one (1) year from the date of the Initial Sample, submit to the collection and analysis of an additional Discharge Sample ("Second Sample"). No further sampling shall be required after the Second Sample if the results do not show Added PFAS.

c.    **Resampling**: If Added PFAS is detected in the Second Sample, COLOR EXPRESS shall have the option of resampling with the same contractor within ninety (90) days (the "Resample") while continuing to discharge industrial wastewater to the Dalton POTW from the Facility. If the results show Added PFAS in the Resample, COLOR EXPRESS shall immediately cease discharging industrial wastewater from the Facility to the Dalton POTW until receiving analytical results of a Discharge Sample that does not contain Added PFAS. If the results do not show Added PFAS in the Resample, COLOR EXPRESS may continue to discharge industrial wastewater from the Facility to the Dalton POTW.

d.    **Quarterly Sampling:** If Added PFAS is detected in the Resample, COLOR EXPRESS shall begin collecting and testing of Discharge Samples and Incoming Samples, at its own expense, on a quarterly basis (the "Quarterly Sampling") beginning the first calendar quarter when the Resample results are received. If the results of a Quarterly Sampling do not show Added PFAS, COLOR EXPRESS may continue or resume discharge and must submit to one additional Quarterly Sampling not to exceed the term of the Compliance Period. If Added PFAS is detected in any Quarterly Sampling, COLOR EXPRESS shall immediately cease discharging industrial wastewater to the Dalton POTW until receiving analytical results of a Quarterly Sampling that does not show Added PFAS.

e.      **Collection of Discharge:** COLOR EXPRESS shall have the option, under any mandated cessation of discharge to the Dalton POTW as provided for herein, to collect and store the Facility's industrial discharge. If COLOR EXPRESS chooses to do so, any industrial wastewater collected during such mandated cessation shall either: (1) be tested prior to discharge to the Dalton POTW to ensure that no Added PFAS is discharged to the Dalton POTW; or (2) be disposed of pursuant to a contract with an independent, registered hazardous waste handler.

## V. SUPPLEMENTAL ENVIRONMENTAL PROJECT

10. **Supplemental Environmental Project.** In lieu of civil penalties, COLOR EXPRESS shall fund a Supplemental Environmental Project ("SEP") for water quality improvement in the Conasauga and/or Oostanaula Rivers by contributing $1,000 to the Coosa River Basin Initiative, Inc., a non-profit organization, to fund specifically-identified project(s). Defendant's payment shall be due fifteen (15) days after entry of this Consent Decree by the Court, and Plaintiff will provide COLOR EXPRESS timely notice of the project(s) that these funds will be used for.

## VI. ATTORNEY/EXPERT FEES AND COSTS

11. **Litigation Costs**. COLOR EXPRESS shall bear the cost of its own attorneys' and experts' fees and costs incurred in connection with the Litigation. Plaintiff's attorneys' fees, experts' fees and costs incurred in connection with the Litigation are $3,000, including $1,512.65 in attorneys' fees, $556.70 in experts' fees, and $930.65

in costs. COLOR EXPRESS shall pay Plaintiff this amount in full and final reimbursement of Plaintiff's attorneys' and experts' fees and costs related to COLOR EXPRESS, other than to the extent of any attorneys' fees provided for in Paragraph 12 herein. Defendant's payment shall be due fifteen (15) days after entry of this Consent Decree by the Court.

12. **Enforcement of the Consent Decree**. In the event that a Discharge Sample results in the detection of Added PFAS, COLOR EXPRESS shall pay to Plaintiff's Counsel reasonable attorney's fees not to exceed five thousand dollars ($5,000.00) per annum for time spent to enforce the terms of this Consent Order.

## V. RELEASE

13. **Release.**  In consideration of the foregoing, Johnson releases and forever discharges COLOR EXPRESS, its agents, employees, officers, directors, and assigns from any and all claims known or unknown, liquated or contingent, demands, damages, actions, or causes of action of any nature whatsoever, that could have been brought in this action arising under or relating to PFC or PFAS discharge into the Dalton POTW and any PFC or PFAS pollution in Rome's water supply.

## VI. OTHER TERMS

14. **Effective Date.**  This Consent Decree shall become effective on the date it is entered by the Court ("Effective Date").

15. **Term.** The duration of the Injunctive Relief terms contained in Section IV, *supra*, shall be four (4) years from the Effective Date ("Compliance Period").

16. **Administrative Review.**  The Parties acknowledge and agree that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered or effective prior to forty-five (45) days following the receipt of this Consent Decree by the Attorney General and the EPA Administrator. Therefore, upon execution of this Consent Decree by the Parties, Plaintiff shall serve copies of the Consent Decree upon the U.S. Attorney General, EPA Administrator, and EPA Regional Administrator in accordance with 40 C.F.R. § 135.5.  The Parties shall also jointly lodge the Consent Decree with the Court upon execution.  Upon expiration of the 45-day review period, so long as the reviewing authorities do not object to the entry of this Consent Decree, the Parties shall jointly move the Court for entry of the Consent Decree.

