# EXHIBIT 35

ENVIRONMENTAL PROTECTION DIVISION
DEPARTMENT OF NATURAL RESOURCES
STATE OF GEORGIA

IN RE:   DALTON UTILITIES          )
         LOOPERS BEND LAND         )   Order No. EPD-WQ-AH 4-93
         APPLICATION SYSTEM        )

### CONSENT ORDER

This Consent Order is made and entered into by the Georgia Department of Natural Resources, Environmental Protection Division ("EPD"), and Dalton Utilities, a public utility located in the City of Dalton, Georgia 30720.

WHEREAS, Dalton Utilities owns and operates the sewerage system for the City of Dalton, Georgia; and

WHEREAS, one element of the sewerage system consists of three publicly owned treatment works ("POTWs") that discharge into the Loopers Bend Land Application System ("LAS"); and

WHEREAS, the Director of EPD ("Director") has issued LAS Permit No. GA02-056 to Dalton Utilities for operation of its LAS system, which authorizes Dalton Utilities to spray treated wastewater from the LAS system onto a land application site in accordance with conditions and effluent limitations contained in that permit; and

WHEREAS, Part II.A.2 of the permit requires the Utilities to implement its industrial pretreatment program according to Part 391-3-6-.09 of the Rules and Regulations for Water Quality Control, including:

   (1) Require industrial users to meet applicable standards and requirements of the approved pretreatment program;

GOVERNMENT EXHIBIT 50

Dalton_Johnson_00107163

(2) Carry out inspection, surveillance and monitoring requirements which will determine, independent of information supplied by the industrial user, whether the industrial user is in compliance with applicable pretreatment standards; and

(3) Enforce and obtain appropriate remedies for noncompliance by any industrial user with applicable pretreatment standards and requirements.

WHEREAS, EPD alleges that since 1988, Dalton Utilities has failed to administer the industrial pretreatment program in consistent compliance with the permit, in that it:

(1) Has not devoted adequate resources to administering the program;

(2) Has failed to take enforcement action to ensure that the industries discharging to the Utilities wastewater treatment activities are in compliance with industrial pretreatment permits;

(3) Has implemented new, less stringent permit limits without receiving prior EPD approval;

(  ) Has failed to regulate industrial discharges to its wastewater treatment facilities in a manner consistent with protection of the treatment processes at those facilities; and

WHEREAS, EPD alleges that as a result of the Utilities' failure to implement the industrial pretreatment program, its wastewater treatment facilities have suffered adverse impacts including organic overloads, uneven flows, clogged sprayheads in the land application fields, and runoff from the fields to the waters of the State; and

WHEREAS, EPD alleges that adverse impacts were documented in inspections of the facilities on May 10, 1993, June 22, 1993, and August 24, 1993; and

2

WHEREAS, EPD alleges that on August 24, 1993, it observed wastewater runoff from the Loopers' Bend LAS sprayfields; and

WHEREAS, Part II.B.1. of the LAS Permit requires the Utilities to submit an annual report of the industrial pretreatment program; and

WHEREAS, the annual report must include the results of a priority pollutant scan of the influent, effluent, and sludge at the Riverbend Road WPCP; and

WHEREAS, the Utilities submitted to the EPD a priority pollutant scan with its annual report on September 12, 1990; and

WHEREAS, EPD alleges that a comparison of the original data from the laboratory which performed the scan, the copy in the Utilities' records, and the copy that had been submitted to the EPD, indicated that some of the results in the scan submitted to the EPD had been altered so that certain priority pollutants that were present in detectable concentrations were reported to the EPD as being below detectable concentrations; and

WHEREAS, through this Consent Order, EPD has reached a satisfactory resolution of the issues relating to the alleged alteration of test data; and

WHEREAS, on March 10, 1993, the Director filed a Petition for Hearing on Civil Penalties before the Georgia Board of Natural Resources Administrative Law Judge, asserting that Dalton Utilities has failed to administer the Dalton Industrial Pretreatment Program in a manner consistent with the Georgia Water Quality Control Act and rules and regulations promulgated thereunder and asserting

3

Dalton_Johnson_00107165

further that Dalton Utilities has failed to comply with the terms of LAS Permit No. GA02-056; and

