# EXHIBIT 39

FILED IN CLERK'S OFFICE
U.S.D.C. - Rome

SEP 9 1999
LUTHER D. THOMAS, Clerk
By: V. Van Landingham
                    Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ROME DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL INFORMATION |
| v. | : | |
| DALTON UTILITIES | : | NO. 4 99-CR-044 |

THE UNITED STATES ATTORNEY CHARGES THAT:

<u>COUNT ONE</u>

At all times material to this offense:

1.  Dalton Utilities, is the name under which the public utility for the City of Dalton, Georgia, operates.

2.  Control of the Utility is vested by statute in the Board of Water, Light and Sinking Fund Commissioners of the City of Dalton (the "Board").

3.  Dalton Utilities consists of an electric utility, a gas utility, a water utility, and a wastewater treatment utility. The wastewater treatment utility consisted of a collection system (sewer lines), three publicly owned treatments works (POTWs) for treating influent wastewater, and a land application system ("LAS") for applying treated effluent to the soil areas encompassed within the LAS.

4.  The POTWs treated both domestic and industrial sewage. Effluent (treated waste water) from the three POTWs was pumped into the Loopers Bend Land Application System, where it was land applied

GOVERNMENT EXHIBIT 22

by a huge system of sprinklers.

5. By October 1988, Dalton had received approximately $64,000,000 in federal grant money under the Clean Water Act to fund the construction of their land application system (LAS) and certain treatment facilities.

6. The United States Environmental Protection Agency was responsible for issuing the grant, and for monitoring compliance with the terms and conditions of the grant.

7. As a condition for receiving the federal grant, Dalton was obligated to operate the POTW in compliance with all federal, state, and local laws and regulations.

8. As a further condition for receiving the grant, EPA received a lien interest in the land on which the LAS was constructed.

9. As a further condition for receiving the grant, EPA was given authority to visit, inspect and review the Dalton LAS to monitor the success of the project.

10. Georgia Environmental Protection Division (EPD) was required to submit semi-annual reports to EPA concerning the operation of the Dalton LAS.

11. On May 8, 1991, EPD issued a land application permit, LAS Permit No. GA02-056, to Dalton for the operation of their POTWs and the LAS, pursuant to the Georgia Water Quality Control Act, as amended, The Federal Clean Water Act, and the Rules and Regulations promulgated thereunder. Dalton's original LAS permit extended

Dalton_Johnson_00160497

through May 7, 1996.

12. Dalton's LAS permit authorized it to land apply treated wastewater from its POTWs in accordance with the conditions and limitations contained in that permit.

13. Dalton's LAS permit included two effluent limitations for treated wastewater that is delivered to the land application site: 1) the monthly average for biochemical oxygen demand (B.O.D.) could not exceed 50 mg/l; and 2) the monthly average for applied suspended solids (App.S.S.) could not exceed 50 mg/l.

14. Dalton's permit also required that it monitor influent (untreated wastewater inflow) into the POTWs, effluent from the POTWs, sludge, groundwater, soil and surface water.

15. Dalton monitored the levels for Biochemical Oxygen Demand and Applied Suspended Solids in its effluent by taking daily samples of the effluent from pump stations at locations where the treated effluent was collected and routed to the LAS system for discharge onto the land and then into the waters of the state. At the end of each day, the samples were collected and analyzed to determine the composite levels for Biochemical Oxygen Demand and Applied Suspended Solids. The results of the analysis were recorded on daily bench sheets. At the end of each month, the results of the daily analysis were combined to determine the average monthly levels for Biochemical Oxygen Demand and Applied Suspended Solids.

16. Dalton's permit required that it submit a monthly

3

operating report (MOR) to EPD. Among the items Dalton was required to report in the MOR were the monthly averages for Biochemical Oxygen Demand and Applied Suspended Solids.

