# EXHIBIT 40



# U.S. ENVIRONMENTAL PROTECTION AGENCY
## DISTRICT COUNSEL'S OFFICE
## SUSPENSION and DEBARMENT
## 61 FORSYTH STREET
## ATLANTA, GEORGIA 30303
## FAX#: (404) 562-9875
## Phone#: (404) 562-9872

### Facsimile Cover Sheet

TO: Ms. Pam Withero
M. Don Cope

DATE: 5/15/00

TELEPHONE NO.: (706) 281-1004

FAX TELEPHONE NO.: (706) 278-7230

OFFICE OR FIRM: Dalton Utilities

FROM:

S. Charles Murray, District Counsel

REMARKS:

Number of pages (including cover): 12

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

OFFICE OF
ADMINISTRATION
AND RESOURCES
MANAGEMENT

## MEMORANDUM

**DATE:** DEC 1 3 1999

**SUBJECT:** Request for the **Debarment** of:

Dalton Utilities
1200 V.D. Parrott Parkway
Dalton, Georgia 30720
EPA Case No. 98-0082-01

The Board of Water, Light and Sinking
Fund Commission of the City
of Dalton, Georgia
114 North Pentz Street
Dalton, Georgia 30720
EPA Case No. 98-0082-02

V. DeForrest Parrott, III
2005 Coventry
Dalton, Georgia 30720
EPA Case No. 98-0082-03

Raymond H. Sinnamon, Jr.
205 Brenda Drive
Dalton, Georgia 30721
EPA Case No. 98-0082-04

**FROM:** S. Charles Murray
District Counsel
Southeastern District
Suspension and Debarment Division

**TO:** Robert F. Meunier
EPA Debarring Official
Office of Grants and Debarment (3901R)

Recycled/Recyclable • Printed with Vegetable Oil Based Inks on 100% Recycled Paper (40% Postconsumer)

The purpose of this memorandum is to request the debarment of the above-referenced Respondents, pursuant to the Non-procurement Common Rules ("NCR") at 40 Code of Federal Regulations ("C.F.R.")Part 32.[1] This action is based upon the Respondents' misconduct and imputed conduct arising out of a federal criminal conviction, ongoing civil action, and a long history of administrative violations. The following information is offered in support of this request.

## I. FACTUAL BACKGROUND

1. The City of Dalton is located in the northwestern part of the State of Georgia within the County of Whitfield. The City of Dalton, through the Board of Water, Light and Sinking Fund Commission (the "Board"), operates Dalton Utilities (also referred to here as, the "Utility"). The City of Dalton and the Utility are federal grant recipients, having historically received millions of dollars in assistance from the U.S. Government, including the U.S. EPA. (See, Exhibits 1, 2, 3, 4, and 5).

2. Dalton Utilities is the operating name of the public utility for the City of Dalton. It provides electric, natural gas, water, and sewer services within the City of Dalton and the surrounding areas within Whitfield County. Dalton Utilities operates under the direction of the Board as directed by the 1913 and 1977 Georgia Laws.[2] The Board interfaces with the Utility as a "separate and distinct part of the city government." The Board currently consists of five members which are appointed by the Mayor of the City of Dalton. Dalton Utilities has a General Manager but remains under the oversight of the Board. The General Manager is hired by the Board. (See, Exhibits 1, 2, 7, and 8).

3. Dalton Utilities' wastewater treatment facilities are publicly-owned treatment works ("POTWs") as that term is defined by statute and applicable regulations. The Utility's wastewater treatment facilities serve a domestic population of approximately 22,000 persons as well as numerous industries which are primarily carpet manufacturers. Approximately 87% of the Utility's effluent wastewater is from industrial sources. The wastewater also contains domestic sewage. The Utility owns and operates three biological wastewater treatment facilities ("WWTF"): Abutment Road, Riverbend, and Loopers Bend WWTFs. These three facilities have a combined design treatment capacity of 40 million gallons per day. (See, Exhibits 2, 3, and 4).

---

[1] Public Law 103-355, § 2455 and Executive Order 12689 also provide for reciprocal effect of the Federal Acquisition Regulation to suspension and debarment actions taken under the NCR.

[2] Georgia Laws, Georgia General Assembly, 1913, pages 766, 767, page 4612.

