# EXHIBIT 42

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - AL

JAN 1 5 2001

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

FILED CLERK'S OFFICE
₂ 9 2001

MAR 2 8 2001

By: _____
Deputy Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF GEORGIA | ) ) ) |  |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) ) |  |
| STATE OF ALABAMA; THE COOSA RIVER BASIN INITIATIVE, INC; AND WEISS LAKE IMPROVEMENT ASSOCIATION, INC., | ) ) ) ) ) | Civil Action No. 4:98-CV-191-HLM |
| Plaintiffs/Intervenors. | ) ) ) |  |
| v. | ) ) ) |  |
| DALTON UTILITIES AND THE WATER, LIGHT, AND SINKING FUND COMMISSION OF THE CITY OF DALTON, GEORGIA | ) ) ) ) ) |  |
| Defendants. | ) ) ) |  |

## CONSENT DECREE

C-8

JOHNSON_0132067

TABLE OF CONTENTS

| SECTION | | PAGE |
|---|---|---|
| I. | Background | 1 |
| II. | Jurisdiction and Venue | 2 |
| III. | Parties Bound | 2 |
| IV. | Definitions | 2 |
| V. | General Provisions | 4 |
| VI. | Work Pertaining to the Defendants' Pretreatment Program | 5 |
| VII. | Work Pertaining to the Defendants' Collection System | 8 |
| VIII. | Work Pertaining to the Defendants' Land Application System | 11 |
| IX. | Work Pertaining to the United States' Sludge Claims | 14 |
| X. | Civil Penalty | 19 |
| XI. | Quality Assurance, Sampling, Data Analysis, and Information Gathering | 19 |
| XII. | Dispute Resolution | 20 |
| XIII. | Stipulated Penalties | 23 |
| XIV. | Force Majeure | 31 |
| XV. | Claims Resolved in the Settlement | 33 |
| XVI. | Certification of Submissions | 34 |
| XVII. | Form of Notice | 34 |
| XVIII. | Failure of Compliance | 36 |
| XIX. | Costs of Suit | 36 |
| XX. | Effective Date | 36 |

JOHNSON_0132068

XXI.        Termination of Work Pertaining to the Defendants'
            Pretreatment Program ................................................. 36

XXII        Termination of Work Pertaining to the Defendants' LAS ........... 37

XXIII       Termination of Work Pertaining to the Defendants'
            Collection System .................................................... 37

XXIV.       Termination of Work Pertaining to the United States'
            Sludge Claims ........................................................ 38

XXV.        Retention of Jurisdiction ........................................... 38

XXVI.       Appendices ........................................................... 39

XXVII.      Modification ......................................................... 39

XXVIII.     Lodging and Opportunity for Public Comment ........................ 39

XXIX.       Signatories/Service ................................................. 40

JOHNSON_0132069

# I. BACKGROUND

A.    The Plaintiffs in this civil action are United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Georgia, on behalf of the Director of the Georgia Department of Natural Resources, Environmental Protection Division ("EPD"). In their complaint, the Plaintiffs allege several claims under Section 309 of the Clean Water Act, 33 U.S.C. § 1319, and seek civil penalties and injunctive relief.

B.    The Plaintiff/Intervenors in this civil action are the State of Alabama, the Coosa River Basin Initiative, Inc., and the Weiss Lake Improvement Association, Inc. The Plaintiff/Intervenors filed a complaint in intervention under Section 505(b)(1)(B) of the Act, 33 U.S.C. § 1365(b)(1)(B), and Rule 24 of the Federal Rules of Civil Procedure, seeking civil penalties and injunctive relief.

C.    The Defendants in this civil action are Dalton Utilities and the Water, Light and Sinking Fund Commission of the City of Dalton, Georgia.

D.    In this Consent Decree, the Defendants agree to pay a civil penalty and to perform injunctive relief in settlement of the civil claims alleged in the Plaintiffs' complaint. By entering this Consent Decree, the Defendants do not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the complaints.

E.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that implementation of this Consent Decree will avoid prolonged and complicated litigation between the Parties, and that

-1-

JOHNSON_0132070

this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 33 U.S.C. §§ 1319(b) and 1365(a). This Court also has personal jurisdiction over the Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2. This Consent Decree applies to and is binding upon the United States; the State of Georgia; Dalton Utilities; and the Water, Light and Sinking Fund Commission of the City of Dalton, Georgia.

## IV. DEFINITIONS

3. Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in the Clean Water Act or in regulations promulgated under the Clean Water Act shall have the meaning assigned to them in the Clean Water Act or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"Approved Pretreatment Program" shall mean the pretreatment program administered by Dalton Utilities that meets the criteria established in 40 C.F.R. § 403.8 and § 403.9 and which has been approved by the Director of Georgia EPD.

-2-

JOHNSON_0132071

"Collection system" shall mean the wastewater collection and transmission system owned or operated by Dalton Utilities. including all force mains. gravity sewer lines. manholes, lift stations. and appurtenances that are associated with Dalton Utilities' wastewater treatment facilities.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXVI). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Defendants" refer to Dalton Utilities and the Water, Light, and Sinking Fund Commission of the City of Dalton, Georgia.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall mean the date that the Court enters this Consent Decree.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Georgia EPD" shall mean the Georgia Department of Natural Resources. Environmental Protection Division and any successor departments or agencies of the State.

"Industrial user" shall mean any person discharging or proposing to discharge any pollutant into a publicly owned treatment works and then into waters of the State of Georgia and is considered a source of indirect discharge.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

-3-

JOHNSON_0132072

"Parties" shall mean the United States; the State of Georgia; Dalton Utilities; and the Water, Light and Sinking Fund Commission of the City of Dalton, Georgia.

"Plaintiffs" shall mean the United States and the State of Georgia.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Serve" and "service" shall have the meaning given those terms in the Federal Rules of Civil Procedure.

"Significant Industrial User" shall have the meaning given in Chapter 391-3-6-.08 of the Georgia Rules and Regulations for Water Quality Control.

"Significant Noncompliance" shall have the meaning given in Chapter 391-3-6-.08 of the Georgia Rules and Regulations for Water Quality Control.

"United States" shall mean the United States of America.

"Work" shall mean all activities Defendants are required to perform under this Consent Decree.

## V. GENERAL PROVISIONS

4.     <u>Objectives of the Parties</u>.  The objectives of the Parties in entering into this Consent Decree are to resolve the Plaintiffs' claims for civil penalties and injunctive relief in a manner consistent with the public interest, the Clean Water Act, and regulations promulgated under the Clean Water Act.

5.     <u>Commitments by Defendants</u>

a.     Defendants shall finance and perform the Work in accordance with this Consent Decree.  Defendants shall also pay all civil penalties and stipulated penalties (if any), as provided in this Consent Decree.

-4-

JOHNSON_0132073

    b.    The obligations of Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several. In the event that one Defendant fails to implement the requirements of this Consent Decree, the remaining Defendant shall complete all such requirements.

    6.    <u>Compliance With Applicable Law</u>. All activities undertaken by Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. The Defendants are responsible for ensuring that any contractors and subcontractors hired to perform work pursuant to this Consent Decree comply with applicable law and this Consent Decree.

    7.    <u>Permits</u>. This Consent Decree is not, and shall not be construed to be, a permit or modification of a permit issued pursuant to any federal or state statute or regulation.

