# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JARROD JOHNSON, individually, and on Behalf of a Class of persons similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY, *et al.*,<br><br>Defendants. | Case No. 4:20-cv-008-AT |

## NON-PARTY THE CARPET AND RUG INSTITUTE, INC.'S MOTION FOR PROTECTIVE ORDER AGAINST PLAINTIFF'S 30(B)(6) DEPOSITION NOTICE AND COMBINED BRIEF IN SUPPORT

Non-party The Carpet and Rug Institute, Inc. ("CRI"), through its undersigned counsel, respectfully moves this Court pursuant to Rule 26(c) for an order protecting it from certain topics in the Rule 30(b)(6) deposition notice issued to CRI by Plaintiffs.

## INTRODUCTION

CRI is a trade association for the North American carpet and rug industry. Though it is not a party here, CRI has participated in discovery in this case, as well as in five related cases pending in state courts in Georgia and Alabama (the

"Actions"),[1] since Fall 2020. At its own expense, CRI has produced thousands of documents to Plaintiff and has made two witnesses available for hours of depositions testimony about CRI and its activities related to the chemicals at issue in this case.

Despite obtaining such extensive discovery from a non-party, Plaintiff now seeks another bite at the apple through a 30(b)(6) deposition of CRI. While CRI has no objection to providing necessary testimony on relevant topics, Plaintiff's deposition notice includes topics that improperly seek (1) to depose CRI about its political and lobbying activities protected by the First Amendment and (2) to elicit expert testimony from CRI about certain scientific and legal conclusions relevant to this suit.

Special Master C. A. González has already considered the parties' arguments concerning the scope of a 30(b)(6) deposition of CRI. On October 30,

---

[1]   Those five cases are: *The City of Rome, Georgia v. 3M Company, et al.*, No. 19CV02405JFL003, currently pending in the Superior Court of Floyd County, Georgia; *The Water Works & Sewer Board of the Town of Centre v. 3M Company, et al.*, and *The Water Works & Sewer Board of the City of Gadsden v. 3M Company, et al.*, both pending in the Superior Court of Whitfield County, Georgia; *The Water Works & Sewer Board of the Town of Centre v. 3M Company, et al.*, No. 13-CV-2017-900049, pending in the Circuit Court of Cherokee County, Alabama; and *The Water Works & Sewer Board of the City of Gadsden v. 3M Company, et al.*, No. 31-CV-2016-900676, pending in the Circuit Court of Etowah County, Alabama.

2022, he presented the parties with his proposal for a compromise between the parties' positions. CRI accepted that proposal, even though it did not include all of the restrictions that CRI had sought. But Plaintiff's counsel rejected the Special Master's proposal, and Plaintiff now intends to move forward with a 30(b)(6) deposition of CRI under the last revised deposition notice that they transmitted to CRI in September.

Because that notice includes topics that infringe on CRI's First Amendment rights and improperly seek expert testimony from CRI, this Court should grant this Motion and issue a protective order imposing reasonable limits on the scope of any 30(b)(6) deposition of CRI, consistent with the Special Master's proposal.

## BACKGROUND

CRI first began participating in discovery in this case in October 2020, when it made the first of its document production to Plaintiff Jarrod Johnson. Since then, CRI has produced more than 14,000 pages of documents. In addition to document discovery, Plaintiff has also deposed CRI's current president Joseph Yarbrough and CRI's former president Werner Braun. Between those two witnesses, Plaintiff obtained 12 hours of deposition testimony about CRI on a number of topics, including: (a) CRI's corporate and organizational structure, membership, and board composition, (b) the purpose and function of CRI, (c) CRI's lobbying efforts, (d)

the content of CRI's meeting minutes, (e) knowledge of, testing for, the presence of, and communications relating to, chemicals referred to as "PFAS" or "PFOS," and (f) CRI's communications and relationship with regulating agencies such as the Environmental Protection Agency ("EPA") and Dalton Utilities.

Despite obtaining thousands of documents from CRI and thoroughly deposing its current and former presidents, Plaintiff was not satisfied, and in March 2022, sought a 30(b)(6) deposition of CRI. Ex. 3, Declaration of Jarred Klorfein (hereinafter, "Klorfein Decl.") Ex. A.[2] CRI served its responses and objections to the notice on April 19, 2022.

