# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON, individually and on behalf of a class of persons similarly situated, | |
| *Plaintiff,* | Civil Action No. 4:20-cv-00008 AT |
| v. | Judge Amy Totenberg |
| 3M COMPANY, *et al.*, | |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF
## 3M COMPANY'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................2

I.    Plaintiff's Nuisance Claims Fail For Three Reasons .......................2

    A.    3M Lacks Control Over The Alleged Nuisance......................2

    B.    3M's Sales Of PFAS Products Were Lawful........................6

    C.    3M Did Not Proximately Cause Johnson's Alleged Injury ................8

II.    Plaintiff's Claim For Abatement Of Nuisance Fails For Many Additional Reasons ..........................................................................11

    A.    Johnson Lacks Standing To Pursue The Requested Injunction.....................................................................................11

    B.    No Special Harm Supports The Injunction Request ...........14

    C.    The LAS Is An Unabatable Permanent Nuisance ...............15

    D.    Johnson Has An Adequate Legal Remedy..........................17

    E.    The Requested Injunction Is Unnecessarily Burdensome..................19

III.    The Economic Loss Rule Bars Johnson's Damages Claim ..........22

IV.    Other Grounds For Summary Judgment........................................25

CONCLUSION ..................................................................................25

# INTRODUCTION

With his negligence claims dismissed, Plaintiff Jarrod Johnson now asserts only nuisance claims against Defendant 3M Company based on its sale of products containing certain per- and poly-fluoroalkyl substances ("PFAS") to carpetmakers near Dalton, Georgia. Johnson allegedly faces increased water charges adopted by the City of Rome to pay for upgraded water treatment facilities capable of removing PFAS allegedly migrating from an upstream disposal site for carpetmaker waste. Johnson seeks compensatory damages for the water-charge increases, an injunction requiring a massive abatement project at the waste disposal site (Dalton Utilities' Land Application System, "LAS"), and punitive damages. The undisputed material facts do not support 3M liability for any of that relief.

To start, Johnson cannot prove the elements of his nuisance claims for damages or abatement. 3M has no control over the LAS, the source of the alleged nuisance, or the PFAS waste sent to it. 3M's product sales, which ended years ago, were lawful. And Johnson's alleged injury (increased water rates) results from intervening acts of others (Dalton Utilities, federal regulators, and Johnson himself).

Johnson has no right to the requested injunction for additional reasons. He lacks the standing and special harm required for that relief. The LAS is an unabatable nuisance. And the burdensome injunction is unnecessary and useless for Johnson.

Johnson's damages claim likewise fails under Georgia's economic loss rule. He has abandoned, and otherwise failed to support, any concrete injury beyond the increased water charges. Finally, without any basis for nuisance liability, punitive damages are unavailable.

Put simply, it is now clear that the allegations that saved Johnson's nuisance claims against 3M from dismissal are unfounded, and summary judgment should be entered for 3M.

## ARGUMENT

3M is entitled to judgment as a matter of law on the following grounds involving "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

## I.    Plaintiff's Nuisance Claims Fail For Three Reasons.

3M is entitled to summary judgment on both of Johnson's nuisance claims (Count Seven seeking damages and Count Eight seeking abatement) for three distinct reasons: (a) 3M does not control the alleged nuisance; (b) 3M has not acted unlawfully; and (c) 3M did not proximately cause Johnson's purported harm.

### A.    3M Lacks Control Over The Alleged Nuisance.

To start, Johnson's nuisance claims fail because the undisputed material facts establish that 3M has no control over the LAS operated by Dalton Utilities or PFAS moving from the LAS to the Oostanaula River intakes used by the City of Rome.

In Georgia and elsewhere, it is "an elementary principle of tort law" that "a nuisance claim may only be alleged against one who is in control of the nuisance creating instrumentality." *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, No. CIV.A. 85-126-3-MAC, 1986 WL 12447, at *6 (M.D. Ga. Mar. 9, 1986). Georgia cases therefore hold that "the essential element of nuisance is control over the cause of the harm." *Grinold v. Farist*, 643 S.E.2d 253, 255 (Ga. Ct. App. 2007).

To have sufficient control over the cause of harm, a defendant must be "the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." *Klingensmith v. Long Cnty.*, 833 S.E.2d 608, 615 (Ga. Ct. App. 2019). A defendant also must hold the "legal right to abate the nuisance." *Corp. of Mercer Univ.*, 1986 WL 12447, at *6; *see also Bodin v. Gill*, 117 S.E.2d 325, 330-31 (Ga. 1960) (reversing nuisance-abatement injunction against architects who had no right to enter property).

