UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON, individually and on behalf of a class of persons similarly situated,<br><br>    *Plaintiff*,<br><br>  v.<br><br>3M COMPANY, *et al.*,<br><br>    *Defendants*. | Civil Action No. 4:20-cv-00008 AT<br><br>Judge Amy Totenberg |

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF 3M COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(B)(1), Defendant 3M Company ("3M") provides the following statement of material facts in support of its Motion for Summary Judgment:

1. 3M supplied certain PFAS-containing products to Dalton-area carpet manufacturers at certain times. Ex. A at 14-15 (Andrews Rep.); Ex. C ¶ 40 (Krock Rebuttal Rep.).

2. Carpet manufacturers discharged PFAS-containing wastewater to Dalton Utilities. Ex. A at 18 (Andrews Rep.); Ex. P at 1812:8-1814:21 (Rush Dep.).

1

3. Dalton Utilities released wastewater at the LAS and otherwise discharged it into the watershed for the Conasauga River. Ex. A at 19-27 (Andrews Rep.).

4. Dalton Utilities owns and operates the LAS. Ex. A at 19-20 (Andrews Rep.).

5. There is no evidence that 3M controlled the waste disposal practices of carpet manufacturers or Dalton Utilities or the design or operation of the LAS. *See* Ex. M at 302:8-18 (Oxford Dep.).

6. In making decisions about the design and operation of the LAS, Dalton Utilities must adhere to permits issued by regulators that specify what it may and may not do in handling and discharging wastewater. Ex. P at 1770:3-1807:21 (Rush Dep.); Ex. B § 4 at 15-16 (Frankel Rep.).

7. According to Plaintiff Jarrod Johnson, Dalton Utilities handled PFAS-containing waste negligently and in violation of its permits. Doc. 716 ¶¶ 107-54 (Compl.); Ex. A at 25-27 (Andrews Rep.).

8. Those alleged acts of Dalton Utilities—which include the design and operation of the LAS—led directly to PFAS entering the Conasauga River. Ex. A at 19-32 (Andrews Rep.).

9. Johnson makes no claim that 3M disposed of products or waste containing PFAS upstream from Rome. Doc. 716, 4th Am. Compl., ¶ 18.

10. Johnson and his experts maintain that the nuisance-creating migration of C8 and C4 PFAS out of the LAS continues unabated. Ex. A at 3 (Andrews Rep.).

11. Johnson and his experts contend that abatement of the LAS is possible only though a massive remediation project at the LAS. Ex. A at 3-4 (Andrews Rep.).

12. 3M stopped selling carpet products containing C8 PFAS (*e.g.*, PFOS and PFOA) in 2002. Ex. C ¶ 40 (Krock Rebuttal Rep.).

13. 3M later started supplying carpet products containing C4 PFAS (e.g., PFBS) but ended those sales over three years ago. Ex. C ¶ 40 (Krock Rebuttal Rep.).

14. The C4 PFAS concentrations at Rome's water intakes are far below EPA health advisory levels. Ex. N at 107:18-109:2 (Pate Dep.); Ex. U (2022 HAs Fact Sheet).

15. 3M stopped selling C8 PFAS carpet products well before regulators issued any applicable guidance on acceptable C8 PFAS levels in drinking water. *Compare* Ex. C ¶ 40 (Krock Rebuttal Rep.), *with* Ex. S (2009 Provisional HAs).

16. 3M stopped selling C4 PFAS well before regulators issued any applicable guidance on acceptable C4 PFAS levels. Ex. C ¶ 40 (Krock Rebuttal Rep.); Ex. U (2022 HAs Fact Sheet).

17. The EPA first issued health advisory guidance for PFOA and PFOS in 2009, setting 400 ppt of PFOA and 200 ppt of PFOS as the drinking water levels below which no human health effects would be expected. Ex. S (2009 Provisional HAs).

18. Rome took no action because its PFOA and PFOS concentrations were under those levels. Ex. O at 26:12-28:14 (Ross Dep.).

19. In 2016, EPA lowered the guidance levels to 70 ppt of PFOA and PFOS combined. Ex. T (2016 HAs Fact Sheet).

20. Rome thereafter began efforts to reduce PFOA and PFOS levels in its water. Ex. J at 56:22-57:12, 186:6-188:17 (11/2/21 Hackett Dep.).

21. In 2022, EPA again lowered the guidance levels, to 0.004 ppt for PFOA and 0.02 ppt for PFOS. Ex. U (2022 HAs Fact Sheet).

22. Rome relies on those new levels to help justify its construction of a new treatment facility that will remove all detectible PFAS from municipal water. Ex. D at 5-6 (Pate Rep.).

23. In 2023, the EPA proposed Maximum Containment Levels ("MCLs") for six types of PFAS (including 4 ppt for PFOA and 4 ppt for PFOS). Ex. V (2023 Fact Sheet).

24. Rome's existing carbon treatment system produces water that complies with the proposed MCLs. Ex. W at 736:15-743:12 (5/1/23 Pate Dep.).

