UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON, individually and on behalf of a class of persons similarly situated,<br><br>               *Plaintiff,*<br><br>      v.<br><br>3M COMPANY, *et al.*,<br><br>               *Defendants.* | Civil Action No. 4:20-cv-0008 AT<br><br>Judge Amy Totenberg |

**3M COMPANY'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE THE SUPPLEMENTAL REPORT OF DR. ANDY DAVIS**

Plaintiff's Motion to Strike the Supplemental Report of Dr. Andy Davis, ECF 1493, should be denied.  3M timely supplemented Dr. Davis's expert report to "correct its disclosure" as required by Rule 26(e)(1) & (2).  Even if this Court found Dr. Davis's supplement untimely under Rule 26, the failure to timely supplement was substantially justified and harmless.  *See* Fed. R. Civ. P. 37.

The supplement corrects a data input used in Dr. Davis's loading calculations relating to the sources of PFAS detected in the Etowah River, a major source of Rome's drinking water.  The Etowah River is not downstream from the Dalton Utilities LAS—meaning that any detected PFAS does not originate from the LAS—but still contains PFOA and PFOS at concentrations exceeding the

1

EPA's proposed MCLs.  Rome used the Etowah River for approximately 78% of its

drinking water from April, 2016 to 2021, and Dr. Davis is the only disclosed expert

who has conducted comprehensive PFAS sampling in the Etowah River watershed.

His sampling data is unchallenged and shows that several sources clearly impact

PFAS concentrations in the Etowah, including land-applied biosolids from the City

of Rome's wastewater treatment plant.

Dr. Davis's short Supplemental Report corrects a single flow input to his

mass loading calculations, and nothing about his underlying methodology has

changed.  The correction relates to a rapid increase in Etowah River flows

corresponding to a release of water from Allatoona Dam which occurred between

the collection of two water samples.  Plaintiff has been aware of both the correct

flow input (his counsel first pointed out Dr. Davis's incorrect input at his

deposition) and the method Dr. Davis used (and still uses) to evaluate mass loading

in the Etowah River.  The rest is mathematics.  Dr. Davis's supplement updates his

initial calculations to use accurate data for one input, and results in a ten percent

adjustment to one of his loading calculations.[1]

---

[1] The corrected calculation reduces the contribution of the City of Rome – a non-party alleged to be at fault for some of Plaintiff's damages - to PFAS in the Etowah River by approximately ten percent.  While Plaintiff and his experts pay little attention to the Etowah basin in general, Dr. Davis's correction works in Plaintiff's favor and is hardly prejudicial.

Dr. Davis's supplement is timely under Fed. R. Civ. P. 26(e)(2) and does not prejudice Plaintiff.

## I.      Dr. Davis's Supplement Is Timely Under Rule 26(e)(2)

Rule 26(e)(2) requires that supplements to an expert's disclosures "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *See* Fed. R. Civ. P. 26(e)(2).  Rule 26(a)(3)(B) specifies that pretrial disclosures such as witness lists, deposition designations, and exhibit lists must be made thirty days before trial.  No trial date has been set, and none of the scheduling orders set specific deadlines for supplemental expert reports.  Disclosing Dr. Davis's supplemental report on September 28, 2023, as part of 3M's Response to Plaintiff's Motion to Exclude Dr. Davis, ECF 1324-3, does not violate any of these deadlines.

Dr. Davis does not express any new opinions or perform any new work in his Supplemental Report.  Instead, he corrects an inaccuracy in his initial report. Supplementation to correct inaccuracies in a timely served expert report is proper under Rule 26(e); disclosing new opinions after expert disclosure deadlines is not. *See State Farm Mut. Auto Ins. Co. v. Larocca*, No. 8:21-CV-2536-SCB-AEP, 2023 WL 6294262, at *4 (M.D. Fla. Aug. 28, 2023) (denying defendants' motion to strike supplemental expert report where the expert "offered no new opinions and did not identify materials Defendants did not already possess . . . ."); *Perrigo Co. v. Merial Ltd.,* No. 1:15-cv-03674-SCJ, 2018 WL 11350563, at *7 (N.D. Ga. Apr.

30, 2018); *Kaleta v. City of Anna Maria*, No. 8:16-CV-347-T-27AAS, 2017 WL

6261526, at *1 (M.D. Fla. Oct. 6, 2017)(refusing to exclude amended expert report

where amendments did not change the basis and reasons for opinions, but rather

changed specific amounts due to calculating errors).

