IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON, individually, and on Behalf of a Class of persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>3M COMPANY, et al.,<br><br>Defendants. | Civil Action No. 4:20-cv-0008-AT |

### DEFENDANT THE CITY OF DALTON, GEORGIA, ACTING THROUGH ITS BOARD OF WATER, LIGHT AND SINKING FUND COMMISSIONERS, D/B/A DALTON UTILITIES' SUPPLEMENTAL BRIEF REGARDING STANDING FOR CLEAN WATER ACT CLAIMS

Pursuant to the Court's January 31, 2025 Order [Dkt. 1623], Defendant the City of Dalton, Georgia, acting Through Its Board of Water, Light, and Sinking Fund, D/B/A Dalton Utilities ("Dalton Utilities") respectfully submits this Supplemental Brief in Support of its Motion for Summary Judgment [Dkt. 1256] to address the impact of the Court's December 10, 2024 Order [Dkt. 1616] (the "Order") on the Clean Water Act ("CWA") claims asserted against Dalton Utilities. Based on the principles of standing, and specifically, injury and redressability, that underpin the Court's Order, the CWA claims fail as a matter of law.

1

## INTRODUCTION

In the Complaint [Dkt. 716], Plaintiff asserts three claims against Dalton Utilities. In Count One, Plaintiff alleges that Dalton Utilities is violating the CWA by discharging PFAS from its Land Application System ("LAS") without a National Pollutant Discharge Elimination System ("NPDES") permit. In Count Two, Plaintiff alleges that Dalton Utilities is violating the CWA with respect to its Stormwater NPDES Permit. In Count Eight, Plaintiff asserts that Dalton Utilities is responsible, along with the other defendants, for abatement of a nuisance. Although by its terms the Court's Order only addressed Plaintiff's lack of standing to pursue Count Eight, its reasoning applies equally to Counts One and Two.

In the Order, the Court determined that Plaintiff does not have standing to assert a claim for abatement of a nuisance because he does not have a concrete, particularized injury that would be redressable by remediation of the LAS. Specifically, the Court held that Plaintiff failed to establish any recreational injury, property harm, or health injury resulting from the presence of PFAS in the waters in and around the City of Rome. The only harm that Plaintiff established was a past ratepaying injury that is not continuing. Based on this same logic, Plaintiff lacks standing to assert CWA claims against Dalton Utilities because Plaintiff's ratepaying injury will not be redressed by the injunctive relief or the civil penalties that Plaintiff seeks under the CWA.

## PROCEDURAL BACKGROUND

Plaintiff filed his Fourth Amended Complaint on January 11, 2022 [Dkt. 716] (the "Complaint").[1] In his Complaint, Plaintiff alleges three claims against Dalton Utilities. First, Plaintiff alleges that Dalton Utilities is violating Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging PFAS from the LAS into the Conasauga River and its tributaries without a NPDES permit (Count One). Compl. ¶¶ 107–21. Second, Plaintiff alleges that Dalton Utilities is violating Sections 301(a) and 402 of the CWA, 33 U.S.C. §§1311(a) and 1342, by discharging PFAS from stormwater outfalls at the LAS, in violation of its NPDES General Stormwater Permit (Count Two). *Id.* ¶¶ 123–30. Plaintiff seeks injunctive relief and civil penalties for the alleged CWA violations. *Id.* ¶¶ 119–21, 128–30. In addition, Plaintiff sought injunctive relief under state law to abate a purported public nuisance at the LAS (Count Eight). *Id.* ¶¶ 194–200.

On May 31, 2023, Dalton Utilities sought summary judgment as to all three claims [Dkt. 1256-1] (the "Motion"). Plaintiff filed an opposition to Dalton Utilities' Motion on October 19, 2023 [Dkt. 1420]. Dalton Utilities replied on December 22, 2023 [Dkt. 1521]. The Court has not ruled on the Motion. However, the Court's

---

[1] In its Order, the Court refers to the Third Amended Complaint [Dkt. 418] as the "operative complaint." Order at 13. However, Plaintiff filed a Fourth Amended Complaint on January 11, 2022 [Dkt. 716]. Although Plaintiff included additional violations of the CWA against Dalton Utilities, Plaintiff did not allege new injuries.

