IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| JARROD JOHNSON, individually, and on Behalf of a Class of persons similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>3M COMPANY, et al.,<br><br>    Defendants. | Civil Action No. 4:20-cv-0008-AT |

**DEFENDANT THE CITY OF DALTON, GEORGIA,
ACTING THROUGH ITS BOARD OF WATER, LIGHT AND
SINKING FUND COMMISSIONERS, D/B/A DALTON UTILITIES'
RESPONSE TO PLAINTIFF'S MEMORANDUM ON STANDING AND
MOOTNESS FOR CLEAN WATER ACT CLAIMS**

Pursuant to the Court's January 31, 2025 Order [Dkt. 1623], Defendant the City of Dalton, Georgia, acting Through Its Board of Water, Light, and Sinking Fund, D/B/A Dalton Utilities ("Dalton Utilities") respectfully submits this Response to Plaintiff's Memorandum on Standing and Mootness for Clean Water Act Claims [Dkt. 1624] (the "Memorandum").

### INTRODUCTION

Following this Court's December 10, 2024 Order [Dkt. 1616] (the "Order"), the only claims remaining against Dalton Utilities are claims asserted under the Clean Water Act ("CWA"). Plaintiff initially sought four types of relief pursuant to

1

the CWA: (1) injunctive relief; (2) declaratory relief; (3) civil penalties; and (4) attorneys' fees and costs. Plaintiff correctly recognizes that the Order forecloses any claim for injunctive relief. Memorandum at 5-6. Plaintiff's remaining categories of relief suffer from the same central flaw as his claim for injunctive relief: Plaintiff's sole injury (a ratepaying injury) cannot be redressed by declaratory relief or civil penalties[1]; as a result, Plaintiff lacks Article III standing and cannot proceed.

Despite Plaintiff's extended discussion of the issues, Plaintiff and Dalton Utilities agree with the Court's prior holding on the first two elements of Article III standing—that Plaintiff's ratepaying injury is an injury in fact that, at least "at this juncture," could in theory be traced to the conduct of Defendants, including Dalton Utilities. *See* Order at 29. The parties' only area of disagreement on the standing inquiry is with respect to redressability, a topic that receives very little attention in the Memorandum. Redressability "consider[s] the relationship between the judicial relief requested and the injury suffered." Order at 18 (quoting *Murthy v. Missouri*, 144 S. Ct. 1972, 1995 (2024)). Plaintiff generically contends that civil penalties are appropriate because of their "deterrence effect," but Plaintiff does not provide any specificity on the deterrence effect in this case or demonstrate how that deterrence

---

[1] Plaintiff concedes that his request for attorneys' fees and costs cannot confer standing; it only applies if he succeeds on the merits of his claim. *See* Memorandum at 15; 33 U.S.C. § 1365(d) (costs of litigation only recoverable by a "prevailing or substantially prevailing party").

effect is linked to his particular injury. Plaintiff never even attempts to explain how civil penalties paid to the U.S. Treasury would redress his injury of paying increased water rates to the City of Rome due to PFAS in the City's water supply. Memorandum at 12-13. Nor could he. Even assuming the imposition of civil penalties would compel Dalton Utilities to take some action to prevent PFAS from leaving the Land Application System (an assumption that cannot be supported), as this Court previously found, there are myriad other sources of PFAS that would continue to contaminate Rome's water supply. Therefore, even under Plaintiff's best-case scenario for deterrence, Plaintiff's requested civil penalties would not redress his ratepaying harm. Plaintiff devotes even less attention to his request for declaratory relief which, at most, would declare the legality of Dalton Utilities' operations and likewise have no impact on Plaintiff's water rates.

Perhaps recognizing that his own limited ratepaying injury cannot be redressed by the relief he seeks, Plaintiff points to the general public interest in clean waterways, his desire to serve as a "private attorney general" enforcing environmental laws, and his (or at least his counsel's) quest to "shoulder the burden of enforcing" the CWA "[i]n the face of government inaction." Memorandum at 13, 18. Noble as those interests may be, they cannot convert Plaintiff's ratepaying injury into something it is not, nor can they mask Plaintiff's fundamental lack of Article III

standing, a necessary prerequisite to any pursuit of the public interest through a citizen suit.

