## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

JARROD JOHNSON, individually, )
and on Behalf of a Class of Persons )
Similarly Situated, )
                               )
      Plaintiff, )
                               )     **CIVIL ACTION NUMBER**
v.                         )     **No. 4:20-cv-00008-AT**
                               )
3M COMPANY, et al., )
                               )
      Defendants. )

## PLAINTIFF'S RESPONSE TO DALTON UTILITIES' SUPPLEMENTAL BRIEF REGARDING STANDING FOR CLEAN WATER ACT CLAIMS

## PRELIMINARY STATEMENT

Plaintiff Jarrod Johnson hereby responds to Dalton Utilities' ("DU" or "Defendant") Supplemental Brief Regarding Standing for Clean Water Act Claims. Doc 1625. DU addresses only standing in its brief, but in doing so, it improperly conflates standing and mootness.[1] The Court clearly ruled in its December 10, 2024, Order that Johnson met the first two prongs of standing (injury in fact and traceability). Because redressability was established for violations of the Clean Water Act ("CWA") by the deterrent effect of civil penalties and declaratory relief at

---

[1] Because DU did not address mootness in its brief, Plaintiff relies upon his mootness argument from his original brief on standing and mootness. Doc. 1624 at 15-18.

the time the complaint was filed, Johnson has established standing to enforce DU's

ongoing violations of the Act.

**ARGUMENT**

## I.    JOHNSON HAS STANDING TO ENFORCE THE CLEAN WATER ACT.

DU's brief conflates standing and mootness by arguing that "Plaintiff's only

injury is a wholly past economic harm." *See e.g.* Doc. 1625 at 6, 10, 12. But this

Court has already addressed this issue. Doc. 1616 at 29. Standing is determined at

the time the plaintiff's complaint is filed, meaning that Plaintiff's ratepayer injury

was ongoing when he filed his complaint. *Id.* This Court explicitly did not consider

post-filing developments when assessing standing and should not do so now at DU's

invitation:

> For purposes of standing, the Court does not consider the changed
> circumstances resulting from the City of Rome's settlement with
> Defendants — and specifically does not consider the water surcharge
> rollbacks or Rome's plans to build a Reverse Osmosis Plant.

*Id.* The Court's standing decision did not turn on the changed circumstances resulting

from the City of Rome's settlement with Defendants but instead on whether the

hypothetical $850 million remediation proposal for the LAS "is an appropriate

remedy to redress his ratepaying harm when money damages would adequately

compensate for that injury." Doc. 1616 at 32.

The adequacy of money damages to compensate for the injury is not an issue under the CWA, and Johnson is not trying to "fit a square peg into a round hole," because Johnson cannot recover money damages under the CWA. *Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 18 (1981). Instead, the economic harm to Johnson from DU's PFAS discharges in violation of the CWA is a cognizable Article III injury for Johnson's CWA claims.

Because the ratepaying injury was ongoing at the time the complaint was filed, the Court found Plaintiff had satisfied the first two prongs of standing, injury in fact and traceability, because Plaintiff paid increased water surcharges as a result of PFAS contamination. Doc. 1616 at 29. DU argues the Court's decision on redressability applies equally to the CWA claims and that Johnson cannot demonstrate how civil penalties and declaratory relief could redress the ratepaying harm. But redressability for violations of the CWA is different than for abatement of a nuisance. Johnson's ratepaying harm is at its core based on harm to water quality.[2] "Where Congress has expressly granted a right of action and plaintiffs have shown 'a distinct and palpable injury,' plaintiffs 'may invoke the general public interest in support of their claim.'" *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc*., 913 F.2d 64, 73 (3rd Cir. 1990), *quoting Warth v. Seldin*, 422 U.S. 490, 501 (1975). "The general public interest in clean waterways will be served in this case by the

---

[2] See Plaintiff's Fourth Amended Complaint, Doc. 716, ¶¶ 100-107.

