IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

|  |  |  |
|---|---|---|
| JARROD JOHNSON, Individually and on behalf of a class of persons similarly situated, | : : : : | CIVIL ACTION NO. 4:20-cv-8-AT |
| Plaintiff, | : | |
| v. | : | |
| 3M COMPANY, *et al*., | : | |
| Defendants. | : | |

## ORDER

This matter comes before the Court upon review of the parties' Joint Status Report Regarding Stayed Motions. (Doc. 1646). The Court ordered the parties to file the Joint Status Report to gain insight into their respective positions on how best to move forward in the case after their mediation efforts proved unsuccessful. In particular, the Court aims to develop a feasible case management plan to address the dozens of fully briefed motions that were stayed pending the Court's resolution of Plaintiff's claim for injunctive relief. (Docs. 930; 1179; 1182; 1188; 1193; 1197 1198; 1199; 1209; 1210; 1211; 1212; 1214; 1215; 1222; 1223; 1230; 1232; 1232; 1239; 1242; 1243; 1244; 1246; 1249; 1254; 1255; 1256; 1260; 1262; 1265; 1493; 1531; 1583; 1140; 1154; 1187; 1190; 1196; 1202; 1205; 1217; 1228; 1229; 1231; 1236; 1238; 1253; 1258; 1261; 1267; 1269; 1278; 1280; 1285; 1287; 1319; 1357; 1360; 1369; 1382; 1389; 1393; 1401; 1406; 1409; 1416; 1419; 1423; 1429; 1470; 1475;

1479; 1488; 1499; 1515; 1535; 1539; 1544; 1547; 1548; 1557; 1561).[1] To that end, the parties were ordered to meet and confer with one another and with the Special Master, before filing a Joint Status Report outlining each party's respective positions as to: (1) which of the stayed motions still require a decision, (2) which motions should be prioritized, and (3) how best to bring the motions before the Court again. (Doc. 1637). The parties were also required to notify the Special Master of any other substantive motions they anticipate filing in the future and whether those motions might materially affect the landscape of the case and the Court's management of the other pending motions. (*Id.*).

The parties timely filed their Joint Status Report on August 6, 2025. (Doc. 1646). This Order responds to the issues the parties raised in the Joint Status Report and outlines the Court's case management plan moving forward.

## I.    The Parties' Positions in the Joint Status Report

The Joint Status Report reveals that the parties largely disagree on these case management questions. However, there is some common ground to be found. As an initial matter, both parties agree the Court should not require them to file revised versions of the stayed motions "to reflect the scope and nature of the remaining claims in the case in light of the Court's December 10, 2024 Order," as the Court indicated might be preferable to lifting the stay on all the motions and

---

[1] The parties agree in the Joint Status Report that the cross-motions for summary judgment filed by Plaintiff and Dalton/Whitfield Regional Solid Waste Authority (Docs. 1179; 1211) are moot in light of the settlement between those parties. The Court will deny those motions as moot by separate order.

attempting to parse out which aspects are now moot. (*See* Order, Doc. 1637 at 7). Rather, the parties express concerns about the unwieldiness of re-filing revised motions along with all opposition briefs, reply briefs, and motions to seal related to those motions. (Doc. 1646 at 21, 22). Although the parties do not directly present an alternative approach to requiring revised motions, elsewhere in the Joint Status Report, the parties indicate in a chart which sections of the stayed motions have been either resolved or mooted as a result of the Court's December 10, 2024 Order which disposed of Plaintiff's injunctive relief claim. (*Id.* at 2-8). Thus, the Court presumes that the parties prefer that the Court follow the guidance provided in the chart to evaluate which arguments are still live in any motions pending before Plaintiff's injunctive relief claims were dismissed.

Second, both parties agree that the Court should issue an Order addressing the question of whether Plaintiff lacks standing to pursue his claims against Dalton Utilities arising under the Clean Water Act ("CWA") in light of the Court's rulings in its December Order. Another point on which the parties broadly agree is that the Court should not lift the stay on all pending motions at once but should instead focus in on two or three major pending questions that may be case-dispositive or otherwise significantly affect the landscape of the case. The parties do not agree, however, on what those major questions are.

