IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| **Coosa River Basin Initiative,** | ) | |
| **Raymond J. Perkins, Jr., J. Perkins** | ) | |
| **Farms, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE** |
| | ) | **NO. 4:25-cv-00075-AT** |
| **3M Company, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

*To be consolidated with:*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| **Jarrod Johnson, individually,** | ) | |
| **and on Behalf of a Class of Persons** | ) | |
| **Similarly Situated,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE** |
| | ) | **NO. 4:20-cv-00008-AT** |
| **3M Company, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFFS' MOTION TO CONSOLIDATE RELATED ACTIONS

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this motion to consolidate the *Coosa River Basin Initiative ("CRBI")* action with *Johnson v. 3M Company, et al.*, No. 20-cv-00008-AT (N.D. Ga.), which is also pending before this Court. In support thereof, Plaintiffs state:

## BACKGROUND

### I.    *Johnson v. 3M Company, et al.*, No. 20-cv-00008-AT

Filed in late 2019, *Johnson* is a putative class action brought on behalf of water ratepayers in Rome, Georgia. *Johnson* Doc. 716. The putative class seeks to recover damages in the increased water rates they paid to cover the costs of removing per- and polyfluoroalkyl substances ("PFAS") from the City's drinking water supply, which is drawn from the Oostanaula River. *See, e.g., id.* at ¶ 1. The complaint alleges that these PFAS contaminants originated from Dalton Utilities' Land Application System ("LAS"), where Dalton Utilities land-applied industrial wastewater received from upstream carpet manufacturers who used PFAS-containing products purchased from chemical suppliers. *See id.*

In addition to monetary relief, Johnson originally sought injunctive relief compelling Defendants to remediate the LAS. *Id.* at ¶¶ 194-200, Prayer for Relief. However, following a $300 million settlement between the City of Rome and

2

several defendants in a related case—funds that Rome is using to construct

permanent reverse osmosis filtration and roll back PFAS-related rate increases—

the Court ruled that Mr. Johnson lacked standing to pursue injunctive relief.

*Johnson* Doc. 1616. The damages claims remain active.

The *Johnson* Defendants include:

- **Dalton Utilities**, the operator of the LAS, *Johnson* Doc. 716, ¶ 26;

- **PFAS Dischargers**, including Aladdin Manufacturing Corporation (¶ 19); Mohawk Carpet, LLC (¶ 41); Mohawk Industries, Inc. (¶ 42) ("Mohawk Defendants"); Shaw Industries, Inc. and Shaw Industries Group, Inc. (¶ 46) ("Shaw Defendants"); and other dischargers of PFAS-contaminated wastewater to the Dalton Utilities POTW (Americhem, Inc.; Chem-Tech Finishers, Inc.; Engineered Floors, LLC; MFG Chemical, LLC); and

- **PFAS Suppliers**, including 3M Company (¶ 18), E.I. du Pont de Nemours and Co. ("DuPont") (¶ 31); INV Performance Services, LLC ("Invista") (¶ 36); Daikin America, Inc. ("Daikin") (¶ 25); and The Chemours Company ("Chemours") (¶ 48).

The causes of action are:

- **The Clean Water Act**, by Mr. Johnson individually against Dalton Utilities, *Johnson* Doc. 716, ¶¶ 107-145;

- **Negligence**, by the putative class against the PFAS Dischargers (¶¶ 163-68);

- **Negligence Per Se** under the Georgia Water Quality and Control Act, by the putative class against PFAS Dischargers (¶¶ 169-74);

- **Public Nuisance, and Abatement thereof**, by the putative class against all Defendants (¶¶ 184-93, 194-200); and

- **Punitive Damages**, by the putative class against all Defendants except Dalton Utilities (¶¶ 175-83).

Over the course of several years, Johnson has involved extensive factual and expert development. The record includes:

- **Millions of pages of corporate, regulatory, and technical records** produced through coordinated discovery;

- **Over 100 depositions** of corporate representatives, scientific experts, and fact witnesses;

- **Site inspections and fate-and-transport modeling** addressing how PFAS migrated through the LAS into surface waters;

- **A remediation plan for the LAS**, developed by an expert hydrologist; and

- **Detailed expert testimony** on source identification, industry knowledge, and regulatory context.