17. **Effect of Entry or Lack of Entry.**  In the event of entry of this Consent Decree, COLOR EXPRESS will be dismissed with prejudice from the Litigation, and upon approval and entry this Consent Decree shall constitute a final judgment of the Court as to the Parties. If for any reason the reviewing authorities object to this Consent Decree and the Court refuses to approve and/or enter this Consent Decree in the form presented, the Parties shall negotiate in good faith in an attempt to resolve such objection and adverse ruling.

18. **Continuing Jurisdiction; Termination.** The United States District Court for the Northern District of Georgia shall have continuing jurisdiction to interpret and enforce the terms and conditions of this Consent Decree to resolve disputes arising hereunder, and for such other and further actions as they may be necessary or appropriate in the construction or execution of the Consent Decree. Notwithstanding the Court's continuing jurisdiction, this Consent Decree shall terminate as to Defendant at the conclusion of the Compliance Period.

19. **Entire Agreement.** This Consent Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties or their representatives.

20. **Modification.** This Consent Decree may be modified only by an Order issued from the Court, made upon the written consent of the Parties.

21. **Authorization.** Each Party represents and warrants that the person signing this Consent Decree on behalf of such Party has been duly authorized to enter into this Consent Decree on the Party's behalf.

22. **Successors and Assigns.** This Consent Decree shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

23. **Notices.** The Parties shall provide one another with seven (7) days written notice and opportunity to cure any alleged breach of this Consent Decree before

commencing an enforcement action. Such notice shall be given to all counsel of record, as reflected on the Court's docket report, and may be given via email, facsimile, first class mail or nationally-recognized courier service.

24. **Counterparts.**   This Consent Decree may be signed in counterparts. Facsimile, electronic and scanned signatures or copies of this Consent Decree shall be effective as originals for all purposes.


ENTERED this   31st   day of   March            , 2022.

The Honorable Amy Totenberg
Judge, United States District Court
Northern District of Georgia

**APPROVED FOR ENTRY:**

*/s/ James S. Whitlock*
James S. Whitlock (*phv*)
jwhitlock@enviroattorney.com
Gary A. Davis (*phv*)
gadavis@enviroattorney.com
DAVIS & WHITLOCK, P.C.
Attorneys at Law
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: (828) 622-0044
Fax: 828-398-0435

Hirlye R. "Ryan" Lutz, III, Esq.
rlutz@corywatson.com
F. Jerome Tapley, Esq. (*phv*)
jtapley@corywatson.com
Brett C. Thompson, Esq. (*phv*)
bthompson@corywatson.com
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205

Ryals D. Stone (GA Bar No. 831761)
ryals@stonelaw.com
William S. Stone (GA Bar No. 684636)
billstone@stonelaw.com
THE STONE LAW GROUP –TRIAL LAWYERS, LLC
5229 Roswell Road NE
Atlanta, Georgia 30342
(404) 239-0305
(404) 445-8003 (fax)

***Attorneys for Plaintiff***

*/s/ Robert H. Smalley*
Robert H. Smalley III (GA Bar No. 653405)
rsmalley@mccamylaw.com
McCamy, Phillips, Tuggle, & Fordham, LLP
P.O. Box 1105
Dalton, Ga. 30722-1105
706 278 4499

***Attorney for Defendant Color Express, Inc.***

## PFAS For Analysis – Color Express Facility Industrial Discharge (Dalton, Georgia)

**GEL Laboratories, LLC, PFAS Analyses**
**EPA 537.1 Mod, Compliant with QSM Table B-15**

| Parameter | CAS Number | Limit of Quantitation (Reporting Limit)* | Unit |
|---|---|---|---|
| Perfluorobutanesulfonate (PFBS) | 375-73-5 | 1.78 | ng/L |
| Perfluoropentanoic acid (PFPeA) | 2706-90-3 | 2.00 | ng/L |
| Perfluorohexanoic acid (PFHxA) | 307-24-4 | 2.00 | ng/L |
| Perfluorooctanesulfonate (PFOS) | 1763-23-1 | 2.00 | ng/L |
| Perfluorobutyric acid (PFBA) | 375-22-4 | 2.00 | ng/L |
| Perfluorooctanoic acid (PFOA) | 335-67-1 | 2.00 | ng/L |
| Perfluorobutylsulfonamide (FBSA) | 30334-69-1 | 4.00 | ng/L |
| Perfluoroheptanoic acid (PFHpA) | 375-85-9 | 2.00 | ng/L |
| Perfluorodecanoic acid (PFDA) | 335-76-2 | 2.00 | ng/L |
| Perfluorohexanesulfonate (PFHxS) | 355-46-4 | 1.82 | ng/L |
| Perfluorononanoic acid (PFNA) | 375-95-1 | 2.00 | ng/L |
| Perfluoropentanesulfonate (PFPeS) | 2706-91-4 | 1.88 | ng/L |

*The limits provided in this table may change on a sample-by-sample basis based on sample aliquot size, sample matrix, or other interferences caused by other interfering non-target compounds.