WHEREAS, the Georgia Water Quality Control Act (the "State Act"), as amended, specifically, O.C.G.A. Section 12-5-29 makes it unlawful, in part, to use any waters of the State of Georgia for disposal of sewage or other waste, except in such a manner as to conform to and comply with all rules, regulations, orders and permits in effect or issued under the provisions of that Act; and

WHEREAS, O.C.G.A. Section 12-5-52(a) of the State Act provides, inter alia, that any person violating any provision of this article or any permit condition or limitation established pursuant to this article or, negligently or intentionally, failing or refusing to comply with any final or emergency order of the Director issued as provided in this article, shall be liable to a civil penalty not to exceed $50,000.00 per day for each day during which such violation continues; provided, however, that a separate and later incident creating a violation within a 12 month period shall be liable for a civil penalty not to exceed $100,000.00 per day for each day during which such violations continues; and

WHEREAS, Dalton Utilities desires to improve the operation of its POTWs and maintain continued compliance with all applicable rules and regulations, and with the terms of LAS Permit No. GA02-056; and

WHEREAS, EPD held an initial enforcement conference with Dalton Utilities representatives on April 20, 1993 to discuss

4

Dalton_Johnson_00107166

settlement issues, and the parties have met on several occasions since that date to discuss the progress of this matter; and

WHEREAS, since the date of the initial enforcement conference, Dalton Utilities has taken specific actions to resolve the problems alleged by EPD, including, among other actions, retaining Eckenfelder Inc., an industrial and municipal wastewater consultant, to evaluate the organic and hydraulic capacity of the systems, at a cost of more than Seventy-Five Thousand Dollars ($75,000.00); and

WHEREAS, Eckenfelder has completed its evaluation of the wastewater treatment system and prepared a three volume written report of its findings and recommendations (the "Eckenfelder Report"); and

WHEREAS, Dalton Utilities has submitted to EPD the complete Eckenfelder Report, and EPD concurs in general with the findings and the recommendations contained in that Report; and

WHEREAS, Dalton Utilities has already begun to implement some of the recommendations contained in the Eckenfelder Report; and

WHEREAS, all of the parties desire to resolve all of the issues and all claims asserted or alleged by the State of Georgia or any other party through this Consent Order, and that this Consent Order is in the best interests of the citizens of the State of Georgia.

NOW THEREFORE, before the taking of testimony and without adjudicating the merits of the parties' position in this matter, the parties hereby resolve the foregoing issues by agreement and

Dalton_Johnson_00107167

upon order of the Director and the consent of the parties as follows:

1. **Penalties.** Dalton Utilities shall pay $115,000.00 to the Georgia Department of Natural Resources within thirty (30) business days after receipt of an executed copy of this Consent Order as civil penalties in full satisfaction of any and all alleged past violations of LAS Permit No. GA02-056 or of the applicable rules and regulations cited by the State of Georgia in the March 10, 1993 Petition for Hearing.

2. **Projected Work and Compliance Schedule.** To resolve any problems leading to the alleged violations of applicable rules or regulations or the conditions of LAS Permit No. GA02-056, Dalton Utilities shall undertake the following actions within the time periods specified. Dalton Utilities shall secure prior approval of any modifications to the Dalton sewerage collection, treatment, and disposal system as proveded in DNR Rule 391-3-6-.02(3)(a). Dalton Utilities shall implement the recommendations contained in the Eckenfelder Report, as follows:

   A. **Sludge Application**

   (1) Although groundwater leaving the land application system boundaries does not at present exceed the primary drinking water criteria for nitrates as established by DNR Rule 391-3-5-.18(1)(b), some groundwater contamination by nitrates is present within the system boundaries. Accordingly, EPD has reviewed and approves the plan set forth in Section 2.A.(2) of this Order to ensure that drinking water criteria are not exceeded at the boundaries of the system.

   (2) Dalton Utilities shall continue the work already begun to include more acreage for sludge application, until at least 127 additional acres, and up to a potential of 154 additional acres, are included in that system. Submittal of a Design Development Report ("DDR") to EPD for such modification shall be made no later than 90 days after receipt of an executed copy of this Consent Order; and

   B. **Wastewater Treatment**

   (1) Dalton Utilities shall place the new aerobic digester, which has already been approved by EPD, in service at the Loopers Bend treatment plant as soon as all necessary

6

aeration equipment can be obtained and installed; and

(2) Dalton Utilities shall submit to EPD a DDR for an additional 180 foot diameter secondary clarifier and ancillary equipment at the River Bend treatment plant, no later than 120 days after receipt of an executed copy of this Consent Order; and

(3) Dalton Utilities shall begin collection and disposal of skimmings separately from the sludges at all three treatment plants, within 300 days of receipt of an executed copy of this Consent Order. The skimmings from each facility's clarifiers shall be collected in a hydrosieve located at each facility. The solids material collected from the hydrosieves shall be disposed of in the same manner as the material that is currently collected from the influent bar screens.