17.  On or about April 13, 1995, in the Northern District of Georgia, in a matter within the jurisdiction of the United States Environmental Protection Agency, the defendant, Dalton Utilities, knowingly and willfully, acting through certain of its employees, made, used and caused to be made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, in that, on an EPD form 1.7 and supplemental report the defendant stated that the average Biochemical Oxygen Demand (BOD) for the month of March 1995 was 40 mg/l, and that the average Applied Suspended Solids for the month of March 1995 was 48, when in truth and fact, as the defendant then well knew, the average Biochemical Oxygen Demand was greater than 40 mg/l for the month of March 1995, and the average for Applied Suspended Solids was greater than 48 mg/l for the month of March 1995, in violation of Title 18, United States Code, Section 1001.

### COUNT TWO

1.  The United States Attorney hereby realleges the facts presented in paragraphs 1 through 16 of COUNT ONE above as if fully set out herein.

2.  On or about January 13, 1995, in the Northern District of Georgia, in a matter within the jurisdiction of the United States

4

Environmental Protection Agency, the defendant, Dalton Utilities, knowingly and willfully made, used and caused to be made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, in that on an EPD form 1.7 and supplemental report the defendant stated that the average Applied Suspended Solids for the month of December 1994 was 40, when in truth and fact, as the defendant then well knew, the average for Applied Suspended Solids was greater than 40 mg/l for the month of December 1994, in violation of Title 18, United States Code, Section 1001.

### COUNT THREE

1. The United States Attorney hereby realleges the facts presented in paragraphs 1 through 16 of COUNT ONE above as if fully set out herein.

2. On or about September 14, 1994, in the Northern District of Georgia, in a matter within the jurisdiction of the United States Environmental Protection Agency, the defendant, Dalton Utilities, knowingly and willfully made, used and caused to be made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, in that on an EPD form 1.7 and supplemental report the defendant stated that the average Applied Suspended Solids for the month of August 1994 was 49.53, when in truth and fact, as the defendant then well knew, the average for Applied Suspended Solids was

5

greater than 49.53 mg/l for the month of August 1994, in violation of Title 18, United States Code, Section 1001.

### COUNT FOUR

1. The United States Attorney hereby realleges the facts presented in paragraphs 1 through 19 of COUNT ONE above as if fully set out herein.

2. On or about June 14, 1994, in the Northern District of Georgia, in a matter within the jurisdiction of the United States Environmental Protection Agency, the defendant, Dalton Utilities, knowingly and willfully made, used and caused to be made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, in that on an EPD form 1.7 and supplemental report the defendant stated that the average Applied Suspended Solids for the month of May 1994 was 47, when in truth and fact, as the defendant then well knew, the average for Applied Suspended Solids was greater than 47 mg/l for the month of May 1994, in violation of Title 18, United States Code, Section 1001.

### COUNT FIVE

1. The United States Attorney hereby realleges the facts presented in paragraphs 1 through 19 of COUNT ONE above as if fully set out herein.

6

Dalton_Johnson_00160501

2. On or about May 13, 1994, in the Northern District of Georgia, in a matter within the jurisdiction of the United States Environmental Protection Agency, the defendant, Dalton Utilities, knowingly and willfully made, used and caused to be made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, in that on an EPD form 1.7 and supplemental report the defendant stated that the average Biochemical Oxygen Demand for the month of April 1994 was 46 mg/l, and that the average Applied Suspended Solids for the month of April 1994 was 48, when in truth and fact, as the defendant then well knew, the average Biochemical Oxygen Demand was greater than 46 mg/l for the month of April 1994, and the average for Applied Suspended Solids was greater than 48 mg/l for the month of April 1994, in violation of Title 18, United States Code, Section 1001.

RICHARD H. DEANE, JR.
UNITED STATES ATTORNEY, N.D. GEORGIA

*William R. Toliver*

WILLIAM R. TOLIVER
ASSISTANT UNITED STATES ATTORNEY
1800 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30335
404/581-6069
Georgia Bar No. 714285

Dalton_Johnson_00160502