Dalton_Johnson_00110079

4. Dalton Utilities' treatment plants produce effluent and sewage sludge. The effluent and sewage sludge are pumped to a land application system ("LAS"), which consists of 8,875 acres of land and an extensive system of equipment designed to spray effluent and sludge onto a portion of the land. Until 1998, Dalton Utilities sprayed effluent on a portion of the LAS, much of it heavily forested, using an extensive system of aluminum pipe, spray heads, manually and automatically operated valves, and mechanical connections between pipes. In 1997, Dalton reportedly began to replace its piping system with polyethylene pipe and new spray heads, a project not scheduled for completion until July 2000. A significant part of the wastewater sprayed on the LAS leaves the site via surface waters, such as the Conasauga River and Holly Creek in Georgia. (See, Exhibits 2, 3, and 4).

5. According to EPA, Region IV, the LAS has been extremely vulnerable to problems that cause wastewater to run off the site into surface waters. For example, Dalton Utilities has reported to EPA that in 1996 there were over 5,100 clogged or broken spray heads; 3,300 split or damaged pipes; 2,300 blow-outs or separated pipes, 2,000 leaning risers (the pipes that connect the spray head to the sewage line on the ground); and 1,500 blown or broken risers. (See, Exhibits 2, 3, and 4).

6. Dalton Utilities' LAS operates under Permit No. GA02-056, issued by the Georgia Department of Natural Resources, Environmental Protection Division ("Georgia EPD") on May 8, 1997. Prior to the current permit, Dalton Utilities operated under LAS permits that were in effect between 1986 - 1991; 1991 - 1996; and 1996 - 1997. (See, Exhibits 2, 3, and 4)).

7. Respondent, V. DeForrest Parrott, III served as General Manager and Chief, Executive Officer ("CEO") of Dalton Utilities from approximately 1981 to 1997.[3] Mr. Parrott managed and oversaw the day-to-day operations of the Utility. He was the primary point of contact for the Utility regarding regulatory and compliance matters with state and federal regulatory agencies. Mr. Parrott participated in, knew of, or had reason to know of, most or all of the Utility's areas of non-compliance cited in this memorandum. (See, Exhibits 9, 10, 11, 12, 13, 14, 15, and 16).

8. Respondent, Raymond Sinnamon was employed with the Utility since approximately 1981. His job involved various areas of responsibility, including plant manager, plant superintendent, and certified Class I operator responsible for test numbers and reporting, regarding the LAS. Evidence shows that Mr. Sinnamon participated in, knew of, or had reason to know of, false and fraudulent data and report filed with the Georgia EPD. (See, Exhibits 17, 18, 19).

---

[3] DeForrest Parrott assumed the General Manager/CEO job from his father, V.D. Parrott, who served as General Manager/CEO of Dalton Utilities from approximately 1945 to 1981. Mr. Parrott retired as Dalton Utilities' General Manager in 1997, but has provided consultation to the Utility since his retirement.

4

### A. Dalton Utilities Criminal Conviction

9. On September 9, 1999, Dalton Utilities pled guilty in federal district court for the Northern District of Georgia to five felony counts of making false, fictitious, and fraudulent statements to Government officials, in violation of Title 18, U.S.C. § 1001. (See, Exhibits 20 and 21).

10. Dalton Utilities and its officials lied to Government regulators and the Georgia EPD about discharges of polluted water from its sewage treatment plant. In its Plea Agreement with the Department of Justice ("DoJ"), the Utility admitted it submitted falsified pollution discharge reports to the Georgia EPD between May 1994 and April 1995. The reports showed the Utility treated sewage was meeting federal Clean Water Act ("CWA") limits for certain pollutants in wastewater, when in fact, the Utility knew the limits were being exceeded. (See, Exhibits 20, 21, 22, 23, 24, 25, 26, 27, 28, and 29).

11. On November 19, 1999, Dalton Utilities was sentenced in the same federal court to pay a fine of $1 million and placed on three (3) years probation. Among other things, the Plea Agreement also requires that former or current officers, managers, or employees who either authorized, had supervisory control over, or who were otherwise substantially involved in the acts and/or conduct of the Utility which resulted in violation of either state or federal law, relinquish all management, control, and association with the wastewater and sewage treatment system operation of Dalton Utilities.[4] (See, Exhibits 29, 30, and 31).