## VI.  WORK PERTAINING TO THE DEFENDANTS' PRETREATMENT PROGRAM

    8.    The Defendants shall implement the Approved Pretreatment Program in accordance with the terms of LAS Permit No. GA02-056 and any successor LAS permits and NPDES permits.

    9.    The Defendants have developed Standard Operating Procedures for their Industrial Pretreatment Program, and desire to include them as part of their Approved Pretreatment Program. Georgia EPD has reviewed the Standard Operating Procedures and determined that they constitute a nonsubstantial modification to Dalton Utilities' Approved Pretreatment Program, and has included them as part of Dalton Utilities' Approved Pretreatment Program.

    10.    In the event the Defendants seek to modify the Approved Pretreatment Program

JOHNSON_0132074

after entry of this Consent Decree, they shall comply with the procedures set forth in Chapter 391-3-6-.09(7) of the Georgia Rules and Regulations for Water Quality Control, or the procedures that may later be in effect. The Defendants shall provide U.S. EPA with a copy of any proposed changes simultaneously with the notice given to Georgia EPD required by State regulations.

11.    After providing two working days notice to Dalton Utilities, U.S. EPA and/or Georgia EPD may conduct an audit to evaluate Dalton Utilities' implementation of its Approved Pretreatment Program. U.S. EPA and Georgia EPD shall seek to coordinate their efforts before scheduling any audit. If U.S. EPA or Georgia EPD uses its audit authority under this Paragraph, the agency conducting the audit shall provide the Defendants with a report identifying violations of the Approved Pretreatment Program noted during the audit. Nothing in this Paragraph, however, shall limit U.S. EPA's or Georgia EPD's authority to gather information or conduct inspections under other legal authorities. The Defendants shall correct the violations noted in the audit report no later than 30 days after service of the report, unless the auditing agency approves a longer period.

12.    The Defendants shall maintain sufficient financial and personnel resources and sufficient equipment and analytical services to administer and implement the Approved Pretreatment Program. The United States or State of Georgia may offer any evidence to establish a violation of this provision, but any of the following omissions shall create a rebuttable presumption that the Defendants have failed to comply with the terms of this Paragraph:

(a) A failure by the Defendants to conduct a complete sampling event at or complete inspection of an Industrial User or a Significant Industrial User within 365 days after the last

-6-

JOHNSON_0132075

complete sampling event or complete inspection of that Industrial User or Significant Industrial User. For purposes of this Paragraph and Section XIII (Stipulated Penalties), the Defendants have performed a "complete inspection" when they have fully complied with the inspection, sampling, and recordkeeping requirements currently set forth in Chapters 3.2, 3.3, and 3.4 of the approved Industrial Pretreatment Program Standard Operating Procedures, or these requirements as they may be amended in the future. A "complete sampling event" occurs when the Defendants have collected and analyzed samples for all pollutant parameters in the pretreatment permit at all permitted outfalls of an Industrial User or Significant Industrial User.

(b)  An inability by the Defendants to produce all documentation and data base entries required by the Approved Pretreatment Program for at least ninety percent of facilities reviewed during an audit conducted under Paragraph 11 of this Consent Decree.  For purposes of Paragraph 12(b) and Section XIII (Stipulated Penalties), a "facility" refers to all buildings and operations maintained by a permitted Industrial User or Significant Industrial User, as identified in Dalton Utilities' Industrial User Inventory, at a single address.

(c)  Failure to issue or reissue industrial user permits for at least ninety percent of the Significant Industrial Users within sixty days after the permit expires within any ten month period.

(d)  Failure to initiate an effective enforcement action against an Industrial User or Significant Industrial User who violates its pretreatment permit within thirty days after the Defendants learn of the violation.  An "enforcement action" means an action described in the approved Dalton Utilities' Enforcement Response Plan, which has been approved by the Director of Georgia EPD.  An "effective" enforcement action means an enforcement action that returns an

-7-

JOHNSON_0132076

Industrial User or Significant Industrial User to compliance, or that places the violator on an enforceable compliance schedule, within ninety days after the Defendants receive notice of the violation.

(e) Failure to submit a pretreatment report (e.g., an annual report ) to Georgia EPD within thirty days after the due date specified in the Approved Pretreatment Program, LAS permit, or an NPDES permit, or failure to provide public notice of violators in Significant Noncompliance.

13.    The terms of this Section do not, in any respect, alter the Defendants' obligation to achieve one hundred percent compliance with all applicable federal and state statutes, regulations, and permits.

### VII. WORK PERTAINING TO DEFENDANTS' COLLECTION SYSTEM

14.    Within thirty days after entry of the Consent Decree, the Defendants shall complete a collection system map that identifies manhole and pump station locations, flow direction, and the sizes of all pipes. Thereafter, the map shall be updated at least annually to indicate all additions to and deletions from the collection system, such as main extensions and lift stations.

15.    The Defendants shall implement the operation and maintenance standards and procedures contained in Dalton Utilities' Sewer Collection System Management Program, Standard Operating Procedures (dated June 21, 1999), and in any revisions made to that document in the future ("Collection System SOP"). When necessary, the Defendants shall review and revise the Collection System SOP to prevent discharges from the collection system to the waters of the State and to protect the Defendants' wastewater treatment facilities from excess peak flows that interfere with the treatment processes.

JOHNSON_0132077

16.    The Defendants shall maintain adequate financial and personnel resources to implement the Collection System SOP.

17.    The Defendants shall continue to make capital improvements necessary to prevent discharges of pollutants from the collection system to waters of the State.

18.    After providing two (2) working days' notice, U.S. EPA or Georgia EPD may conduct an audit of the Defendants' facilities. including the collection system, to evaluate implementation of the Collection System SOP, the need for revisions to the Collection System SOP, and the need for additional capital improvements.   U.S. EPA and Georgia EPD shall seek to coordinate their efforts before scheduling any audit.  Nothing in this paragraph. however. shall limit U.S. EPA's or Georgia EPD's authority to gather information or conduct inspections under other legal authorities.  After the audit, the auditing agency may take any lawful action, including the following:

a.  Make non-binding recommendations for improving the design. operation, and maintenance of the collection system.

b.  Request additional information under the information gathering provisions of this Consent Decree.

c.  If the auditing agency determines that the Defendants must improve implementation of the Collection System SOP, such as implementation of the responsibilities listed in Section 1.2 of the Collection System SOP, in order (i) to prevent discharges to waters of the State from the collection system. other than discharges caused by Force Majeure events. (ii) to respond to emergencies involving the collection system. or (iii)  to protect Dalton Utilities' wastewater treatment facilities from flows that interfere with the facilities' proper operation. the auditing

-9-

agency shall identify those actions in a written report. Within thirty days after service of the report on the Defendants, the Defendants shall respond in writing to the report and take the actions identified by the auditing agency, unless the auditing agency approves a longer schedule. Under Section XII (Dispute Resolution), the Defendants may dispute any factual finding in the audit report and any determination that an action is needed (i) to prevent discharges from the collection system to waters of the State, other than discharges caused by Force Majeure events; (ii) to respond to emergencies involving the collection system, or (iii) to protect Dalton Utilities' wastewater treatment facilities from flows that interfere with the facilities' proper operation. Nothing in this Paragraph, however, relieves the Defendants from timely compliance with all laws pertaining to its collection system.