Over the next seven months, CRI negotiated with counsel for Plaintiff Johnson and the plaintiffs in the other Actions (collectively, "Plaintiffs") about its objections to the scope of the 30(b)(6) notice. At various points in these negotiations, the parties have submitted disputes about the notice to Special Master

---

[2]  The notice for that deposition was issued in *The City of Rome, Georgia v. 3M Company* and then cross-noticed for the remaining Actions. Ex. 3, Klorfein Decl. at ¶ 2. In addition, the parties agreed that the notice would also apply for the instant case, consistent with the unified discovery strategy that the parties in this case and the Action had pursued to that point. *Id.* ¶ 3. The agreement concerning the notice is reflected in the parties' correspondence and in their negotiations over the deposition, as well as the parties' decision to seek guidance from Special Master C. A. González. *Id.* Because the original notice and the subsequent revised versions of that notice are effective for this case, this Court has jurisdiction to consider CRI's motion for protective order.

C. A. González. On May 18, 2022, CRI submitted a letter motion to quash the notice to the Special Master. *Id.* ¶ 4. After the completion of letter briefing, Special Master González held a hearing on the motion on July 7. *Id.* ¶ 6. After the hearing, he provided guidance to direct the course of further negotiations, and the parties continued to meet and confer on their disputes over the notice. *Id.* ¶ 7.

In August 2022, Plaintiff's counsel sought a second hearing from Special Master González, after another impasse in negotiations. *Id.* ¶ 10. That hearing was held on September 1, and after receiving additional guidance, the parties continued negotiations. *Id.* ¶¶ 10-11. On September 27, 2022, counsel for Plaintiff emailed CRI a draft revised deposition notice that was limited to only 5 topics and addressed many—but not all—of CRI's concerns (the "Notice"). Ex. 1.[3]

On October 12, CRI responded with a letter laying out its remaining concerns, namely that: (1) the Notice continued to seek testimony on CRI's political activities that are protected from disclosure by the First Amendment, (2) the Notice still contained certain overbroad or vague topics, (3) the Notice still sought scientific and legal opinions from CRI, and (4) Plaintiffs continued to

---

[3] The Notice, as transmitted to CRI, included redline revisions from Plaintiff's counsel. *See* Ex. 3, Klorfein Decl. Ex. L. For the Court's convenience, CRI has attached as Exhibit 1 to this Motion a copy of the Notice where all of Plaintiff's counsel's redline changes have been accepted.

5

predicate the revisions to the scope of the deposition on an agreement to designate all of Mr. Braun's deposition as 30(b)(6) testimony, which CRI was not willing to do. Ex. 3, Klorfein Decl. Ex. M at 1-2. CRI proposed a draft stipulation that would have addressed its concerns. *Id.*, Ex. N.

Plaintiff's counsel forwarded CRI's conferral letter to Special Master González the next day, and the Special Master held two additional hearings on the matter on October 17 and 26. *Id.* ¶¶ 15-16. On October 30, the Special Master sent the parties a revised stipulation and deposition notice and asked the parties whether they would agree to his proposed revisions (the "Special Master's Proposal"). *Id.* ¶ 16; Ex. 2.[4] The Special Master's Proposal reflected a compromise between Plaintiffs' position and CRI's position; neither side got everything they had asked for from the Special Master. While CRI was willing to accept the Proposal, the Plaintiffs rejected it and indicated that they intended to enforce the Notice. Ex. 3, Klorfein Decl. ¶ 17. On November 21, plaintiff in the *City of Rome* action filed a motion to compel compliance with the Notice.

---

[4]   The proposed notice and stipulation included the Special Master's revisions in redline. Ex. 3, Klorfein Decl. Ex. O.  For the Court's convenience, CRI has attached as Exhibit 2 to this Motion a copy of the notice and stipulation where all of the Special Master's track changes have been accepted.

6

While CRI believes that the law supports all of its objections to the Notice, CRI remains willing to accept the Special Master's Proposal as a reasonable compromise here. Accordingly, CRI now files this Motion and asks this Court to adopt the Special Master's Proposal, in order to protect CRI from infringement of its First Amendment rights and from having to provide improper unretained expert testimony.

## ARGUMENT AND CITATION TO AUTHORITIES

### I. Plaintiff improperly seeks to depose CRI about irrelevant political activities that are protected by the First Amendment.