The undisputed, material facts show that 3M satisfies neither control requirement. 3M simply supplied certain PFAS-containing products to Dalton-area carpet manufacturers at certain times. Ex. A at 14-15 (Andrews Rep.); Ex. C ¶ 40 (Krock Rebuttal Rep.). Johnson makes no claim that 3M disposed of products or waste containing PFAS upstream from Rome. The evidence shows that carpet manufacturers discharged PFAS-containing wastewater to Dalton Utilities. Ex. A at

18 (Andrews Rep.); Ex. P at 1812:8-1814:21 (Rush Dep.). And Dalton Utilities then released the wastewater at the LAS, where it entered the watershed for the Conasauga River. Ex. A at 19-27 (Andrews Rep.). There is no evidence that 3M controlled the waste disposal practices of carpet manufacturers or Dalton Utilities or the design or operation of the LAS. Ex. M at 302:8-18 (Oxford Dep.).

3M also has never had any right to enter the LAS and undertake anything like the remediation project that Johnson proposes. Dalton Utilities owns and operates the LAS. Ex. A at 19-20 (Andrews Rep.). And in making decisions about the design and operation of the LAS, Dalton Utilities must adhere to permits issued by regulators that specify what it may and may not do in handling and discharging wastewater. Ex. P at 1770:3-1807:21 (Rush Dep.); Ex. B § 4 at 15-16 (Frankel Rep.). 3M cannot set foot on the LAS, much less transform its design and operation in the way Johnson desires.

Similar circumstances have led many courts applying Georgia law to reject nuisance claims because the defendant lacked control over the nuisance. *See, e.g.*, *Briggs & Stratton Corp. v. Concrete Sales & Servs., Inc.*, 971 F. Supp. 566, 573 (M.D. Ga. 1997) (manufacturer had no control over nuisance created by electroplater wastes because it had no right to enter electroplater's premises), *aff'd*, 211 F.3d 1333 (11th Cir. 2000); *Jordan v. S. Wood Piedmont Co.*, 805 F. Supp. 1575, 1582 (S.D.

Ga. 1992) (chemical supplier not liable for nuisance arising from customer's handling and disposal of supplied chemicals); *Corp. of Mercer Univ.*, 1986 WL 12447, at *6-7 (manufacturer not liable for asbestos nuisance on plaintiff's property where it had no right to abate nuisance); *Rymer v. Polo Golf & Country Club Homeowners Ass'n,* 780 S.E.2d 95, 102–03 (Ga. Ct. App. 2015) (summary judgment for homeowners' association on nuisance claim because it did "not own or control" relevant drainage facilities). Under those authorities, the record here shows that Johnson cannot meet his burden to prove that 3M controls the nuisance.

To be sure, this Court previously declined to dismiss the nuisance claims on lack-of-control grounds. Doc. 629 at 147-52 (MTD Order) (available at 563 F. Supp. 3d 1253). Applying the notice-pleading standard used at the Rule 12(b)(6) stage, the Court pointed to Complaint allegations that the Supplier Defendants continued to provide carpet manufacturers with PFAS-containing products. *Id.* at 148-49, 151-52. The Court also assumed that the Supplier Defendants could abate the nuisance by refusing to sell PFAS-containing products. *Id.* at 151.[1]

Now that the record is developed, the undisputed, material facts refute both of those propositions. 3M stopped selling carpet products containing C8 PFAS (*e.g.*,

---

[1] The Court also relied on *Citizens & S. Tr. Co. v. Phillips Petroleum Co.*, 385 S.E.2d 426 (Ga. Ct. App. 1989), but the defendant there did not simply sell a product; it placed gasoline into leaking underground storage tanks.

PFOS and PFOA) in 2002. Ex. C ¶ 40 (Krock Rebuttal Rep.). Likewise, even though

3M later started supplying carpet products containing C4 PFAS (*e.g.*, PFBS), it

ended those sales over three years ago. *Id.*[2] Despite those steps, Johnson and his

experts maintain that the nuisance-creating migration of C8 and C4 PFAS out of the

LAS continues unabated. Ex. A at 3 (Andrews Rep.). They contend instead that

abatement is possible only though a massive remediation project at the LAS. *Id.* at

3-4. Thus, under Johnson's own theory of the case, 3M cannot abate the nuisance by

merely refusing to sell PFAS-containing products.

In short, the undisputed, material facts show that 3M does not possess the

control required to establish a claim for nuisance seeking damages or abatement.

### B.  3M's Sales Of PFAS Products Were Lawful.

Johnson's nuisance claims also fail because Johnson cannot meet his burden

to show that 3M acted unlawfully when it sold products containing PFAS to carpet

manufacturers. In interpreting Georgia's broad nuisance statute (O.C.G.A. § 41-1-

1), Georgia courts have repeatedly ruled that conduct "which the law authorizes to

be done, if done as the law authorizes, cannot be a nuisance." *City of Douglasville

v. Queen*, 514 S.E.2d 195, 199 (Ga. 1999).

---

[2]  Moreover, there is no dispute that the C4 PFAS concentrations at Rome's water intakes are far below EPA health advisory levels. Ex. N at 107:18-109:2 (10/14/22 Pate Dep.).