25. Rome's efforts to upgrade water treatment in response to EPA guidance since 2016 are the sole basis for Johnson's alleged injury: increased charges for municipal water service. Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.).

26. Johnson seeks damages for past and future water rate increases instituted to pay for improvements to Rome's water treatment facilities that will remove all detectible PFAS from Johnson's tap water. Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.); Ex. D at 4-6 (Pate Rep.).

27. After filing this suit in November 2019, Johnson (and his wife) purchased their current residence in Rome the following month, knowingly and voluntarily choosing to accept Rome municipal water and whatever charges might be assessed for that water. Ex. L at 189:4-190:6 (Johnson Dep.).

28. Until August 2022, Johnson was not an accountholder with the Rome Water and Sewer Division and thus had no obligation to pay increased water rates

resulting from Rome's water treatment improvements. Ex. L at 186:2-188:10, 197:13-198:20, 215:6-216:8 (Johnson Dep.); Ex. R (Dingle/Johnson Water Bill).

29. Long after filing this suit, and knowing about the expected rate increases, Johnson voluntarily added himself to his wife's account with the Rome Water and Sewer Division. Ex. R (Dingle/Johnson Water Bill).

30. Plaintiff's nuisance-abatement claim seeks an injunction requiring Defendants to undertake an $850 million, 30-year remediation project to prevent PFAS from migrating out of the LAS into the Conasauga River. Doc. 716 ¶¶ 197-99 (Compl.); Ex. A at 33-37 (Andrews Rep.).

31. Johnson claims injury from increased municipal water rates instituted to pay for improved water treatment facilities that will eliminate all detectable PFAS from Rome tap water. Ex. D at 4-6 (Pate Rep.); Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.).

32. Johnson seeks damages as redress for the increased water rates. Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.).

33. Remediating the LAS will not reduce or eliminate the rate increases because Rome is building a new water treatment facility to remove all detectible PFAS

from its tap water whether or not any LAS remediation happens. Ex. K at 614:9-615:7 (12/1/21 Hackett Dep.); Ex. D at 4-6 (Pate Rep.).

34. Johnson admits that the injunction he seeks has nothing to do with increased water rates. Doc. 1138 at 18 n.25 (Class Cert. Reply).

35. Johnson has not offered any evidence of a concrete, particularized, and actual or imminent injury stemming from the presence of PFAS in his tap water, whether it be physical harm, health risks, financial loss, or otherwise. Ex. L at 139:18-21 (Johnson Dep.) (disclaiming personal injury); Doc. 1138 at 2-3 & n.2 (Class Cert. Reply) (disclaiming other harms).

36. Remediating the LAS would not eliminate PFAS from the rivers that Rome uses to supply tap water. Ex. G at 412:12-414:18 (9/20/22 Andrews Dep.).

37. Johnson has disclaimed any use of those rivers for boating, swimming, fishing, or other activities. Ex. L at 299:25-300:13 (Johnson Dep.).

38. Because Rome currently treats for PFAS the water it provides to customers—and is in the process of designing and building more treatment—the proposed LAS remediation would have "no impact" on those who do not use the Oostanaula River recreationally. Ex. H at 368:19-370:9 (5/15/23 Andrews Dep.).

39. Johnson's requested damages would fully remedy his asserted injuries at a fraction of the cost, and in a fraction of the time, required for the proposed injunction. *See* Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.); Ex. D at 4-6 (Pate Rep.); Ex. A at 33-37 (Andrews Rep.); Ex. H at 368:19-370:9 (5/15/23 Andrews Dep.).

40. The proposed injunction would not remedy any of Johnson's asserted injuries. Ex. L at 299:25-300:13 (Johnson Dep.); Ex. H at 368:19-370:9 (5/15/23 Andrews Dep.); Ex. E ¶¶ 1-5 & Exh. 7 (Zieburtz Rep.); Ex. K at 614:9-615:7 (12/1/21 Hackett Dep.); Ex. D at 4-6 (Pate Rep.).

41. Rome's water treatment improvements will be removing all detectible PFAS from tap water within four years, long before the 30-year LAS-remediation project would be complete. Ex. D at 4-6 (Pate Rep.); Ex. A at 33-37 (Andrews Rep.).

42. Johnson's remediation expert, Dr. Charles Andrews, opines that PFAS will migrate from the LAS to the Conasauga River for the indefinite "long-term." Ex. A at 3 (Andrews Rep.).

43. The proposed remediation would not entirely prevent migration of PFAS from the LAS to the Conasauga River. Ex. G at 412:23-414:6 (9/20/22 Andrews Dep.) (predicting 90% reduction).

44. The LAS is not designed to treat PFAS. Ex. A at 3 (Andrews Rep.); *see also* Ex. F at 108:1-109:1 (9/19/22 Andrews Dep.).

45. There is no way to operate the LAS without PFAS discharges. Ex. F at 140:12-141:2 (9/19/22 Andrews Dep.).

46. Johnson's proposed remediation plan would "cease operation of the LAS," completely redesign the property, and construct a new treatment facility. Ex. A at 3-4 (Andrews Rep.).