Plaintiff does not argue that the supplement is an attempt to offer new opinions,

engage in additional work, or annul previously disclosed opinions. *See Tindall v. H*

*& S Homes, LLC,* No. 5:10-CV-044 CAR, 2012 WL 3241885, at *5-6 (M.D. Ga.

Aug. 7, 2012).  Nor could he, as the supplemental report itself states that the

updated calculations with the corrected data impacted Dr. Davis's conclusions only

minimally.  ECF 1324-3 at 1.  Plaintiff also does not (and could not) argue that the

supplement was served too late for him to take it into account for purposes of trial

preparation.  *See Perrigo*, 2018 WL 11350563, at *6 (noting "an important

consideration in determining whether the late filed report is submitted well in

advance of trial, leaving the opposing party time to adjust its trial preparation in

light of the new information provided . . . .").

As discussed below, the correction contained in Dr. Davis's Supplemental

Report is entirely harmless, was produced well before trial and within the time

contemplated by Rule 26(e)(2), is not a surprise to Plaintiff, and causes no

prejudice.

## II.    The Supplement Is Harmless and Appropriate

Before excluding untimely disclosed information from evidence, Federal

Rule of Civil Procedure 37 requires a court to weigh whether the late disclosure

was substantially justified or is harmless.  The drastic sanction of exclusion is not

justified where, as here, the supplement is harmless.  Courts presented with very

similar situations – motions to strike supplemental reports correcting errors noted

in the expert's depositions but adding no new opinions or changes in methodology

– have permitted the supplements even if tardy.  *See Diamond Resorts US*

*Collection Dev. LLC v. Newton Grp. Transfers, LLC*, No. 9:18-CV-80311, 2022

WL 1642865, at *23 (S.D. Fla., March 30, 2022)(finding no prejudice where

supplemental report was submitted after expert's deposition correcting calculations

but utilizing same methodology as before)(collecting cases); *see also Tampa Bay*

*Water v. HDR Eng'g, Inc.*, No. 8:08-CV-2446-T-27TBM, 2011 WL 3475548, at *5

(M.D. Fla., Aug. 9, 2011) aff'd, 731 F.3d 1171 (11th Cir. 2013)(allowing

supplement that corrected errors identified during deposition that did not change

the substance of expert's opinions).

Plaintiff's cries of surprise and prejudice relating to Dr. Davis's corrected

calculations ring hollow.  During his deposition, Plaintiff's counsel alerted Dr.

Davis to the discrepancy between the Etowah River flow numbers used in his

report and more granular data from the relevant USGS gauge, and he testified that

he would revisit his calculations to see what difference, if any, the different flow

data made in his analysis.  ECF No. 1279-1, p. 180-181 at 372:10-373:5 (Davis

Dep.).  Plaintiff's counsel also questioned Dr. Davis about his underlying

methodology and did not file a timely challenge to his method for calculating mass

loading in the Etowah River on any basis other than the use of the now-corrected

flow data.  *Id.*; ECF 1279-1 at 188:13-194:21.

Plaintiff's claim that he "could have" challenged that methodology if only

the correct data had been used initially is baseless.  The *method* Dr. Davis uses has

not changed and was fully explained in his report and during his two-day

deposition.  *Id.*; *see also* ECF 1268-4 at 27-29, 30-31, 34-35.  If Plaintiff had some

issue with the underlying methodology (which he does not) nothing prevented him

from exploring that methodology during deposition and challenging it in a timely

Daubert motion.  Instead, Plaintiff raised the flow data issue, which Dr. Davis has

now corrected, in a scatter-shot Daubert motion that in no way attacks the method

underlying Dr. Davis's mass loading calculations.  *See* Plf's Mot. to Exclude Dr.

Davis, ECF 1268-3 at 23.  Dr. Davis agrees with Plaintiff that one of his inputs

should be corrected, which he has done, and this is hardly an indication that his

overall method is unreliable.   Correcting inaccuracies in a prior disclosure is a

permissible reason to supplement.  *See In re 3M Combat Arms Earplug Prod. Liab.*

*Litig.,* No. 3:19MD2885, 2023 WL 5671004, at *2 (N.D. Fla. June 13, 2023);

*Crawford v. ITW Food Equip. Grp.*, LLC, 977 F.3d 1331, 1341 (11th Cir. 2020)

(noting "[s]upplementation is permitted under Rule 26(e) to correct inaccuracies or add information not available when the report was filed.").