December 10, 2024 Order directly disposed of Count Eight (abatement of the nuisance), and its reasoning also forecloses Plaintiff's two CWA claims (Counts One and Two).

In its Order [Dkt. 1616], the Court held that Plaintiff does not have standing to pursue injunctive relief in the form of LAS remediation. *See* Order at 39. Specifically, the Court concluded that (1) Plaintiff did not establish a cognizable health injury because he did not provide "concrete evidence of a health injury that he has suffered," *id.* at 19–21; (2) Plaintiff did not establish a cognizable property-based injury because he only relied on "vague" assertions that did not suffice to show a "concrete, particularized and actual (or imminent) property injury," *id.* at 21–23; (3) Plaintiff did not establish a recreational injury because he only proffered "a vague assertion of intended recreation," *id.* at 23–28; and (4) although Plaintiff established a ratepaying injury (because he initially paid increased water surcharges as a result of PFAS contamination), remediation of the LAS could "not redress Plaintiff's ratepaying injury," *id.* at 29–30. Thus, Plaintiff lacked standing to obtain injunctive relief. *Id.* at 39.

The Court concluded that Plaintiff was "trying to fit a square peg in a round hole" by requesting an "expansive and expensive LAS remediation program . . . when money damages would adequately compensate for [his] injury." *Id.* at 32. Additionally, the Court concluded that "[e]ven if Plaintiff had a continuing,

4

redressable injury sufficient to support injunctive relief *at the outset of this case*," his request for injunctive relief was mooted by Rome's settlement agreement with Defendants. *Id.* at 33–37. Money damages for Plaintiff's past ratepaying injury are still available. *Id.* at 2 n.1.

Following the Court's Order, as reported by the Special Master, counsel for Plaintiff and Dalton Utilities conferred. On January 31, 2025, the Court granted Dalton Utilities and Plaintiff leave to submit supplemental briefing regarding the implications of the Court's Order for Plaintiff's standing under the CWA [Dkt. 1623]. Because Plaintiff lacks standing, the Court should grant Dalton Utilities' Motion.[2]

## LEGAL STANDARD

A plaintiff bears the burden to demonstrate that he has standing for each claim and each form of relief that he seeks. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a)

---

[2] Shortly after the Order was entered, on December 20, 2024, Plaintiff's counsel sent to Dalton Utilities a Notice of Intent to File Citizen Suit Pursuant to the CWA on behalf of new plaintiffs who purport to have health injuries, property-based injuries, and recreational injuries arising out of Dalton Utilities' operation of the LAS. On February 14, 2024, Plaintiff's counsel sent to Dalton Utilities a statutory ante litem notice on behalf of a subset of those plaintiffs, acting individually and on behalf of a class of City of Rome water and sewer accountholders, who purport to assert state law tort claims arising out of Dalton Utilities' operation of the LAS.

5

concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 180–81. "To determine whether an injury is redressable, [courts] consider the relationship between the judicial relief requested and the injury suffered." *Murthy v. Missouri*, 603 U.S. 43, 73 (2024) (internal quotations omitted).

## ARGUMENT

As this Court previously held, Plaintiff failed to demonstrate any injury other than an economic harm from paying increased water rates that Plaintiff previously paid but does not face in the future. Order at 30–40. Specifically, Plaintiff failed to establish any adverse health consequences, harm to property interests, or recreational injury. *Id*. at 21, 23, 27. Plaintiff's only injury is a wholly past economic harm. *See id*. at 29. That lone ratepaying injury would not be redressed by either the injunctive relief or civil penalties he seeks under the CWA. Therefore, Plaintiff lacks standing to pursue either CWA claim alleged in the Complaint.

To establish standing, "[t]he relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by the requested relief." *Marshall Durbin Co. of Jasper v. U.S. Env't Prot. Agency*, 788 F.2d 1490, 1492 (11th Cir. 1986); *see also Steel Co. v. Citizens*

*for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). "Put another way, the requested relief must connect to, match, and remedy the cognizable injury in fact." Order at 18.