Moreover, Plaintiff's argument regarding mootness cannot save his claim. Article III standing is a threshold issue—if he cannot clear the hurdle on redressability, which he cannot, this Court need not reach his argument on mootness. But, even if Plaintiff had standing to pursue claims for civil penalties and declaratory relief at the outset of his lawsuit, the Defendants' settlement with the City of Rome mooted his claims. Plaintiff contends that the alleged violations of the CWA are continuing and that they must be deterred. Yet Plaintiff's injury—the payment of increased rates to the City of Rome—is not ongoing and is not going to recur. There is nothing to deter. It is undisputed that Plaintiff is not harmed by any current or future PFAS contamination in Rome's water sources; he has a wholly-past ratepaying in jury.

For the reasons discussed herein and in Dalton Utilities' Supplemental Brief Regarding Standing For Clean Water Act Claims [Dkt. 1625] (the "Supplemental Brief"), the Court should enter summary judgment in favor of Dalton Utilities on Count One and Count Two of Plaintiff's Fourth Amended Complaint.

# ARGUMENT

## I. Plaintiff's Ratepaying Injury Will Not Be Redressed by Any Remedy Under the Clean Water Act.

In his Memorandum, Plaintiff fails to explain in any detail how civil penalties, which must be paid to the U.S. Treasury, would redress his ratepaying injury. At best, Plaintiff identifies two generalized theories to justify his standing to seek civil penalties and declaratory relief: (i) the deterrent effect of CWA penalties will compel Dalton Utilities to take some form of action at the LAS to prevent continuing violations, and (ii) the CWA allows Plaintiff to act as a "private attorney general" to protect the general environmental interests of the public. Both theories fail to establish that Plaintiff's only actual harm will be redressed by his requested remedies such that he has standing to pursue his CWA claims.

### A. Civil Penalties and Declaratory Relief Will Not Redress Plaintiff's Ratepaying Injury.

While courts recognize that civil penalties may redress certain types of environmental, aesthetic, and recreational injuries by compelling polluting defendants to come into compliance with the CWA, it is unclear precisely what Plaintiff contends the deterrent effect of civil penalties would cause Dalton Utilities to do or how this would address Plaintiff's one injury-in-fact, a ratepaying injury. More specifically, Plaintiff fails to allege what deterrent effect civil penalties would have on Dalton Utilities – for example, would it cause Dalton Utilities to apply for

an NPDES permit or take some other action at the LAS to prevent the allegedly unpermitted discharges? And more fundamentally, Plaintiff fails to allege how any such action, even if taken, would redress his ratepaying injury.

Even if Plaintiff believes that the deterrent effect of civil penalties would result in Dalton Utilities taking action at the LAS to address PFAS (e.g., along the lines recommended by his expert, Dr. Charles Andrews), any such action would only *reduce* the levels of PFAS entering the Conasauga River, not eliminate them. Order at 31.[2] There would still be PFAS entering the Conasauga River from other sources upstream of Dalton Utilities' LAS; there would still be PFAS entering the City of Rome's other water source, the Etowah River, which is not impacted by Dalton Utilities; and there would still be pre-existing PFAS in the Oostanaula River. *Id.* at 30-31. While a reduction in contamination of water bodies can redress some injuries (*i.e.*, aesthetic or recreational), it would not redress Plaintiff's ratepaying injury because the City of Rome would still be compelled to install PFAS treatment, thereby justifying the rate increases. In short, regardless of any action taken by

---

[2] Moreover, if Plaintiff's goal is to have Dalton Utilities take some action at the LAS to address PFAS, civil penalties are not required—Dalton Utilities filed a lawsuit against PFAS manufacturing defendants and carpet manufacturing defendants, seeking, *inter alia*, declaratory judgment and response costs to remediate Defendants' PFAS contamination at Dalton Utilities' Publicly Owned Treatment Works under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607, 9613(G)(2). *City of Dalton, Ga. v. 3M Company*, No. 4:24-cv-00293.