deterrent effect of an award of civil penalties. Penalties will deter both [DU] specifically and other NPDES permit holders generally." *Id*. Thus Plaintiff's injuries may be redressed by a favorable decision in this case. Furthermore, for purposes of the CWA, "Plaintiffs need not show that the waterway will be returned to pristine condition in order to satisfy the minimal requirements of Article III." *Id.*

At the time Johnson filed this lawsuit, DU's CWA violations were the cause of the rate increases due to the PFAS contamination of the Conasauga and Oostanaula Rivers and the Rome water supply. Compliance with the CWA would limit discharges of PFAS, even if cleanup of the LAS would not be required, which would improve the water quality of the rivers. Furthermore, civil penalties could serve as a deterrent for future violations by DU and other PFAS polluters of these rivers.[3]

DU next argues that the deterrent effect of civil penalties can only redress recreational and aesthetic injuries, not economic injuries, again arguing that Johnson's ratepayer injury is wholly past, as if this applies to the standing inquiry. Doc. 1625 at 9. Several courts have determined that economic injuries can provide

---

[3] Indeed, the *Johnson* suit and this Court's motion to dismiss decision to allow the CWA claims to proceed led to a lawsuit and settlement by the Coosa River Basin Initiative, Inc., against the City of Calhoun, Georgia, to require compliance with the CWA and reduce PFAS discharges to the Coosawatee River, a tributary of the Oostanaula. See Case No. 4:24-cv-00068-WMR, Doc. 36 (N.D. Ga, Oct. 24, 2024). The case settled shortly after the complaint was filed.

standing in CWA citizen suits and that civil penalties provide a deterrent effect for redressability of the CWA violations. *See e.g. Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.* ("*Laidlaw*"), 528 U.S. 167, 182–83 (2000) (diminution of property value); *Parker v. Scrap Metal Processors, Inc.*, ("*Parker*"), 386 F.3d 993, 1004 (11th Cir. 2004) (pollution entered plaintiff's property); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154-159 (4th Cir. 2000) (*en banc*) (Plaintiff has standing as a property owner in the path of a toxic discharge whose injury is ongoing).

DU also argues that the Supreme Court's decision in *Steel Co. v. Citizens for a Better Environment* ("*Steel Co.*"), 523 U.S. 83, 106 (1998), precludes the assessment of civil penalties in this case. Doc. 1625 at 10-11. DU misreads *Steel Co.*, which involved the limited situation in which a citizen suit plaintiff sought only civil penalties for wholly past violations of the Emergency Planning and Community Right–to–Know Act of 1986, 42 U.S.C. § 11046(a)(1). *Steel Co.* did not involve allegations of ongoing violations, nor did the facts suggest there was a likelihood that such violations might occur in the future. *Steel Co.*, 523 U.S. at 106-07. As the Court later clarified in *Laidlaw*, 528 U.S. at 187–88, *Steel Co.* "did not reach the issue of standing to seek penalties for violations that are ongoing at the time of the complaint and that could continue into the future if undeterred." The Court explained:

It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress. Civil penalties can fit that description. To the extent that they encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct.

*Laidlaw,* 528 U.S. at 185–86. *See also Natural Resources Defense Council v. Southwest Marine, Inc.* ("*Southwest Marine*"), 39 F.Supp.2d 1235, 1237–43 (S.D. Cal. 1999). ("Congress has statutorily given citizen plaintiffs the right to seek civil penalties for ongoing violations of the [CWA] based on the finding that such penalties help deter these violations.").[4] And where there is specific deterrence of defendant's misconduct, there is redress of plaintiff's injury. *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.* ("*Tyson Foods*"), 897 F.2d 1128, 1136 (11th Cir. 1990).