The Court begins with Plaintiff's plan. Plaintiff asks that the Court reopen discovery on a limited basis to permit him to conduct discovery on a significant

factual development that has occurred during the stay and mediation period.[2] Specifically, on December 16, 2024, the City of Rome voted to raise water rates by 5.5% effective January 1, 2025, with an additional 5.5% increase scheduled for January 1, 2026, resulting in an aggregate 11% increase. (Doc. 1646 at 8). Plaintiff seeks to prove through discovery that these rate increases are attributable to the anticipated construction of Rome's reverse osmosis treatment facility, which is being built to remediate the PFAS contamination at issue in this action. (*Id.* at 8-9). After taking discovery, Plaintiff would seek leave to amend the Motion for Class Certification to address the newly adopted rate increases and to re-assert his future damages claims, which were previously treated as moot. (*Id.* at 9-10). Plaintiff would also seek to supplement the opinion of his damages expert William Zieburtz to incorporate the impact of the new rate increases. (*Id.* at 9). Plaintiff proposes that both parties be permitted to supplement their briefing on the class certification motion and the Zieburtz opinion to address the rate increase development. (*Id.* at 10).

At the same time the Court addresses class certification, Plaintiff asserts the Court should address the outstanding question of whether Plaintiff lacks standing to pursue his CWA claims for the reasons the Court laid out in its December 2024 Order finding that Plaintiff lacked standing to pursue his injunctive relief claims. The viability of Plaintiff's CWA claims is at issue in several stayed summary

---

[2] Plaintiff has separately filed a Motion to Reopen Discovery seeking the same relief. [Doc. 1648].

judgment and related expert motions (Docs. 1210; 1223; 1256) as well as in supplemental briefs filed by Plaintiff and Dalton Utilities more recently (Docs. 1624; 1625; 1629; 1630). Finally, Plaintiff states that, after ruling on class certification, the Court should order the parties to meet and confer to present a plan to resolve the remaining stayed motions.

Defendants agree with Plaintiff that the Court should prioritize the CWA standing issue and that the briefing on this issue should be addressed now while the class certification motion is pending. If the Court decides Plaintiff does have standing to pursue those claims, Defendants request the Court lift the stay on the related summary judgment and expert motions filed by Plaintiff and Dalton Utilities (Docs. 1210; 1223; 1256). Defendants also agree that the Court should prioritize ruling on Plaintiff's motion for class certification. Importantly, however, Defendants strongly oppose Plaintiff's request to reopen discovery on the issue of the City of Rome's recent rate increases, as well as Plaintiff's request for revised class certification briefing to incorporate that issue. Rather, Defendants ask that the Court rule on the existing class certification motion (Doc. 930) without further delay. To that end, Defendants ask the Court to lift the stay on that motion, along with the related motions pertaining to Plaintiff's expert William Zieburtz. (*See* Docs. 1197; 1531; 1583).

Defendants also seek to file additional briefing on a discrete issue—namely, the economic loss rule. Defendants previously argued at the motion-to-dismiss stage that the economic loss rule should bar Plaintiff's claims, an argument the

Court rejected at that juncture. (*See* Doc. 629 at 66-80). However, various Defendants have raised the issue anew in their summary judgment motions, and they seek permission to file a new consolidated motion for summary judgment, of no more than 15 pages, on the economic loss rule. (Doc. 1646 at 16-17). Defendants assert that permitting a consolidated brief on this key legal question will streamline the Court's analysis in two ways. First, since Defendants filed their summary judgment briefs before the Court issued its December 2024 Order granting summary judgment to Defendants on Plaintiff's injunctive relief claim, they were not able to specifically brief the effect of that Order on the applicability of the economic loss rule to Plaintiff's remaining claims. Second, since Defendants' existing arguments on this issue are "scattered across various motions for summary judgment," Defendants assert that a consolidated brief would allow them to present their arguments more elegantly and cohesively. Defendants ask that the Court decide their consolidated summary judgment motion on the economic loss rule at the same time as the class certification motion. If the case is not resolved by the Court's rulings on class certification and the economic loss rule, Defendants propose that the Court order the parties to meet and confer to determine how best to present the remaining stayed motions to the Court.