The record addresses Defendants' knowledge of PFAS hazards, the inability of POTWs like Dalton Utilities to remove PFAS, the environmental fate and transport of PFAS, and the contamination of downstream surface waters within the Upper Coosa River Basin. *See, e.g.,* Plaintiff's Omnibus Statement of Facts, *Johnson* Doc. 1403-1.

Presently, the Court is considering the Plaintiff's motion for class certification,[1] 13 pending motions for summary judgment,[2] and 20 *Daubert* motions.[3] *See Johnson* Doc. 1646, at 2-8. In addition, the Court has now allowed limited reopened discovery on new rate increases by the City of Rome. The Court is further allowing supplemental expert opinion, briefing on the rate increases' impact on the putative class's future damages claim, as well as additional briefing on Defendants' economic loss rule argument. *See Johnson* Doc. 1650.

## II.    *CRBI, et al. v. 3M Company, et al.*, No. 25-cv-00075-AT

Filed in 2025, *CRBI* asserts claims on behalf of additional Plaintiffs harmed by the same PFAS contamination and the same course of conduct. *CRBI* Doc. 1. Plaintiffs are, first, the Coosa River Basin Initiative ("CRBI")—a non-profit organization asserting standing on behalf of its members who use and enjoy the

---

[1] *Johnson* Doc. 930.

[2] *Johnson* Docs. 1183 (Americhem), 1184 (MFG), 1199 (Invista), 1210 (Plaintiff re: Dalton Utilities), 1212 (3M), 1214 (Engineered Floors), 1215 (Daikin), 1222 (Mohawk Defendants), 1224-1 (DuPont), 1242 (DuPont), 1255 (Plaintiff re: Apportionment), 1264 (Dalton Utilities), 1265 (Shaw Defendants).

[3] *Johnson* Docs. 1182 (Charles Andrews), 1188 (Mark Benotti), 1193 (Steven Amter), 1197 (William Zieburtz), 1198 (Steven Amter), 1209 (Steven Amter), 1223 (Charles Andrews), 1230 (Steven Amter), 1239 (Frederick Boelter), 1243 (Andy Davis), 1244 (Charles Andrews), 1246 (Jamie DeWitt), 1249 (Laurentius Marais), 1250 (Timothy Richards), 1254 (Mark Benotti), 1260 (Maureen Reitman), 1262 (F. Dean Driskell, III), 1492 (Andy Davis), 1531 (William Zieburtz), 1583 (William Zieburtz).

5

Upper Coosa River Basin for recreation and conservation. *Id.* at ¶¶ 32-35. Second, Raymond Perkins, Jr. and Perkins Farms, LLC ("Perkins Plaintiffs") own property along the Conasauga River used for hunting and agricultural purposes. *Id.* at ¶¶ 36-37.

Plaintiffs allege that PFAS released through Dalton Utilities' LAS have contaminated the Upper Coosa River and, in turn, have caused extensive PFAS accumulation on Mr. Perkins's farm. *Id.* at ¶¶ 22-23, 37. The core allegations mirror those in *Johnson*: that PFAS Suppliers sold hazardous, persistent PFAS to Shaw Defendants and Mohawk Defendants; that those companies discharged PFAS-contaminated wastewater to Dalton Utilities; and that Dalton Utilities then land-applied it to the LAS, resulting in widespread environmental and property damage downstream. *See, e.g., id.* at ¶¶ 1-14.

The *CRBI* Defendants overlap almost entirely with those in *Johnson* and include Dalton Utilities, Shaw Defendants, Mohawk Defendants, and the same PFAS Suppliers—including successor DuPont entities not previously named (DuPont de Nemours, Inc. and Corteva, Inc.). *Id.* at ¶¶ 38-51. Plaintiffs' causes of action are:

- **Clean Water Act**, by all Plaintiffs against Dalton Utilities, Shaw Defendants, and Mohawk Defendants (¶¶ 165-221);

- **Public & Private Nuisance, and Abatement thereof**, by Perkins Plaintiffs against all Defendants (¶¶ 246-65, 275-80);

- **Negligence**, by Perkins Plaintiffs against all Defendants (¶¶ 222-29);

- **Negligence Per Se**, by Perkins Plaintiffs against Dalton Utilities and Carpet Manufacturing Defendants (¶¶ 239-45);

- **Negligent Failure to Warn,** by Perkins Plaintiffs against PFAS Suppliers (¶¶ 230-38);

- **Punitive Damages**, by all Plaintiffs against all Defendants but Dalton Utilities (¶¶ 266-271); and

- **O.C.G.A. § 13-6-11 Attorneys' Fees and Expenses**, by all Plaintiffs against all Defendants (¶¶ 272-74).