(4) Dalton Utilities shall develop at least 300 additional acres of effluent sprayfield area, or implement remedial measures to eliminate approximately 2 MGD of I/I. A DDR for this modification shall be submitted within 180 days of receipt of an executed copy of this Consent Order; and

(5) Dalton Utilities shall submit a status report to EPD within 180 days of receipt of an executed copy of this Consent Order that describes progress on addressing or implementing the foregoing. If EPD determines that any further action is necessary after review of that status report, it is EPD's intention to issue a separate order.

C. **Pretreatment**

(1) Dalton Utilities shall submit to EPD within 90 days of receipt of an executed copy of this Consent Order a revised industrial pretreatment program plan which is consistent with the standards set forth in Part 391-3-6-.09 of the Rules and Regulations for Water Quality Control and with the EPD Pretreatment Program Review Checklist, attached herein. The revised plan will contain, at a minimum, the following:

7

Dalton_Johnson_00107169

(a) a draft copy of a revised Sewer Use Ordinance, consistent with the U.S. EPA model ordinance, including, if necessary, revised Local Limits for the industrial pretreatment program. EPD hereby acknowledges that it will not require individual dischargers to install additional pretreatment capability other than that required by categorical national standards, provided that Dalton Utilities can demonstrate compliance with any revised Local Limits at a mutually agreeable point in the sewerage system that is representative of the composite wastewater load to the treatment facilities; and

(b) an Enforcement Response Plan for the industrial pretreatment program, consistent with applicable U.S. EPA guidance documents, which provides for timely, consistent and effective responses to violations of the pretreatment program.

(2) Dalton Utilities shall adopt the Sewer Use Ordinance as revised pursuant to Paragraph 2.B.(1)(a) within 90 days of EPD approval of the revised Ordinance.

(3) Dalton Utilities shall reissue Significant Industrial User ("SIU") permits to incorporate the revised Sewer Use Ordinance developed pursuant to Paragraph 2.C.(1)(a) within 180 days of adoption of the revised Ordinance. EPD acknowledges that Corporate permits may be issued for a group of indirect dischargers, provided that each Corporate permit issued by Dalton Utilities requires individual sampling points for each indirect discharger, appropriate discharge limits and monitoring frequencies for each discharger within each issued Corporate permit. The Corporate permittees will be evaluated through Dalton Utilities' industrial pretreatment program to ensure compliance with all applicable Pretreatment Standards and Requirements pursuant to 40 CFR Part 403, as amended.

Dalton_Johnson_00107170

3. <u>Stipulated Penalties.</u> If Dalton Utilities does not complete any of the foregoing actions required of it in the time periods specified, it shall pay a penalty per day of violation, as specified below, subject to the provisions of Section 5.

| Days | 1 - 30 | 31 Plus |
|---|---|---|
| Penalty Per Day | $1,000.00 | $5,000.00 |

Any stipulated penalties due under this Section shall be submitted to the EPD by the last business day of the month following the month for which such penalties are due.

4. <u>Effect.</u> This Consent Order does not constitute a finding or adjudication of a violation of any State or federal law by Dalton Utilities, or a finding of any fact which would constitute an admission of any allegation by EPD, nor does Dalton Utilities, through agreement to this Consent Order, admit any violations of State or federal law, or liability to any third party or parties, or to the parties named except as set forth in this agreement. The sole purpose of this Consent Order is to resolve and dispose of all allegations and contentions concerning the factual circumstances referred to in this Consent Order.