### B. Federal Civil Actions and other Lawsuits

12. In addition to the criminal conviction of Dalton Utilities, EPA, through the U.S. DoJ has filed civil lawsuit against the Respondents in federal court in which the United States seeks penalties and injunctive relief for violations of §§ 301 and 405 of the CWA, Title 33, U.S.C. §§ 1311 and 1345, as well as regulations and permits under the CWA. The action alleges in pertinent part, that the Utility illegally discharges from its sewage treatment plants have polluted the Conasauga River and Holly Creek, navigable waters of the United States. (See, Exhibits 2 and 32).

13. The federal civil action comes as a result of the discovery of numerous deficiencies found at the Utility's sewage treatment operations during investigation by EPA and the Georgia EPD. Investigations noted that major deficiencies were found in almost all aspects of Dalton Utilities wastewater treatment program. The Government noted that the Utility had implemented few, if any key pretreatment program elements as required by the

---

[4] The Plea Agreement does not specify the names of the managers and officers responsible for the misconduct.

5

Utility's LAS permit. Major deficiencies were discovered in the Utility's sludge monitoring, record keeping, and application requirement as prescribed by 40 C.F.R. Part 503. (See, Exhibit 2).

14. Inspection of the Utility also revealed the Utility's laboratory practices of sample handling and analyses methodology were deficient. An evaluation of the Utility's sanitary sewer collection system revealed deficiencies in the operation, maintenance, and management of the entire system. These deficiencies cause raw sewage to overflow from the sanitary sewer collection system to waters of the United States. In addition, during a diagnostic evaluation conducted on March 26, 1997, and a reconnaissance inspection on March 27, 1997, personnel from EPA Region IV witnessed several unpermitted discharges of undisinfected, partially treated wastewater from the LAS site to the River along the north, west, and south boundaries of the LAS site.[5]

15. In its "Prayer for Relief", the United States and the State of Georgia request that the Court enter a judgment against Dalton Utilities, as follows:

o   Order Dalton Utilities to cease unlawful discharges of pollutants into navigable waters of the United States.

o   Order Dalton Utilities to comply with the sewage sludge regulations at 40 C.F.R. Part 503.

o   Order Dalton Utilities to comply with the pretreatment requirements in LAS Permit No. GA02-056, Dalton Utilities' approved pretreatment program, and applicable federal and state regulations.

o   For violations beginning five years prior to the date this complaint was filed, assess civil penalties against Dalton Utilities of up to $25,000 per day for each day of each violation that occurred before January 31, 1997, and up to $27,500 per day for each day of each violation that occurred after that date. The United States is not seeking penalties for violations for which Dalton Utilities has already paid a penalty to the State of Georgia.

o   Award the United States and the State their costs in this action.

o   Award the United States all relief appropriate under 33 U.S.C. § 1319 (e). (See, Exhibit 2).

---

[5] Deficiencies were noted and compiled in an inspection report of the Utility by EPA and EPA inspectors.

Dalton_Johnson_00110082

6

16. In addition to the civil action filed by DoJ on behalf of EPA and the State of Georgia, the State of Alabama, and other non-profit corporations have intervened in the federal litigation alleging that Dalton Utilities has polluted rivers and lakes in Alabama and Georgia. The Alabama Attorney General alleges the Utility discharges improper treated sewage with high concentrations of nitrogen, phosphorus, and raw sewage into the Conasauga River that ends up in Alabama's Coosa River and Weiss Lake. (See, Exhibits 3, 4, and 33).

### C. Dalton Utilities History of Violations

17. Dalton Utilities has a long and extensive history of repeated environmental violations. The Utility also has a history of internal management and control failings. These deficiencies have resulted in significant environmental harm, including unpermitted surface water contamination and wildlife destruction. Evidence shows that the Utility has received notices of violations, and was the subject of enforcement action by Government regulators as far back as 1977. (See, Exhibits 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 50, 51, 52, 53, 54, 55, and 56).

## BASIS FOR ACTION

18. The EPA Debarring Official has jurisdiction over these actions and the Respondents, pursuant to 40 C.F.R. §§ 32.105 (participant) and 32.110 (a), in that the Respondents may reasonably be expected to enter into Government contracts and/or subcontracts, or may enter into covered transactions. The Respondents are federal grant recipients, having received millions of dollars in federal assistance in the past. The City of Dalton and Dalton Utilities currently receive federal grants, and the Utility will very likely receive federal government funds in the future, if not debarred.