19.     As soon as practicable, and no later than 24 hours after the Defendants learn of an overflow that reaches waters of the State that occurs from its collection system, or that occurs as a result of conditions in a portion of the collection system that the Defendants own or control, the Defendants shall telephone the Georgia EPD and report the following information:

a) the location of the overflow and the receiving water;

b) an estimate of the volume of the overflow;

c) a description of the sewer system component from which the release occurred (e.g., manhole, or crack in pipe);

d) the estimated date and time when the overflow began and when it stopped;

e) the cause or suspected cause of the overflow; and

f) steps that have been and will be taken to prevent the overflow from recurring.

The current telephone number for reporting overflows during regular business hours is 404-362-

-10-

JOHNSON_0132079

2680. All oral reports during non-business hours should be made to the Georgia EPD spills hotline. The current telephone number for the spill hotline is 1-800-241-4113.

20.    The Defendants shall provide a written or electronic report to Georgia EPD, with a copy to EPA, containing the information in Paragraph 19, above, and a schedule for implementing steps to prevent overflows from reoccurring, within five days after the Defendants learn of the overflow.

21.    The Defendants shall implement the actions they identify as necessary to stop overflows to waters of the State and to prevent such overflows from reoccurring according to the schedule they submit to Georgia EPD under Paragraph 20, above.

VIII.  WORK PERTAINING TO THE LAND APPLICATION SYSTEM

22.    Dalton Utilities has applied for an NPDES permit and, as part of its application, will implement the LAS Water Quality Characterization Plan, including related correspondence, (the "Plan") attached as Appendix 1. The Defendants shall begin monitoring surface water for the parameters listed in Chapter 2 of the Plan, at the frequency described in Chapter 2 of the Plan, and at the locations listed in Chapter 2 of the Plan no later than December 15, 2000. The Defendants' obligation under this Consent Decree to implement the Plan shall conclude on December 15, 2001. In addition, as part of the enforceable obligations of this Consent Decree, the Defendants shall implement the monitoring requirements in LAS Permit No. GA02-056. Upon request, the Defendants shall send all data and reports generated as part of the Plan to those Plaintiffs included in the request within 10 working days.

23.    No later than February 23, 2002, Georgia EPD shall issue a draft NPDES permit for the LAS in accordance with 40 C.F.R. § 124.6 and applicable State laws, and provide public

JOHNSON_0132080

notice as set forth in Chapter 391-3-6-.06(7), Rules and Regulations for Water Quality Control, Georgia Department of Natural Resources. Georgia EPD shall make a final decision about whether to issue a final NPDES permit within a reasonable time after issuance of the draft NPDES permit, taking into account the public comments received and any other factors Georgia EPD may lawfully consider.

24.    The Defendants shall operate and maintain the LAS to ensure its optimal performance and to continuously meet the following performance limits at the sampling locations for Streams 10, 18, 3, 17, and 20 identified in the Plan:

    a.  pH: within the range of 5.5 to 9.0 standard units;

    b.  Dissolved Oxygen: never less than 3.0 mg/l, with a 24 hour average not less than 4.0 mg/l;

    c.  Fecal Coliform Bacteria:

        - not to exceed 400 MPN/ 100 ml (30 day geometric mean based on at least four samples)

        - not to exceed 800 MPN/100 ml (daily maximum)

    d.  Phosphorous: not to exceed 1.0 mg/l.

    e.  Color and Foam: not in amounts that interfere with legitimate uses.

The performance limits are indicators of sub-optimal operation and maintenance of the LAS; they are not effluent limits under the Clean Water Act. These limits do not in any way affect the discretion of Georgia EPD to set appropriate limits in a permit for the Defendants' facility. The United States and State of Georgia may offer other evidence of sub-optimal operation and maintenance in any dispute arising under this Consent Decree.

-12-

JOHNSON_0132081

25.    If the Defendants do not meet the performance limits listed above, they shall take the following steps:

a. Notify U.S. EPA and Georgia EPD in writing no later than 72 hours after they learn that they have not met a performance limit, and provide in the notice all information then available about the cause of their not meeting the performance limit.

b. Investigate the cause of their not meeting the performance limit.

c. Undertake corrective action to ensure that they continuously meet all performance limits as soon as practicable, but no later than 10 days after Defendants learn that they have not met a performance limit.

d. By the 15th day of the month following the month in which the Defendants did not meet a performance limit, the Defendants shall serve upon Georgia EPD a report describing the results of the investigation and the corrective action taken. The Defendants shall simultaneously provide a copy of the report to U.S. EPA.

26.    If there is a final agency action by Georgia EPD not to issue an NPDES permit for the LAS, thereafter Georgia EPD shall be the primary authority for ensuring compliance with Paragraph 24, above. If Georgia EPD elects not to exercise a remedy described in the Consent Decree for noncompliance with Paragraph 24 within 30 days after receiving notice that the Defendants did not meet a performance limit, U.S. EPA may exercise any remedy available under this Consent Decree. Nothing in this Paragraph or this Consent Decree, however, shall limit or otherwise affect U.S. EPA's authority to enforce compliance with the Clean Water Act.

27.    Dalton Utilities waives any right it may have to appeal a final NPDES permit issued for the LAS pursuant to the application referenced above on the grounds that the

-13-

JOHNSON_0132082

permitting agency lacks authority to issue an NPDES permit for the LAS. Dalton Utilities reserves the right to comment upon and appeal specific terms and conditions contained within any NPDES permit issued for the LAS. After a final effective NPDES permit is issued, Dalton Utilities retains its rights under the law (if any) to demonstrate to the permitting authority that an NPDES permit is no longer needed for the LAS.

IX.    WORK PERTAINING TO THE UNITED STATES' SLUDGE CLAIMS

28.    Within 30 days after entry of this Consent Decree, the Defendants will permanently isolate and disable the sludge distribution piping in Area "A" by physically separating and blind flanging all lateral distribution lines from the main trunk line. The Defendants will also physically remove all risers and blind flanges below grade, and seal weld all blind flanges.   The boundaries of Area "A" are marked on Appendix 2 to this Consent Decree. Within 30 days after entry of this Consent Decree,  the Defendants shall certify that they have completed this obligation by submitting a report to U.S. EPA, and a copy to Georgia EPD, depicting on a map where equipment has been modified to comply with this Paragraph, and by submitting a certification complying with Section XVI of this Consent Decree.

29.    The Defendants are permanently enjoined from land applying or disposing of sewage sludge on Area "A."

30.    Within sixty days after entry of this Consent Decree, the Defendants shall submit a report to U.S. EPA, and a copy to Georgia EPD, demonstrating that the soil in the following locations within Area A are below the ceiling concentration limits set forth in 40 C.F.R. § 503.13, Table 1; all sprayfields within the 100 year flood plain, as indicated on Appendix 2, and sprayfields AA-5, AA-11, AB-9, AB-13, AA-6, AA-13, AB-10, AA-9, AA-14, and AB-12.

-14-

JOHNSON_0132083

The Defendants shall make this demonstration for each sprayfield by collecting composite samples from representative locations within each sprayfield. If the Defendants cannot make this demonstration for any sprayfield, they shall submit by the same date a plan to U.S. EPA and a copy to Georgia EPD, for reducing metals concentrations below the ceiling concentration limit. The plan shall be subject to review, comment, and approval by EPA, but EPA shall not grant approval until it has consulted with Georgia EPD. The Defendants shall implement the approved plan. U.S. EPA approval of the plan does not relieve the Defendants from the obligation of meeting ceiling concentration limits in the event the plan is unsuccessful.