Topic 2 in the Notice seeks testimony about "[t]he substance and purpose of CRI's lobbying and political efforts locally and nationally relating directly or indirectly to PFAS, including the amount(s) of political contributions (including PACs), and the money spent on these efforts each year." Ex. 1 at 5. This topic is an improper inquiry into CRI's protected First Amendment activities.

As the U.S. Supreme Court has long recognized, a First Amendment privilege arises—even in civil cases between private parties—where discovery requests seek information that, if disclosed, would chill the producing party's political or associational activities. *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 466 (1958) (recognizing First

7

Amendment privilege against compelled disclosure of NAACP membership lists).[5] This privilege is not limited to an organization's membership list; it also extends to any information that implicates First Amendment freedoms, including "the freedom to protest policies and programs to which one is opposed, and the freedom to organize, raise money, and associate with other like-minded persons so as to effectively convey the message of the protest." *Int'l Action Ctr. v. United States,* 207 F.R.D. 1, 2 (D.D.C. 2002).

To determine whether the First Amendment privilege applies, courts balance "the harm to first amendment values attendant upon disclosure" of the requested information against the serving party's "need for the information." *Australia/E. U.S.A. Shipping Conf. v. United States*, 537 F. Supp. 807, 809 (D.D.C. 1982), *vacated as moot*, No. 82-1516, 1986 WL 1165605 (D.C. Cir. Aug. 27, 1986) (collecting cases); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & its Locs. 1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590

---

[5]   *See also Buckley v. Valeo*, 424 U.S. 1 (1976) (recognizing privilege for contributor lists); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 557 (1963) (recognizing privilege for membership lists); *Bates v. City of Little Rock*, 361 U.S. 516, 527 (1960) (recognizing privilege for membership lists and financial contributions).

F.2d 1139, 1152 (D.C. Cir. 1978); *see also Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (5th Cir. 1980).

Here, topic 2 in the Notice plainly implicates the First Amendment, as it expressly seeks to depose CRI about "[t]he substance and purpose of CRI's lobbying and political efforts locally and nationally." Ex. 1 at 5. These are core political activities protected by the First Amendment, and CRI's exercise of its First Amendment rights would be chilled if it were forced to disclose political activities that it typically only discusses privately with its members. Ex. 4, Declaration of J. Yarbrough at ¶¶ 5-6; *see also Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) ("[T]he threat to First Amendment rights may be more severe in discovery than in other areas because a party may try to gain advantage by probing into areas an individual or a group wants to keep confidential.").

Plaintiff cannot show that this information is relevant to this case, let alone that Plaintiff's need for the information is weighty enough to justify a freewheeling examination of CRI's political activities. *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLW-DWB, 2007 WL 852521, at *4 (D. Kan. Mar. 16, 2007) (in suit between private actors, court denied motion to compel discovery of non-party's lobbying efforts, stating it could "interfere with [the non-

party's] internal organization and with its lobbying activities, and therefore would have a 'chilling effect' on the organization and its members."); *see also Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *1–2, 4 (E.D. Tex. Jan. 11, 2022) (granting plaintiff's protective order to protect from discovery the identification of the organization's members and collecting cases: "the Fifth Circuit has likewise recognized a First Amendment privilege when discovery requests implicate associational rights").

Here, the First Amendment privilege prevents any inquiry into CRI's political activities because such an inquiry would chill CRI's First Amendment activities and because any need Plaintiff may have for such testimony is minimal, if not non-existent. In considering this issue, the Special Master agreed that inquiry into the substance of CRI's lobbying efforts was inappropriate. In an attempt to reach a compromise between Plaintiff and CRI, the Special Master's Proposal revised topic 2: (1) to limit the topic to asking basic information about "who was lobbied, how they were lobbied, (*e.g.*, in person, by phone, by letter, by petition, etc.) and when they were lobbied," and (2) to prohibit Plaintiff from asking about political contributions, funds spent on lobbying, or the substance of lobbying discussions, unless such discussions are referenced in documents produced by CRI. Ex. 2 at 14.

Though the First Amendment privilege sweeps more broadly than the position outlined in the Special Master's Proposal, CRI believes that the Proposal reflects a reasonable compromise. Accordingly, CRI asks that this Court adopt the Proposal with respect to topic 2, in order to address the First Amendment problems raised by the Notice.