Here, Johnson has no evidence that 3M's sales of PFAS-containing products violated any applicable laws or regulations. Nor does he have any evidence that those sales were conducted in an illegal manner or made to improper parties or places. 3M sold PFAS carpet products to carpetmakers in the carpet capital of the world. And 3M stopped selling C8 PFAS (and then C4 PFAS) carpet products well before regulators issued any applicable guidance on acceptable C8 PFAS (and then C4 PFAS) levels in drinking water. *Compare* Ex. C ¶ 40 (Krock Rebuttal Rep.), *with* Ex. S (2009 Provisional HAs), *and* Ex. U (2022 HAs Fact Sheet).

Those undisputed facts make this case like the many others in which courts applying Georgia law have rejected nuisance claims arising from a defendant's lawful conduct. *See, e.g.*, *Brownman v. Kendall Patient Recovery U.S., LLC*, 1:21-cv-112, 2022 WL 4451339, at *10 (S.D. Ga. Sept. 23, 2022) (rejecting nuisance claim against operator of industrial plant that lawfully emitted a toxic gas); *Kempton v. S. Flavor Real Estate, L.P.*, 866 S.E.2d 862, 863-64 (Ga. Ct. App. 2021) (no nuisance in lawful greenhouse's use of artificial light at night); *Effingham Cnty. Bd. of Comm'rs v. Shuler Bros., Inc.*, 595 S.E.2d 526, 528 (Ga. Ct. App. 2004) (chip mill that "was a legal enterprise operated as the law authorized … cannot have been a nuisance"). There is no basis for a different result here.

### C.    3M Did Not Proximately Cause Johnson's Alleged Injury.

Johnson also lacks competent evidence to demonstrate that 3M's actions were a proximate cause of his claimed injury.

Proximate cause—"a legally attributable causal connection between the defendant's conduct and the alleged injury"—is an "essential element" of nuisance claims. *Alexander v. Hulsey Env't Servs.*, 702 S.E.2d 435, 439 (Ga. Ct. App. 2010). A proximate cause is "that which, in the natural and continuous sequence, *unbroken by other causes*, produces an event, and without which the event would not have occurred." *Yearty v. Scott Holder Enters.*, 824 S.E.2d 817, 821 (Ga. Ct. App. 2019) (emphasis added).

The record here establishes at least three sets of intervening acts that break the alleged causal chain between 3M's sales of PFAS-containing products and Johnson's alleged injury. First, by Johnson's own account, Dalton Utilities handled PFAS-containing waste negligently and in violation of its permits. Doc. 716 ¶¶ 107-54 (Compl.); Ex. A at 25-27 (Andrews Rep.). Those alleged acts—which include the design and operation of the LAS—led directly to PFAS entering the Conasauga River. Ex. A at 19-32 (Andrews Rep.). And 3M had no control over that conduct.

Second, the EPA started issuing increasingly stringent health advisory guidance for PFOA and PFOS long after 3M stopped selling C8 PFAS products to

carpetmakers in 2002. That guidance, which was unforeseeable in 2002, drove Rome's decisions over time to upgrade its water treatment facilities and adopt the associated water-charge increases that allegedly injure Johnson. EPA first acted in 2009, setting 400 ppt of PFOA and 200 ppt of PFOS as the drinking water levels below which no human health effects would be expected. Ex. S (2009 Provisional HAs). Rome took no action because its PFOA and PFOS concentrations were under those levels. Ex. O at 26:12-28:14 (Ross Dep.). In 2016, EPA lowered the guidance levels to 70 ppt of PFOA and PFOS combined. Ex. T (2016 HAs Fact Sheet). Rome thereafter began efforts to reduce PFOA and PFOS levels in its water. Ex. J at 56:22-57:12, 186:6-188:17 (11/2/21 Hackett Dep.). Finally, in 2022, EPA again lowered the guidance levels, to 0.004 ppt for PFOA and 0.02 ppt for PFOS. Ex. U (2022 HAs Fact Sheet). Rome relies on those new levels to justify construction of new treatment facilities that will remove all detectible PFAS from its water. Ex. D at 5-6 (Pate Rep.). And Rome's efforts to upgrade water treatment in response to EPA guidance, in turn, are the sole basis for Johnson's only concrete alleged injury: increased charges for municipal water service. Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.).[3]

---

[3]    In 2023, EPA proposed Maximum Containment Levels ("MCLs") for six PFAS (including 4 ppt for PFOA and 4 ppt for PFOS). Ex. V (2023 Fact Sheet). Rome's existing carbon treatment system produces water that complies with the proposed MCLs.  Ex. W at 736:15-743:12 (5/1/23 Pate Dep.).