47. The LAS is a regulator-approved component of a public utility's operations. Ex. P at 1770:3-1807:21 (Rush Dep.); Ex. I at 1281:22-1287:11 (Bundros Dep.).

48. The proposed LAS remediation could easily conflict with any remediation or permitting conditions later mandated by regulators, placing 3M (and other Defendants) in the impossible position of having to comply with inconsistent directives. Ex. F at 39:7-41:16, 148:5-150:16, 154:13-155:9, 163:21-165:11

(9/19/22 Andrews Dep.); Ex. G at 411:15-412:11, 446:10-447:13, 494:19-495:12 (9/20/22 Andrews Dep.); Ex. B § 4 at 15-16, 19-20 (Frankel Rep.).

49. The proposed LAS remediation would not reduce PFAS levels at Rome's Oostanaula River intakes to the concentrations that Johnson's experts deem acceptable. Ex. G at 412:12-414:18 (9/20/22 Andrews Dep.); Ex. H at 371:4-375:21 (5/15/23 Andrews Dep.); Ex. B § 4 at 20-21 (Frankel Rep.).

50. With Rome's improved water treatment facility coming on line within four years (Ex. D at 6 (Pate Rep.)), Johnson would get no benefit from an LAS remediation project that partly reduces PFAS levels in the Oostanaula River 30 years from now. Ex. A at 33-37 (Andrews Rep.).

51. Johnson does not seek to recover any personal injury. Ex. Q at 3-4 (RFA Resp. Nos. 4, 5); Ex. L at 139:18-21 (Johnson Dep.) ("Q: Now, you're not claiming any personal illness from – from drinking Rome water; is that correct? A: That is correct.").

52. Johnson previously stated that he would disclose an expert for the purposes of establishing property damages (Ex. Q at 9-13 (Rog. Resp. No. 1), but he never did so. *See* Doc. 917 (Cert. of Serv. of Pl.'s Experts) (failing to identify a property damages expert).

53. Johnson has affirmatively disclaimed all the previously asserted forms of property damages, while expressly limiting his requested damages to the costs of removing PFAS from Rome water (*i.e.*, water surcharges and rate increases). Doc. 1138 at 2-3 & n.2 (Class Cert. Reply).

Dated: May 31, 2023                          Respectfully submitted,

/s/ Monica P. Witte
Monica P. Witte, GA Bar No. 405952
Robert B. Remar, GA Bar No. 600575
Emma H. Cramer, GA Bar No. 661985
W. Cole McFerren, GA Bar No. 409248
SMITH GAMBRELL & RUSSELL, LLP
1105 West Peachtree St., N.E., Ste. 1000
Atlanta, Georgia 30309
Phone: (404) 815-3500
Email: rremar@sgrlaw.com
Email: mwitte@sgrlaw.com
Email: ecramer@sgrlaw.com
Email: cmcferren@sgrlaw.com

W. Larkin Radney, IV, *Pro Hac Vice*
Harlan Irby Prater, IV, *Pro Hac Vice*
M. Christian King, *Pro Hac Vice*
Benjamin P. Harmon, GA Bar No. 979043
LIGHTFOOT FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203

Phone: (205) 581-0700  
Email: lradney@lightfootlaw.com  
Email: hprater@lightfootlaw.com  
Email: cking@lightfootlaw.com  
Email: bharmon@lightfootlaw.com  

*Counsel for 3M Company*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON, individually and on behalf of a class of persons similarly situated,<br><br>   *Plaintiff,*<br><br>  v.<br><br>3M COMPANY, *et al.*,<br><br>   *Defendants.* | Civil Action No. 4:20-cv-00008 AT<br><br>Judge Amy Totenberg |

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

Dated: May 31, 2023.

          Respectfully submitted,

          */s/ Monica P. Witte*
          Monica P. Witte
          Georgia Bar No. 405952
          SMITH GAMBRELL & RUSSELL, LLP
          Email: mwitte@sgrlaw.com

          *Counsel for Defendant 3M Company*

13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON, individually and on behalf of a class of persons similarly situated,<br><br>　　　　　　*Plaintiff,*<br><br>　　v.<br><br>3M COMPANY, *et al.*,<br><br>　　　　　　*Defendants.* | Civil Action No. 4:20-cv-00008 AT<br><br>Judge Amy Totenberg |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing Statement of Material Facts in Support of 3M Company's Motion for Summary Judgment upon all parties to this matter by Court Electronic Filing to counsel of record in this case.

Dated: May 31, 2023

　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　*/s/ Monica P. Witte*
　　　　　　　　　　　　　　　　　Monica P. Witte
　　　　　　　　　　　　　　　　　Georgia Bar No. 405952
　　　　　　　　　　　　　　　　　SMITH GAMBRELL & RUSSELL, LLP
　　　　　　　　　　　　　　　　　Email: mwitte@sgrlaw.com

　　　　　　　　　　　　　　　　　*Counsel for Defendant 3M Company*

14