There is no denying the clear results of the sampling Dr. Davis performed in the stretch of the Etowah River adjacent to Rome's biosolid application areas. Despite multiple creeks and streams adding flow to the Etowah in this area (which, if PFAS free, would dilute and thereby reduce PFAS concentrations detected in the River) PFAS concentrations *increase* downstream from Rome's biosolid land application sites (plotted with stars on the figure below).



*See* Expert Report of Andy Davis (ECF 1268-4 at 110).

The undisputed record evidence shows that Rome tested its biosolids in 2016 – after it already had taken "emergency" actions to reduce PFAS in drinking water to meet the 2016 EPA lifetime health advisory – and found them to contain significant concentrations of PFOS and PFOA.  ECF 1424-27.  Rather than disposing of those PFAS-laden biosolids by some other means, Rome continued to land apply them in the immediate vicinity of the Etowah River.  ECF 1282-10 at 74-75.  In fact, in 2018 Rome *added new* land application sites in the Etowah River watershed to its Georgia EPD permit.[2]  The impacts of Rome's actions are seen in the unchallenged sampling data reported by Dr. Davis, and his supplement relates only to the calculated percentage of PFAS loading in the Etowah River attributable to Rome's biosolids.[3]  *See* Andy Davis Rep. at Fig. 6-1 (ECF 1268-2); 2022 Sampling Data (3M_AL_GA_00623507) (ECF 1424-29); July 21, 2022 Eurofins Analytical Report (3M_AL_GA_00623474) (ECF 1424-30).

---

[2] Notably, Rome did not share the results of its internal PFAS testing with Georgia EPD in connection with its permit application or otherwise.  ECF 1282-10 at 63.

[3] The allocation of fault to Rome for its contribution to PFAS loading in the Etowah River relates to 3M's affirmative defense under O.C.G.A. § 51-12-33(c).  While Plaintiff filed a single Motion for Summary Judgment on third-party allocation defenses putatively applicable to all defendants who plead the defense, that motion was generalized and (incorrectly) argues that 3M (and other defendants) lack sufficient proof that various non-parties are responsible for a portion of Plaintiff's alleged damages.  Plaintiff's motion does not mention Dr. Davis or his mass loading calculations, which relate to the percentage of fault and not the underlying evidence of Rome's actions that contributed to Plaintiff's harm.

Rome has used the Etowah River for most of its drinking water since 2016, and incurred treatment costs to remove PFAS from that water.  *See* Expert Rep. of A. Frankel Report, at p. 2-1 (ECF 1212-5); *see also* Expert Rep. of B. Zieburtz, at p. 1(ECF 1212-8).  The Etowah River is not downstream from Dalton and receives no run-off from the LAS.  *See* Andrews Dep., at 278:19-279:9 (ECF 1424-20). Plaintiff correctly identified more accurate data that should be—and now is—used as an input to calculate the percentage of PFAS in the Etowah River attributable to Rome's land application of biosolids it knew contained elevated concentrations of PFOA and PFOS.

Dr. Davis corrects his report to accurately account for hydropower releases from Allatoona Dam that cause significant flow fluctuations in the Etowah. Accounting for those flow variations is appropriate—all agree on that point.  But the water released from Allatoona Dam contains only 3.4 parts per trillion of PFOA and PFOS combined, and the presence of *more* water from Allatoona cannot explain the increase in PFAS concentrations downstream of Rome's biosolid sites. A. Davis Supp. Rep., ECF 1324-3 at 2.  Those increased flows from Allatoona Dam do change the mass allocation analysis, as Dr. Davis's supplement notes.  *Id.* at 1.  Using that corrected flow data—with no other changes to Dr. Davis's method for calculating mass loading—reduces the amount of PFAS attributable to inflows

in the area of Rome's biosolid application sites by about ten percent.  *Id.* at 2.  This correction is neither surprising, unreliable, nor prejudicial to Plaintiff.