The citizen suit provision under the CWA confers standing on "any person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). This standing provision is coextensive with and "reaches the outer limit of Article III standing." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16 (1981) (The CWA's "citizen-suit provisions apply only to persons who can claim some sort of injury. . . ."). Thus, the Supreme Court has "held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Laidlaw*, 528 U.S. at 183. However, as in any other context, to have standing to pursue civil penalties or injunctive relief under the CWA, plaintiffs must demonstrate "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 181; *see also Lujan v. Defs. of Wildlife*, 573–74 (1992) (no redressability under Endangered Species Act where requested relief "would not remedy respondents' alleged injury" because "seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article

III case or controversy").

The CWA provides private plaintiffs with two potential remedies—injunctive relief and civil penalties. Where a plaintiff demonstrates an injury that would be redressed by an injunction, under the CWA, courts may fashion injunctive relief "to enforce . . . an effluent standard or limitation, or . . . an order [issued by the Administrator or State with respect to such a standard or limitation], or to order the Administrator to perform [a nondiscretionary] act or duty, as the case may be." 33 U.S.C. § 1365(a). Additionally, the Court may order a CWA defendant to pay civil penalties to the United States Treasury equal to an amount "not to exceed $25,000 per day for each violation." 33 U.S.C. § 1319(d). Here, Plaintiff's lone injury—a wholly past ratepaying injury—will not be redressed by either an injunction or civil penalties.

*First*, this Court's Order finding that Plaintiff failed to establish standing to seek common law abatement applies with equal force to Plaintiff's standing to pursue an injunctive remedy under the CWA. As the Court correctly recognized, "Plaintiff has not shown, with the degree of evidence required, a 'likelihood that the requested relief will address the alleged injury[,]'" particularly because "the injury in fact – increased water rates – is so clearly a monetary harm that can be fully addressed through damages." Order at 31 (quoting *Steel Co.*, 523 U.S. at 103). The same is true with respect to any injunctive relief Plaintiff seeks under the CWA. An

injunction prohibiting future effluent violations or requiring Dalton Utilities to obtain an NPDES permit for alleged point sources from the LAS would not redress Plaintiff's past ratepaying injury, which "can be fully addressed through damages." *Id*.[3]

*Second*, the Court's Order likewise forecloses Plaintiff's standing to pursue civil penalties under the CWA. While courts have found that the deterrent effect associated with civil penalties can redress recreational and aesthetic injuries, here, Plaintiff's ratepayer harm is materially different because, unlike a desire to swim in a river in the future, Plaintiff's previous payment of elevated water rates is wholly in the past. In *Laidlaw*, the Court explained that civil penalties—like injunctive relief—may "afford redress to citizen plaintiffs" with *aesthetic* and *recreational* injuries stemming from the contamination of a river if the penalties carry "with them a deterrent effect that ma[kes] it likely, as opposed to merely speculative, that the penalties would redress [plaintiff's] [aesthetic and recreational] injuries by abating current violations and preventing future ones." 528 U.S. at 708. In contrast, here, this Court already determined that Plaintiff failed to establish any aesthetic, health,

---

[3] As the Court found in its Order, Plaintiff's claim for injunctive relief is also moot because the "Defendants' settlement with Rome in the parallel action . . . depriv[ed] Plaintiff [] of any ongoing ratepaying harm." Order at 33; *id*. at 35 ("With no future harm, or imminent future harm, Plaintiff's request for injunctive relief is moot."). The same mootness analysis applies to Plaintiff's request for injunctive relief under the CWA.