Dalton Utilities, the City of Rome would still need to charge increased water rates to treat its drinking water for PFAS.

The authority cited by Plaintiff does not compel a different result. Plaintiff relies on cases recognizing the deterrent effect of civil penalties and the ability of a declaratory judgment to settle the legality of a discharge, but every case he cites involved aesthetic or recreational injuries—the very injuries Plaintiff failed to allege or prove. Memorandum at 13-14 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64 (3d Cir. 1990); *Winyah Rivers All. v. Active Energy Renewable Power, LLC*, 579 F. Supp. 3d 759 (E.D.N.C. 2022)); Order at 27 ("Plaintiff's vague statement that, if there were no PFAS in the water, he 'would use the rivers recreationally' is not the type of concrete, particularized intention as was in the case in *Laidlaw*."). For example, in *Laidlaw*, the plaintiff established that its members had suffered the types of recreational injuries Plaintiff here has disclaimed. 528 U.S. at 181-182. Similarly, in *Public Interest Research Group*, the plaintiffs established recreational injury because "[t]he pollution in the Kill Van Kull has interfered with these plaintiffs' enjoyment of this natural resource." 913 F.2d at 71. There, the plaintiff's members "indicated that they would boat, fish or swim" in the river, *id*., but as this Court previously found, "that is not Plaintiff's evidence," Order at 27. For the same reasons, Plaintiff's reliance on

7

*Winyah Rivers Alliance. v. Active Energy Renewable Power, LLC*, 759 (E.D.N.C. 2022) fails to establish that declaratory relief would redress his harm because the injuries in *Winyah* to plaintiff's members' fishing, boating, and swimming activities are different in kind from Plaintiff's ratepaying injury. 579 F. Supp. 3d at 765-66.

Unlike the authority on which he relies, here, Plaintiff has no recreational interest in PFAS-free waters around Rome. The difference between a recreational injury and an economic injury is critical for the redressability analysis. Forcing a polluter to take action that may improve the water quality of a river could conceivably redress a plaintiff's recreational injury because improved water quality might allow the plaintiff to resume fishing in the once polluted river. By contrast, as the Court recognized in its Order, removing some PFAS from the LAS would not resolve Rome's need to remove PFAS from Plaintiff's drinking water, which caused the increased water rates Plaintiff paid. Order at 32. Thus, Plaintiff's ratepaying injury would not be redressed by civil penalties or declaratory relief, even assuming those remedies compelled Dalton Utilities to remediate the LAS.

**B.   Lacking His Own Redressable Injury, Plaintiff Cannot Sue on Behalf of Generalized Environmental Interests.**

Effectively conceding his failure to demonstrate redressability, Plaintiff turns to concepts like "the general public interest" and a citizen plaintiff's "role [as] a private attorney general by enforcing federal environmental law" to backfill his own lack of standing, but these theories put the cart before the horse. Memorandum at

13. Before he can assert some generalized private attorney general interest in protecting the environment, Plaintiff must first establish that he himself has Article III standing. That is because "Congress' power to authorize citizen suits and draft citizens as private attorneys general is inherently limited by the 'case or controversy' clause of Article III of the Constitution." *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997) ("Even if Congress intended that the Clean Water Act protect navigable waterways 'in their pristine state,' Congress could not create a private cause of action in the absence of actual or threatened injury"). Therefore, a plaintiff can only act as a private attorney general to enforce the CWA where he himself has standing to pursue the claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566 (1992) ("It makes no difference that the general-purpose section of the [Endangered Species Act] states that the Act was intended in part 'to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved,' [internal citation omitted]. To say that the Act protects ecosystems is not to say that the Act creates (if it were possible) rights of action in persons who have not been injured in fact. . . ."). As this Court already found, that is not the case for this Plaintiff.