DU argues that civil penalties are not available unless injunctive relief is available. Doc. 1625 at 10-11. But *Laidlaw* and *Tyson Foods* hold that civil penalties

---

[4] Other courts have found civil penalties provide redress for CWA violations. *See e.g. Congaree Riverkeeper, Inc. v. Carolina Water Service, Inc.*, 248 F.Supp.3d 733, 748–49 (D.S.C. 2017); *Borough of Upper Saddle River, N.J. v. Rockland Cnty. Sewer Dist. #1*, 16 F.Supp.3d 294, 317 (S.D.N.Y. 2014); *PennEnvironment v. RRI Energy Northeast Management Co.*, 744 F.Supp.2d 466, 481 (W.D. Pa., 2010); *Riverkeeper, Inc. v. Mirant Lovett, LLC*, 675 F.Supp.2d 337, 351–52 (S.D.N.Y. 2009); *Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy*, 65 F.Supp.2d 1129, 1142 (E.D. Wash. 1999); and *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 900 F.Supp. 67, 76 (E.D. Tex. 1995).

are available to a plaintiff even if the issue of injunctive relief becomes moot. *Laidlaw*, 528 U.S. 167, 182–83; *Tyson Foods Inc.,* 897 F.2d at 1137. Just as in *Tyson Foods*, at the time Johnson initially brought this suit, he requested an injunction and civil penalties based on good faith allegations of ongoing violations. His complaint thus fulfilled the jurisdictional requirements of *Laidlaw*. This Court may have found his claim for injunctive relief was mooted by his lack of continuing irreparable harm due to Rome's settlement, Doc. 1616 at 37, but this does not affect his standing to seek civil penalties for CWA non-compliance that was ongoing at the time he filed suit. *Tyson Foods*, 897 F.2d at 1135. It is not ongoing injury to Plaintiff that gives civil penalties their deterrent effect, but ongoing violations of the CWA.

If accepted, DU's argument would encourage strategic delay tactics, allowing violators to evade penalties by achieving post-suit compliance. The Eleventh Circuit rejected this, explaining:

> [I]f the parties are able to make a valid request for injunctive relief at the time the complaint is filed, then they may continue to maintain a suit for civil penalties, even when injunctive relief is no longer appropriate.
>
> \*          \*          \*
>
> As the United States points out in its amicus curiae brief, citizen suits are an important supplement to government enforcement of the Clean Water Act, given that the government has only limited resources to bring its own enforcement actions. Courts have noted that "the judicial relief of civil penalties, even if payable only to the United States Department of the Treasury, is causally connected to a citizen-plaintiff's injury. Such penalties can be an important deterrence against future violations." … If post-suit compliance results in a mooting of the suit for civil penalties, then citizens will have less incentive to bring suit

since they know that the case may be deemed moot and dismissed before judgment. The potential for a citizen suit also will become a less effective deterrent to violators, since they know that they may be able to avoid paying any penalties by post-complaint compliance.

Perhaps the most dangerous result of the district court's holding is that it encourages violators to delay litigation as long as possible, knowing that they will thereby escape liability even for post-complaint violations, so long as violations have ceased at the time the suit comes to trial or is decided on summary judgment. Under such a holding, dischargers could intentionally violate the Clean Water Act until they are sued and then obtain a stay while continuing their violations until they eventually are in compliance with the law. At this point, the case would be dismissed and they would have escaped all penalties.

*Id*. at 1135–37; *see also Southwest Marine*, 39 F.Supp.2d at 1242.

DU also cites *City of Seattle v. Monsanto Co.* ("*Monsanto*"), 387 F. Supp. 3d 1141, 1156 (W.D. Wash. 2019), for the proposition that where a plaintiff's injury for past costs cannot be addressed by civil penalties paid to the U.S. Treasury, civil penalties would not deter future injuries. But *Monsanto* is wholly inapplicable, because it dealt with Monsanto's standing to bring a CWA citizen suit counterclaim against Seattle in a state tort lawsuit where Seattle sought damages against defendant for pollution by polychlorinated biphenyls ("PCBs"). *Id*. 387 F. Supp. 3d at 1150-51. Monsanto based its injury for standing on penalties and expenses it incurred and anticipated to incur in a separate enforcement action by the U.S. Environmental Protection Agency ("EPA") and the State of Washington for violations that Monsanto committed long before Seattle's alleged CWA violations. The court found there was no causal link between independent enforcement decisions made by the

EPA and the State of Washington and the alleged CWA violations by Seattle and held that Monsanto failed to show that the costs incurred were "fairly traceable" to Seattle's CWA violations. *Id.* at 387 F.Supp.3d at 1155.