Plaintiff opposes Defendants' proposal, arguing that Defendants have already fully briefed their arguments related to the economic loss rule across various summary judgment motions, and Plaintiff has responded in a consolidated opposition that addressed all such arguments. (Doc. 1646 at 11). Plaintiff explains

that preparing his response was an "extraordinarily burdensome" undertaking given the number of motions and parties involved, such that allowing a second round of briefing "would be both prejudicial and inefficient." (*Id.*). Additionally, Plaintiff argues it would be premature for the Court to address the applicability of the economic loss rule prior to ruling on class certification.

There is one final major area of disagreement between the parties. Plaintiff plans to move to consolidate this action with the related case *Coosa River Basin Initiative et al. v. 3M Company et al.*, Case No. 4:25-cv-75-AT (N.D. Ga. Apr. 2, 2025). Defendants adamantly oppose consolidation.

The Court addresses this array of case management issues below.

## II.    Plaintiff's Motion to Reopen Discovery

As noted above, Plaintiff has now filed the Motion to Reopen Discovery discussed in the Joint Status Report. [Doc. 1648]. To streamline the case management process, and because Defendants had an opportunity to be heard on this issue in the Joint Status Report, the Court will address this request now without further briefing.

Rule 16 provides that the Court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The party seeking the extension bears the burden of showing that the deadline could not be met despite the party's diligence. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) ("This good cause standard [of Rule 16(b)] precludes modification unless the schedule cannot 'be met despite the diligence of the party

seeking the extension.'") (quoting Fed. R. Civ. P. 16 advisory committee's note); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."). "A party's diligence can be determined by its attempts to gather relevant information during discovery, the timing of when the information became available, and how soon the party moved to amend after discovering the information." *Snadon v. Sew-Eurodrive, Inc.*, 859 F. App'x 896, 897 (11th Cir. 2021) (per curiam) (citing *Sosa*, 133 F.3d at 1419).

Defendants oppose Plaintiff's request to reopen discovery on the issue of future damages and for  use of that discovery to amend the class certification motion to broaden the scope of the putative class. Defendants' grounds for opposing the request are:

(1)    The age of the case and the substantial time that has passed since discovery closed more than three years ago militate against reopening discovery. (Doc. 1646 at 15). Defendants note that the parties have already fully briefed summary judgment across numerous motions.

(2)    Defendants express skepticism that Plaintiff could meet his burden of proving that the 2025 and 2026 rate increases were attributable to the presence of PFAS, since he "would have to overcome not only Rome's public statements and contractual commitment that it would never again raise rates due to PFAS, but also the Court's Summary Judgment Order, which directly addresses this issue." (*Id.*).

8

Therefore, Defendants assert that Plaintiff's attempt to broaden the scope of the putative class to include Rome ratepayers for a time period after August 31, 2023 would "take on a life of its own—meaning more fact discovery and depositions, expert reports, expert depositions, *Daubert* motions, and summary judgment motions." (*Id.* at 15-16).

The Court is inclined to allow Plaintiff the chance to obtain very limited discovery on additional ratepaying damages. Defendants correctly point out that the Court previously held that "any future ratepaying harm is speculative[,]" as "no evidence indicates that Plaintiff is likely to suffer ratepaying harm in the immediate future" as a result of "PFAS-related rate hikes." (Doc. 1616 at 36-37). Based on that rationale—that "for now, Plaintiff is not suffering any ongoing or likely imminent ratepaying harm"—the Court found that Plaintiff's request for injunctive relief based on his ratepaying harm was moot, although his request for damages resulting from past rate hikes "is clearly not moot." (*Id.* at 37-38). However, the Court's rationale was explicitly tied to the fact that, *at that time*, there was no concrete evidence to support a finding that Plaintiff was likely to suffer ratepaying harm in the immediate future. Now, however, there is concrete evidence of additional rate increases for 2025 and 2026. These rate increases are not speculative but are both real and immediate. The Court's rationale from the December 2024 Order does not foreclose a finding that Plaintiff may be able to

recover additional damages for ongoing and immediate ratepaying harm simply because, eight months ago, that harm was only speculative.