*CRBI* will rely heavily on the record already developed in *Johnson*. It necessarily involves the same evidence, including corporate documents and witness testimony on PFAS sale, use, discharge, and knowledge; expert analyses on environmental fate, industry practices and history, and causation; site inspection materials; and the existing remediation plan. New discovery in *CRBI* will primarily focus on the new Plaintiffs, like Mr. Perkins's property, use, and contamination-related injuries and damages; and CRBI's organizational standing and the nature of its members' use of the Upper Coosa River Basin.

## ARGUMENT

## I.    Rule 42 grants courts broad discretion to consolidate actions.

Rule 42 permits a court to consolidate actions where they share "a common question of law or fact." Fed. R. Civ. P. The Rule codifies "a trial court's inherent managerial power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985) (quoting *In re: Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977)).

The decision to consolidate is "purely discretionary." *Hendrix*, 776 F.2d at 1495 (citing *In re: Air Crash*, 549 F.2d at 1013). But courts are not left without guidance. In exercising their discretion, courts weigh whether "the specific risks of prejudice and possible confusion" outweigh the (a) "risk of inconsistent adjudications of common factual and legal issues," (b) "the burden on parties, witnesses and available judicial resources posed by multiple lawsuits," (c) "the length of time required to conclude multiple suits as against a single one," and (d) "the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Hendrix*, 776 F.2d at 1495 (quoting *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982), *cert. denied*, 460 U.S. 1102 and 464 U.S. 1040). Courts also consider whether any risk of prejudice or confusion can be alleviated by jury instructions and careful trial management. *Id.*; *see also id.* at 1496-97

8

(approving district court's use of cautionary instructions and tabbed notebooks for jury note-taking per defendant and plaintiff).

These practical considerations underscore Rule 42(a)'s core purpose: promoting efficiency and consistency. In this Circuit, courts are "urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Young v. City of Augusta*, 59 F.3d 1160, 1169 (11th Cir. 1995). Their discretion to consolidate under Rule 42(a) "is especially strong and flexible," and the rule is therefore "applied liberally" to achieve its purpose. *In re: Air Crash*, 549 F.2d at 1013.

This discretion also receives substantial deference: appellate courts "will not disturb a trial court's decision to consolidate unless it constitutes a clear abuse of discretion." *Hendrix*, 776 F.2d at 1495 (citing *In re: Air Crash*, 220 F.2d at 918). Reversals are "rare," and "most" occur only where plaintiffs have divergent and conflicting legal interests. *In re: Air Crash*, 220 F.2d at 1013 n.10 (citing *DuPont v. S. Pac. Co.*, 366 F.2d 193, 195-97 (5th Cir. 1966) (reversing consolidation of vehicle-train collision cases where survivors of passengers sued both railroad and driver, while survivors of driver sued only railroad; trial court compounded conflict by requiring one lead counsel to represent both groups, creating an "impossible situation" due to directly conflicting interests and theories of fault).

## II.    *Johnson* and *CRBI* share far more than a common question of law or fact.

*Johnson* and *CRBI* easily satisfy Rule 42(a)'s threshold requirement. These actions do not merely involve *a* common question of law or fact, *see* FED. R. CIV. P. 42(a)—they arise from a single, unified course of conduct that forms the backbone of both cases. Specifically:

- PFAS Suppliers knowingly sold persistent, hazardous PFAS chemicals to Dalton industries;

- Those industries knowingly used and discharged those PFAS chemicals into Dalton Utilities' POTW;

- Dalton Utilities, despite knowing PFAS cannot be effectively removed by conventional treatment, land-applied the PFAS-contaminated wastewater to its LAS; and

- The LAS's runoff and migration pathways released PFAS into the Conasauga River, contaminating the downstream Oostanaula River and broader Upper Coosa River Basin.