5. **<u>Force Majeure.</u>** If Dalton Utilities does not complete any of the actions mandated by this Consent Order within the time periods specified in this Consent Order, Dalton Utilities shall have the burden of proving to EPD that it is rendered unable, wholly or in part, by Force Majeure to carry out its obligation under this Consent Order. The term "Force Majeure" as used herein shall mean act of God, strike, lockout, or other labor or

9

industrial disturbance, act of the public enemy, war, blockade, public riot, lightning, fire, storm, flood, excessive inclement weather, explosion, failure to timely receive necessary governmental approvals, unavailability of equipment and any other delay which is caused by circumstances beyond the reasonable control of Dalton Utilities. Dalton Utilities shall promptly notify EPD orally, and shall, within seven (7) calendar days of oral notification, advise EPD in writing of the anticipated length (if known) and cause of the delay, the measures taken and/or to be taken to prevent or minimize the delay. If Force Majeure does occur as determined by EPD or any reviewing forum, the time for performance hereunder shall be extended for a period equal to the delay resulting from such circumstances. Dalton Utilities shall adopt all reasonable measures to avoid or minimize delay period.

6. **Finality.** Provided that Dalton Utilities complies with the provisions of this Consent Order, this Consent Order shall constitute a full and complete settlement of and shall release Dalton Utilities from all liability, fines and penalties relating to or arising out of all claims asserted or which could have been asserted for alleged violations of the applicable Water Quality Control Act rules or regulations or the LAS Permit's limitations at all times prior to the effective date of this Consent Order. Moreover, provided that Dalton Utilities complies with the provisions of this Consent Order, this Consent Order shall constitute a full and complete settlement of and shall release Dalton Utilities from all liability, fines and penalties relating

11

to or arising out of all claims asserted in this Consent Order or which could have been asserted in this Consent Order for alleged violations of the applicable Water Quality Control Act rules or regulations or the LAS Permit's limitations during the period of implementation set forth in this Consent Order.

7. <u>Dispute Resolution.</u>  In the event any disagreements develop concerning the provisions of this Order, the Director shall by conference, conciliation or persuasion attempt to settle the dispute. If in the opinion of the Director such efforts fail, the Director shall issue an order to Respondent pursuant to O.C.G.A. § 12-5-42, which Respondent shall have a right to formally contest before the Board of Natural Resources' Administrative Law Judge, in accordance with established EPD procedure.

8. <u>Termination and Satisfaction.</u> The provisions of this Consent Order shall be deemed satisfied upon the full implementation of the actions set forth in Section 2.

It is so ORDERED, CONSENTED and AGREED to this 24TH day of ~~October, 1994.~~ *April, 1995*

*[signature]*
Harold F. Reheis, Director
Environmental Protection Division
Department of Natural Resources
State of Georgia

*[signature]*
Dalton Utilities

By: DeForrest Parrott
    General Manager

11

Dalton_Johnson_00107173

OFFICE OF STATE ADMINISTRATIVE HEARINGS

STATE OF GEORGIA

IN RE:

DALTON UTILITIES

Record No.

OSAH-DNR-EPD-WQ-AH 4-93

## CERTIFICATE OF SERVICE

In accordance with Rule 391-1-2-.28 of the Rules of the Georgia Department of Natural Resources, I hereby certify that true and correct copies of the foregoing Final Decision were served on all parties or their counsel of record as follows: John L. Taylor, Jr., Esq. and Jean B. Blumenfeld, Esq., Vincent, Chorey, Taylor & Feil, Suite 1700, Lenox Building, 3399 Peachtree Road, N.E., Atlanta, Georgia 30326 and Robert E. Hogfoss, Esq., Hunton & Williams, NationsBank Plaza - Suite 4100, 600 Peachtree Street, N.E., Atlanta, Georgia 30308-2216 (service by Certified mail); and to Alan Gantzhorn, Esq., State Law Department, 132 Judicial Building, 40 Capitol Square, Atlanta, Georgia 30334 (service by regular mail).

This 18th day of May, 1995.

Ruby C. Anderson

Office of State Administrative Hearings
205 Butler Street, S.E.
Suite 1254, Floyd Towers East
Atlanta, GA 30334

OFFICE OF STATE ADMINISTRATIVE HEARINGS
STATE OF GEORGIA

FILED
MAY 18 1995
OFFICE OF STATE
ADMINISTRATIVE HEARINGS

IN RE:

DALTON UTILITIES

Record No.

OSAH-DNR-EPD-WQ-AH 4-93

**FINAL DECISION**

The Director having withdrawn his request for civil penalties, this matter is **DISMISSED**. Rule 391-1-2-.18(1).

This 18th day of May, 1995.

_____
MARK A. DICKERSON
Administrative Law Judge
Office of State Administrative Hearings

Dalton_Johnson_00107175