19. The criminal conviction; its long history of environmental violations; and its current state of environmental disrepair and non-compliance are grounds for Dalton Utilities debarment under 40 C.F.R. § 32.305 (a) (1) (3) (4) (b) (1) (2) (3) and (d).

20. Under the Section's referred to in paragraph 19, and pursuant to 40 C.F.R. § 32.325 (b) (2), Dalton Utilities' criminal conviction, fraudulent activities, history of serious improper conduct, including previous and current environmental violations are causes for the Board's debarment. The Board is the director, manager, or controlling entity providing oversight for Dalton Utilities. The Board participated in, knew of, or had reason to know of Dalton Utilities' misconduct.

Dalton_Johnson_00110083

7

21. Under the Section's referred to in paragraph 19, and pursuant to 40 C.F.R. § 32.325 (b)(2), Dalton Utilities' criminal conviction, fraudulent activities, history of serious improper conduct, including previous and current environmental violations are causes for V. DeForrest Parrott, III's debarment. Mr. Parrott was the General Manager and CEO of the Utility providing day-to-day supervision and oversight of the Utility. He <u>participated in</u>, <u>knew of</u>, or <u>had reason to know</u> of the Utility's misconduct.

22. Under the section's referred to in paragraph 19, and pursuant to 40 C.F.R. § 32.325 (b)(2), Dalton Utilities' criminal conviction, fraudulent activities, history of serious improper conduct, including previous and current environmental violations are causes for the debarment of Raymond Sinnamon. Mr. Sinnamon was plant superintendent/manager of Dalton Utilities who <u>participated</u> in <u>knew</u> of, or <u>had reason to know</u> of the Utility's misconduct.

23. Debarment of the Respondents is absolutely necessary, in that the Respondents represent serious and immediate threats to the integrity of the federal procurement and non-procurement processes. Operating as one of the State of Georgia's largest public utility, the Respondents were in key positions of public trust. They were charged with the duty of providing responsible and honest public services to citizens in and around the City of Dalton, Georgia. Instead of responsible and honest services, the Respondents for years have had a systematic history of non-compliance with state and federal environmental laws. The violations have resulted in a host of costly government enforcement actions, with the most recent action being a federal criminal conviction of Dalton Utilities for making false and fraudulent statements to government regulators. Although the U.S. Attorney for the Northern District of Georgia stated in the plea agreement that he will not recommend that Dalton Utilities be debarred, the evidence shows debarment of the Respondents is immensely warranted to protect the Government. Notwithstanding the Utility's previous enforcement actions, and because of the deficient management and control of the Utility, its violations have continued. If the Respondents are not debarred, the federal government will essentially be funding a utility that has clearly demonstrated that it cannot or will not comply with the law.

## ACTION REQUESTED

24. On the basis of the information and authority provided herein, Counsel, on behalf of the U.S. EPA, Suspension and Debarment Division ("SDD"), hereby requests the debarment of the Respondents for <u>five</u> (5) years, respectively. The Respondents' misconduct demonstrates a keen awareness of wrongdoing and a knowing and careless endangerment of human lives, health, and the environment. The Respondents' misconduct occurred over a long period of time and constituted a blatant disregard of federal and state environmental laws. The Utility also engaged in a deliberate effort to deceive Government regulators, by knowingly providing fraudulent data.

Dalton_Johnson_00110084

8

25. Additionally, Counsel requests the debarment of these Respondents, be from participating in future federal government procurement and non-procurement assistance, loans, and benefits activities.

**Exhibits attached**

Dalton_Johnson_00110085

## Exhibits List

1. Duns and Bradstreet, <u>City of Dalton Utilities</u>

2. Complaint, <u>U.S. and State of Georgia v. Dalton Utilities and the Water, Light and Sinking Fund Commission of the City of Dalton, Georgia</u>

3. Complaint and Intervention, <u>U.S. and State of Georgia; State of Alabama v. Dalton Utilities and the Water, Light and Sinking Fund Commission of the City of Dalton, Georgia</u>

4. Complaint and Intervention, <u>U.S. and State of Georgia; Coosa River Basin Initiative Inc. and Weiss Lake Improvement Association v. Dalton Utilities and the Water, Light and Sinking Fund Commission of the City of Dalton, Georgia</u>