31.    Within sixty days after entry of the Consent Decree, the Defendants will remove biosolids from the 100 year flood plain using a bulldozer, front-end loader, and other earth moving equipment until the soil is visibly clean of all biosolids. The Defendants shall not remove biosolids, however, from any buffers required by Georgia EPD General Permit No. GAR100000. All removed biosolids shall be lawfully disposed of. The boundaries of the 100 year flood plain are marked on Appendix 2. Also within sixty days of entry, the Defendants shall certify in writing to U.S. EPA, with a copy to Georgia EPD, that they have completed this task.

32.    At least one week prior to removing biosolids from the 100 year flood plain, as required under Paragraph 31, the Defendants shall submit a Notice of Intent to Georgia EPD to be covered by General Permit No. GAR100000, Authorization To Discharge Under The National Pollutant Discharge Elimination System Storm Water Discharges Associated With Construction Activity. With respect to the obligations in Paragraph 31, the Defendants shall comply with all applicable provisions in General Permit No. GAR100000. General Permit No. GAR100000 is enforceable under this Consent Decree.

-15-

JOHNSON_0132084

33.     Within sixty days after entry of the Consent Decree, the Defendants shall submit a plan to U.S. EPA , with a copy to Georgia EPD, for installing five new wells along the boundary of Area "A" for the purpose of monitoring down-gradient groundwater.  The plan shall identify the locations of the proposed wells.  All wells shall be constructed in accordance with the latest edition of Section 6 of EPA's Environmental Investigations Standard Operating Procedures and Quality Assurance Manual. The plan shall be subject to review, comment, and approval by U.S. EPA, but U.S. EPA shall not grant approval without first consulting with Georgia EPD.  Within thirty days after U.S. EPA approves the plan, the Defendants shall install the wells.

34.     Within sixty days after installing the wells described above, the Defendants shall submit a report to U.S. EPA, with a copy to Georgia EPD, containing either of the following:

a.  A demonstration that groundwater in none of the five wells described above, or any of the other downgradient wells in Area A, has nitrate concentrations above 10 mg/l, based on at least two samples collected from each well at least seven days apart.

b.  A plan designed to reduce nitrate concentrations below 10 mg/l within one year.   The plan shall be subject to review, comment, and approval by U.S. EPA, but U.S. EPA shall not grant approval without first consulting with Georgia EPD.  The Defendants shall begin implementing this plan within thirty days after U.S. EPA's approval of the plan.

35.     Within thirty days after the Defendants install the wells described above, the Defendants shall collect samples from all down-gradient wells in Area "A" and analyze those samples to determine the concentration of the following contaminants: As, Cd, Cr III, Cu, Pb, Hg, Ni, and Se.  If the concentration of one of these contaminants in any sample exceeds the limits below, the Defendants shall continue to monitor Area "A" groundwater for that

-16-

JOHNSON_0132085

contaminant in all down-gradient wells for one year on a quarterly basis and submit the monitoring results to U.S. EPA, with a copy to Georgia EPD, within sixty days after each quarter ends. The contaminant limits are the following:

| | | |
|---|---|---|
| As | 50 ug/l | (dissolved form) |
| Cd | 5 ug/l | (dissolved form) |
| Cr III | 100 ug/l | (dissolved form) |
| Cu | 1,300 ug/l | (dissolved form) |
| Pb | 15 ug/l | (dissolved form) |
| Hg | 0.012 ug/l | (total recoverable form) |
| Ni | 88 ug/l | (dissolved form) |
| Se | 5 ug/l. | (total recoverable form). |

The contaminant limits above for cadmium, chromium III, copper, lead, and nickel assume a hardness of 50 mg/l CaCO₃. For other hardness values, the formulas listed in Chapter 391-3-6-.03(5) of the Georgia Rules and Regulations for Water Quality Control under the heading "chronic criteria" will apply. The minimum hardness allowed for use in these equations shall not be less than 25 mg/l as calcium carbonate and the maximum shall not be greater than 400 mg/l as calcium carbonate. Use of these limits in the Consent Decree does not affect Georgia EPD's discretion to set different or additional limits in a permit.

36.    If the Defendants cannot demonstrate that all monitoring results for each contaminant are below the ceiling concentration limit in Paragraph 35, above, in the last two quarters, then the Defendants shall submit a plan to U.S. EPA, with a copy to Georgia EPD, within 90 days after the fourth quarter ends. The plan shall be designed to reduce that contaminant's concentration in groundwater below the ceiling concentration limit as soon as technically practicable. The plan is subject to U.S. EPA's review, comment, and approval, but U.S. EPA shall not approve the plan without first consulting with Georgia EPD. Upon approval

-17-

by U.S. EPA the Defendants shall implement the approved plan. U.S. EPA approval of the plan does not relieve the Defendants from the obligation of meeting ceiling concentration limits in the event the plan is unsuccessful.

37.    When the Defendants cannot demonstrate that monitoring results are below the levels in Paragraphs 34(a) and 35, the Defendants shall be excused from further action under this Consent Decree to reduce the contaminant concentrations below required levels if they can demonstrate that the exceedance is due to a contaminant that was never land applied or disposed of in Area A. In addition, the Defendants shall not be required to reduce contaminant levels below background, when background is measured in wells upgradient from the location, and when U.S. EPA has approved the construction and location of the background wells.

38.    When the Defendants are required to submit a plan under this Section for review, comment, and approval, U.S. EPA shall have the right to take one or more of the following actions:   (a) to approve the plan in whole or in part; (b) to disapprove the plan in whole or in part; (c) to require the Defendants to modify the plan; and (d) to modify the plan. However, U.S. EPA shall not modify a submission without first providing the Defendants at least one notice of deficiency and an opportunity to cure the deficiency within 20 days, except where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate bad faith, or a lack of effort to submit an acceptable plan. The provisions of this Paragraph do not apply to submissions made pursuant to General Permit No. GAR100000.

39.    The Defendants shall implement all approved and modified plans and portions of plans on the schedule approved by U.S. EPA. The Defendants may invoke dispute resolution on

-18-

JOHNSON_0132087

any modifications made by U.S. EPA. The provisions of this Paragraph do not apply to submissions made pursuant to General Permit No. GAR100000.

40.    If U.S. EPA disapproves a plan or requires modifications to a plan, the Defendants shall correct the deficiencies and re-submit the plan to U.S. EPA for review, comment, and approval within 20 days, or a longer period specified by U.S. EPA. The Defendants may invoke dispute resolution with regard to U.S. EPA's disapproval of a plan and with regard to any modifications required by U.S. EPA.

## X.  CIVIL PENALTY

41.    The Defendants shall pay a civil penalty of $6 million to the United States within sixty days after entry of the Consent Decree. The Defendants' obligation to pay this amount is joint and several. The Defendants shall pay this amount to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing the U.S.A.O. file number. The Financial Litigation Unit of the United States Attorney's Office for the Northern District of Georgia will provide instructions for payment after the Consent Decree is lodged. At the same time payment is made, the Defendants shall send notice of payment by first class mail to the United States and EPA, as provided in Section XVII of this Consent Decree.

## XI.  QUALITY ASSURANCE, SAMPLING, DATA ANALYSIS, AND INFORMATION GATHERING

42.    The Defendants shall use analytical procedures, sample containers, sample preservation techniques, and sample holding times that are specified in 40 C.F.R. Part 136. The EPA approved methods used must be applicable to the concentration ranges of the samples.