## II. Plaintiff improperly seeks unretained expert testimony from CRI.

Finally, topics 1 and 3 in the Notice seek to depose CRI on issues such as its "environmental policies and/or representations;" water pollution; wastewater testing; the presence of PFAS and PFCs in the waterways at issue in this case; and various health advisories and other documents issued by the EPA related to PFOA, PFOS, and PFAS. Ex. 1 at 5-6. CRI anticipates that Plaintiff will impermissibly seek unretained expert opinions from CRI on these issues in violation of Rule 45.

CRI's concern over the scope of Plaintiff's intended questions is well founded because, in prior depositions of CRI's current and former presidents, Plaintiff's counsel repeatedly asked witnesses to opine on key issues in this case. For example, Plaintiff's counsel asked Mr. Braun whether he agreed "that these are pretty serious health risks that are associated with drinking water that has PFOA and PFOS in it," whether "cancer is a serious health risk," and whether "developmental effects to fetuses are a serious health risk." Ex. 5, Braun Tr. at

11

51:8–54:23. Plaintiff's counsel asked similar questions of Mr. Yarbrough, including whether PFAS and PFOS "require a higher level of degree of care" in disposal. Ex. 6, Yarbrough Tr. at 124:11-24.

Plaintiff intends to ask these same types of questions in a 30(b)(6) deposition of CRI in an attempt to get favorable opinion statements on ultimate issues in this case. The Federal Rules do not permit such efforts. Fed. R. Civ. P. 45(d)(3)(B) (permitting courts to quash subpoenas that require "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party"). Plaintiff should not be permitted to ask CRI for its opinion about issues such as the health effects of the chemicals at issue in this case or the type of disposal regimen required for those chemicals. *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, No. 1:06-CV-0695-WSD, 2007 WL 4139466, at *5 (N.D. Ga. Nov. 14, 2007) (granting protective order and instructing that deposing party "may not seek to elicit testimony on . . . questions [that] require the deponent to answer from his general experience in the industry rather than his specific factual knowledge" as movant's employee); *see also In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 304 F.R.D. 379, 381 (S.D.N.Y. 2015) (denying motion to compel depositions of unretained physicians regarding research into effects of World Trade Center dust);

*Belcher v. Atl. Cap. Realty, LLC*, No. 6:08-cv-1989-Orl-28DAB, 2010 WL 11507340, at *2 (M.D. Fla. July 9, 2010) (denying motion to compel disclosure of appraisal reports from non-parties who had not been retained as experts); *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004 (CDL), 2010 WL 234797, at *3 (M.D. Ga. Jan. 14, 2010) (granting non-party's motion to quash in part to prohibit discovery of unretained expert opinions).

Once again, when considering this issue, the Special Master agreed with CRI and proposed that the parties enter a stipulation that limited Plaintiff to asking about whether CRI was aware of certain scientific studies or legal conclusions and prohibited Plaintiff from inquiring "about the scientific or legal validity of professional conclusions drawn by lawyers or scientists." Ex. 2 at 8. This Court should adopt the Special Master's Proposal and issue a protective order prohibiting Plaintiff from asking CRI any questions designed to elicit improper opinion testimony.

## **CONCLUSION**

For the reasons stated herein, this Court should issue an order protecting Non-Party The Carpet and Rug Institute from certain topics in the Rule 30(b)(6) deposition notice issued by Plaintiffs.

Respectfully submitted this 22nd day of November, 2022.

>/s/ *Michael A. Caplan*
>Michael A. Caplan
>Georgia Bar No. 601039
>Jarred A. Klorfein
>Georgia Bar No. 562965
>**CAPLAN COBB LLC**
>75 Fourteenth Street, NE, Suite 2700
>Atlanta, Georgia 30309
>Tel: (404) 596-5600
>Fax: (404) 596-5604
>mcaplan@caplancobb.com
>jklorfein@caplancobb.com
>
>*Counsel for Non-Party CRI*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing filing is prepared in Times New Roman 14-point font, one of the font and point selections approved by this Court in Local Rule 5.1(C).

This 22nd day of November, 2022.

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039
mcaplan@caplancobb.com

*Counsel for Non-Party CRI*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I caused a true and correct copy of the foregoing document to be filed with the clerk's office by this Court's CM/ECF system which will serve a true and correct copy of the same upon all counsel of record.

This 22nd day of November, 2022.

/s/ *Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039
mcaplan@caplancobb.com

*Counsel for Non-Party CRI*