Third, Johnson's own actions are responsible for any obligation to pay increased water charges. To start, after filing this suit in November 2019, Johnson (and his wife) purchased their current residence in Rome the following month, voluntarily choosing to accept Rome municipal water and whatever charges might be assessed for that water. Ex. L at 189:4-190:6 (Johnson Dep.). Moreover, until July 2022, Johnson was not an accountholder with the Rome Water and Sewer Division ("RWSD") and thus had no obligation to pay increased water charges resulting from Rome's water treatment improvements. *Id.* at 186:2-188:10, 197:13-198:20, 215:6-216:8; Ex. R (Dingle/Johnson Water Bill). Long after filing this suit, and knowing about the charge increases, Johnson voluntarily added himself to his wife's account with the RWSD. Ex. R (Dingle/Johnson Water Bill).

Under Georgia case law, each of the three sets of intervening acts sever the attenuated causal chain linking 3M's conduct to Johnson's alleged injury. *See, e.g.*, *Yearty*, 824 S.E.2d at 821 (act of approaching fire broke causal chain linking negligent fire-alarm installation to injuries); *Alexander*, 702 S.E.2d at 439 (customer of waste disposal facility that did not direct or control facility was not proximate cause of nuisance resulting from disposal of customer's waste); *Dep't of Transp. v. Jackson,* 494 S.E.2d 20, 22-23 (Ga. Ct. App. 1997) (driver's violation of traffic regulations separated injury from defendant's negligent failure to close roadway);

*Weaver v. PACCAR, Inc.*, 52 F. Supp. 3d 1342, 1348-49 (S.D. Ga. 2014) (failure to build truck with safety switch did not proximately cause injuries where driver operated truck negligently), *aff'd*, 614 F. App'x 991 (11th Cir. 2015).

## II. Plaintiff's Claim For Abatement Of Nuisance Fails For Many Additional Reasons.

Summary judgment for 3M on Plaintiff's nuisance-abatement claim (Count Eight) is warranted for a host of reasons beyond those already described. That claim seeks an injunction requiring Defendants to undertake a 30-year remediation project to reduce PFAS migrating out of the LAS into the Conasauga River. Doc. 716 ¶¶ 197-99 (Compl.); Ex. A at 33-37 (Andrews Rep.). The claim fails because Johnson lacks the requisite injury for such relief and Georgia law precludes the relief in any event.

### A. Johnson Lacks Standing To Pursue The Requested Injunction.

Johnson lacks Article III standing to pursue the requested injunctive relief because it would not remedy any injury he asserts.

As the Supreme Court has explained, Article III "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing … for each form of relief that they seek," including "injunctive relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Johnson therefore must establish the three requisites of standing—injury-in-fact, traceability, and redressability—to support his request for

an injunction requiring remediation of the LAS. *See id.* at 2203; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). But the undisputed facts show that Johnson has no injury that the requested remediation would redress.

Johnson claims injury from increased municipal water rates instituted to pay for improved water treatment facilities that will eliminate all detectable PFAS from Rome tap water. Ex. D at 4-6 (Pate Rep.); Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.). But Johnson admits that the injunction he seeks "has nothing to do with increased water rates." Doc. 1138 at 18 n.25 (Class Cert. Reply). He could not claim otherwise. Johnson seeks damages as redress for the increased water rates. Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.). And the requested LAS remediation would not reduce or eliminate the rate increases because the City of Rome is making the water-treatment improvements that are the basis for the increases even if LAS remediation occurs. Ex. K at 614:9-615:7 (12/1/21 Hackett Dep.).

At times, Johnson also has claimed injuries from the presence of PFAS in his tap water. But Johnson has not offered any evidence of a concrete, particularized, and actual or imminent injury of that sort, whether it be physical harm, health risks, financial loss, or otherwise. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (requiring such injury for injunction); Ex. L at 139:18-21 (Johnson Dep.) (disclaiming personal injury); Doc. 1138 at 2-3 & n.2 (Class Cert. Reply)

(disclaiming other harms). And, even if he had, remediating the LAS would not redress any such injury. Johnson's experts concede that LAS remediation would not eliminate PFAS from the rivers that Rome uses to supply tap water. Ex. G at 412:12-414:18 (9/20/22 Andrews Dep.). And Rome's water treatment improvements will be removing all detectible PFAS from tap water within four years, long before the 30-year LAS-remediation project would be complete. Ex. D at 4-6 (Pate Rep.); Ex. A at 33-37 (Andrews Rep.).

Finally, Johnson cannot assert any other injury from the PFAS migrating out of the LAS and into area rivers. He has disclaimed any use of those rivers for boating, swimming, fishing, or other activities. Ex. L at 299:25-300:13 (Johnson Dep.).

Johnson, in short, has no injury that LAS remediation would redress. Indeed, his own expert agrees that LAS remediation would have "no impact" on those who do not use the Oostanaula River recreationally. Ex. H at 368:19-370:9 (5/15/23 Andrews Dep.). Johnson thus lacks Article III standing to pursue such relief. *See, e.g.*, *Steel Co.*, 523 U.S. at 104-09 (no standing where requested relief would not remedy cognizable injury); *Support Working Animals, Inc. v. Governor of Florida*, 8 F.4th 1198, 1205 (11th Cir. 2021) (no standing where successful challenge would not change plaintiffs' position); *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (same where challenged action did not harm plaintiff).