Nor is the correction here anything like the issue in *Companhia*, where the plaintiff's expert in a product liability case issued an initial report evaluating the *wrong product altogether*.  As the *Companhia* court observed, "This is hardly a minor point."  *Companhia Energetica Portiguar v. Caterpillar Inc.*, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016).  Not surprisingly, the defendant focused its motion for summary judgment and Daubert challenge on this fundamental error. The expert then submitted an eight-page declaration attempting to explain the similarities between the product at issue and the one the expert originally inspected and opined about.  Finding that the declaration "contain[ed] additional opinions" not included in his expert report, the Court excluded the declaration as an improper and untimely supplement.  *Id.* at 7.

Dr. Davis did not offer opinions pertaining entirely to the wrong product in a product liability case.  He used an incorrect input for one of his calculations regarding mass loading on one of the rivers at issue.  Notably, Plaintiff seems content to largely ignore the Etowah River and focus on the LAS and Oostanaula River (even though Rome withdrew significantly more drinking water from the Etowah River during times relevant to this action).  His hydrogeologist, Dr. Charles Andrews, mentions the Etowah River exactly once in his expert report, and

then only in a footnote.  C. Andrews Expert Rep., ECF1256-14 at 6.  The correction in Dr. Davis's supplement, while important for accuracy, is nothing like the fundamental, dipositive error the supplement in *Companhia* tried to fix by offering entirely new opinions.

There can be no dispute that (1) the Etowah River contains concentrations of PFAS that will require treatment if EPA's proposed MCLs are adopted; (2) Rome applied biosolids containing PFAS along the Etowah for years after it knew the biosolids contained significant amounts of PFAS; (3) PFAS concentrations in the Etowah River increase downriver of Rome's biosolid application sites (and upstream from its Etowah intake); (4) Rome withdrew a substantial majority of its drinking water from the Etowah River between 2016 and 2021; and (5) the costs of treating that water were passed along to Johnson and other ratepayers.  Dr. Davis simply adjusts his mass loading calculation to account for the increased mass of PFAS associated with a large flow of relatively clean water released from Allatoona Dam.  *See Diamond Resorts*, 2022 WL 1642865, at *23 (refusing to strike supplemental expert report where revised report only "corrected [the expert's] calculation under the method of calculating damages he espoused in his Initial Report").  This proper supplement is neither surprising nor prejudicial to Plaintiff.

## **Conclusion**

Plaintiff does not state a compelling basis for disallowing a minor correction to one of Dr. Davis's inputs.  Plaintiff himself first noticed the issue, so there can be no surprise.  The method underlying the mass loading calculation has not changed, and Dr. Davis offers no new opinions.  His numbers change slightly when using the corrected flow data, and supplementing his report to include more accurate data and calculations is entirely appropriate.

Dated:  December 15, 2023                    Respectfully submitted,

                                             /s/ *Benjamin P. Harmon*
                                             Benjamin P. Harmon, GA Bar No. 979043
                                             W. Larkin Radney, IV, *Pro Hac Vice*
                                             Harlan Irby Prater, IV, *Pro Hac Vice*
                                             M. Christian King, *Pro Hac Vice*
                                             LIGHTFOOT FRANKLIN &
                                             WHITE, LLC
                                             The Clark Building
                                             400 North 20th Street
                                             Birmingham, Alabama 35203
                                             Phone: (205) 581-0700
                                             Email: lradney@lightfootlaw.com
                                             Email: hprater@lightfootlaw.com
                                             Email: cking@lightfootlaw.com
                                             Email: bharmon@lightfootlaw.com

                                             Robert B. Remar, GA Bar No. 600575
                                             Monica P. Witte, GA Bar No. 405952
                                             SMITH GAMBRELL & RUSSELL, LLP
                                             1105 West Peachtree St., N.E., Ste. 1000
                                             Atlanta, Georgia 30309
                                             Phone: (404) 815-3500
                                             Email: rremar@sgrlaw.com
                                             Email: mwitte@sgrlaw.com

                                             *Counsel for 3M Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing

Response to Plaintiff's Motion to Strike the Supplemental Report of Dr. Andy Davis

upon all parties to this matter by Court Electronic Filing to counsel of record in this

case.

Dated:  December 15, 2023

Respectfully submitted,

*/s/ Benjamin P. Harmon*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

Dated:  December 15, 2023.

Respectfully submitted,

*/s/ Benjamin P. Harmon*