9

or recreational injury (Order at 21, 23, 27), and Plaintiff's past ratepaying injury will not be redressed by any deterrent effect of CWA penalties. *See Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217, 1228 (9th Cir. 2024) ("[W]hen [CWA] violations aren't reasonably expected to recur, civil penalties lose their deterrent effect and they no longer remediate a citizen plaintiff's injury, which means the citizen plaintiff no longer has a cognizable interest under Article III."); *Mississippi River Revival, Inc. v. City of Minneapolis*, *MN*, 145 F. Supp. 2d 1062, 1065 (D. Minn. 2001), *aff'd sub nom.*, 319 F.3d 1013 (8th Cir. 2003) ("If deterrence is the sole purpose underlying civil penalties, it follows that a claim to assess civil penalties is moot if civil penalties no longer will deter the defendant from violating the CWA.").[4]

Courts have also found that a private economic injury cannot be redressed through statutory civil penalties, which would be paid to the government. For example, in *Steel Co.*, the Supreme Court held that a plaintiff lacked standing to pursue a claim for civil penalties because the penalties would not remedy the

---

[4] Nor is any deterrent effect needed to compel Dalton Utilities to address current and future PFAS concerns. On December 9, 2024, Dalton Utilities filed a lawsuit against PFAS manufacturing defendants and carpet manufacturing defendants, seeking, *inter alia*, declaratory judgment and response costs to remediate Defendants' PFAS contamination at Dalton Utilities' Publicly Owned Treatment Works under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607, 9613(G)(2). *City of Dalton, Ga. v. 3M Company*, No. 4:24-cv-00293.

plaintiff's alleged injury for late reporting of toxic chemical use and releases under the applicable environmental statute. 523 U.S. at 104–07. As the Court explained, because civil penalties were not payable to plaintiff and "although a suitor may derive great comfort and joy from the fact that the United States Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Id.*; *see also City of Seattle v. Monsanto Co.*, 387 F. Supp. 3d 1141, 1156 (W.D. Wash. 2019) (finding no CWA standing where manufacturer's alleged injury, related to past costs arising from environmental cleanup process, was not fairly redressable by relief sought—including civil penalties under CWA—because "past costs cannot be redressed by [such] relief as any civil penalties would go to the United States Treasury" and it was "very unlikely that the imposition of an injunction or civil penalties upon [city] w[ould] redress [manufacturer's] future defense costs and contingent liabilities").

In sum, Plaintiffs' two CWA claims seek remedies that will not redress his past ratepaying injuries. The Court already determined that Plaintiff's ratepaying injury "provides no legal foundation for the Court to grant such extensive injunctive relief." Order at 39. Likewise, civil penalties would be paid to the Government, not Plaintiff, and any deterrent effect those penalties may have on Dalton Utilities, or incentive to take actions in the future to cease alleged permit violations, would not

redress the elevated water rates Plaintiff paid in the past.  In its Order, the Court found that the ratepaying injury can be compensated by money damages, which are still at issue.  Order at 2 n.1.  Those money damages—rather than civil penalties—will redress Plaintiff's past ratepaying harm.  Because Plaintiff lacks standing to pursue claims under the CWA and for abatement, the Court should grant Dalton Utilities' Motion in its entirety [Dkt. 1256].

Respectfully submitted, this 21st day of February, 2025.

**TROUTMAN PEPPER LOCKE LLP**

/s/ Lindsey B. Mann
Lindsey B. Mann (GA Bar No. 431819)
lindsey.mann@troutman.com
E. Fitzgerald Veira (GA Bar No. 726726)
fitzgerald.veira@troutman.com
T. Scott Mills (GA Bar No. 757063)
scott.mills@troutman.com
Anaid Reyes Kipp (GA Bar No. 703283)
anaid.reyes-kipp@troutman.com
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
404-885-3000

Brooks M. Smith (*pro hac vice*)
brooks.smith@troutman.com
1001 Haxall Point, Suite 1500
Richmond, VA 23219
804-697-1200

Counsel for Defendant The City of Dalton, Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities

## LOCAL RULE 7.1D CERTIFICATION

Counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1B.

This 21st day of February, 2025.

/s/ *Lindsey B. Mann*
Lindsey B. Mann
GA Bar No. 431819
lindsey.mann@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 21st day of February, 2025.

/s/ *Lindsey B. Mann*
Lindsey B. Mann
GA Bar No. 431819
lindsey.mann@troutman.com