Even the authority on which Plaintiff relies confirms that he must have his own Article III standing before any generalized public interest can support civil penalties. Specifically, Plaintiff cites *Sierra Club v. Simkins Indus., Inc.*, 847 F.2d

1109 (4th Cir. 1988), in which the Fourth Circuit held that "Congress' provision for citizen suits does not, in itself, establish Article III standing." *Id.* at 1113.  Rather, the plaintiffs first had to establish that they "use the [affected river] and would be adversely affected by its pollution." *Id.*  As discussed above, Plaintiff cannot meet the first step because his ratepaying injury would not be redressed by civil penalties or declaratory relief.  The remaining authority on which Plaintiff relies does not compel a different result because it also finds that a plaintiff must have his own Article III standing before invoking a public interest in clean waters.  Mot. at 13 (citing *Public Research Grp. of New Jersey, Inc.*, 913 F.2d at 71-73 (if civil penalties forced defendant to comply with NPDES permit, decreased pollution would redress plaintiff's aesthetic and recreational injuries).

## II. Even If Plaintiff Had Standing, His Claims for Civil Penalties Are Moot Given the Lack of Any Ongoing or Future Ratepaying Injury.

In the event the Court finds that Plaintiff had standing to pursue his CWA claims based on the injuries he suffered at the time the Complaint was filed, subsequent actions have mooted his claims.  The Court already determined that "[e]ven if Plaintiff had a continuing, redressable injury sufficient to support injunctive relief at the outset of this case, he no longer does" after Dalton Utilities' and other Defendants' settlements with the City of Rome.  Order at 33.  As a result of those settlements, it is now "undisputed that Plaintiff has not suffered a ratepaying injury since before September 1, 2023, and that Plaintiff is not suffering any

continuing ratepaying harm." *Id*. at 35. The wholly-past nature of Plaintiff's ratepaying injury renders his claims moot.

Plaintiff argues that a claim under the CWA cannot be moot unless there is no reasonable possibility that the alleged violations could recur, and he even goes so far as to suggest that a claim for civil penalties can never be mooted. Memorandum at 16-17. These arguments ignore the basic fact that Plaintiff will not be harmed by any future (or current) alleged violations of the CWA and the necessarily forward-looking purpose of civil penalties recognized by the Supreme Court in *Laidlaw*.

Plaintiff relies on *Laidlaw*'s holding that a claim for civil penalties may not be mooted if there is "a prospect of future violations for civil penalties to deter," Memorandum at 17, but he fails to explain how he faces any harm from the prospect of future violations. As the Supreme Court explained, civil penalties' deterrent effect can "afford redress to citizen plaintiffs who ***are injured or threatened with injury as a consequence of ongoing unlawful conduct***." *Laidlaw*, 528 U.S. at 185 (emphasis added). Following this forward-looking justification of *Laidlaw*, courts have recognized that where a "plaintiff is not reasonably expected to suffer a future injury[, he] retains no constitutionally recognized interest in civil penalties, particularly because civil penalties go to the U.S. Treasury." *Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217, 1228 (9th Cir. 2024); *see also Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 318 (5th Cir.

2024) (per curiam) (explaining that *Laidlaw* and "other cases make clear the following: (1) citizen-suit plaintiffs may only pursue prospective forms of relief; (2) civil penalties are a form of prospective relief because they deter future violations").[3] As the Eighth Circuit explained, unlike claims brought by EPA, the CWA "limits citizen suit plaintiffs to remedies that will redress ongoing and future injury, so the *Laidlaw* mootness standard applies" to claims for civil penalties. *Mississippi River Revival, Inc. v. City of Minneapolis, Minn.*, 319 F.3d 1013, 1016 (8th Cir. 2003).

Here, Plaintiff is not injured or threatened with injury by any ongoing unlawful conduct. Rather, his only injury is a result of paying increased water rates in the past. Order at 35 ("It is undisputed that Plaintiff has not suffered any ratepaying injury since before September 1, 2023, and that Plaintiff is not suffering any continuing ratepaying harm."). Plaintiff complains of ongoing discharges of PFAS into the Conasauga River, Memorandum at 14, but this Court already held that he is not injured by those discharges, *see* Order at 35. Thus, any deterrent effect of the civil penalties Plaintiff seeks would not redress his wholly past ratepaying

---

[3] Although these cases were decided on standing grounds, their reasoning applies equally to mootness. *See Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1304 (11th Cir. 2011) ("If, due to events that have happened since the filing of the complaint, the court can no longer redress the injuries claimed by the parties, the case is moot and should be dismissed."); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (describing "mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") (internal citations omitted).

injuries. *Env't Texas Citizen Lobby, Inc.*, 123 F.4th at 319 n.65 ("[I]f a forward-looking remedy redresses a citizen-suit plaintiff's injuries then those injuries must be ongoing or future harms."); *see Mississippi River Revival, Inc.*, 319 F.3d at 1016.