Finally, DU argues that no deterrent effect is needed to compel it to address current and future PFAS concerns, citing its pending lawsuit against PFAS manufacturing defendants and carpet companies filed on December 9, 2024. Doc. 1625 at 10, n. 4.  DU's complaint tells a different story. That lawsuit, pending in Judge Ray's court, is primarily a declaratory judgment action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607, 9613(g)(2), to allocate a share of the past costs incurred by DU to evaluate the PFAS contamination of the LAS, and the future costs of a hypothetical cleanup of the LAS, to defendants. *City of Dalton, Ga. v. 3M Company*, *et al*., No. 4:24-cv-00293-WMR, Doc. 1 (N.D. Ga, Dec. 9, 2024).

DU's lawsuit does nothing to redress its own ongoing CWA violations. First, DU never offers in the complaint to comply with the CWA or even mentions the CWA. Second, it never states that it will cease or reduce discharges of PFAS from the LAS, although it admits it is in violation of its state-issued Land Application System Permit due to PFAS contamination of groundwater. *See* ¶¶ 8, 11, 13, 120. Third, DU denies being subject to any enforcement action by the State of Georgia or the EPA to require it to comply with the CWA or remediate the LAS. *See* ¶ 129.

Fourth, DU never states that it will perform any future cleanup to reduce the discharge of PFAS into the Conasauga River. Finally, DU seeks only damages against defendants under its Georgia common law claims but doesn't seek injunctive relief to compel defendants to perform a cleanup of the LAS. *See* Prayer for Relief at 45-46.

Thus, DU offers zero assurance of future compliance and no basis for avoiding civil penalties here. DU's CWA violations continue daily, and the lawsuit DU filed will do nothing to stop them.

## II.    JOHNSON'S CLEAN WATER ACT CLAIMS ARE NOT MOOT.

Because DU did not address mootness in its brief, Johnson relies upon the mootness argument in his original brief. Doc. 1624 at 15-18. DU was violating the CWA when Johnson filed his first Amended Complaint (adding DU to the case), which sought both injunctive relief and the imposition of civil penalties. Civil penalties attach at the time of the violations, which continue to this day, and the request for civil penalties cannot be mooted by the subsequent denial of injunctive relief.

## CONCLUSION

For the reasons stated above and in Plaintiff's original brief, Plaintiff requests the Court to deny DU's motion for summary judgment on standing and to allow

Plaintiff's CWA claims to proceed to a decision on Plaintiff's motion for summary

judgment or, ultimately, trial on the merits.

Respectfully submitted this 17th day of March 2025.

*/s/ Gary A. Davis*
Gary A. Davis (*phv*)
Keith A. Johnston (*phv*)
DAVIS, JOHNSTON, & RINGGER,
PC
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: (828) 622-0044
Fax: 828-398-0435
gadavis@enviroattorney.com
kjohnston@enviroattorney.com

Hirlye R. "Ryan" Lutz, III, Esq. (*phv)*
F. Jerome Tapley, Esq. (*phv*)R. Akira
Watson, Esq. (*phv*)
Brett C. Thompson, Esq. (*phv*)
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205
awatson@corywatson.com
bthompson@corywatson.com
rlutz@corywatson.com
jtapley@corywatson.com
Telephone: (800) 852-6299
Fax: (205) 324-7896

Ryals D. Stone (GA Bar No. 831761)
William S. Stone (GA Bar No.
684636)
THE STONE LAW GROUP –TRIAL
LAWYERS, LLC
5229 Roswell Road NE
Atlanta, Georgia 30342

Telephone: (404) 239-0305
Fax: (404) 445-8003
ryals@stonelaw.com
billstone@stonelaw.com

***Attorneys for Plaintiff***

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

This 17th day of March 2025.

*/s/ Gary A. Davis*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been filed electronically with the Clerk of the Court by using the CM/ECF system which will automatically email all counsel of record.

This 17th day of March 2025.

*/s/ Gary A. Davis*