For the same reason, Plaintiff has adequately shown that, despite his diligence, he could not have met the existing scheduling order deadlines to take discovery on this issue of future damages. Before the rate increases were passed on December 16, 2024, Plaintiff's future ratepaying damages were speculative, and there was nothing to discover regarding the possible connection between those rate increases and the City of Rome's PFAS treatment costs. Defendants' argument that Plaintiff cannot meet his burden to show those increases were attributable to the presence of PFAS is premature and does not address the relevant "good cause" standard under Rule 16(b). Whether the requested discovery will ultimately lend merit to Plaintiff's claim for future damages is not the question before the Court. Rather, in determining whether a party has shown good cause to modify the schedule, the Court looks to the party's diligence in pursuing that discovery, which includes considering "the timing of when the information became available[.]" *Snadon*, 859 F. App'x at 897. Because the facts underlying Plaintiff's claims for future ratepaying damages did not come to pass until after discovery had closed, the Court cannot find that Plaintiff failed to act diligently to pursue the discovery at hand.

Additionally, Defendants' fear that Plaintiff's attempt to broaden the scope of the putative class to include Rome ratepayers for a time period after August 31, 2023 would "take on a life of its own" is overstated. The Court understands the rate

increases in 2025 and 2026 to be fundamentally a damages issue. If Plaintiff is successful in showing that Rome's additional rate increases are attributable to PFAS contamination, thereby broadening the scope of the time period for which possible damages are available on the ratepayer claims, the substantive issues of liability raised in the summary judgment motions will not be altered. The parties have also already agreed that it is appropriate to address class certification before lifting the stay on the motions for summary judgment on questions of liability. For that reason, no additional summary judgment briefing would be required unless and until the Court's ruling on class certification warrants some supplementation on the discrete issue of future damages. Therefore, the Court disagrees that altering the putative class definition to encompass a broader time period would reopen substantive issues and briefing to the degree stated by Defendants.

That said, the Court shares some of Defendants' concerns about reopening the record in this case and will thus strictly limit the discovery that will be permitted. Accordingly, Plaintiff's Motion to Reopen Discovery [Doc. 1648] is **GRANTED**, with the following limitations. No later than **September 30, 2025**, Plaintiff will be permitted to take a 30(b)(6) deposition of the City of Rome concerning the connection between its newly enacted water rate increases and PFAS treatment costs.[3] The deposition shall be no longer than seven hours total. If

---

3 In Plaintiff's Motion to Reopen Discovery, he expressly requests that the Court allow the Rule 30(b)(6) deposition notice to include document requests. [Doc. 1648 at 5]. The Court is not inclined to allow much if any additional written discovery in this case. However, the Court finds it premature to limit the scope of 30(b)(6) document requests without more information about what Plaintiff will seek. Plaintiff must provide the deposition notice to

the City of Rome must designate more than one representative to respond to the 30(b)(6) topics, Plaintiff may depose up to two representatives. However, the total deposition time shall remain limited to seven hours regardless of whether there are one or two designated deponents.

Plaintiff's expert William Zieburtz is granted leave to revise his expert report to incorporate the City of Rome's 30(b)(6) testimony following the deposition. He must do so by **November 10, 2025**. Defendants may depose Mr. Zieburtz by **December 10, 2025**. Any such deposition of Mr. Zieburtz shall be limited to four hours total. Defendants must determine how to apportion those hours amongst themselves. **No additional discovery may be taken without leave of court.**

Plaintiff may file a supplement to his class certification motion of **no more than six pages** (not including exhibits), incorporating the discovery on the rate increases and any revised future damages opinion of his expert by **December 19, 2025**. Defendants may respond to Plaintiff's supplement with a brief of **no more than six pages** (not including exhibits) by **January 12, 2026**.[4] No reply shall be permitted. No other revisions or supplementation of pending motions shall be permitted at this juncture.