The two actions name the same primary Defendants, arise from the same industrial supply chain and discharge process, and center on the same environmental fate and transport. The core theories of liability—including negligence, nuisance, and Clean Water Act violations—and the conduct underlying each, are nearly identical. While the Plaintiffs seek different remedies for distinct injuries—and assert some differing claims, such as products liability against the Supplier Defendants—those claims nonetheless arise from the same underlying

10

course of conduct and rely on the same factual record. Both actions turn on what Defendants knew about PFAS hazards, when they knew it, how PFAS was used and discharged, and how it traveled through Dalton Utilities' LAS into the river system. Plaintiffs will call overlapping fact witnesses, rely on the same regulatory and scientific evidence, and present many of the same expert opinions.

"Consolidation is not barred simply because the plaintiffs may be relying on different legal theories or because there are some questions that are not common to all the actions[.]" *Preston v. CSX Transp., Inc.*, 2018 WL 11348584, at *8 (N.D. Ga. Nov. 20, 2018). Instead, "the critical consideration, as in other contexts of the Federal Rules, is whether there is at least one common question of law or fact to justify bringing the actions together." *Id.* (cleaned up). Here, common questions of law and fact ***predominate***. And this is where the Eleventh Circuit endorses consolidation: "A joint trial is appropriate where there is clearly substantial overlap in the issues, facts, evidence, and witnesses required for claims against multiple defendants." *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1313-14 (11th Cir. 2017).

## III.    Judicial economy strongly supports consolidation.

Rule 42(a) is satisfied on the face of *Johnson* and *CRBI* pleadings. But the strongest reason for consolidation lies in the extraordinary risk of duplicative effort

and unnecessary expense on all sides—from the Court to counsel, parties, and witnesses. Rule 42 was designed to prevent that outcome. *See, e.g., In re: Air Crash*, 549 F.2d at 1014 ("'The purpose of consolidation is to permit trial convenience and economy in administration.'" (quoting *MacAlister v. Guterma*, 263 F.2d 65, 68-69 (2d Cir. 1958))); *Walker v. Loop Fish & Oyster Co.*, 211 F.2d 777, 780-81 (5th Cir. 1954) (finding it would have been "a needless waste of time" for the judge to rehear evidence in a bench trial after already presiding over a jury trial involving the same facts, and noting that "Rule 42 was designed to relieve against just such situations").

Consolidating *Johnson* and *CRBI* will spare all involved enormous duplication of effort. To be sure, it will streamline pretrial matters like dispositive motions and *Daubert* challenges. But consolidation is most critical at trial, where it will prevent extraordinary duplication of time, expense, and judicial resources that two nearly identical and lengthy trials would otherwise demand.

Both actions will require presentation of the same complex scientific and technical record, including thousands of documents and exhibits, overlapping expert analyses, and nearly identical witness testimony. Without consolidation, the Court would be asked to preside over two trials addressing the same environmental fate and transport of PFAS, the same industry practices, the same supplier-

12

customer relationships, and the same regulatory landscape—both proceedings

lasting months. It would face duplicative evidentiary disputes, repetitive

objections, overlapping motions *in limine*, and near-identical Rule 702

challenges—all grounded in the same subject matter and the same experts.

      Key witnesses—including corporate representatives, regulatory officials,

and scientific experts—will be called to testify in both cases, often to present the

same evidence twice. That imposes substantial and unnecessary costs not only on

parties but on third-party witnesses, many of whom would need to travel, prepare,

and testify multiple times. Fact-finding will involve a dense record built over

years, with nuanced evidence on source identification, PFAS persistence, and

Defendant knowledge. There is little value in requiring a second jury to hear the

same record or asking the Court to preside over two separate trials standing on

substantially the same factual and legal questions.

      And with parallel trials comes the real risk of inconsistent factual findings

and conflicting verdicts—despite reliance on the same witnesses and the same

evidence. That risk only compounds the inefficiency and uncertainty.

Consolidation avoids it entirely: one trial, one record, and consistent findings of

fact. *See, e.g., Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009)

("[C]onsolidation is particularly appropriate when the actions are likely to involve

substantially the same witnesses and arise from the same series of events or facts.").