5. Region IV Grants to Dalton

6. EPA Assistance Agreement/Amendment, Dalton Utilities

7. Part III - Title 1 - Municipal Corporations, Dalton, City of, Charter Amended

8. Local and Special Acts and Resolutions, Vol. II, City of Dalton - Charter Amended - Electrical Power

9. 1/17/95 Letter to Mr. Jeffrey H. Larson from Mr. DeForrest Parrott

10. 9/30/92 Letter to Mr. Michael Stevens from Mr. DeForrest Parrott

11. 4/5/94 Letter to Mr. Alan W. Hallum from Mr. DeForrest Parrott

12. 1/31/96 FBI Memorandum of Interview, Charles S. Thomas, Jr.

13. 1/31/96 FBI Memorandum of Interview, Ted Selby

14. 5/2/96 EPA CID Memorandum of Interview, John Edward Stanley

15. 9/11/95 EPA CID Memorandum of Interview, John C. Sanders, Jr.

16. 6/16/95 EPA CID Memorandum of Interview, Richard John Belanger

17. 8/16/95 EPA CID Memorandum of Interview, Raymond H. Sinnamon, Jr.

18. 9/13/95 EPA CID Memorandum of Interview, Gary Leeman Mathis

19. 9/11/95 EPA CID Memorandum of Interview, Earl D. Underwood

20. Guilty Plea and Plea Agreement, Dalton Utilities

21. Press Release, Dalton Utilities Guilty Plea, 9/9/99

22. Criminal Information, U.S. v. Dalton Utilities

23. Waiver of Indictment, U.S. v. Dalton Utilities

24. 8/17/95 news article - The Daily Citizen-News

25. 8/17/95 news article, Chattanooga Free Press

26. 8/18/95 news article, The Chattanooga Times

27. 8/18/95 news article, Rome News-Tribune

28. 8/18/95 news article - The Daily Citizen-News Judgment and Commitment Report, U.S. v. Dalton Utilities

29. 9/10/99 news article, "The Atlanta Constitution"

30. Judgment and Commitment report, U.S. v. Dalton Utilities

31. 1/19/99 Dalton Utilities sentenced for Falsifying Environmental Reports

32. 7/7/98 news article, "The Atlanta Journal-Constitution"

33. 5/23/98 news article, "The Atlanta Journal-Constitution"

34. 9/11/92 Letter to Mr. DeForrest Parrott from Michael Stevens

35. 10/16/92 Letter to Mr. DeForrest Parrott from Alan W. Hallum

36. 5/20/93 Letter to Mr. DeForrest Parrott from Michael Stevens

37. 3/23/94 Letter to Mr. DeForrest Parrott from Alan W. Hallum

38. 1/13/95 Letter to Mr. DeForrest Parrott from Jeffrey H. Larson

39. Order, City of Dalton Water, Light, and Sinking Fund Commission

40. State Orders Issued to Dalton Utilities

Dalton_Johnson_00110087

3

41. Consent Order, <u>Dalton Water, Light, and Sinking Fund Commission</u>

42. Order, <u>City of Dalton Water, Light, and Sinking Fund Commission</u>

43. Administrative Order, <u>City of Dalton Water, Light, and Sinking Fund Commission</u>

44. Consent Order, <u>Dalton Utilities, Whitfield County</u>

45. Administrative Order, <u>Dalton Utilities Loopers Bend Land Application System</u>

46. Consent Order, <u>Dalton Utilities Loopers Bend Land Application System</u>

47. Consent Order, <u>Dalton Utilities</u>

48. Consent Order, <u>Dalton Utilities Sewerage Collection System</u>

49. Consent Order, <u>Dalton Utilities Loopers Bend Land Application System</u>

50. Consent Order, <u>Dalton Utilities Loopers Bend Land Application System</u>

51. Administrative Order, <u>Dalton Utilities Sludge Management Plan</u>

52. Administrative Order, <u>Dalton Utilities Sanitary Sewer System</u>

53. Week of 5/24-30/96 news article, <u>Atlanta Business Chronicle</u>

54. 5/18/96 news article - <u>The Daily Citizen-News</u>

55. 5/21/96 news article - <u>The Daily Citizen-News</u>

56. 5/26/96 news article - <u>The Daily Citizen-News</u>