43.    Upon request, the Defendants shall allow split or duplicate samples to be taken by

JOHNSON_0132088

U.S. EPA and Georgia EPD or their authorized representatives, and shall provide U.S. EPA and Georgia EPD upon request with the dates and times when samples will be collected. In addition, U.S. EPA and Georgia EPD shall have the right to take any additional samples that U.S. EPA and Georgia EPD deem necessary.

44.    Upon request by a Plaintiff, the Defendants shall provide all non-privileged information and documents reasonably calculated to lead to admissible evidence on the issue of Defendants' compliance with the Consent Decree. The Plaintiffs may each request information in any form allowed by the Federal Rules of Civil Procedure (e.g., interrogatories, depositions, document requests), and Defendants shall respond as provided for and in the time frames imposed by the Federal Rules of Civil Procedure. The discovery rights provided in this Paragraph are in addition to any other rights available in this Consent Decree or other applicable law.

45.    Notwithstanding any provision of this Consent Decree, the United States and Georgia EPD hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under all applicable statutes or regulations.

## XII. DISPUTE RESOLUTION

46.    A Party shall invoke the dispute resolution procedures of this Section by notifying all other parties in writing of the matter(s) in dispute and of the Party's intention to resolve the dispute under this Section. The Parties shall then attempt to resolve the dispute informally for a period of thirty (30) calendar days from the date of the notice. Notice shall be sent to U.S. EPA, the United States, and the State of Georgia in accordance with Section XVII of this Consent Decree. The period for informal negotiations may be extended beyond thirty (30) days by

JOHNSON_0132089

written agreement of the Parties to the dispute.

47.    When a dispute concerns the adequacy of a submittal requiring U.S. EPA or Georgia EPD approval under this Consent Decree (e.g., if U.S. EPA or Georgia EPD decides to reject or modify such a submittal), the Defendants shall establish a documentary record containing all the evidence supporting the parts of the submittal in dispute and provide that record to U.S. EPA and Georgia EPD before the period for informal negotiations ends.

48.    If a dispute cannot be resolved by the Parties by the end of the period for informal negotiations, U.S. EPA and Georgia EPD shall provide their position(s) on the issues in dispute and the reasons therefor in writing to the Defendants.  Unless and until overturned or modified by the Court, the Defendants shall comply with U.S. EPA and Georgia EPD's written position(s) on the issues in dispute. If U.S. EPA and Georgia EPD provide the Defendants with inconsistent positions on the issues in the dispute, the Defendants obligation to perform an action affected by the inconsistent position(s) shall be stayed until the dispute is resolved.

49.    The Defendants may petition the Court to review U.S. EPA and/or Georgia EPD's position(s) by filing a petition with the Court within fifteen (15) days of receiving U.S. EPA and Georgia EPD's written position(s) on the issues in dispute.  The petition shall set forth the nature of the dispute with a proposal for its resolution.  Within thirty (30) days of receiving a petition filed with the Court pursuant to this Paragraph, any opposing Party may file a response, which may include an alternate proposal for resolution of the dispute.  When U.S. EPA and Georgia EPD are opposing a petition filed by the Defendants, they shall include in their opposition brief detailed notice of all evidence they intend to rely upon during the proceeding.

50.    In any dispute concerning the adequacy of a submittal requiring U.S. EPA or

-21-

Georgia EPD approval under this Consent Decree (e.g., if U.S. EPA or Georgia EPD decides to reject or modify such a submittal), the Defendants shall not present evidence to the Court (without U.S. EPA and Georgia EPD consent) unless the evidence is contained in the record presented to U.S. EPA and Georgia EPD during the period for informal negotiations. This provision does not preclude the Defendants from presenting witnesses for the purpose of explaining technical matters in the record, or from rebutting evidence outside the record presented by an opposing party. The limitations of this Paragraph do not apply to the Plaintiffs.

51.    The legal standard applying to disputes arising under or with respect to this Consent Decree shall be the standard provided by applicable law. Except as provided in this Consent Decree or agreed to in writing by the parties, submission of any matter to the Court for resolution shall not extend any of the deadlines set forth in this Consent Decree.

52.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Defendants under this Consent Decree, not directly in dispute, unless U.S. EPA and Georgia EPD agree. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Defendants do not prevail on the disputed issue, stipulated penalties may be assessed and, if assessed, shall be paid as provided in Section XIII (Stipulated Penalties). In the event that the Defendants do prevail on the disputed issue, stipulated penalties shall not be assessed for the disputed obligation.

-22-

## XIII. STIPULATED PENALTIES

53.     Stipulated penalties shall be paid within thirty days of receiving a written demand from either U.S. EPA or Georgia EPD. Except for the stipulated penalty applying to delayed payment of the civil penalty, fifty percent of each payment due under this Section shall be made to the United States and fifty percent shall be paid to the State of Georgia.   The stipulated penalty for delayed payment of the civil penalty is due only to the United States. U.S. EPA or Georgia EPD may, in its sole and unreviewable discretion, waive all or part of its portion of a stipulated penalty. In addition to the penalties set forth below, the United States and State of Georgia may apply directly to the Court to obtain statutory penalties for any violation of the Clean Water Act, regulations promulgated under the Act, or any LAS or NPDES permit issued to the Defendants. In such a proceeding, the Court may consider any penalties the Defendants have previously paid under this Section.

54.     The Defendants shall be subject to the following stipulated penalties if they fail to pay on time the civil penalty described in Section X:

| Period of Violation | Penalty Per Day Per Violation |
|---|---|
| 1 - 14 days | $1,000 |
| 15 - 30 days | $3,000 |
| Over 30 days | $5,000 |

55.     The Defendants shall be subject to the following stipulated penalties if they fail to conduct a Complete Sampling Event or Complete Inspection of an Industrial User or a Significant Industrial User within 365 days after the last Complete Sampling Event or Complete Inspection of that Industrial User or Significant Industrial User.   The Defendants have performed

-23-

JOHNSON_0132092

a "Complete Inspection" when they have fully complied with the inspection, sampling. and

recordkeeping requirements currently set forth in Chapters 3.2. 3.3, and 3.4 of the approved

Industrial Pretreatment Program Standard Operating Procedures, or these requirements as they

may be amended in the future.  A "Complete Sampling Event" occurs when the Defendants have

collected and analyzed samples for all pollutant parameters in the pretreatment permit at all

permitted outfalls of an Industrial User or Significant Industrial User.   Stipulated penalties shall

begin to accrue on the 366th day after the last Complete Sampling Event or Complete Inspection,

and shall end when a Complete Sampling Event or Complete Inspection has occurred.

| Period of Violation | Penalties Per Day Per Violation |
|---|---|
| 1 - 14 days | $ 500 per day |
| 15 - 30 days | $ 1,000 per day |
| over 30 days | $ 3,000 per day. |

56.    The Defendants shall be subject to the following stipulated penalties if they fail to

produce all documentation and data base entries required by the Approved Pretreatment Program

for each facility reviewed during an audit conducted under Paragraph 11 of this Consent Decree:

$500 per day per facility, beginning on the day of the audit and ending when the documentation

is received by each agency conducting the audit.

57.    The Defendants shall be subject to the following stipulated penalties if they fail to

issue or reissue any Industrial User permits by the date the permit is due to expire.  These

stipulated penalties begin on the day after the permit expires and end on the day the permit is

issued in final form.