### B.    No Special Harm Supports The Injunction Request.

Johnson's nuisance-abatement claim also fails because no special harm supports the claim. Private parties—like Johnson—can assert public nuisance claims only if they show that they have a "special injury, different in kind from that suffered by the general public." *Patten v. Mauldin*, 132 S.E.2d 664, 664 (Ga. 1963); *see* O.C.G.A. § 41-1-3 (codifying the principle). Johnson, however, has no evidence of a special harm that calls for nuisance abatement.

In declining to dismiss Johnson's nuisance claims, this Court saw "special harm" in Johnson's alleged obligation to pay increased rates and surcharges for Rome's PFAS-removal efforts. Doc. 629 at 144-47 (MTD Order). But whether "special harm" supported the *abatement* claim in particular was not before the Court. And Johnson has now admitted that the requested abatement "has nothing to do with increased water rates." Doc. 1138 at 18 n.25 (Class Cert. Reply). Indeed, for reasons already described, the LAS remediation would not remedy the rate increases. *See supra* p. 12.

As for other types of personal harm, Johnson has abandoned them. He offers no evidence that he experienced personal injury, property damage, costs to avoid or remove PFAS in his tap water, or impaired uses of affected rivers. Instead, as described above, he affirmatively disclaims such harms. *See supra* pp. 12-13.

14

All Johnson can point to is "the contamination of the Conasauga, Oostanaula, and Coosa Rivers and the interference with the use and enjoyment of those waters, including the provision of safe drinking water." Doc. 629 at 144 (MTD Order). But as this Court previously ruled, any such injury is "general public harm" that is different from the "special harm" required for a public nuisance claim by a private party. *Id.*; *see also Save the Bay Comm. v. Mayor, Etc., of Savannah*, 181 S.E.2d 351, 360-61 (Ga. 1971) (rejecting public nuisance claim because plaintiffs would not sustain "any special damages" from pollution of Savannah River); *Patten*, 132 S.E.2d at 665-66 (same from destruction of bridge); *Crane v. Mays*, 27 S.E.2d 347, 349 (Ga. Ct. App. 1943) (same from hazardous conditions at junk yard).

## C.    The LAS Is An Unabatable Permanent Nuisance.

Johnson is not entitled to the requested injunction for another reason: The PFAS emanating from the LAS is a permanent nuisance not subject to abatement.

Under Georgia law, a plaintiff cannot seek abatement of a *permanent* nuisance but can pursue only damages. *Oglethorpe Power Corp. v. Forrister*, 711 S.E.2d 641, 643-44 (Ga. 2011). Abatement is exclusively for *continuing* nuisances. *Id.* A nuisance is permanent, rather than continuing, when it is likely to continue indefinitely, results from an enduring feature of the source's design or operation, and could not be averted at slight cost. *Id.* at 643-45.

The undisputed facts establish that the PFAS emanating from the LAS is a permanent nuisance. Johnson's own expert opines that PFAS will migrate from the LAS to the Conasauga River for the indefinite "long-term." Ex. A at 3 (Andrews Rep.). Even the proposed remediation would not entirely prevent such migration. Ex. G at 412:23-414:6 (9/20/22 Andrews Dep.) (predicting 90% reduction). And the purported nuisance arises from the fact that "the LAS is not designed to treat PFAS." Ex. A at 3 (Andrews Rep.); *see also* Ex. F at 108:1-109:1 (9/19/22 Andrews Dep.). Indeed, it is admitted that there is no way to operate the LAS without PFAS discharges. Ex. F at 140:12-141:2 (9/19/22 Andrews Dep.). Johnson therefore offers a remediation plan that would "cease operation of the LAS," completely redesign the property, and construct a new treatment facility. Ex. A at 3-4 (Andrews Rep.). That plan would cost $850 million and take 30 years to complete. *Id.* at 33-37.

This evidence leaves no doubt that the PFAS emanating from the LAS is a quintessential permanent nuisance. PFAS will migrate out of the LAS indefinitely. That migration is an enduring feature of the LAS's design and operation. And averting the PFAS migration would supposedly require replacing the LAS—a regulator-approved component of a public utility's operations (Ex. P at 1770:3-1807:21 (Rush Dep.); Ex. I at 1281:22-1287:11 (Bundros Dep.))—with a massive water control and treatment project, at enormous expense.

16

In similar circumstances, courts applying Georgia law have repeatedly concluded that alleged nuisances were permanent ones not subject to abatement. *See, e.g.*, *Oglethorpe Power*, 711 S.E.2d at 643-45 (noise from turbines was permanent nuisance where reduction that would require tear-down and rebuilding of exhaust stacks); *City of Warner Robins v. Holt*, 470 S.E.2d 238, 241 (Ga. Ct. App. 1996) (same for methane intrusion where stopping it would make property unmarketable); *Bainbridge Power Co. v. Ivey*, 152 S.E. 306, 307 (Ga. Ct. App. 1930) (same for mosquitos and odors from dam where eliminating nuisance required draining reservoir and deforesting land); *Crosson v. Carrollton City Sch. Dist.*, 478 F. Supp. 3d 1255, 1266-67 (N.D. Ga. 2020) (same for noise and light from school construction where abatement required great expense and disruption). This case calls for the same conclusion.