Plaintiff appears to suggest that civil penalties can never be mooted by subsequent actions. Memorandum at 17 (citing *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128 (11th Cir. 1990)). But this argument is foreclosed by the Supreme Court's holding in *Laidlaw* that a claim for civil penalties, like injunctive relief, may "'become moot if subsequent events have made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Laidlaw*, 528 U.S. at 708 (internal citations omitted); *see Mississippi River Revival, Inc.*, 319 F.3d at n.3 (explaining that, before *Laidlaw*, "a number of circuits" had held "that citizen suit claims for civil penalties were not mooted by the defendant's subsequent compliance," but "*Laidlaw* has overruled these decisions, at least in part, by equating citizen suit claims for civil penalties and claims for injunctive relief for mootness purposes"). Here, Plaintiff does not dispute that the resolution of the City of Rome litigation makes it absolutely clear that his ratepaying harm will not recur. Order at 35 ("It is undisputed that Plaintiff has not suffered any ratepaying injury since before September 1, 2023, and that Plaintiff is not suffering any continuing ratepaying harm."); Plaintiff's Resp. to Mot. to Exclude, Dkt. 1606 at ECF 25 (recognizing that damages "based on future rate

increases are now moot"). Therefore, "the *Laidlaw* mootness standard applies" because Plaintiff's injury cannot recur as a result of any ongoing or future violations of the CWA. *Mississippi River Revival, Inc.*, 319 F.3d at 1016.

Accordingly, the intervening settlement with the City of Rome has rendered Plaintiff's claim for civil penalties moot. *Coastal Env't Rts. Found.*, 115 F.4th at 1227 ("[W]hen post-litigation events 'ma[k]e it absolutely clear that the [Act's] violations could not reasonably be expected to recur,' then claims for civil penalties lose their deterrent effect and become moot.") (second and third alterations in original) (internal citations omitted).

## CONCLUSION

For the reasons discussed above and in Dalton Utilities' Supplemental Brief, Plaintiff fails to establish standing to pursue any remedies available under the CWA. Alternatively, even if Plaintiff had standing at the outset of his case, his claims are moot because he no longer has any ongoing or future ratepaying harm. Accordingly, the Court should enter summary judgment in favor of Dalton Utilities and against Plaintiff on Count One and Count Two.

Respectfully submitted, this 17th day of March, 2025.

        **TROUTMAN PEPPER LOCKE LLP**

        /s/ Lindsey B. Mann
        Lindsey B. Mann (GA Bar No. 431819)
        lindsey.mann@troutman.com
        E. Fitzgerald Veira (GA Bar No. 726726)

fitzgerald.veira@troutman.com
T. Scott Mills (GA Bar No. 757063)
scott.mills@troutman.com
Anaid Reyes Kipp (GA Bar No. 703283)
anaid.reyes-kipp@troutman.com
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
404-885-3000

Brooks M. Smith (*pro hac vice*)
brooks.smith@troutman.com
1001 Haxall Point, Suite 1500
Richmond, VA 23219
804-697-1200

Counsel for Defendant The City of Dalton, Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities

## LOCAL RULE 7.1D CERTIFICATION

Counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1B.

This 17th day of March, 2025.

/s/ *Lindsey B. Mann*
Lindsey B. Mann
GA Bar No. 431819
lindsey.mann@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 17th day of March, 2025.

/s/ *Lindsey B. Mann*
Lindsey B. Mann
GA Bar No. 431819
lindsey.mann@troutman.com