---

the Court at the same time it is served on the City of Rome so that the Court may review the document requests to determine which, if any, the City must respond to. Plaintiff is advised to propose document requests that are strictly limited to the topic of the City's newly enacted water rate increases and PFAS treatment costs.

[4] Defendants are encouraged to file a consolidated brief or to join in one another's briefs where possible to reduce duplicative briefing.

Defendants may, but are not required to, file supplemental briefs regarding Mr. Zieburtz's revised expert report. Any such briefs shall be due **January 7, 2026**. Plaintiff may respond by **January 21, 2026**. No replies will be permitted. If the parties do not file supplemental briefs regarding the revised expert report, the Court will still address the existing briefs regarding Mr. Zieburtz's damages opinion and declaration (Docs. 1197; 1531; 1583).

The parties are cautioned that this is a short leash. The Court is unlikely to grant more than a modest extension of any of the deadlines set forth herein[5] and will not expand the scope of discovery and supplementation of the record beyond that anticipated by this Order. To refresh, this anticipated scope comprises: (1) Plaintiff's 30(b)(6) deposition of the City of Rome, lasting no more than seven hours total and limited to a maximum of two deponents; (2) the submission of a revised expert report by Plaintiff's expert William Zieburtz, limited to revisions needed to incorporate evidence related to the 2025 and 2026 rate increases; (3) Defendants' deposition of Mr. Zieburtz regarding his revised expert report, lasting no more than four hours total; (4) supplemental briefing regarding Mr. Zieburtz's revised expert report, if necessary; and (5) supplementation of Plaintiff's Motion

---

[5] The Court understands that many of these deadlines will fall during the holiday season. The Court will give due consideration to legitimate scheduling conflicts on the part of counsel and Plaintiff's expert. However, counsel must be mindful of the Rule 16(b) "good cause" standard and, in the event an extension must be sought, counsel should be prepared to demonstrate how the deadline in question cannot be met despite their diligence.

for Class Certification, limited to supplemental briefs of six pages each to incorporate argument regarding Mr. Zieburtz's revised damages opinion.

## III. Defendants' Consolidated Motion for Summary Judgment on the Economic Loss Rule

The Court will also permit Defendants to file a consolidated Motion for Summary Judgment on the economic loss rule. Plaintiff's argument that allowing this additional briefing "would be both prejudicial and inefficient" is not well-taken, given that Plaintiff similarly seeks to reopen aspects of the briefing to reassert his future damages claim based on the new rate increases. Defendants did not have the benefit of the Court's Order dismissing Plaintiff's injunctive relief claim when they previously briefed this issue across the various pending summary judgment motions. Additionally, if Defendants are correct in their belief that the application of the economic loss rule would be case-dispositive, it would only serve the interests of efficiency to address that question first before turning to other arguments in the dozen other summary judgment motions filed by the parties.

Accordingly, the Court **GRANTS** Defendants leave to file a consolidated Motion for Summary Judgment on the economic loss rule. Defendants' consolidated brief is due to be filed by **December 19, 2025**. The consolidated brief shall be limited to 15 pages. Plaintiff's response shall be limited to 15 pages and must be filed no later than **January 12, 2026**. Defendants' reply shall be limited to five pages and must be filed by **January 26, 2026**. The Court will rule on Plaintiff's Motion for Class Certification before addressing any of the currently stayed summary judgment motions. The Court will also issue a ruling on the

pending briefing regarding Plaintiff's Clean Water Act claims against Dalton Utilities (Docs. 1624; 1625; 1629; 1630)[6] as well as the pending summary judgment motions filed by Americhem and MFG Chemical and related briefing (Docs. 1183; 1184; 1250; 1337; 1559) before addressing the class certification motion or any other dispositive motions that are currently stayed.