## IV. No specific risks of prejudice outweigh the benefits of consolidation.

The efficiency gains from consolidating *Johnson* and *CRBI* are vast, cutting nearly in half what would otherwise be two demanding, and *largely duplicative* trials. Rule 42's only counterweight in the calculus is a showing of prejudice that is concrete, unmanageable, and so significant that it overtakes the overwhelming upside in judicial economy here. It is not present.

First, *Johnson* and *CRBI* Plaintiffs recognize the Court's hesitation to consolidate "given the very different procedural postures of the two cases." *Johnson* Doc. 1650, at 15. Nevertheless, "[t]he fact that the cases may be in different stages does not bar consolidation." *Werner v. Satterlee, Burke & Burke*, 797 F. Supp. 1196, 1212 (S.D.N.Y. 1992) (consolidating case at motion-to-dismiss stage with partially-settled case near conclusion of discovery); *see also Internet Law Library, Inc. v. Southridge Cap. Mgmt., LLC*, 208 F.R.D. 59, 62 (S.D.N.Y. 2002) ("[T]he fact that discovery has progressed further in the [earlier] action should not, standing alone, prevent consolidation and may, in fact, even favor it. Since the two actions share issues of law and fact, much of the discovery in the [earlier] action should be applicable to the [later] action."); *Fields v. Provident Life*

14

*and Accident Ins. Co.*, No. CIV.A. 99–CV–4261, 2001 WL 818353, at *6 (E.D. Pa. July 10, 2001) (consolidating case that was "ready for trial" with case "in its infancy," observing that "the discovery and trial preparation necessary for the [later] litigation will overlap significantly with the work already completed for the [earlier] litigation[]"). Instead of treating the different postures of *Johnson* and *CRBI* as alone dispositive, the Court should "consider . . . how the procedural postures of the respective actions will interact, and if that interaction imposes a significant burden on litigants." *Harrell v. Tutt, Taylor & Rankin Real Estate, LLC*, No. 1:20-cv-1347, 2020 WL 9348161, at *3 (E.D. Va. Dec. 9, 2020).

Indeed, space exists for *CRBI* to catch up to *Johnson* so that they are both equally trial-ready without prejudicing the earlier-in-time *Johnson* case. No trial date has yet been set in *Johnson*. The motion for class certification (with the possibility of a Rule 23(f) appeal), *Daubert* motions, and the majority of summary judgment issues in *Johnson* await rulings, while motions *in limine* have not been briefed. The Court has furthermore granted leave to reopen discovery on Rome's recently announced rate increases, and for Defendants to file a consolidated summary judgment brief on the economic loss rule—with January 21, 2026 set as the last filing deadline. *See id.* at 16-17. Defendants also intend to ask the Court to modify this schedule and extend it out through March to allow them to supplement

15

their own expert disclosures. Meanwhile, the Parties' efforts to reach a mediated final resolution of *Johnson* are deadlocked.

Against this backdrop, *CRBI* can be efficiently prosecuted to reach the same stage as *Johnson* by the time that outstanding class certification, summary judgment, and *Daubert* issues are decided in *Johnson*. Should the Court deny Defendants' motions to stay *CRBI*, the Parties' subsequent motion-to-dismiss briefing is unlikely to present many novel questions because of the overwhelming commonality of fact and law between *CRBI* and *Johnson*. A consolidated *CRBI* would make use of the fact and expert discovery in *Johnson* to then focus discovery on discrete new liability issues (e.g., Mohawk and Shaw's liability under the Clean Water Act), supplementing expert testimony with more recent data, and *CRBI* Plaintiffs' damages. From there, summary judgment and *Daubert* motion practice in *CRBI* are, like the motions to dismiss, likely to significantly overlap with *Johnson*. But unlike *Johnson*, no class certification briefing will be necessary in *CRBI*.

Second, differences among defendants do not bar consolidation. *See, e.g., Preston v. CSX Transp., Inc.*, 2018 WL 11348584, at *10 (N.D. Ga. Nov. 11, 2018) (citing *Linton v. Angie's Inc.*, 288 F.R.D. 432, 437 (D.S.D. 2012); *Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009); *Werner v. Satterlee, Stephens,*

16

*Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992)); *see also Am. Family Home Ins. Co. v. Hillery*, 2009 WL 2711901, at *2 (S.D. Ala. July 20, 2009) ("Identity of the parties is not a prerequisite; to the contrary, '[c]ases may be consolidated even where certain defendants are named in only one of the complaints.'" (quoting *Jacobs*, 612 F. Supp. 2d at 373)). Instead, where "an appropriate common question exists, federal courts often have consolidated actions despite differences in the parties." Wright & Miller, 9A FED. PRAC. & PROC. CIV. § 2384 (3d ed.).