JOHNSON_0132093

| Period of Violation | Penalties Per Day for Each Industrial User |
|---|---|
| 1-14 days | $500 per day |
| 15 - 30 days | $1,000 per day |
| over 30 days | $3,000 per day. |

58.    The Defendants shall be subject to the following stipulated penalties if they fail to initiate an effective enforcement action against an Industrial User or Significant Industrial User who violates its pretreatment permit within thirty days after Dalton Utilities learns of the violation.  An "effective" enforcement action means an enforcement action that returns an Industrial User or Significant Industrial User to compliance. or that places the violator on an enforceable compliance schedule, within ninety days after the Defendants receive notice of the violation.  These stipulated penalties begin 31 days after Dalton Utilities learns of the violation and end on the day that an effective enforcement action is initiated.

| Period of Violation | Penalties Per Day For Each Industrial User |
|---|---|
| 1-14 days | $500 |
| 15-30 days | $1,000 |
| over 30 days | $3,000. |

59.    The Defendants shall be subject to the following stipulated penalties if they fail to submit a pretreatment report (e.g., an annual report) to Georgia EPD by the due date specified in the Approved Pretreatment Program. LAS permit, or an NPDES permit.  These stipulated penalties begin on the day after the due date and end on the day Georgia EPD receives the pretreatment report.

-25-

JOHNSON_0132094

| Period of Violation | Penalties Per Day For Each Report |
|---|---|
| 1-14 days | $500 |
| 15-30 days | $1,000 |
| over 30 days | $3,000. |

60.    The Defendants shall be subject to the following stipulated penalties if they fail to complete a collection system map that identifies manholes and pump station locations, flow direction, and sizes of all pipes within 30 days after entry of the Consent Decree, or if they fail to complete an updated map within 365 days after entry of the Consent Decree:

| Period of Violation | Penalties Per Day |
|---|---|
| 1-14 days | $500 |
| 15-30 days | $1,000 |
| over 30 days | $3,000. |

61.    The Defendants shall be subject to the following stipulated penalties if they fail to perform an action required under Paragraph 18 of Section VII of this Consent Decree (Collection System):

| Period of Violation | Penalties Per Day For Each Task Required By the Auditing Agency |
|---|---|
| 1-14 days | $500 |
| 15-30 days | $1,000 |
| over 30 days | $3,000. |

62.    The Defendants shall be subject to the following stipulated penalties if they fail to provide a complete oral notice of an overflow, as required in Paragraph 19 of this Consent

JOHNSON_0132095

Decree, within 24 hours after the Defendants learned or should have learned of the overflow: S500 per overflow.

63.     The Defendants shall be subject to the following stipulated penalties if they fail to provide a complete written or electronic report of an overflow, as required in Paragraph 20 of this Consent Decree, within five working days after the Defendants learns or should have learned of the overflow:

| Period of Violation | Penalties Per Day For Each Late Report |
|---|---|
| 1-14 days | $1,000 |
| 15-30 days | $2,000 |
| over 30 days | $3,000. |

64.     The Defendants shall be subject to the following stipulated penalties if they fail to submit any plan, report, or map, or fail to comply with any plan or report required by Section IX of this Consent Decree (Sludge):

| Period of Violation | Penalties Per Day Per Violation |
|---|---|
| 1-14 days | $500 |
| 15-30 days | $1,000 |
| over 30 days | S3,000. |

A plan, report, and map shall be considered timely if it is submitted by the due date and if it fully complies with the requirements of the Consent Decree.

65.     The Defendants shall be subject to the following stipulated penalties if they land apply or dispose of sewage sludge in Area "A", or fail to remove sludge residues as required by Paragraph 31 of the Consent Decree:

-27-

JOHNSON_0132096

| Period of Violation | Penalties Per Day For Each Day Sludge Remains in Area "A" in Violation of the Consent Decree |
|---|---|
| 1-14 days | $500 |
| 15-30 days | $1,000 |
| over 30 days | $3,000. |

66.    The Defendants shall be subject to the following stipulated penalties if they fail to isolate and disable the sludge distribution piping as required in Paragraph 28 of this Consent Decree:

| Period of Violation | Penalties Per Day Per Violation |
|---|---|
| 1-14 days | $500 |
| 15-30 days | $1,000 |
| over 30 days | $3,000. |

67.    The Defendants shall be subject to the following stipulated penalties for each violation of General Permit No. GAR100000, with respect to the removal of biosolids on the 100 year flood plain:

| Period of Violation | Penalty Per Day Per Violation |
|---|---|
| 1 - 14 days | $500 |
| 15-30 days | $1,000 |
| over 30 days | $3,000. |

68.    The Defendants shall be subject to the following stipulated penalties if they fail to collect and analyze any sample required under Paragraph 22 of Section VIII (LAS) of this Consent Decree according to the schedule required under Section VIII.

-28-

JOHNSON_0132097

| Number of Samples Not Collected and Analyzed Since December 15, 2000 | Penalty Per Sample |
|---|---|
| 1 - 10 | $500 |
| 11 - 30 | $750 |
| 31 and over | $1,000. |

69.     The Defendants shall be subject to the following stipulated penalties if they do not meet the performance limits listed in Paragraph 24 of Section VIII (LAS ):

| Number of Days in which any Performance Limit has not been Met after the Effective Date | Penalty Per Day for Each Performance Limit Not Met |
|---|---|
| 1 - 10 | $500 |
| 11- 30 | $750 |
| 31 and over | $1,000. |

Not meeting a 30 day geometric mean limit is equivalent to 30 days of not meeting a performance limit.  Penalties will not be due if the Defendants can demonstrate that a Force Majeure event under Section XIV prevented the Defendants from meeting the performance limits in Paragraph 24.

70.     The Defendants shall be subject to the following stipulated penalties if they fail to comply with any other requirement of this Consent Decree.  Stipulated penalties shall accrue beginning on the day the task should have been completed and end when task is done in accordance with requirements imposed by this Consent Decree.

| Period of Violation | Penalties Per Day Per Violation |
|---|---|
| 1 - 14 days | $250 |

-29-

JOHNSON_0132098

| 15 - 30 days | $500 |
| over 30 days | $1,000. |

71.     Payment of stipulated penalties under this Section shall be in addition to any other rights or remedies which may be available to the United States or its agencies or the State of Georgia or its agencies by reason of the Defendants' failure to comply with requirements of this Consent Decree, and any applicable Federal, State, or local laws, regulations, or applicable permits.

72.     Stipulated civil penalties shall be paid to the United States by submitting a check payable to "Treasurer, the United States of America," and tendering the check to the United States Attorney for the Northern District of Georgia. The current address for the United States' Attorney's office is Richard Russell Federal Building, 75 Spring Street, S.W., Suite 1800, Atlanta, Georgia 30335. Stipulated penalties shall be paid to the State of Georgia by submitting a check payable to the State of Georgia and tendered to Georgia Environmental Protection Division, Permitting, Compliance and Enforcement Program, 4220 International Parkway, Suite 101, Atlanta, Georgia 30354. Copies of the certified or cashier's check and the transmittal letter shall be sent simultaneously to the following people:

> Chief, Environmental Enforcement Section
> United States Department of Justice
> Post Office Box 7611
> Washington, D.C. 20044-7611

and to

> Director, Water Management Division
> U.S. Environmental Protection Agency, Region 4
> 61 Forsyth Street, S.W.
> Atlanta, Georgia 30303

-30-

JOHNSON_0132099

and to

Chief. Environmental Section
State of Georgia. Dept. of Law
40 Capitol Square, S.W.
Atlanta. Georgia 30334.