### D.    Johnson Has An Adequate Legal Remedy.

Johnson also cannot obtain the requested injunction because he has—and is pursuing—an adequate damages remedy.

Georgia law allows injunctive relief only where "no adequate remedy is provided at law." O.C.G.A. § 9-5-1; *see also Lewis v. City of Atlanta*, 553 S.E.2d 611, 612 (Ga. 2001). A legal remedy is "adequate" for purposes of this rule if it is at

17

least "as practical and as efficient to the ends of justice and its prompt administration as" the requested injunction. *Besser v. Rule*, 510 S.E.2d 530, 531 (Ga. 1999).

Damages easily qualify as an adequate legal remedy for Johnson. The only concrete, particularized injury that Johnson still asserts is increased water charges that Rome instituted to pay for improved water treatment facilities that will remove all detectible PFAS from Johnson's tap water. *See supra* pp. 12-13; Ex. D at 4-6 (Pate Rep.). If Johnson could prove liability (something 3M vigorously disputes), a damages award of the sort Johnson pursues here could fully remedy any water-charges injury he might establish. Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.). Plus, the improved water treatment facilities, by removing PFAS from his tap water, would remedy any other purported future harm. *See supra* pp. 12-13. As noted, Johnson does not use water from affected rivers before it reaches Rome's water treatment facilities. *See supra* p. 13.

Damages plainly would be "as practical and as efficient to the ends of justice and its prompt administration as" the requested injunction. *Besser*, 510 S.E.2d at 531. Indeed, they would be *more* practical and efficient. They would fully remedy Johnson's asserted injuries. And they would do so at a fraction of the cost, and in a fraction of the time, required for the proposed injunction. *See* Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.) (damages of under $5,000 per ratepayer and $74.4 million total);

Ex. D at 4-6 (Pate Rep.) (four years for water treatment improvements); Ex. A at 33-37 (Andrews Rep.) ($850 million and 30 years for LAS remediation).

This case therefore is like the many cases in which courts applying Georgia law have rejected injunctive relief because the plaintiff had an adequate damages remedy (regardless of whether a damages claim had been asserted or would ultimately be successful). *See, e.g.*, *Lewis*, 553 S.E.2d at 612 ("availability of reinstatement or monetary damages" precluded injunction); *Deerlake Homeowners Ass'n Inc. v. Brown*, 864 S.E.2d 202, 205 (Ga. Ct. App. 2021) (option to pursue damages for abating maintenance violations precluded injunction); *Nembhard v. Barrett Daffin Frappier Levine & Block, LLP*, No. 1:17-cv-00746, 2017 WL 894449, at *4 (N.D. Ga. Mar. 7, 2017) (rejecting injunction because damages were available and being sought). Those authorities control here.

### E.    The Requested Injunction Is Unnecessarily Burdensome.

Finally, the Court should reject Johnson's request for injunctive relief because that relief would place enormous burdens on 3M (and other Defendants) without providing any benefit to Johnson.

In Georgia, "[a] mandatory injunction is an extraordinary remedy, one of the most powerful a court can issue." *Prime Bank, Fed. Sav. Bank v. Galler*, 430 S.E.2d 735, 738 (Ga. 1993). Accordingly, the power to grant injunctions "shall be prudently

and cautiously exercised and, except in clear and urgent cases, should not be resorted to." O.C.G.A. § 9-5-8. A court therefore must "weigh[] and balance[] the convenience of the parties" in deciding whether to issue an injunction. *Bishop Eddie Long Ministries, Inc. v. Dillard*, 613 S.E.2d 673, 682 (Ga. Ct. App. 2005). And "[a]n injunction should not impose on defendant any greater restriction (burden) than is necessary to protect plaintiff from the injury of which he complains." *Bruce v. Wallis*, 556 S.E.2d 124, 126 (Ga. 2001).

The injunction sought by Johnson would impose just such an unnecessary burden. As noted, the proposed LAS remediation would supposedly cost more than $850 million and take at least 30 years. *See supra* p. 16. In addition, the proposed remediation could easily conflict with any remediation or permitting conditions later mandated by regulators, placing 3M (and other Defendants) in the impossible position of having to comply with inconsistent directives. Ex. F at 39:7-41:16, 148:5-150:16, 154:13-155:9, 163:21-165:11 (9/19/22 Andrews Dep.); Ex. G at 411:15-412:11, 446:10-447:13, 494:19-495:12 (9/20/22 Andrews Dep.); Ex. B § 4 at 15-16, 19-20 (Frankel Rep.).