## IV.    Plaintiff's Motion to Consolidate

Finally, the Court turns to Plaintiff's plan to move to consolidate this case with the related *Coosa River Basin* case, Case No. 4:25-cv-75. The Court is not inclined to grant consolidation given the very different procedural postures of the two cases. However, the parties will be permitted to brief this issue to allow for a more meaningful opportunity to be heard before the Court makes a final decision. Plaintiff must file his motion to consolidate no later than **September 15, 2025**. The brief in support of this motion shall not exceed 25 pages. Defendants may either file a consolidated response brief of 35 pages or alternatively, will be confined to filing individual entity briefs of no more than six pages each. Obviously, the Court prefers the 35-page option.  Plaintiff will be allowed 15 pages for a reply brief.

---

[6] If the Court concludes that Plaintiff does have standing to pursue his Clean Water Act claims against Dalton Utilities, the Court will lift the stay on the other summary judgment motions and related briefing on those claims (Docs. 1210; 1223; 1256) at that time.

## V.    Conclusion

For the reasons explained in this Order, Plaintiff's Motion to Reopen Discovery [Doc. 1648] is **GRANTED**. Discovery shall be reopened for a limited period of time from the date of this Order until **December 10, 2025**. The scope of the discovery that may be conducted during that time frame is strictly limited as follows:

(1) No later than **September 30, 2025**, Plaintiff may conduct a 30(b)(6) deposition of the City of Rome, lasting no more than seven hours total and limited to a maximum of two deponents, concerning the connection between its newly enacted water rate increases and PFAS treatment costs. Plaintiff may not venture into any other topics. If Plaintiff includes document requests in his 30(b)(6) deposition notice, Plaintiff must provide the Court with a copy of the document requests at the same time the notice is served. The Court will determine the extent to which the City of Rome shall be required to respond to the document requests.

(2) No later than **November 10, 2025**, Plaintiff may submit a revised expert report by his expert William Zieburtz following the 30(b)(6) deposition of the City of Rome. The revisions of Mr. Zieburtz's expert report shall be limited to those needed to incorporate evidence related to the 2025 and 2026 rate increases and PFAS treatment costs.

(3) Defendants may depose Mr. Zieburtz regarding his revised expert report by **December 10, 2025**, if necessary. Any such deposition shall be limited to four

hours total. Defendants must decide how to apportion the deposition time amongst themselves.

(4) No later than **January 7, 2026**, Defendants may file supplemental briefing regarding the revised expert report, if necessary. Plaintiff's response to any such supplemental briefing shall be due by **January 21, 2026**. No replies will be permitted.

(5) No later than **December 19, 2025**, Plaintiff may file a supplement to his Motion for Class Certification of no more than six pages (not including exhibits), incorporating the discovery on the rate increases and Mr. Zieburtz's revised damages opinion. Defendants may respond to Plaintiff's supplement with a brief of no more than six pages (not including exhibits) by **January 12, 2026**. No reply shall be permitted.

Defendants' request to file a Consolidated Motion for Summary Judgment on the Economic Loss Rule is **GRANTED**. Defendants' consolidated brief is due to be filed by **December 19, 2025**. The consolidated brief shall be limited to 15 pages. Plaintiff's response shall be limited to 15 pages and must be filed no later than **January 12, 2026**. Defendants' reply shall be limited to seven pages and must be filed by **January 26, 2026**.

Plaintiff may file a motion to consolidate this case with *Coosa River Basin Initiative et al. v. 3M Company et al.*, Case No. 4:25-cv-75 no later than **September 15, 2025**.

Any party wishing to conduct discovery or supplement the record beyond the scope anticipated by this Order must obtain express leave of court to do so.

Finally, the Court notes that the schedule outlined here has taken into account the time needed for counsel to complete the discovery and tasks at hand. The Court will not grant extensions absent extraordinary circumstances.

**IT IS SO ORDERED** this 26th day of August, 2025.

**Honorable Amy Totenberg**
**United States District Judge**