This motion presents no exceptional complexity on this score. Both cases share virtually the same primary defendants—over 10—in common. The only differences are several additional dischargers in *Johnson* and two DuPont successor entities added in *CRBI*. These distinctions are narrow, discrete, and readily managed at trial. Indeed, jurors will already be tasked with distinguishing among multiple parties and their conduct, liability, and levels of responsibility. The addition of a handful of defendants does not materially expand that burden. If anything, trying these overlapping cases together provides greater context and consistency for the jury—while avoiding duplicative factfinding and potential inconsistency across two complex trials. *See, e.g., McDonald v. PaperlessPay Corp.*, 2021 WL 931599, at *4 (M.D. Fla. Mar. 11, 2021) (consolidating four data

breach class actions where two cases had unique defendants; all four shared a
common factual record and central defendant, and the potential for prejudice could
be addressed through severance if necessary); *see also id.* ("While the Court does
not disagree that the specific claims against Fareway and Prisma will likely involve
distinct legal and factual questions, those concerns are outweighed by the burden
that would be imposed on the Court, other parties, and witnesses if these four
overlapping class actions proceeded separately.").

Third, there is no conflict between the *Johnson* and *CRBI* Plaintiffs that
would undermine consolidation. *See In re: Air Crash*, 220 F.2d at 918. The
opposite is true. They advance complementary—not competing—theories of
liability, and similar causes of action. Their interests are aligned in establishing the
same core conduct by Defendants and rely on overlapping evidence to do so.

Finally, there is no risk of confusion or prejudice that tailored instructions
and thoughtful trial management cannot cure. Courts rely on these tools to mitigate
any theoretical risk of prejudice in consolidated proceedings—particularly where,
as here, the benefits to judicial economy are overwhelming. *See, e.g., Hendrix*, 776
F.2d at 1495 (noting that courts must consider whether any risk of prejudice "can
be alleviated by utilizing cautionary instructions to the jury during the trial and
controlling the manner in which the Plaintiffs' claims (including the defenses

thereto) are submitted to the jury for deliberation"). Any concern raised in response will warrant careful review, but no anticipated argument suggests prejudice so substantial and unmanageable that it would outweigh the extraordinary efficiencies and fairness that consolidation promises here.

## CONCLUSION

For these reasons, Plaintiffs respectfully request the Court consolidate the *Johnson* and *CRBI* actions.

Respectfully submitted September 15, 2025.

/s/ Robert Akira Watson
R. Akira Watson (*Pro Hac Vice*)
Brett C. Thompson (*Pro Hac Vice*)
Hirlye R. "Ryan" Lutz, III (*Pro Hac Vice*)
F. Jerome Tapley (*Pro Hac Vice*)
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205
Telephone: (800) 852-6299
Facsimile: (205) 324-7896
awatson@corywatson.com
bthompson@corywatson.com
rlutz@corywatson.com
jtapley@corywatson.com

Gary A. Davis (*Pro Hac Vice*)
Keith A. Johnston (*Pro Hac Vice*)
Louis W. Ringger, III *(Pro Hac Vice)*
DAVIS, JOHNSTON & RINGGER, P.C.
21 Battery Park Avenue, Suite 206

19

Asheville, North Carolina 28801
Telephone: (828) 622-0044
Facsimile: (828) 398-0435
gadavis@enviroattorney.com
kjohnston@enviroattorney.com
bringger@enviroattorney.com

Thomas Causby (GA Bar No. 968006
**CAUSBY FIRM, LLC**
P.O. Box 488
Dalton, Georgia 30722
Telephone: (706) 278-0525
Facsimile: (706) 229-4363
tom@causbyfirm.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

This 15th day of September, 2025.

*/s/ Robert Akira Watson*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been filed electronically with the Clerk of the Court by using the CM/ECF system which will automatically email all counsel of record.

This 15th day of September, 2025.

*/s/ Robert Akira Watson*