73.    In the event that a stipulated penalty is not paid within 30 days of the written

demand for payment. the stipulated civil penalty shall be paid with interest from the original due

date to the date of payment. at the statutory judgment rate set forth at 28 U.S.C. § 1961(a).

## XIV. FORCE MAJEURE

74.    "Force Majeure" for the purposes of this Consent Decree is defined as an event

arising from causes beyond the control of the Defendants or of any entity employed by the

Defendants, including, but not limited to, their consultants and contractors, which delays or

prevents the performance of an obligation under this Consent Decree, despite the Defendants'

best efforts to fulfill the obligation.  The requirement that the Defendants exercise "best efforts to

fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event

and best efforts to address the effects of any potential Force Majeure event (1) as it is occurring

and (2) following the potential Force Majeure event, such that delay is minimized to the greatest

extent possible.  Force Majeure does not include financial inability to perform an obligation

required by this Consent Decree.  Notwithstanding any other provision in this Consent Decree.

Force Majeure is not a defense to compliance with obligations imposed by the Clean Water Act.

federal regulations. or applicable permits. even when those obligations are incorporated into this

Consent Decree.

75.    Defendants shall be deemed to know of any circumstance of which the

-31-

JOHNSON_0132100

Defendants. any entity controlled by the Defendants. or the Defendants' contractors knew or should have known.

76.     When circumstances are occurring or have occurred which may delay the completion of any requirement of this Consent Decree. whether or not due to a Force Majeure event. the Defendants shall so notify U.S. EPA and Georgia EPD in writing. within fifteen (15) days after the Defendants learn. or in the exercise of reasonable diligence under the circumstances should have learned. of the delay or anticipated delay.  The notice shall describe in detail the basis for the Defendants' contention that it experienced a Force Majeure delay. the anticipated length of the delay, the precise cause or causes of the delay. the measures taken or to be taken to prevent or minimize the delay, and the timetable by which those measures will be implemented. Failure to so notify U.S. EPA and Georgia EPD shall constitute a waiver of any claim of Force Majeure as to the event in question.

77.     If U.S. EPA and Georgia EPD find that a delay in performance is, or was. caused by a Force Majeure event, they shall extend the time for performance, in writing, for a period to compensate for the delay resulting from such event and stipulated penalties shall not be due for such period.  In proceedings on any dispute regarding a delay in performance. the dispute resolution provisions of Section XII shall apply. and the Defendants shall have the burden of proving that the delay is, or was, caused by a Force Majeure event, and that the amount of additional time requested is necessary to compensate for that event.

78.     Compliance with a requirement of this Consent Decree shall not by itself constitute compliance with any other requirement.  An extension of one compliance date based on a particular event shall not automatically extend another compliance date or dates.  The

JOHNSON_0132101

Defendants shall make an individual showing of proof regarding the cause of each delayed incremental step or other requirement for which an extension is sought. The Defendants may petition for the extension of more than one compliance date in a single request.

## XV. CLAIMS RESOLVED IN THE SETTLEMENT

79.    In consideration of the actions that will be performed and the payments that will be made by the Defendants under the terms of the Consent Decree, the United States and State of Georgia state the following:

a. This Consent Decree resolves the civil claims raised in the Complaint under the Clean Water Act for discharges of pollutants from the Defendants' collection system occurring prior to January 1, 2000;

b. This Consent Decree resolves the civil claims raised in the Complaint under the Clean Water Act for discharges of pollutants from the Defendants' land application system occurring prior to January 1, 2000;

c. This Consent Decree resolves the civil claims raised in the Complaint under the Clean Water Act for violations of 40 C.F.R. Part 503 (concerning the use and disposal of sewage sludge) occurring prior to January 1, 2000; and

d. This Consent Decree resolves the civil claims raised in the Complaint under the Clean Water Act for violations of 40 C.F.R. Part 403 (concerning pretreatment requirements) occurring prior to January 1, 2000, or for violations of pretreatment requirements incorporated in LAS Permit No. GA02-056 occurring prior to January 1, 2000.

80.    This Consent Decree does not resolve, and the United States and State of Georgia expressly reserve, any and all claims for criminal violations, as well as all civil claims for

-33-

violations not expressly resolved above.

## XVI. CERTIFICATION OF SUBMISSIONS

81.    The Defendants shall maintain copies of any underlying research and data in its

possession, custody or control for any and all documents, reports, or permits submitted to U.S.

EPA and/or Georgia EPD pursuant to this Consent Decree for a period consistent with the

requirements of applicable law, or until termination of the obligation to which the research or

data pertains, whichever is later.  The Defendants shall also require any independent contractor(s)

implementing this Consent Decree to retain such materials for the same period.  In all notices,

documents or reports submitted to U.S. EPA and/or Georgia EPD pursuant to this Consent

Decree, the Defendants shall, by a senior management official of Dalton Utilities, sign and

certify such notices, documents and reports as follows:

> I certify under penalty of law that this document and all attachments were
> prepared under my direction or supervision in accordance with a system designed
> to assure that qualified personnel properly gather and evaluate the information
> submitted.  Based on my inquiry of the person or persons who manage the system,
> or those persons directly responsible for gathering such information, the
> information submitted is, to the best of my knowledge and belief, true, accurate
> and complete.  I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations.

## XVII. FORM OF NOTICE

82.    Unless otherwise specified, or as may changed from time to time, all reports,

notices, or any other written communications required to be submitted under this Consent Decree

shall be sent to the respective parties at the following addresses:

-34-

JOHNSON_0132103

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7611
Washington, D.C. 20044
Reference DOJ Case No. 90-5-1-1-4436

United States Attorney
Northern District of Georgia
Richard Russell Building
75 Spring Street, S.W., Suite 1800
Atlanta, Georgia 30335

As to EPA:

Chief
Water Programs Enforcement Branch
Water Management Division
U.S. Environmental Protection Agency,
  Region 4
Atlanta Federal Center
61 Forsyth Street
Atlanta, Georgia  30303

As to the State of Georgia:

Department of Law
State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia 30334

As to Georgia EPD:

Georgia Environmental Protection Division
Permitting, Compliance and Enforcement Program
4220 International Parkway, Suite 101
Atlanta, Georgia 30354.

Notifications to or communications with EPA, the United States Attorney or the

Department of Justice ("DOJ"), Georgia EPD, or the State or Georgia shall be deemed submitted

-35-

JOHNSON_0132104

on the date they are postmarked and sent by certified mail, return receipt requested or deposited with an overnight mail/delivery service. Notifications to or communications with the Defendants shall be deemed received three days after the date they are postmarked.

## XVIII. FAILURE OF COMPLIANCE

83. The United States and the State of Georgia do not, by consent to entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will result in compliance with the provisions of the Clean Water Act, 33 U.S.C. § 1251 et seq. Notwithstanding U.S. EPA's and Georgia EPD's review and approval of any plans formulated pursuant to this Consent Decree, Defendants shall remain solely responsible for compliance with the terms of the Clean Water Act and this Consent Decree.

## XIX. COSTS OF SUIT

84. Each party shall bear its own costs and attorney's fees in this action. Should Defendants subsequently violate the terms and conditions of this Consent Decree, then the Defendants shall be liable to the United States for any costs and attorney's fees incurred by the United States in any actions against them for noncompliance with this Consent Decree.