At the same time, the proposed LAS remediation would not reduce PFAS levels at Rome's Oostanaula River intakes to the concentrations that Johnson's experts deem acceptable. Ex. G at 412:12-414:18 (9/20/22 Andrews Dep.); Ex. H at

371:4-375:21 (5/15/23 Andrews Dep.); Ex. B § 4 at 20-21 (Frankel Rep.). Rome therefore is building an improved water treatment facility to remove all detectible PFAS from its tap water whether or not any LAS remediation happens. Ex. K at 614:9-615:7 (12/1/21 Hackett Dep.); Ex. D at 4-6 (Pate Rep.). With that facility coming on line within four years (Ex. D at 6 (Pate Rep.)), Johnson would get no benefit from an LAS remediation project that partly reduces PFAS levels in the Oostanaula River 30 years from now. *See supra* pp. 12-13.

In short, an LAS-remediation injunction would be incredibly burdensome for 3M (and other Defendants), would not eliminate PFAS from the Oostanaula River, is not needed to remove PFAS from Johnson's tap water, and would not benefit Johnson in any way. The requested injunction therefore would "impose on [3M a] greater restriction (burden) than is necessary to protect [Johnson] from the injury of which he complains." *Bruce*, 556 S.E.2d at 126.

Georgia courts have repeatedly rejected injunctions imposing similarly unnecessary burdens. *See, e.g.*, *Bruce*, 556 S.E.2d at 126 (rejecting overbroad injunction to eliminate all erosion where erosion was being alleviated by other means); *Prime Bank*, 430 S.E.2d at 738-39 (no injunction to demolish house where restrictive-covenant violations "may be alleviated by less drastic measures"); *Bishop Eddie*, 613 S.E.2d at 682 (no injunction against breaching dam because "financial

burden of maintaining the dam in perpetuity was inequitable"). Under that case law, the undisputed facts preclude the injunction requested here.

## III.    The Economic Loss Rule Bars Johnson's Damages Claim.

The economic loss rule provides another basis for granting 3M summary judgment on Plaintiff's claim for nuisance damages arising out of water charges imposed by the City of Rome (Count Seven).

As the Court explained in addressing Georgia's "economic loss rule" in its motion-to-dismiss order, Georgia courts have expanded the rule to "bar recovery in all negligence-based tort actions where a plaintiff seeks to recover purely economic losses, regardless of contractual privity." Doc. 629 at 68 (MTD Order); *see also City of Atlanta v. Benator,* 714 S.E.2d 109, 116 (Ga. Ct. App. 2011) ("both the Georgia Supreme Court and this court have applied the economic loss rule outside of product liability cases") (collecting cases). Under the applicable Rule 12(b)(6) notice-pleading standard, the Court declined to dismiss on economic-loss-rule grounds as to 3M (and other Supplier Defendants) because Johnson had sufficiently alleged personal injury and property damages. Doc. 629 at 66-80 (MTD Order).[4]

---

[4]    Other exceptions to the economic loss rule have never applied to 3M's alleged conduct. At the motion-to-dismiss stage, the Court concluded that 3M does not owe Johnson a duty of care. Doc. 629 at 110-12 (MTD Order). And Johnson has not asserted negligent misrepresentation/fraud or the "accident exception." *Id*. at 70-71.

The landscape has since changed in dispositive fashion. Under the Rule 56 summary-judgment standard, the undisputed material facts show that the economic loss rule precludes Johnson's nuisance-damages claim to recover Rome water surcharges and rate increases. Johnson has abandoned, and has no evidence to support, his allegations of personal injury and property damage. *See also* Doc. 1013 at 1-2, 13-14, 18-21, 30 & n. 21, 34-35, 46-47 (Class Cert. Opp.).

As to personal injury, Johnson has now expressly admitted that he "does not seek to recover any personal injury." Ex. Q at 3-4 (RFA Resp. Nos. 4, 5). Johnson confirmed the same at his deposition:

> Q:    Now, you're not claiming any personal illness
> from – from drinking Rome water; is that correct?
>
> A:    That is correct.

Ex. L at 139:18-21 (Johnson Dep.). Johnson's allegations of personal injury therefore can no longer protect his claims from the economic loss rule.

As to property damage, Johnson previously stated that he would disclose an expert "for the purposes of establishing property damages." Ex. Q at 9-13 (Rog. Resp. No. 1). He never did so. *See* Doc. 917 (Cert. of Serv. of Pl.'s Experts) (failing to identify a property damages expert). Indeed, he affirmatively disclaimed all the previously asserted forms of property damages, while expressly limiting his requested damages to the costs of removing PFAS from Rome water (*i.e.*, water

surcharges and rate increases). Doc. 1138 at 2-3 & n.2 (Class Cert. Reply). Johnson has thus abandoned the "other property damage" that previously saved his claims from the economic loss rule.[5]