## XX. EFFECTIVE DATE

85. The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XXI. TERMINATION OF WORK PERTAINING TO DEFENDANTS' PRETREATMENT PROGRAM

86. Upon motion filed with the Court by the United States, State of Georgia, or the Defendants, the Court may terminate its supervision of obligations under Section VI

JOHNSON_0132105

(Pretreatment) when (a) the Defendants have paid all penalties and interest required by this Consent Decree; (b) none of the omissions listed in subparagraphs 12(a), (b), (c), (d), or (e) of Section VI (Pretreatment) occurred within the twenty-four month period immediately preceding the filing of the motion for termination, regardless of whether the Consent Decree was in effect during that entire period; and (c) there are no pending disputes concerning Section VI (Pretreatment).  The parties stipulate, however, that the obligations listed in Paragraphs 8 and 10 remain federally enforceable under the CleanWater Act after termination of this Consent Decree.

## XXII.  TERMINATION OF WORK PERTAINING TO DEFENDANTS' LAS

87.    Upon motion filed with the Court by the United States, State of Georgia, or the Defendants, the Court may terminate the terms of this Consent Decree with regard to the Defendants' LAS ninety days after all of the following conditions have been met: (a)  the State of Georgia has issued a final, effective NPDES permit pertaining to the Defendants' LAS, or has taken final agency action not to issue such a permit; (b) any and all administrative and judicial challenges have been concluded regarding Georgia's final decision to issue or not issue an NPDES permit; (c) the Defendants have completed any and all corrective action required by Section VIII of this Consent Decree (LAS); (d) the Defendants have paid all penalties and interest required by this Consent Decree; and (e) there are no pending disputes concerning the obligations in Section VIII of this Consent Decree (LAS).

## XXIII.  TERMINATION OF WORK PERTAINING TO DEFENDANTS' COLLECTION SYSTEM

88.    Upon motion filed with the Court by the United States, Georgia, or the Defendants, the Court may terminate the terms of this Consent Decree with regard to the

-37-

JOHNSON_0132106

Defendants' collection system after all of the following conditions have been met:  (a) at least 12 months have elapsed since the effective date of this Consent Decree; (b) the Defendants have completed all obligations imposed by or through Paragraphs 14, 18, 19, 20, and 21; (c) the Defendants demonstrate that all of the actions they took pursuant to Paragraphs 18 and 21 are reasonably expected to (i) prevent discharges to waters of the State from the collection system, other than discharges caused by Force Majeure events, (ii) to respond to emergencies involving the collection system, and (iii) to protect Dalton Utilities' wastewater treatment facilities from flows that interfere with the facilities' proper operation for at least 12 months following termination; (d) there are no pending disputes concerning Section VII of this Consent Decree (Collection System); and (e) the Defendants have paid all penalties and interest required by this Consent Decree.

## XXIV.  TERMINATION OF WORK PERTAINING TO THE UNITED STATES' SLUDGE CLAIMS

89.      Upon motion filed with the Court by the United States, Georgia, or the Defendants, the Court may terminate the terms of this Consent Decree with regard to Section IX (Sludge), except for terms imposing a permanent injunction, ninety days after all of the following conditions have been met:  (a) the Defendants have completed all obligations under Section IX (Sludge); (b) the Defendants have complied with all prohibitions under Section IX (Sludge); (c) the Defendants have paid all penalties and interest required by this Consent Decree; and (d) there are no pending disputes concerning Section IX of this Consent Decree (Sludge).

## XXV.  RETENTION OF JURISDICTION

90.      This Court retains jurisdiction over both the subject matter of this Consent Decree

-38-

JOHNSON_0132107

and the Defendants for the duration of the performance of the terms and provisions of this

Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time

for such further order, direction, and relief as may be necessary or appropriate for the

implementation or modification of this Consent Decree, or to effectuate or enforce compliance

with its terms, or to resolve disputes in accordance with Section XII (Dispute Resolution) hereof.

## XXVI. APPENDICES

91.    The following appendices are attached to and incorporated into this Consent

Decree:

Appendix 1, LAS Water Quality Characterization Plan and related correspondence

Appendix 2, Map of LAS.

## XXVII. MODIFICATION

92.    Schedules specified in this Consent Decree for completion of the Work may be

modified by agreement of U.S. EPA and Georgia EPD and the Defendants. All such

modifications shall be made in writing.

93.    Nothing in this Decree shall be deemed to alter the Court's power to enforce,

supervise or approve modifications to this Consent Decree.

## XXVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

94.    This Consent Decree shall be lodged with the Court for a period of not less than

thirty (30) days for public notice and comment in accordance with the policy in 28 C.F.R. § 50.7.

The United States reserves the right to withdraw or withhold its consent if the comments

regarding the Consent Decree disclose facts or considerations which indicate that the Consent

Decree is inappropriate, improper, or inadequate. Defendants consent to the entry of this

-39-

JOHNSON_0132108

Consent Decree without further notice.

95.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXIX.  SIGNATORIES/SERVICE

96.     Each undersigned representative of the Defendants to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

97.     The Defendants hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Defendants in writing that it no longer supports entry of the Consent Decree.

SO ORDERED THIS 3̸ DAY OF M h d, 2001.

United States District Judge

JOHNSON_0132109

WE HEREBY CONSENT to the entry of this Consent Decree in United States and State of Georgia v. Dalton Utilities, et al., Civil Action No. 4:98-CV-191-HLM, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR PLAINTIFF THE UNITED STATES OF AMERICA:

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources Division

PAUL G. WOLFTEICH
Senior Counsel
Environmental Enforcement Section
U.S. Department of Justice
Box 7611
Washington, D.C. 20044
(202) 514-3482

JOHNSON_0132110

WE HEREBY CONSENT to the entry of the Consent Decree in United States of America et al. v. Dalton Utilities and the Water, Light, and Sinking Fund Commission of the City of Dalton, Georgia, Civil Action No. 4:98-CV-191-HLM, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR PLAINTIFF THE UNITED STATES OF AMERICA

DATE: 1/16/01

STEVEN A. HERMAN
Assistant Administrator for Enforcement
    and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20460

DATE: DEC 22 2000

JOHN H. HANKINSON, JR.
Regional Administrator
United States Environmental Protection Agency
Region 4
61 Forsyth Street
Atlanta, Georgia 30303

JOHNSON_0132111

Defendants Dalton Utilities and the Water, Light and Sinking Fund Commission of the City of Dalton, Georgia hereby agree to the terms of and consent to entry of the foregoing Consent Decree in *United States and State of Georgia v. Dalton Utilities, et al.*, Civil Action No. 4:98-CV-191-HLM.

Signature: _____

Name (print): Don Cope

Title: President & Chief Executive Officer

Address: 1200 V.D. Parrott Jr. Pkwy
P.O. Box 869
Dalton, GA 30722-0869

-41-

JOHNSON_0132112

WE HEREBY CONSENT to the entry of this Consent Decree in

United States and State of Georgia v. Dalton Utilities, et al.,

Civil Action No. 4:98-CV-191-HLM, subject to the public notice

and comment requirements of 28 C.F.R. § 51.7.


FOR PLAINTIFF THE STATE OF GEORGIA:

                         THURBERT E. BAKER    033887
                         Attorney General

                         ROBERT S. BOMAR    066400
                         Deputy Attorney General

                         ISAAC BYRD        101150
                         Senior Assistant Attorney General

                         LEE ANN DE GRAZIA    216225
                         Assistant Attorney General
                         State of Georgia
                         Department of Law
                         40 Capitol Square, S.W.
                         Atlanta, Georgia 30334-1300
                         (404) 656-7618

JOHNSON_0132113