Because Johnson has abandoned—and offered no expert or other evidence of—the formerly alleged personal injuries and property damages, the economic loss rule bars his nuisance-damages claim against 3M. The Court should enter summary judgment for 3M on Count Seven and any other damages claim to recover water surcharges or rate increases. *See, e.g.*, *City of Atlanta*, 714 S.E.2d at 116-17 (affirming summary judgment under economic loss rule where "the only specific damages alleged by the plaintiffs are [water and sewer service] overpayments to the city for which they seek a refund," and "[t]hey do not seek damages due to injury to their persons or to their real or personal property"); *Remax The Mountain Co. v. Tabsum, Inc.,* 634 S.E.2d 77, 77–78 (Ga. Ct. App. 2006) (economic loss rule barred suit against mining company that caused road collapse, impairing access to plaintiffs' businesses and causing plaintiffs to lose revenue and profits).

---

[5]    In its motion-to-dismiss Order, the Court suggested that Johnson has a property right in municipal water after it enters his home. Doc. 629 at 73-74 (MTD Order). Any such right does not change the analysis; Johnson has not even attempted to prove any harm to that right beyond the purely economic losses of paying water surcharges and rate increases.

## IV.    Other Grounds For Summary Judgment.

Beyond the grounds for summary judgment already detailed, Johnson's claims also fail for lack of evidentiary support if the Court grants the contemporaneously filed motions to exclude the opinions and testimony of Johnson's experts. *See, e.g.*, *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1361 (N.D. Ga. 1999). Likewise, if the Court grants summary judgment for 3M as to Johnson's nuisance claims, the Court should do the same as to Johnson's "claim" for punitive damages (Count Six); punitive damages are unavailable in the absence of underlying liability. *Albee v. Krasnoff*, 566 S.E.2d 455, 460 (Ga. Ct. App. 2002). Finally, 3M reserves its rights to assert additional grounds for summary judgment against any class (or portion of any class) that the Court may certify in ruling on the pending (and vigorously opposed) motion for class certification and to supplement this brief with facts developed in the extended expert discovery period or through the resolution of the parallel state-court litigation being pursued by the City of Rome.

## CONCLUSION

For the foregoing reasons, 3M respectfully asks that the Court enter summary judgment for 3M on all claims against 3M.

Dated: May 31, 2023                    Respectfully submitted,

                                       */s/ Monica P. Witte*
                                       Monica P. Witte, GA Bar No. 405952
                                       Robert B. Remar, GA Bar No. 600575
                                       Emma H. Cramer, GA Bar No. 661985
                                       W. Cole McFerren, GA Bar No. 409248
                                       SMITH, GAMBRELL & RUSSELL, LLP
                                       1105 W. Peachtree St. NE, Suite 1000
                                       Atlanta, GA 30309
                                       Telephone: (404) 815-3500
                                       Facsimile: (404) 815-3509
                                       Email: rremar@sgrlaw.com
                                       Email: mwitte@sgrlaw.com
                                       Email: ecramer@sgrlaw.com
                                       Email: cmcferren@sgrlaw.com

                                       W. Larkin Radney, IV, *Pro Hac Vice*
                                       Harlan Irby Prater, IV, *Pro Hac Vice*
                                       M. Christian King, *Pro Hac Vice*
                                       Benjamin P. Harmon, GA Bar No. 979043
                                       LIGHTFOOT FRANKLIN &
                                       WHITE, LLC
                                       The Clark Building
                                       400 North 20th Street
                                       Birmingham, Alabama 35203
                                       Phone: (205) 581-0700
                                       Email: lradney@lightfootlaw.com
                                       Email: hprater@lightfootlaw.com
                                       Email: cking@lightfootlaw.com
                                       Email: bharmon@lightfootlaw.com

                                       *Counsel for 3M Company*

26

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| JARROD JOHNSON, individually and on behalf of a class of persons similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>3M COMPANY, *et al.*,<br><br>*Defendants.* | Civil Action No. 4:20-cv-00008 AT<br><br>Judge Amy Totenberg |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C. Dated: May 31, 2023.

Respectfully submitted,

*/s/ Monica P. Witte*
Monica P. Witte
Georgia Bar No. 405952
SMITH GAMBRELL & RUSSELL, LLP
Email: mwitte@sgrlaw.com

*Counsel for Defendant 3M Company*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| JARROD JOHNSON, individually and on behalf of a class of persons similarly situated, | |
| *Plaintiff,* | Civil Action No. 4:20-cv-00008 AT |
| v. | Judge Amy Totenberg |
| 3M COMPANY, *et al.*, | |
| *Defendants.* | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date electronically filed the within and foregoing Memorandum of Law in Support of 3M Company's Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will automatically send an email notification of such filing to all attorneys of record.

Dated: May 31, 2023

Respectfully submitted,

*/s/ Monica P. Witte*
Monica P. Witte
Georgia Bar No. 405952
SMITH GAMBRELL & RUSSELL, LLP
Email: mwitte@sgrlaw.com

*Counsel for Defendant 3M Company*

1